Kyle W. Roche (*pro hac vice*)
Edward Normand (*pro hac vice*)
Stephen Lagos (*pro hac vice*)
ROCHE FREEDMAN LLP
99 Park Avenue, 19th Floor
New York, NY 10016
Tel.: 646-970-7509
Email: kyle@rcfllp.com

Katherine Eskovitz (SBN 255105)
ROCHE FREEDMAN LLP
1158 26th Street No. 175
Santa Monica, CA 90403
Tel.: 646-791-6883
Email: keskovitz@rcfllp.com

*Counsel for Plaintiff Junhan Jeong*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUNHAN JEONG, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>NEXO FINANCIAL LLC, NEXO FINANCIAL SERVICES LTD., NEXO SERVICES OÜ, NEXO AG, and NEXO CAPITAL INC.<br><br>Defendant(s). | Case Number: 5:21-CV-02392<br><br>**JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER**<br><br>Date: August 26, 2021<br>Time: 11:00 a.m.<br>Judge: Hon. Beth L. Freeman |

The parties to the above-entitled action jointly submit this JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER pursuant to the *Standing Order for All Judges of the Northern District of California* and Civil Local Rule 16-9.

1. Jurisdiction & Service

*The basis for the court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether any issues exist regarding persona jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, a proposed deadline for service.*

*Form updated May 2018*

Plaintiff asserts that the Court has subject-matter jurisdiction pursuant to "28 U.S.C. § 1332(d) because the matter in controversy exceeds the value of $5,000,000, exclusive of interests and costs, there are more than 100 class members, and the matter is a class action in which any member of a class of plaintiffs is a citizen of a State different from any defendant." (Compl. ¶ 30.) As noted below, Defendants contend that the Court lacks subject matter jurisdiction, personal jurisdiction over certain Defendants, and that this action should be dismissed pursuant to the doctrine of *forum non conveniens*. All Defendants have been served.

2.  Facts

*A brief chronology of the facts and a statement of the principal factual issues in dispute.*

Plaintiff alleges that Defendants maintain and operate a website through which customers can use their cryptoassets as collateral to borrow cash. (Compl. ¶ 45.) In particular, using Nexo's "Crypto Credit" service, a customer may take out a "fiat loan" by staking his or her cryptoassets (*e.g.*, bitcoin) as collateral. (*Id.* ¶ 47.) Customers are permitted to borrow as much cash as they would like, provided that the amount borrowed relative to the value of collateral does not exceed a specified loan-to-value ("LTV") ratio. (*Id.* ¶ 48.)

To use Defendants' "Crypto Credit" service, the customer must accept certain terms and conditions imposed by Defendants. (*Id.* ¶ 46.) Plaintiff alleges that those terms and conditions permit any customer to maintain the requisite LTV ratio, and thus avoid Defendants' liquidation of that customer's collateral, by either posting additional collateral or paying down his or her loan with certain "accepted" cryptoassets, including, at the relevant time, XRP. (*Id.* ¶¶ 57-58.) Plaintiff further alleges that those terms and conditions require Defendants to provide notice before liquidating any customer's collateral. (*Id.* ¶¶ 80-94.)

Plaintiff alleges that, on December 23, 2020, Defendants, without providing any notice, stopped accepting a popular cryptoasset, Ripple or "XRP." (*Id.* ¶ 6.) Plaintiff alleges that Defendants did so because the SEC's announcement of its action against Ripple the previous day had caused the price of XRP to plummet, and Defendants did not want to be stuck holding XRP at its diminished price. (*Id.* ¶¶ 5-6.) In particular, Plaintiff alleges that, as a result of Defendants' suspension without notice, customers were precluded from paying down their

*Form updated May 2018*

loans with XRP or supplementing their collateral with XRP, and were therefore unable to maintain the requisite LTV ratio, which resulted in Defendants liquidating those customers' collateral. (*Id.* ¶¶ 8-9.)

Plaintiff alleges that, following their suspension of XRP, Defendants sought to justify their conduct by asserting that, under the applicable terms and conditions, Defendants "own" customers' collateral, regardless of whether the customer's LTV ratio is above or below the required threshold. (*Id.* ¶¶ 97-133.)

Disputed principal factual issues thus include (but are not necessarily limited to) the following:

- Whether Defendants' terms and conditions state that Defendants must always accept a particular cryptocurrency as a repayment option;
- Whether Defendants are required under their terms and conditions to notify Plaintiff prior to no longer accepting a particular cryptocurrency for repayment; and
- Whether, on the dates relevant to Plaintiffs' allegations, Defendants limited the ability of Plaintiff to use other means to repay the loans, including multiple cryptocurrencies and fiat currencies (e.g. the US Dollar).

3.  Legal Issues
*A brief statement, without extended legal argument, of the disputed points of law, including reference to specific statutes and decisions.*

Although this case is in the early stages, Defendants raised the following legal issues in their motion to dismiss (*See* Dkt. No. 27), which Plaintiff will be opposing on September 2:

- Whether Plaintiff has adequately alleged that the Court has specific personal jurisdiction over Defendants Nexo Financial Services Ltd., Nexo Services OÜ, and Nexo AG, under a single-enterprise liability theory. (*See id.* at 16-18 (relying on *Ranza v. Nike, Inc.*, 793 F.3d 1059 (9th Cir. 2015); *Ashcroft v. Iqbal*, 556 U.S. 669 (2009); *VirtualMagic Asia, Inc. v. Fil-Cartoons, Inc.*, 99 Cal. App. 4th 228 (2002); *Corcoran v. CVS Health*, 169 F. Supp. 3d 970 (N.D. Cal. 2016); *Reynolds v. Binance Holdings Ltd.*,

*Form updated May 2018*

481 F. Supp. 3d 997 (N.D. Cal. 2020); *Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001)).)

- Whether Plaintiff has adequately alleged the existence of an Article III injury-in-fact traceable to Defendants' conduct such that the Court has subject matter jurisdiction. (*See id.* at 20-22 (relying on *Washington Envtl. Council v. Bellon*, 732 F.3d 1131 (9th Cir. 2013); *TransUnion LLC v. Ramirez*, 2021 WL 2599472 (U.S. June 25, 2021); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016); *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197 (N.D. Cal. 2014)).)

- Whether the applicable terms and conditions conferred upon Defendants the right to suspend XRP as a repayment option without notice, whether a contractual provision purporting to confer such a right would be unconscionable, and whether Defendants' ability to exercise such a purported right is limited by the implied covenant of good faith and fair dealing. (*See id.* at 23-26 (relying on *Storek & Storek, Inc. v. Citigroup Real Estate, Inc.*, 100 Cal. App. 4th 44 (2002); *Enhanced Athlete Inc. v. Google LLC*, 2020 WL 4732209 (N.D. Cal. Aug. 14, 2020); *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019)).)

- Whether Plaintiff's request for a declaration as to whether Defendants "own" their customers collateral, presents a request for an impermissible advisory opinion. (*See id.* at 25 (relying on *Trinh v. Homan*, 466 F. Supp. 3d 1077 (C.D. Cal. 2020)).)

- Whether Plaintiff's requests for a declaratory judgment are duplicative of his breach of contract claims. (*See id.* at 26-27 (relying on *United Safeguard Distribs. Ass'n, Inc. v. Safeguard Bus. Sys., Inc.*, 145 F. Supp. 3d 932 (C.D. Cal. 2015); *United States v. Washington*, 759 F.2d 1353 (9th Cir. 1985); *Trinh v. Homan*, 466 F. Supp. 3d 1077 (C.D. Cal. 2020)).)

- Whether Defendants' Crypto Credit service constitutes either a "good" or "service" pursuant to the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*. (*See id.* at 27-29 (relying on *Ball v. FleetBoston Fin. Corp.*, 164 Cal. App. 4th 794 (2008); *Berry v. Am. Express Publ'g, Inc.*, 147 Cal. App. 4th 224 (2007); *Alborzian v.*

*Form updated May 2018*

*JPMorgan Chase Bank, N.A.*, 235 Cal. App. 4th 29 (2015); *Consumer Sols. REO, LLC v. Hillery*, 658 F. Supp. 2d 1002 (N.D. Cal. 2009); *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024 (N.D. Cal. 2020); *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989 (N.D. Cal. 2012); *Fairbanks v. Superior Court*, 46 Cal. 4th 56 (2009); *Sonado v. Amerisave Mortg. Corp.*, 2011 WL 2690451 (N.D. Cal. July 8, 2011)).)

- Whether Plaintiff's claims for equitable relief pursuant to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, and California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*, require the absence of any adequate legal remedy, and whether Plaintiff can show that any legal remedy is inadequate. (*See id.* at 29-30 (relying on *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020); *In re California Gasoline Spot Mkt. Antitrust Litig.*, 2021 WL 1176645 (N.D. Cal. Mar. 29, 2021); *Sharma v. Volkswagen AG*, 2021 WL 912271 (N.D. Cal. Mar. 9, 2021); *Julian v. TTE Tech., Inc.*, 2020 WL 6743912 (N.D. Cal. Nov. 17, 2020); *In re Macbook Keyboard Litig.*, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020)).)

- Whether Plaintiff has pleaded a plausible predicate violation of law under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* (*See id.* at 30 (citing *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163 (1999); *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012)).)

- Whether the applicable terms and conditions contain an enforceable forum selection clause, and whether applying that clause would be contrary to public policy or leave Plaintiff without an adequate remedy such that the doctrine of *forum non conveniens* would be inapplicable. (*See id.* at 31-33 (relying on *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49 (2013); *Finsa Portafolios, S.A. de C.V. v. OpenGate Capital, LLC*, 769 F. App'x 429 (9th Cir. 2019); *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081 (9th Cir. 2018); *HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, 2020 WL 7220462 (N.D. Cal. Jan. 30, 2020); *Lewis v. Liberty Mut. Ins. Co.*, 953 F.3d 1160 (9th Cir. 2020); *Creative Tech., Ltd. v. Aztech Sys. Pte, Ltd.*, 61

F.3d 696 (9th Cir. 1995); *Lee v. Fisher*, 2021 WL 1659842 (N.D. Cal. Apr. 27, 2021); *In re Facebook, Inc. S'holder Derivative Privacy Litig.*, 367 F. Supp. 3d 1108 (N.D. Cal. 2019); *Maroon Soc'y, Inc. v. Unison Consulting, Inc.*, 2019 WL 8108717 (C.D. Cal. July 26, 2019); *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972); *Richards v. Lloyd's of London*, 135 F.3d 1289 (9th Cir. 1998); *Am. Home Assurance Co. v. TGL Container Lines, Ltd.*, 347 F. Supp. 3d 749 (N.D. Cal. 2004); *Color Switch LLC v. Fortafy Games DMCC*, 818 F. App'x 694 (9th Cir. 2020); *Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656 (9th Cir. 2009); *Miave, LLC v. Pitech Plus, SRL*, 2021 WL 2333097 (C.D. Cal. May 5, 2021); *Spread Your Wings, LLC v. AMZ Grp. LLC*, 2020 WL 5749085 (N.D. Cla. Sept. 25, 2020)).)

4. Motions

*All prior and pending motions, their current status, and any anticipated motions.*

Defendants' motion to dismiss was filed on July 19, 2021. (*See* Dkt. No. 27.) Plaintiff's opposition brief is due on September 2, 2021, and Defendants' reply is due on October 4, 2021. No other motions, aside from *pro hac vice* motions, have been filed in this action.

5. Amendment of Pleadings

*The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.*

As stated above, Defendants' motion to dismiss will not be fully briefed until October 4, 2021. Plaintiff does not intend, at this point, to file an amended complaint but reserves the right to do so. The parties propose that any amended complaint be filed within 30 days of the Court's decision on Defendants' motion to dismiss.

6. Evidence Preservation

*A brief report certifying that the parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirming that the parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. See ESI Guidelines 2.01 and 2.02, and Checklist for ESI Meet and Confer.*

The parties certify that they have reviewed the ESI Guidelines and have met and conferred pursuant to Rule 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

7. Disclosures

*Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26 and a description of the disclosures made. For ADA and employment cases, see General Order Nos. 56 and 71.*

*Form updated May 2018*

Initial disclosures are not due in this matter until September 2, 2021. The parties intend to comply with that deadline.

8. <u>Discovery</u>

*Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, a brief report on whether the parties have considered entering into a stipulated e-discovery order, a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f), and any identified discovery disputes.*

No discovery has been taken to date and no discovery disputes exist between the parties at this point. The parties have considered entering into a stipulated e-discovery order, but respectfully submit that, given Defendants' motion to dismiss is pending, it is premature for the parties to propose discovery deadlines or to adequately describe the scope of anticipated discovery. Until class certification is decided, the parties agree to discovery only for purposes of resolving class certification; the parties will commence full fact discovery if and when a class is certified. *See Dunbar v. Google, Inc.*, No. 5:12-cv-003305-LHK, 2012 U.S. Dist. LEXIS 177058, at *6 (N.D. Cal. Dec. 12, 2012) (stating that the court provided that discovery would be limited to class certification issues until the plaintiff's motion for class certification was resolved). The parties agree to a stay of full fact discovery until resolution of the Motion to Dismiss. *See Yiren Huang v. Futurewei Techs., Inc.*, No. 18-cv-00534-BLF, 2018 U.S. Dist. LEXIS 71429, at *11 (N.D. Cal. Apr. 27, 2018) ("Accordingly, under Ninth Circuit law and the two-pronged approach applied by courts in this district, the Court finds that good cause exists to stay discovery until the pending Motion to Dismiss is resolved."). In response to the motion, however, Plaintiff reserves the right to seek discovery relevant to resolving issues that the motion raises, such as personal jurisdiction.

9. <u>Class Actions</u>

*If a class action, a proposal for how and when the class will be certified.*

Pursuant to Local Rule 16-9(b), Plaintiff states that he intends to maintain a class action pursuant to Federal Rules of Civil Procedure 23(b)(1)(A), 23(b)(2), and 23(b)(3). Plaintiff's claims are brought on behalf of two classes and two subclasses. The "Damages Class" includes "[a]ll persons who reside in the United States who suffered damages from breach of contract arising from Nexo's suspension of XRP payments on December 23, 2020, and thereafter." (Compl. ¶ 142.) The "Equitable-Relief Class" includes "[a]ll persons who reside in the United

*Form updated May 2018*

States and who are using Nexo's Crypto Credit." (*Id.*) The "California UCL Subclass" includes "[a]ll persons in the Damages Class who reside in California and who are entitled to restitution under California's Unfair Competition Law." (*Id.*) The "California CLRA Subclass" includes "[a]ll persons in the Equitable-Relief Class who reside in California and who seek injunctive relief under the California Consumer Legal Remedies Act." (*Id.*) Plaintiff believes that class-action treatment is appropriate under Rule 23(b)(1)(A), because "with respect to the equitable relief sought herein, individual actions would create a risk of establishing incompatible standards of conduct for the Defendants"; under Rule 23(b)(2), "because the equitable relief sought herein is appropriate and applies generally to the Equitable-Relief Class"; and under Rule 23(b)(3), "because common legal and factual questions predominate over questions affecting only individual class members." (*Id.* ¶ 151.) Such issues include, for example, whether Defendants breached the applicable terms and conditions "by suspending XRP payments," and whether Defendants breached those terms and conditions by "failing to give notice of its suspension of XRP payments." (*Id.* ¶ 149.) Given that Defendants' motion to dismiss is pending, the parties respectfully submit that it is premature to propose a date for the Court "to consider whether the case can be maintained as a class action."

10. <u>Related Cases</u>
*Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.*

      To the parties' knowledge, no such cases or proceedings exist.

11. <u>Relief</u>
*All relief sought through complaint or counterclaim, including the amount of any damages sought and a description of the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.*

      Plaintiff seeks damages (and pre- and post-judgment interest) for Defendants' alleged breach of contract (Compl. ¶ 173); a declaration that Defendants are not entitled to suspend customer use of XRP for repayments, that Defendants do not possess the unfettered right to change any material conditions for the use of their Crypto Credit service, and that Defendants do not acquire the ownership of customers' collateral while those customers have outstanding

loans (*id.* ¶¶ 178, 183, 189); restitutionary disgorgement and reasonable attorneys' fees and costs (and pre- and post-judgment interest) for Defendants' violations of California's Unfair Competition Law (*id.* ¶¶ 198-99); an injunction pursuant to California's Unfair Competition Law "precluding Nexo from suspending its borrowing services in bad faith and without notice, and precluding Nexo from liquidating Nexo's customers' collateral on the purported basis that Nexo owns it" (*Id.* ¶ 200); and an injunction (and attorneys' fees) pursuant to California's Consumer Legal Remedies Act, precluding Defendants from invoking unconscionable contractual provisions that purport to provide Defendants with "the unfettered right to suspend Crypto Credit or any of its features or content without notice to its customers and for any reason at all" and "ownership" over customers' collateral "during the time in which the customer uses the Nexo Crypto Credit" (*id.* ¶¶ 211-14).

With respect to his breach of contract claim, Plaintiff seeks to recover at least "the full value of the collateral that Nexo liquidated as a result of the XRP suspension and/or Nexo's failure to give notice for the suspension (less the outstanding loan amounts on that collateral as of breach)." (*Id.* ¶ 173.) For Plaintiff, that amount is no less than the difference between $269,300 and $169,400, or approximately $100,000. (*Id.* ¶ 135.) With respect to his UCL claim, Plaintiff seeks to recover at least "the value of the collateral over which [he] retained ownership and that Nexo wrongly liquidated resulting from the suspension of XRP payments (less the outstanding loan amounts on that collateral as of breach)"—*i.e.*, the same amount. (*Id.* ¶ 199.)

12. <u>Settlement and ADR</u>
*Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including which ADR process option the parties have selected and a proposed deadline, or if the parties do not agree, each party's preferred option and timing, in compliance with ADR L.R. 3-5. In addition, the parties should include a description of key discovery or motions necessary to position the parties to negotiate a resolution.*

Although the parties engaged in preliminary discussions prior to Plaintiff filing this action, they did not reach an agreement. The parties and their counsel have read the ADR Handbook, discussed with each other the available dispute resolution options provided by the Court and private entities, and considered whether their case might benefit from any of the available dispute resolution options. They have concluded that they do not intend to stipulate

*Form updated May 2018*

to an ADR process or deadline.  The parties believe that the outcome of Defendants' motion to dismiss and Plaintiff's motion for class certification, not yet filed, will inform the parties' settlement discussions.

### 13. Consent to Magistrate Judge For All Purposes

*Whether **all** parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.   ____ YES   _X___ NO*

### 14. Other References

*Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.*

The parties do not believe that, at this time, this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

### 15. Narrowing of Issues

*Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses.*

At this point, the parties do not believe that there are any such issues, but note that Defendants have moved to dismiss Plaintiff's claims on several grounds.

### 16. Expedited Trial Procedure

*Whether this is the type of case that can be handled under the Expedited Trial Procedure of General Order 64, Attachment A.  If all parties agree, they shall instead of this Statement, file an executed Agreement for Expedited Trial and a Joint Expedited Case Management Statement, in accordance with General Order No. 64, Attachments B and D.*

The parties do not believe that this is the type of case that may be handled under the Expedited Trial Procedure of General Order 64, Attachment A.

### 17. Scheduling

*Proposed dates for completion of initial ADR session, designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.*

Given that Defendants' motion to dismiss is pending, the parties believe that it is premature to set the above-referenced deadlines.

### 18. Trial

*Whether the case will be tried to a jury or to the court and the expected length of the trial.*

Plaintiff has requested a trial by jury. (*See* Compl. at 1.) Given that this case is in its early stages, the parties believe that it is premature to estimate the length of the trial.

### 19. Disclosure of Non-party Interested Entities or Persons

*Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15. In addition, each party must restate in the case management statement the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.*

For Plaintiff or Defendants, there is no such entity or person.

### 20. Professional Conduct

*Whether all attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.*

The attorneys for both parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

### 21. Other

*Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.*

*Form updated May 2018*

| | | |
|---|---|---|
| 1 | Dated: | /s/ *Kyle W. Roche* |

Kyle W. Roche (*pro hac vice*)
Edward Normand (*pro hac vice*)
Stephen Lagos (*pro hac vice*)
ROCHE FREEDMAN LLP
99 Park Avenue, Suite 1910
New York, NY 10016
Tel.: 646-970-7509

Katherine Eskovitz (SBN 255105)
ROCHE FREEDMAN LLP
1158 26th Street No. 175
Santa Monica, CA 90403
Tel.: 646-791-6883
keskovitz@rcfllp.com

*Counsel for Plaintiff Junhan Jeong*

Dated:            /s/ *Michael Bahar*

Michael Bahar (*pro hac vice*)
EVERSHEDS SUTHERLAND (US) LLP
700 Sixth Street, NW, Suite 700
Washington, D.C. 20001-3980
Tel.: 202-383-0882

Ian S. Shelton (SBN 264863)
EVERSHEDS SUTHERLAND (US) LLP
500 Capitol Mall, Suite 1750
Sacramento, CA 95814
Tel.: 916-844-2965

*Counsel for Defendants Nexo Financial LLC, Nexo Financial Services Ltd., Nexo Services OÜ, Nexo AG, and Nexo Capital Inc.*

## CASE MANAGEMENT ORDER

The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is approved as the Case Management Order for this case and all parties shall comply with its provisions. [In addition, the Court makes the further orders stated below:]

IT IS SO ORDERED.

Dated:

UNITED STATES DISTRICT/MAGISTRATE JUDGE

*Form updated May 2018*