EVERSHEDS SUTHERLAND (US) LLP
Ian S. Shelton (SBN 264863)
ianshelton@eversheds-sutherland.com
500 Capitol Mall, Suite 1750
Sacramento, CA 95814
Telephone:    (916) 844-2965
Facsimile:    (916) 241-0501

EVERSHEDS SUTHERLAND (US) LLP
Michael Bahar (admitted *PHV*)
michaelbahar@eversheds-sutherland.com
700 Sixth Street, NW, Suite 700
Washington, DC  20001-3980
Telephone:  (202) 383-0882
Facsimile:   (202) 637-3593

*Attorneys for Defendants Nexo Financial LLC, Nexo Financial Services Ltd., Nexo Services OÜ, Nexo AG, and Nexo Capital Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUNHAN JEONG, individually and on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>NEXO FINANCIAL LLC, NEXO FINANCIAL SERVICES LTD., NEXO SERVICES OÜ, NEXO AG, and NEXO CAPITAL INC.,<br><br>Defendants. | CASE NO. 5:21-CV-02392-BLF<br><br>The Honorable Beth Labson Freeman<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b) AND BASED ON THE DOCTRINE OF *FORUM NON CONVENIENS***<br><br>Hearing Date:  November 18, 2021<br>Hearing Time: 9:00 a.m.<br><br>Courtroom:   No. 3, 5th Floor<br>Address:      U.S. Courthouse<br>            280 South 1st Street<br>            San Jose, CA 95113 |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................1

ARGUMENT..................................................................................................4

I.   THE COURT SHOULD DISMISS THE EUROPEAN NEXO ENTITIES
     AND NEXO FINANCIAL LLC FOR LACK OF PERSONAL
     JURISDICTION ....................................................................................4

     A.   A highly interactive website does not give the court personal
          jurisdiction over the worldwide affiliates of Nexo Capital Inc. ............4

     B.   Jeong's boilerplate alter ego allegations fail to plausibly allege
          personal jurisdiction under a single-enterprise theory .........................6

     C.   The Court should deny the request for jurisdictional discovery............8

II.  THE COURT SHOULD DISMISS FOR LACK OF SUBJECT MATTER
     JURISDICTION ...........................................................................9

III. THE COURT SHOULD DISMISS FOR FAILURE TO STATE A CLAIM 10

     A.   Jeong fails to state a breach of contract claim .....................................10

     B.   The declaratory judgment claim is duplicative of the contract
          claim...................................................................................................13

     C.   The CLRA does not apply to extensions of credit .............................13

     D.   The UCL and CLRA claims are barred by *Sonner* .............................14

IV.  THE COURT SHOULD ALTERNATIVELY DISMISS THE BREACH OF
     CONTRACT AND DECLARATORY JUDGMENT CLAIMS BASED ON
     THE *FORUM NON CONVENIENS* DOCTRINE .........................................15

CONCLUSION ..............................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AM Tr. v. UBS AG*,
    681 F. App'x 587 (9th Cir. 2017) ............................................................................ 4

*Apple Inc. v. Allan & Assocs. Ltd.*,
    445 F. Supp. 3d 42 (N.D. Cal. 2020) ....................................................................... 8

*B&O Mfg., Inc. v. Home Depot U.S.A., Inc.*,
    2007 U.S. Dist. LEXIS 83998 (N.D. Cal. Nov. 1, 2007) ........................................ 13

*Celgard, LLC v. Shenzhen Senior Tech. Material Co.*,
    2020 U.S. Dist. LEXIS 60658 (N.D. Cal. Feb. 10, 2020) ........................................ 9

*Circle Click Media LLC v. Regus Mgmt. Grp. LLC*,
    2013 U.S. Dist. LEXIS 1604 (N.D. Cal. Jan. 3, 2013) ........................................ 5, 6

*Clark v. Am. Honda Motor Co.*,
    2021 U.S. Dist. LEXIS 64520 (C.D. Cal. Mar. 25, 2021) ...................................... 14

*Consumer Solutions REO, LLC v. Hillery*,
    658 F. Supp. 2d 1002 (N.D. Cal. 2009) .................................................................. 13

*Davis v. Capitol Records, LLC*,
    2013 U.S. Dist. LEXIS 55917 (N.D. Cal. Apr. 18, 2013) ...................................... 13

*Essex Marina City Club, L.P. v. Cont'l Cas. Co.*,
    2011 U.S. Dist. LEXIS 49512 (N.D. Cal. May 9, 2011) ........................................ 13

*Flint CPS Inks N. Am. LLC v. Trend Offset Printing Servs.*,
    2021 U.S. Dist. LEXIS 24171 (C.D. Cal. Jan. 7, 2021) .......................................... 9

*Garza v. Bank of Am.*,
    2012 U.S. Dist. LEXIS 17596 (E.D. Cal. Feb. 13, 2012) ...................................... 13

*Gerritsen v. Warner Bros. Entm't Inc.*,
    116 F. Supp. 3d 1104 (C.D. Cal. 2015) .................................................................... 7

*Gibson v. Jaguar Land Rover N. Am., LLC*,
    2020 U.S. Dist. LEXIS 168724 (C.D. Cal. Sept. 9, 2020) ...................................... 14

*Hayward v. Bank of Am., N.A.*,
    2020 U.S. Dist. LEXIS 60318 (E.D. Cal. April 6, 2020) ........................................ 14

*Jamison v. Bank of Am., N.A.*,
    194 F. Supp. 3d 1022 (E.D. Cal. 2016) .................................................................. 14

*Mazonas v. Nationstar Mortg. LLC*,
    2016 U.S. Dist. LEXIS 59424 (N.D. Cal. May 4, 2016) ...................................... 14

*Meyer v. Capital All. Grp*.,
    2017 U.S. Dist. LEXIS 183690 (S.D. Cal. Nov. 6, 2017)...................................... 14

*NetApp, Inc. v. Nimble Storage Inc.*,
    2015 U.S. Dist. LEXIS 11406 (N.D. Cal. Jan. 29, 2015) ........................................ 7

*Palestini v. Homecomings Financial, LLC*,
    2010 U.S. Dist. LEXIS 72985 (S.D. Cal. July 20, 2010)...................................... 13

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) .............................................................................. 6

*Reynolds v. Binance Holdings Ltd.*,
    481 F. Supp. 3d 997 (N.D. Cal. 2020) ..........................................................6, 7, 8, 9

*Sapan v. Lexington Mortg. Corp.*,
    2017 U.S. Dist. LEXIS 63069 (C.D. Cal. April 17, 2017)...................................... 14

*Schertz v. Ford Motor Co.*,
    2020 U.S. Dist. LEXIS 187667 (C.D. Cal. July 27, 2020) ...................................... 14

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) .............................................................................. 14

*Sonoda v. Amerisave Mortgage Corp.*,
    2011 U.S. Dist. LEXIS 73940 (N.D. Cal. July 8, 2011) ...................................... 14

*Stewart v. Screen Gems-Emi Music, Inc.*,
    81 F. Supp. 3d 938 (N.D. Cal. 2015) .................................................................... 8

*Superior Motels, Inc. v. Rinn Motor Hotels, Inc.*,
    195 Cal.App.3d 1032 (1987) .............................................................................. 10

*Sweet v. Google Inc.*,
    2018 U.S. Dist. LEXIS 37591 (N.D. Cal. Mar. 7, 2018) ...................................11, 12

*TopDevz, LLC v. LinkedIn Corp.*,
    2021 U.S. Dist. LEXIS 145186 (N.D. Cal. Aug. 3, 2021) ...................................... 14

*Watkins v. MGA Entm't, Inc.*,
    2021 U.S. Dist. LEXIS 138888 (N.D. Cal. July 26, 2021) ...................................... 14

*Williams v. Apple, Inc.*,
    2020 U.S. Dist. LEXIS 215046 (N.D. Cal. Nov. 17, 2020) ...................................... 14

*Wolf v. Walt Disney Pictures & Television*,
    162 Cal.App.4th 1107 (2008) ...........................................................................12, 13

-iii-

*In re: Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   313 F. Supp. 3d 1113 (N.D. Cal. 2018) ................................................................. 14

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(1) ............................................................ 4, 15

Federal Rule of Civil Procedure 12(b)(6) ............................................................ 4, 15

REPLY IN SUPPORT OF MOTION TO DISMISS

# INTRODUCTION

Jeong's opposition provides no legal basis for allowing this flawed lawsuit to proceed.

*First*, the claims against Nexo Financial Services Ltd., Nexo Services OÜ, Nexo AG, and Nexo Financial LLC should be dismissed for lack of personal jurisdiction.  The entity that issued the secured credit line to Jeong—Nexo Capital Inc.—is before the Court and does not contest personal jurisdiction.  Because Nexo Capital Inc. will respond to the merits of this lawsuit—whether in this Court or in the United Kingdom pursuant to the mandatory forum selection clause in the Wallet Terms—no "fraud or injustice" will arise from dismissing the European Nexo Entities or Nexo Financial LLC, none of which issued the disputed credit line.

Rather than present evidence disputing the jurisdictional facts set forth in the Trenchev Declarations, Jeong relies on the novel theory that every Nexo entity in the world is subject to specific personal jurisdiction in the United States because "Defendants *(collectively, 'Nexo')* maintain and operate a highly interactive website" accessible to California customers."  Dkt. 35 at 1 (emphasis added).  The problem with this theory is that the European Nexo Entities and Nexo Financial LLC do not "operate" that website and did not issue the credit line to Jeong.  While the interactivity of the website might be a basis to exercise specific personal jurisdiction *over the website operator that issued the credit line*, it provides no basis to exercise personal jurisdiction *over all corporate affiliates anywhere in the world*.  As to Jeong's request for jurisdictional discovery on his "alter ego" theory of personal jurisdiction, courts in this circuit reject such requests when boilerplate alter ego allegations are contradicted by jurisdictional declarations.

*Second*, Jeong has failed to establish Article III standing because his alleged injuries are traceable to his undisputed failure to maintain the required margin on his credit line, not to the suspension of XRP as one repayment option.  Jeong tries to avoid this deficiency by arguing that Nexo's lack of notice of XRP suspension (the T&Cs did not require any such notice) somehow "excused any obligation these customers had to maintain their LTV ratios."  Dkt. 35 at 2.  In other words, Jeong alleges that he gets to keep his six-figure credit line without fulfilling his obligation to maintain his LTV ratio if Nexo exercises its contractual right to remove one of many cryptocurrencies as a repayment option.  XRP is not legal tender for all debts public and private in

REPLY IN SUPPORT OF MOTION TO DISMISS

the United States or any other country, and Jeong does not cite any authority holding that he has an unconditional right to repay a collateralized credit line in a specific cryptocurrency for the life of the credit line.  Indeed, Jeong does not cite one case holding that a lender's refusal to accept payment in a specific cryptocurrency is a "material breach" that will excuse performance and transform a secured credit line into an unsecured one.  Nexo had every right to select the cryptocurrencies it would accept for payment—particularly an asset whose value was admittedly in freefall due to U.S. government regulatory action—in order to fulfil its obligations to all its customers.  Jeong's core liability theory has no legal basis.

*Third*, Jeong fails to plead a claim for breach of contract because the T&Cs ***expressly authorize*** Nexo to discontinue use of XRP as an accepted payment option without notice.[1]  This action did not render the contract "illusory" or "frustrate" its core purpose.  After all, Jeong obtained a six-figure credit line from Nexo and still had a multitude of options to repay it—including three fiat currencies (U.S. dollars, U.K. pounds, and Euros), six stablecoins that track the value of the U.S. dollar (USDT, USDC, TUSD, HUSD, DAI, USDP), and eleven other cryptocurrencies (BTC, ETH, NEXO, BCH, LTC, EOS, BNB, XLM, PAXG, LINK, TRX).  Compl. (Dkt. 1) ¶ 47; Reply Trenchev Decl. ¶ 5.  Indeed, Jeong pleads that he actually used these other options "to pay down his loans" in XLM, BTC, ETH, and LINK.  Compl. (Dkt. 1) ¶ 16.  While Jeong might have a viable argument if Nexo had suspended *all* repayment options, suspending one of twenty payment options does not render the contract "illusory."  Moreover, Nexo was contractually authorized to suspend XRP as a payment option ***for any reason***, and Jeong identifies those reasons in his pleading: the U.S. government's regulatory action against Ripple—the company that backs XRP—which caused the value of XRP "to drop more than 50%

---

[1] As explained in the moving papers (Dkt. 27 at 5), Nexo removed the option to repay a credit line using XRP, but it did not limit the ability of customers to use XRP to "top up" their collateral.  Nexo denies Jeong's allegation that XRP was suspended for all purposes on the platform. Compl. (Dkt. 1) ¶ 59.  But even if true, Nexo had the sole discretion to do so under the T&Cs.

over the course of the next day."  Dkt. 35 at 1 (citing Compl. (Dkt. 1) ¶¶ 5-6).

To avoid the plain text of the T&Cs, Jeong argues that California's duty of good faith and fair dealing prohibits Nexo from discontinuing support of any cryptocurrency as a payment option, even if that cryptocurrency is rapidly depreciating and the subject of U.S. regulatory enforcement action.  Dkt. 35 at 14.  This Court should decline to endorse Jeong's unprecedented theory preventing innovative companies from making changes to their own platform as expressly authorized by their own T&Cs.   The fact that Jeong subjectively valued XRP as one of many payment options on the platform—and engaged in the incredibly risky behavior of concentrating his assets into one cryptocurrency without maintaining sufficient reserves of other assets to maintain his margin obligations—does not create a breach of contract claim out of thin air.   Nexo did what it was contractually entitled to do—if not required to do in order to maintain the liquidity necessary to honor its agreements with all its customers.

*Fourth*, Jeong's California consumer protection claims fail.  Many cases hold that the CLRA claim is barred because credit transactions like this one are categorically excluded from the CLRA.  Similarly, many cases hold that the UCL and CLRA claims are barred under *Sonner* because Jeong pleads an adequate remedy at law through his breach of contract claim.

*Fifth*, Jeong misconstrues Nexo's argument as to the *forum non conveniens* doctrine ("FNC doctrine").  When setting up an account, every Nexo customer agrees to the Wallet Terms, which requires that any claims "shall" be brought in London and adjudicated under the laws of England and Wales.  Wallet T&Cs (Dkt. 27-3) § XVIII.2.  The Wallet Terms state that "Nexo Wallet Services" include "Nexo Crypto Credit" and "any other product or service that may be launched via the Nexo Platform or accessed through your Nexo Account."  *Id.* § III.1.  For the subset of Nexo customers who decide to obtain a credit line, they subsequently also agree to the Borrow Terms, which refers to the "Nexo jurisdiction" previously identified in the Wallet Terms.   Borrow T&Cs (Dkt. 27-5) § XV.2.   Under the FNC doctrine, courts may only refuse to enforce a mandatory forum selection clause under "extraordinary circumstances," and Jeong does not argue that his six-figure breach of contract and duplicative declaratory judgment claims are subject to any special exception.

REPLY IN SUPPORT OF MOTION TO DISMISS

1

**ARGUMENT**

2

**I.   THE COURT SHOULD DISMISS THE EUROPEAN NEXO ENTITIES AND NEXO
       FINANCIAL LLC FOR LACK OF PERSONAL JURISDICTION**

3

4

Nexo Capital Inc. issued the credit line to Jeong that is the subject of this lawsuit.  As such,

5

Nexo Capital Inc. concedes specific personal jurisdiction in California for purposes of this matter

6

only but joins the Rule 12(b)(1), Rule 12(b)(6) and FNC portions of this Motion.  The issue before

7

the Court is first whether Nexo Financial Services Ltd., Nexo Services OÜ, and Nexo AG

8

(collectively, the "European Nexo Entities"), along with Nexo Financial LLC, are subject to

9

personal jurisdiction in California even though they did not issue the credit line to Jeong.

10

The answer to that question is no.  Jeong does not dispute that the European Nexo Entities

11

are not subject to general personal jurisdiction in California because they are not incorporated and

12

do not have their principal places of business in California.  Trenchev Decl. (Dkt. 27-1) ¶¶ 13–17.

13

The same is true of Nexo Financial LLC because it is incorporated in Delaware and has its

14

principal place of business in the U.K.  Trenchev Decl. (Dkt. 27-1) ¶ 20.  The fact that Nexo

15

Financial LLC obtained a California Finance Lender ("CFL") license in February 2021—two

16

months *after* the events in question took place—is insufficient to confer general personal

17

jurisdiction over that entity.  Trenchev Decl. (Dkt. 27-1) ¶ 21; *AM Tr. v. UBS AG*, 681 F. App'x

18

587, 588-89 (9th Cir. 2017).

19

Unable to dispute the fact that the European Nexo Entities and Nexo Financial LLC did not

20

issue his credit line, Jeong argues those entities are subject to specific personal jurisdiction on two

21

novel grounds:  (1) the "highly interactive website" theory, and (2) the "alter ego / single-

22

enterprise" theory.  Dkt. 35 at 5-6.  Neither has merit.  As for Jeong's request for jurisdictional

23

discovery, the Court should deny it because Jeong's conclusory and boilerplate alter ego

24

allegations are contradicted by the facts in Nexo's jurisdictional declarations.

25

**A.   A Highly Interactive Website Does Not Give the Court Personal Jurisdiction
        Over the Worldwide Affiliates of Nexo Capital Inc.**

26

In an effort to sweep the European Nexo Entities and Nexo Financial LLC into his

27

jurisdictional net, Jeong argues that "Defendants have *all* purposefully availed themselves of

28

-4-

doing business in California through Nexo's highly interactive website."  Dkt. 35 at 3 (emphasis in original).  Jeong argues that the "operation of an interactive website has been interpreted by courts as subjecting the operator to specific jurisdiction."  Dkt. 35 at 3 (quoting *Icall, Inc. v. Reliance Communs.*, 2010 U.S. Dist. LEXIS 159589, at *10 (N.D. Cal. Sep. 16, 2010)).  The flaw with this argument is that the "operator" of the website who issued the credit line to Jeong—Nexo Capital Inc.—has already conceded that the Court has specific personal jurisdiction over it.  In contrast, the European Nexo Entities and Nexo Financial LLC are not the "operators" of the website, so there is no basis to exercise personal jurisdiction over them no matter how "interactive" the website operated by Nexo Capital Inc. might be.  Reply Trenchev Decl. ¶ 3.  While Nexo Services OÜ was the operator of the Nexo app when the events referenced in this lawsuit occurred, it provided those services (which Jeong does not allege he used) under a service agreement with Nexo Capital Inc. and did not issue the credit line to Jeong.  *Id.* ¶ 4.

The European Nexo Entities and Nexo Financial LLC cannot be dragged into this lawsuit by Jeong's improper "group pleading," i.e. treating every Defendant as a unitary entity called "Nexo."  In *Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, 2013 U.S. Dist. LEXIS 1604, at *8-9 (N.D. Cal. Jan. 3, 2013), Plaintiffs argued that Regus plc—a foreign public limited company incorporated and registered in Jersey, Channel Islands—was subject to personal jurisdiction in California because "regus.com is highly interactive and designed to target California consumers."  *Id.* at *9.  In response, Defendants countered that "the interactive features on the website interface with RMG, not Regus plc."  *Id.*  Regus plc was the parent company of RMG, a domestic limited liability company.  *Id.* at *2.  The *Circle Click* court agreed with defendants, based on the jurisdictional declaration of the company secretary for Regus plc, who stated that "[c]ommunications and business that are completed on the www.regus.com website by California customers occur with [RMG]," and "[t]he interactive features on this website and the contact information on this website direct the California customer to [RMG]."  *Id.* at *9.  Because these facts controverted the conclusory allegations of the complaint, the *Circle Click* court found that it "must look past its bare allegations of purposeful direction" and concluded that "the regus.com website cannot support a finding of purposeful direction or the exercise of personal jurisdiction"

over Regus plc.  *Id.*

Similarly, in this case, the interactive features on the Nexo website and app direct the California customer to Nexo Capital Inc., which issued the credit line to Jeong.  Because the interactive features of the website and app do not direct the California customer to the European Nexo Entities or Nexo Financial LLC, the interactivity of the website provides no basis for exercising personal jurisdiction over them.

> **B.     Jeong's Boilerplate Alter Ego Allegations Fail to Plausibly Allege Personal Jurisdiction under a Single-Enterprise Theory**

Jeong also relies on an alter ego / single-enterprise theory to assert personal jurisdiction over the European Nexo Entities and Nexo Financial LLC.  Jeong fails to satisfy either of the two mandatory prongs of that ***stringent*** test enunciated in *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1072 (9th Cir. 2015).  First, the Trenchev Declarations establish that there is not such a unity of interest and ownership that the separate personalities of the entities no longer exist.  Second, dismissal of the European Nexo Entities and Nexo Financial LLC would not result in a "fraud or injustice" because Nexo Capital Inc. does not dispute personal jurisdiction over it, and Jeong has made no showing that Nexo Capital Inc. cannot litigate these claims or satisfy any potential judgment.

As to the unity of interest prong, *Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997 (N.D. Cal. 2020) is instructive.  In *Reynolds*—a case that involved the foreign cryptocurrency exchange Binance Holdings Ltd. ("Binance")—the court declined to exercise personal jurisdiction over Binance based on the theory that Binance was the alter ego of a separate U.S. affiliate, BAM Trading Services Inc. dba Binance.US ("BAM").  *Id.* at 1010.

The plaintiff in *Reynolds* recited much of the same boilerplate as Jeong does in this matter. *Id.* at 1004-06.  In particular, Reynolds alleged that "Binance controls BAM and uses BAM as an 'agent and instrumentality' to serve Binance's U.S. customers, to ensure compliance with U.S. regulations, and to serve as Binance's principle physical presence in the U.S.; that Binance and BAM operate on the same website, use the same exchange platform, the same matching engine and same wallet technologies; and that, through BAM, Binance has 'significant operations, employees, and [a] physical presence in California.'"  *Id.* at 1004-05 (internal citations omitted).

-6-

The *Reynolds* court, however, found that these "conclusory" allegations were unsupported by any facts and insufficient to establish personal jurisdiction. *Id.* The court held that, "[t]o sufficiently allege a theory of alter ego, however, a plaintiff must offer more than labels and conclusions—factual allegations must be enough to raise a right to relief above the speculative level," and that the plaintiff had failed to do so. *Id.*

As to the three facts that Reynolds did identify, the court found they were inadequate to establish personal jurisdiction on an alter ego theory. *Id.* at 1005–07. The court found that some overlap in board members and executives between Binance and BAM "does not on its own sufficiently establish a unity of interest." *Id.* at 1005. The fact that BAM shared the same business address with a Binance portfolio company did not show disregard of corporate formalities or weigh in favor of finding alter ego liability. *Id.* at 1005–06. When addressing the alleged sharing of web platforms and technologies between Binance and BAM, the *Reynolds* court cited to several cases holding that "shared websites" and "[s]hared administrative functions" do not rise to the level of unity of interest required to show companies are alter egos. *Id.* at 1006; *accord Gerritsen v. Warner Bros. Entm't Inc.*, 116 F. Supp. 3d 1104, 1139 (C.D. Cal. 2015) (when confronted with entities' shared websites in the alter ego context, holding this does not reflect an "abuse of the corporate form and existence of an alter ego relationship."); *NetApp, Inc. v. Nimble Storage Inc.*, 2015 U.S. Dist. LEXIS 11406, at *25 (N.D. Cal. Jan. 29, 2015) ("In addition, the allegation that Nimble and Nimble AUS share a website and email is an administrative, not a marketing, function. Shared administrative functions are not necessarily indicative of an alter ego relationship.")

Finally, the *Reynolds* court found that the plaintiff's failure to address and/or rebut other unity of interest factors—such as "whether the entities' funds were commingled, whether one held itself out as liable for the debts of the other, whether one was a 'mere shell or conduit for the affairs of the other,' inadequate capitalization, disregard for corporate formalities, and segregation of corporate records—weighed against the finding of alter ego liability." *Reynolds*, 481 F. Supp. 3d at 1007 (citing *MH Pillars Ltd. v. Realini*, 2017 U.S. Dist. LEXIS 33450, at *33 (N.D. Cal. Mar. 8, 2017)). While the plaintiff failed to address these factors, Binance did—filing a

REPLY IN SUPPORT OF MOTION TO DISMISS

jurisdictional declaration explaining that corporate formalities and separateness were maintained, and that Binance did not exercise control over BAM's day-to-day operations. *Id.* Because the plaintiff either failed to address these factors or made "deficiently conclusory allegation[s]" regarding them, the *Reynolds* court held that "Binance is not subject to personal jurisdiction as BAM's alter ego." *Id.* at 1008. Nexo has submitted jurisdictional declarations establishing the same entitlement to dismissal. Trenchev Decl. (Dkt. 27-1) ¶¶ 12-23; Reply Trenchev Decl. ¶¶ 3-6. Contrary to Jeong's argument (Dkt. 35 at 4), Nexo *does* dispute Jeong's boilerplate allegations.

As to the fraud or injustice prong, there is no injustice because Nexo Capital Inc. remains in the case to answer Jeong's allegations, whether in this Court or in the U.K. *See Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 56 (N.D. Cal. 2020) ("Finally, and most damning, Plaintiff never alleges, nor is there any evidence, that Defendant AAL cannot answer Plaintiff's claim and/or pay any potential judgment."); *Stewart v. Screen Gems-Emi Music, Inc.*, 81 F. Supp. 3d 938, 957 (N.D. Cal. 2015) (finding no inequitable result because "Screen Gems-EMI—the party to the Agreement—is properly before the Court to answer Plaintiff's claim and satisfy any potential judgment.").

Jeong also has not pleaded any facts plausibly establishing the past "bad faith" conduct that could warrant joining the Nexo European Entities or Nexo Financial LLC in this lawsuit. *See Reynolds*, 481 F. Supp. 3d at 1008-09 ("The alter ego test's second prong requires that a plaintiff 'plead facts sufficient to demonstrate that conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form.'") (quoting *Successor Agency to Former Emeryville Redevelopment Agency v. Swagelok Co.*, 364 F. Supp. 3d 1061, 1082 (N.D. Cal. 2019)). Jeong does not present a shred of evidence of "fraudulent intent in forming" the Nexo European Entities or Nexo Financial LLC, and his conclusory allegation that he and other Nexo customers might face potential exposure to future conduct "does not establish the requisite history of bad faith conduct to satisfy the test's second prong." *Reynolds*, 481 F. Supp. 3d at 1009.

### C.     The Court Should Deny the Request for Jurisdictional Discovery

The Court has discretion in permitting a plaintiff to conduct jurisdictional discovery, and "where a plaintiff's claim 'of personal jurisdiction appears to be both attenuated and based on bare

REPLY IN SUPPORT OF MOTION TO DISMISS

allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery.'" *Reynolds*, 481 F. Supp. 3d at 1009-1010 (quoting *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995)).  The *Reynolds* court denied jurisdictional discovery when the plaintiff offered "no more than a hunch that discovery would yield jurisdictionally relevant facts, especially in light of [the defendant's] specific denials." *Id.* at 1010 (internal citation omitted).  This Court should rule similarly.  *See Celgard, LLC v. Shenzhen Senior Tech. Material Co.*, 2020 U.S. Dist. LEXIS 60658, at *23 (N.D. Cal. Feb. 10, 2020) ("The Court finds that these 'purely speculative allegations of attenuated jurisdictional contacts' are insufficient to warrant jurisdictional discovery and, therefore, denies Celgard's request [for jurisdictional discovery].") (quoting *Getz v. Boeing Co.*, 654 F.3d 852, 860 (9th Cir. 2011)).

## II.     THE COURT SHOULD DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

All Defendants move to dismiss Jeong's claims for lack of standing because the alleged harm flows from Jeong's failure to maintain the agreed LTV on his credit line, not any lack of notice related to the suspension of XRP as a payment option.  Jeong's losses were triggered by an independent cause—namely SEC's announcement of its lawsuit and investigation into Ripple—which caused XRP's value to drop, which in turn caused Jeong's LTV to exceed the margin liquidation threshold, which he failed to cure with any number of acceptable fiat currencies, stablecoins, and cryptocurrencies.  Jeong cannot plead a set of facts establishing a causal link between Nexo's suspension of XRP and his market losses in the volatile cryptocurrency market.

In an effort to side-step this fatal standing defect, Jeong incorrectly argues that Nexo's suspension of XRP as a repayment option excused his obligation to maintain his LTV ratio.  This argument fails for two reasons.  First, Nexo's suspension of XRP was expressly authorized by the T&Cs, and thus was not a breach at all.  Borrow T&Cs (Dkt. 27-5) § III.3.  Nexo's non-breach cannot serve as a basis for excusing Jeong's actual breach in failing to comply with his margin maintenance obligations.  Second, even assuming Nexo were precluded from suspending XRP as an accepted payment option based on some implied provision of California law (it is not), suspension of one of twenty payment options is not a "material breach" that would suspend

1    Jeong's LTV maintenance obligation.  *See Flint CPS Inks N. Am. LLC v. Trend Offset Printing*

2    *Servs.*, 2021 U.S. Dist. LEXIS 24171, at *12-13 (C.D. Cal. Jan. 7, 2021) ("While materiality is

3    usually a question of fact, it can be resolved as a matter of law where a reasonable factfinder could

4    draw only one conclusion from the undisputed facts.").  A material breach is one that "frustrate[s]

5    the purpose of the contract."  *Superior Motels, Inc. v. Rinn Motor Hotels, Inc.*, 195 Cal.App.3d

6    1032, 1051 (1987).  Here, the purpose of the contract was fulfilled—Jeong obtained a six-figure

7    credit line and had a variety of options to repay it.  Jeong cites no authority holding that Nexo's

8    ***contractually authorized*** suspension of XRP as a payment option constitutes a "material breach"

9    of the contract that eliminates Jeong's need to maintain the margin required.

10   **III.      THE COURT SHOULD DISMISS FOR FAILURE TO STATE A CLAIM**

11       **A.      Jeong Fails to State a Breach of Contract Claim**

12       The T&Cs expressly authorize Nexo to suspend XRP as a repayment option without

13   notice, thus undermining the central theory of this lawsuit.  The T&Cs provide that Nexo may:

14           **At any time, at our sole and absolute discretion, without liability
15           to you, we can . . . (iii) suspend the provision of the Nexo Crypto
        Credit or of all or part of the other Nexo services; or (iv) change,
16           update, remove, cancel, suspend, disable or discontinue any
        features, component, content . . . of the Nexo Crypto Credit.**

17   Borrow T&Cs (Dkt. 27-5) § III.3 (emphasis added).  Under this provision, Nexo can suspend all
18
19   or part of the Nexo services that it provides on its platform. Nexo can alter the Digital Assets

20   (defined to include cryptocurrency) offered on its platform:

21           **Nexo will grant you a Nexo Cryto Credit in Digital Assets, if you
        provide the required Digital Assets as collateral, by transferring
22           them into the Nexo Account, or by using ones available thereinto
        ("Collateral").  All such Digital Assets are indicated on the Nexo
23           Platform and in the Nexo Account and are subject to revision
        from time to time.**

24   Borrow T&Cs (Dkt. 27-5) § IV.1 (emphasis added).  Likewise, in the Borrow Terms section on
25   repayment and withdrawal, Nexo reserved the right to regulate repayment options:

26           **You may repay at any time prior to the Maturity Date and any
27           amount: (i) by transferring into the Nexo Account the same
        Digital Assets as the Nexo Crypto Credit granted, or other Digital**
28

**Assets acceptable to Nexo; (ii) with the Collateral; or (iii) by combination of (i) and (ii). <u>Certain rules may apply to repayments from time to time, as indicated on the Nexo Platform.</u>**

Borrow T&Cs (Dkt. 27-5) § VIII.2 (emphasis added).

Jeong argues that Nexo breached because Section VIII.2 of the Borrow Terms allow him to repay "with the Collateral" or "by combination" of a transfer and the Collateral, but this argument ignores the underlined limitations in the three Sections above, including the underlined limitation in the cited Section stating that "[c]ertain rules may apply to repayments from time to time, as indicated on the Nexo Platform." *Id.* While Jeong states in opposition that Nexo made changes to its Borrow Terms between December 2020 and July 2021 (Dkt. 35-1 ¶¶ 3-4), those changes are irrelevant because Nexo does not rely upon any changed language in support of the present motion to dismiss. Reply Trenchev Decl. ¶ 6 & Ex. 1 & 2.

Faced with this express language, Jeong argues that "the law applies an implied covenant of good faith and fair dealing to preserve an otherwise illusory contract." Dkt. 35 at 13. In *Sweet v. Google Inc.*, 2018 U.S. Dist. LEXIS 37591, at *11 (N.D. Cal. Mar. 7, 2018), the court rejected a remarkably similar argument to the one Jeong advances here. In that case, YouTube argued that the plaintiff Zombie's breach of contract and other claims were subject to dismissal because "the conduct of which Zombie complains — in essence, failure on the part of YouTube to post advertisements alongside Zombie's content — is expressly permitted by the parties' contract." *Id.* at *12. In particular, YouTube's contract provided that "YouTube is not obligated to display advertisements alongside your videos and may determine the type and format of ads available on the YouTube Service." *Id.* When Zombie attempted to avoid this plain language through the implied covenant, the court noted that "its application to contradict an express term of a contract is narrowly circumscribed." *Id.* at *15-16. Surveying the case law, the *Sweet* court concluded that "courts are not at liberty to imply a covenant directly at odds with a contract's express grant of discretionary power except in those relatively rare instances when reading the provision literally would, contrary to the parties' clear intention, result in an unenforceable, illusory agreement." *Id.* at *22-23 (quoting *Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798, 808 (1995)). Applying

REPLY IN SUPPORT OF MOTION TO DISMISS

this standard, the court concluded that the implied covenant did not operate to contradict the express terms of the contract because it was supported "by adequate independent consideration" separate and apart from the advertisement display. *Id.* at *24. The court found that Zombie received several benefits from posting its videos even without advertising revenue, including a wide audience and monetization through other avenues such as subscriptions. *Id.* at *25. The court thus concluded that "the provision of the Partner Program Terms conferring upon YouTube complete control over decisions regarding advertisements need not be deemed subject to the implied covenant of good faith and fair dealing in order to prevent the agreement from being illusory." *Id.* at *25-26.

This Court should reach the same result as to Jeong's implied covenant argument. The transaction between Jeong and Nexo was clearly supported by adequate independent consideration. Jeong obtained a six-figure credit line along with dozens of options to repay, including through U.S. dollars. Even with the suspension of XRP as a payment option, Jeong retained the ability to repay his credit line "by transferring into the Nexo Account the same Digital Assets as the Nexo Crypto Credit granted, or other Digital Assets acceptable to Nexo," as well as "with the Collateral" held in his Credit Wallet, so long as that Collateral was not XRP. Borrow T&Cs (Dkt. 27-5) § VIII.2. Jeong obtained several benefits from this transaction separate and apart from his use of XRP as a payment option. As such, the implied covenant cannot be used to rewrite the express terms of the contract as a matter of law.

The reasoning of *Sweet* is consistent with the reasoning of *Wolf v. Walt Disney Pictures & Television*, 162 Cal.App.4th 1107, 1120-24 (2008). The *Wolf* court explained that "if the express purpose of the contract is to grant unfettered discretion, and the contract is otherwise supported by adequate consideration, then the conduct is, by definition, within the reasonable expectation of the parties and 'can never violate an implied covenant of good faith and fair dealing.'" *Id.* at 1121 (citing *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 376 (1992)). This Court should follow *Sweet* and *Wolf* and hold that the implied covenant is inapplicable here because the contract gives Nexo the unfettered discretion to change the cryptocurrencies it will accept for payment without notice.

REPLY IN SUPPORT OF MOTION TO DISMISS

1    Even assuming that the implied covenant could operate to limit Nexo's discretion as to the

2    cryptocurrencies it must continue accepting for payment (it does not), that judicially created

3    limitation is incredibly circumscribed, requiring proof of lack of "subjective good faith" or the

4    intent to "frustrate the common purpose" of the contract.  *Id.* at 1123-24.  Jeong does not plausibly

5    allege either.  Suspending XRP as one of many payment options does not frustrate the purpose of

6    the contract, which is to provide a secured credit line.  Nor does Jeong plausibly allege a lack of

7    subjective good faith in light of his own admissions that (1) the U.S. government had taken

8    regulatory enforcement action against Ripple, and (2) the value of XRP was plummeting.  The

9    implied covenant is inapplicable because it cannot alter Nexo's unfettered contractual discretion to

10   select acceptable cryptocurrencies for repayment.

11   **B.    The Declaratory Judgment Claim is Duplicative of the Contract Claim**

12   The gravamen of Jeong's declaratory judgment claim is duplicative of his breach of

13   contract claim, which seeks monetary damages for a past event, and should be dismissed.

14   "[C]ourts have dismissed companion claims for declaratory relief where the breach of contract

15   claims resolved the dispute completely and rendered additional relief inappropriate." *Davis v.*

16   *Capitol Records, LLC*, 2013 U.S. Dist. LEXIS 55917, at *10 (N.D. Cal. Apr. 18, 2013); *see also*

17   *Essex Marina City Club, L.P. v. Cont'l Cas. Co.*, 2011 U.S. Dist. LEXIS 49512, at *10 (N.D. Cal.

18   May 9, 2011) (dismissing declaratory relief claim in an insurance breach of contract action where

19   a declaration of the duty owed by the insurer to the insured "add[ed] nothing to the breach-of-

20   contract claim asserted and likely to be resolved in this action"); *B&O Mfg., Inc. v. Home Depot*

21   *U.S.A., Inc.*, 2007 U.S. Dist. LEXIS 83998, at *20 (N.D. Cal. Nov. 1, 2007) (dismissing

22   declaratory relief claim that was duplicative of plaintiff's breach of contract claim).  Additionally,

23   "[w]hen a claim for declaratory relief seeks to address past wrongs and is duplicative of other

24   claims, then the declaratory relief is unnecessary and redundant." *Garza v. Bank of Am.*, 2012

25   U.S. Dist. LEXIS 17596, at *9 (E.D. Cal. Feb. 13, 2012).

26   **C.    The CLRA does not Apply to Extensions of Credit**

27   The CLRA claim fails as a matter of law because the CLRA does not apply to extensions

28   of credit.  Jeong fails to address the substantial authority supporting dismissal of this claim. *See*

-13-

1  *Palestini v. Homecomings Financial, LLC*, 2010 U.S. Dist. LEXIS 72985, at *11 (S.D. Cal. July

2  20, 2010) (the CLRA is inapplicable to mortgage loans and related ancillary services); *Consumer*

3  *Solutions REO, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1015-17 (N.D. Cal. 2009) (similar);

4  *Hayward v. Bank of Am., N.A.*, 2020 U.S. Dist. LEXIS 60318, at *19 (E.D. Cal. April 6, 2020)

5  (similar); *Sonoda v. Amerisave Mortgage Corp.*, 2011 U.S. Dist. LEXIS 73940, at *2 (N.D. Cal.

6  July 8, 2011) (similar); *Jamison v. Bank of Am., N.A.*, 194 F. Supp. 3d 1022, 1032 (E.D. Cal.

7  2016) (similar).  Nor do the alleged "ancillary services" that Nexo provides bring these credit

8  transactions into CLRA coverage.  *See Mazonas v. Nationstar Mortg. LLC*, 2016 U.S. Dist.

9  LEXIS 59424, at *11 (N.D. Cal. May 4, 2016) (customer services by loan providers is not subject

10 to the CLRA); *Sapan v. Lexington Mortg. Corp.*, 2017 U.S. Dist. LEXIS 63069, at *6 (C.D. Cal.

11 April 17, 2017) (similar); *Meyer v. Capital All. Grp.*, 2017 U.S. Dist. LEXIS 183690, at *20 (S.D.

12 Cal. Nov. 6, 2017) (similar).  The case cited by Jeong is distinguishable because it addressed

13 whether "Yahoo Mail" is a service and did not involve an extension of credit.  *In re: Yahoo! Inc.*

14 *Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1140 (N.D. Cal. 2018).

15     **D.**    **The UCL and CLRA Claims Are Barred by *Sonner***

16         The Court should also dismiss the UCL and CLRA claims pursuant to *Sonner v. Premier*

17 *Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) because Jeong pleads he has an adequate remedy at

18 law through his breach of contract claim.  Multiple courts have applied *Sonner* at the pleading

19 stage, and this Court should as well.  "As the California Supreme Court recently confirmed, 'civil

20 causes of action authorized by the UCL [] must properly be considered equitable, rather than legal,

21 in nature.'" *Williams v. Apple, Inc.*, 2020 U.S. Dist. LEXIS 215046, at *24 (N.D. Cal. Nov. 17,

22 2020) (citing *Nationwide Biweekly Admin., Inc. v. Sup. Ct.*, 9 Cal. 5th 279, 326 (Cal. 2020)). Jeong

23 cannot sidestep *Sonner* by characterizing his UCL claim for restitution as legal rather than

24 equitable. *TopDevz, LLC v. LinkedIn Corp.*, 2021 U.S. Dist. LEXIS 145186, at *13-14 (N.D. Cal.

25 Aug. 3, 2021); *see also Clark v. Am. Honda Motor Co.*, 2021 U.S. Dist. LEXIS 64520, at *8 (C.D.

26 Cal. Mar. 25, 2021) (holding that equitable claims based on UCL and CLRA failed under *Sonner*);

27 *Gibson v. Jaguar Land Rover N. Am., LLC*, 2020 U.S. Dist. LEXIS 168724, at *3 (C.D. Cal. Sept.

28 9, 2020) (similar); *Schertz v. Ford Motor Co.*, 2020 U.S. Dist. LEXIS 187667, at *2 (C.D. Cal.

July 27, 2020) (similar); *Watkins v. MGA Entm't, Inc.*, 2021 U.S. Dist. LEXIS 138888, at \*50-51 (N.D. Cal. July 26, 2021) (similar).

## IV.   THE COURT SHOULD ALTERNATIVELY DISMISS THE BREACH OF CONTRACT AND DECLARATORY JUDGMENT CLAIMS BASED ON FNC

Finally, the Court should dismiss the breach of contract and duplicative declaratory judgment claims without prejudice pursuant to the FNC doctrine.  In the Wallet Terms, Jeong agreed that any disputes "shall be referred to the competent court in London, England, determined as per the procedural law of England and Wales" and governed by the substantive law of England and Wales. Wallet T&Cs (Dkt. 27-3) § XVIII.1–.2.  Contrary to Jeong's contention that the Wallet Terms are irrelevant to this lawsuit, the Wallet Terms expressly state that "Nexo Wallet Services" include "Nexo Crypto Credit" and the "Digital Asset Wallet" necessary to obtain a credit line.  *Id.* § III.1.  In the Section entitled "Topping-Up of Digital Assets," the Wallet Terms describe how the customer can "use the Digital Assets in your Nexo Account . . . for securing your Nexo Crypto Credit."  *Id.* § V.1.  In the Section entitled "Withdrawal," it describes how customers can request withdrawal of "the fiat equivalence of the Digital Assets, as applicable to the Nexo Crypto Credit, by instructing Nexo to sell the relevant Digital Assets and Interest . . . ."  *Id.* § VI.1.

The Wallet Terms are facially applicable here.   In attempting to avoid this result, Jeong focuses on the fact that the Borrow Terms refer to the "Nexo jurisdiction."  Borrow T&Cs (Dkt. 27-5) § XV.2.  This argument misapprehends the relationship between the Wallet Terms and the Borrow Terms.  Upon signing up for an account, *all Nexo customers* must agree to the Wallet Terms containing the mandatory U.K. forum selection clause.  Trenchev Decl. (Dkt. 27-1) ¶ 4.  For that subset of customers who choose to request a credit line, they subsequently also agree to the Borrow Terms.  *Id.*  Read together, the "Nexo jurisdiction" is the U.K. jurisdiction to which the Nexo customers previously agreed in the Wallet Terms.  Indeed, Jeong admits (Dkt. 35 at 20) that "any Nexo customer will use a 'wallet'" to obtain "Nexo Crypto Credit."

## CONCLUSION

The Court should dismiss the European Nexo Entities and Nexo Financial LLC for lack of person jurisdiction and all claims under Rules 12(b)(1), 12(b)(6) and/or the FNC doctrine.

-15-

1  DATED:   October 4, 2021                    EVERSHEDS SUTHERLAND (US) LLP

2

3                                              By */s/ Ian S. Shelton*
                                                  Ian S. Shelton
4
                                               *Attorneys for Defendants Nexo Financial LLC,*
5                                              *Nexo Financial Services Ltd., Nexo Services OÜ,*
                                               *Nexo AG, and Nexo Capital Inc.*
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF MOTION TO DISMISS