United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

JUNHAN JEONG,

Plaintiff,

v.

NEXO FINANCIAL LLC, et al.,

Defendants.

Case No. 21-cv-02392-BLF

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

[Re: ECF No. 27]

Before the Court is Defendants Nexo Financial LLC, Nexo Financial Services Ltd., Nexo Services OÜ, Nexo AG, and Nexo Capital Inc.'s (collectively, "Nexo") Motion to Dismiss under Rules 12(b)(1), 12(b)(2), and 12(b)(6) in this class action for breach of contract, declaratory judgment, and violations of California's Consumer Legal Remedies Act ("CLRA") and Unfair Competition Law ("UCL").

As alleged in the Complaint, Nexo runs an online cryptocurrency platform, which allows users to post cryptocurrency assets as collateral and borrow against those assets up to a particular loan-to-value ("LTV") ratio through a program called Nexo Crypto Credit. Plaintiff Junhan Jeong had a loan through Nexo Crypto Credit against assets in the cryptocurrency Ripple ("XRP"). Plaintiff alleges that in response to an SEC action against the issuer of XRP that caused its price to precipitously drop on December 23, 2020, Nexo improperly suspended the use of XRP to stake or pay down loans without notice to users, then proceeded to liquidate users' XRP collateral without notice when users' LTV ratios cratered due to the dropping XRP price. As a result, Plaintiff, who had posted collateral of 598,384.6188 XRP at a market value of approximately $269,300 for a loan of approximately $169,400, alleges that he was unable to maintain his LTV ratio despite using other cryptocurrency assets to pay down his loan, leading to Nexo's liquidation of his collateral.

Accordingly, Plaintiff alleges that he suffered losses of approximately (1) $100,000 in XRP assets and (2) $11,000 in other cryptocurrency assets that he would have retained had he been able to pay off his Nexo loan with his XRP collateral at the time of Nexo's suspension of XRP.

Plaintiff brings claims on behalf of various classes of users of the Nexo Crypto Credit program for (1) breach of contract, (2) declaratory judgment, (3) violation of the CLRA, and (4) violation of the UCL. Nexo moves to dismiss (1) all claims for lack of subject matter jurisdiction based on a lack of Article III standing under Rule 12(b)(1); (2) all Defendants other than Nexo Capital Inc. for lack of personal jurisdiction under Rule 12(b)(2); (3) all claims for failure to state a claim under Rule 12(b)(6); and (4) Plaintiff's breach of contract and declaratory judgment claims under the *forum non conveniens* doctrine. Plaintiff opposes, and in response to Nexo's 12(b)(2) motion, requests in the alternative that the Court grant him leave to pursue jurisdictional discovery.

Based on the reasoning outlined below, the Court (1) GRANTS IN PART and DENIES IN PART Nexo's 12(b)(1) motion WITH LEAVE TO AMEND; (2) GRANTS Nexo's 12(b)(2) motion WITHOUT LEAVE TO AMEND; and (3) GRANTS IN PART and DENIES IN PART Nexo's 12(b)(6) motion WITH LEAVE TO AMEND as to certain claims. The Court further DENIES Plaintiff's request for jurisdictional discovery.

## I. BACKGROUND

Defendant Nexo Capital Inc. is a Cayman Island corporation with its principal place of business in London, England. *See* Complaint, ECF No. 1 ¶ 21. Defendant Nexo Financial LLC is a Delaware corporation with a registered agency address in Delaware, which is registered as a money services busines for activity in all fifty states and operates through branches in at least 24 states, including California. *See id.* ¶ 17. Defendant Nexo Financial Services Ltd. is based in London, England. *See id.* ¶ 18. Defendant Nexo Services OÜ is an Estonian corporation with operations in both Estonia and Bulgaria. *See id.* ¶ 19. Defendant Nexo AG is a Swiss corporation with its listed address in Switzerland. *See id.* ¶ 20. Plaintiff alleges that Defendants collectively operate and maintain the Nexo website and offer the Nexo services advertised on that website and in a whitepaper, including through the Nexo Crypto Credit. *See id.* ¶ 22. Plaintiff is a California resident who took out a loan through the Nexo Crypto Credit. *See id.* ¶ 16.

According to Plaintiff, Nexo maintains and operates a website through which customers can use cryptocurrency assets as collateral to borrow cash via a program called Nexo Crypto Credit. *See id.* ¶ 45. Nexo Crypto Credit is governed by Nexo's Borrow Terms, which users agree to in order to borrow using the Nexo Crypto Credit. *See id.* ¶ 46. Plaintiff alleges the Borrow Terms is an adhesion contract. *See id.* Nexo allows customers to borrow as much cash as they want as long as they maintain a certain loan-to-value ("LTV") ratio. *See id.* ¶ 48. The value of the collateral fluctuates with the price of the cryptocurrency assets staked as collateral. *See id.* Customers can maintain the requisite LTV ratio by staking more cryptocurrency assets or paying back their loan. *See id.* ¶ 49. If a customer's LTV ratio rises above an 83.3% threshold, Nexo will—after providing notice to the customer—liquidate the collateral. *See id.* ¶¶ 50–51. Plaintiff alleges that as of December 23, 2020, Nexo accepted XRP as collateral. *See id.* ¶ 2. As of December 23, 2020, Plaintiff had staked approximately 600,000 XRP as collateral at a market value of approximately $269,300 and had borrowed approximately $169,400 against those assets. *See id.* ¶ 16.

Plaintiff alleges that on December 22, 2020, the Securities and Exchange Commission ("SEC") announced an action against Ripple Labs Inc. and two of its executives alleging that they had raised over $1.3 billion through their unregistered, ongoing securities offering of Ripple. *See id.* ¶ 52. This announcement caused the price of Ripple to drop from approximately $0.45 to $0.21 on December 23, 2020. *See id.* ¶ 52. According to Plaintiff, the price of Ripple continued to drop over the following days, reaching $0.17 on December 29, 2020. *See id.* ¶ 94. Plaintiff alleges that in response to the drop in the price of Ripple, Nexo suspended customers' ability to use Ripple as collateral or to pay down their loans. *See id.* ¶ 53. Plaintiff alleges that Nexo did not provide notice of the suspension. *See id*. Plaintiff alleges that Nexo initiated the suspension because it did not want to be left holding Ripple at its decreased value. *See id.* ¶ 54.

According to Plaintiff, the dropping price of XRP caused his LTV ratio to increase, but he was prevented from paying off his loan with his XRP collateral to keep his LTV ratio down because of Nexo's suspension of XRP. *See id.* ¶¶ 8, 10, 16, 58, 89, 90, 135–36. Plaintiff alleges that he attempted to keep his LTV ratio down by using "47,190.47043 XLM (Lumen) (market value of approximately $6,000), 0.009255 BTC (bitcoin) (market value of approximately $215), 6.1673 ETH

(Ether) (market value of approximately $3,600), and 168.18851 LNK (Link) (market value of approximately ($1,800)" to pay down the loan. *See id.* ¶¶ 135–36. But he ultimately failed, and Nexo liquidated his XRP collateral without notice. *See id.* ¶ 9–10, 89–90, 93–94, 135–37.

Plaintiff alleges that in a December 30 statement, Nexo sought to justify its suspension of XRP on several grounds. First, Nexo invoked a provision of its Borrow Terms allegedly giving it "sole and absolute discretion" to, for example, "suspend the provision of the Nexo Crypto Credit or of all or part of the other Nexo services[.]" *Id.* ¶¶ 65–69 (citing Borrow Terms § III.3). Plaintiff alleges that if this provision applied, any contractual rights that Nexo customers have regarding Nexo Crypto Credit would be illusory. *See id.* ¶ 69. Second, Nexo argued that it acquires "ownership" over users' collateral, so when Nexo liquidates collateral, it is liquidating its own assets. *See id.* ¶¶ 72, 97–100. In support of this position, Nexo cited a provision of the Borrow Terms stating that "[u]nless prohibited by any Applicable Law, by virtue of this Agreement Nexo acquires the ownership of the Collateral while the Nexo Crypto Credit is outstanding." *See id.* ¶¶ 99–100 (citing Borrow Terms § IV.4). Plaintiff alleges that this provision is unconscionable, unenforceable as ambiguous, and was likely to mislead customers in light of Nexo's advertising that it does not own users' collateral. *See id.* ¶¶ 99–133.

Plaintiff alleges that Nexo breached its Borrow Terms by (1) suspending the use of XRP collateral to pay down loans, (2) doing so without notice, and (3) liquidating users' XRP collateral without notice. *See id.* ¶¶ 83–84, 177–73. Plaintiff further alleges that Nexo breached the duty of good faith and fair dealing under the Borrow Terms based on its conduct. *See id.* ¶¶ 55, 60, 66–81, 169. Plaintiff further seeks declaratory judgment that (1) Nexo is not authorized to suspend XRP under its Borrow Terms; (2) Nexo does not possess various unfettered rights under the Borrow Terms, including to (a) suspend the provision of the Crypto Credit; (b) change, suspend, disable, or discontinue any features or content of the Crypto Credit; or (c) do so without providing notice to customers; and (3) Nexo does not acquire ownership of users' collateral. *See id.* ¶¶ 174–89. Moreover, Plaintiff alleges that Nexo's actions were violations of the "unlawful" and "unfair" prongs of California's UCL, including based on Nexo's other violations, its unconscionable contractual provisions, and its deceptive or misleading advertising indicating that Nexo did not

acquire "ownership" over users' collateral. *See id.* ¶¶ 190–205. Additionally, Plaintiff alleges that Nexo violated the California CLRA by offering a "service" pursuant to unconscionable contractual provisions. *See id.* ¶¶ 206–214. Plaintiff seeks damages under the breach of contract and UCL claims, *see id.* at 52; *id.* ¶ 173; restitutionary disgorgement under the UCL claim, *see id.* ¶¶ 198–99; attorneys' fees under the UCL and CLRA claims, *see id.* ¶¶ 198, 205, 214; and injunctive relief preventing Nexo from enforcing certain contractual provisions under the UCL and CLRA claims, *see id.* ¶¶ 200–204.

## II. LEGAL STANDARD

### A. Lack of Subject Matter Jurisdiction – Rule 12(b)(1)

A party may challenge the Court's subject matter jurisdiction by bringing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack like in the present case, the movant asserts that the lack of subject matter jurisdiction is apparent from the face of the complaint. *Id.*

### B. Lack of Personal Jurisdiction – Rule 12(b)(2)

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)). California's long-arm statute is coextensive with federal due process requirements. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–801 (9th Cir. 2004). "Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Walden*, 571 U.S. at 283 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

When a defendant raises a challenge to personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (citing *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011)). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the

motion to dismiss." *Id.* (quotation marks and citation omitted). "[T]he plaintiff cannot simply rest on the bare allegations of its complaint," but the uncontroverted allegations in the complaint must be accepted as true. *Schwarzenegger*, 374 F.3d at 800 (quotation marks and citation omitted). The court may consider evidence presented in affidavits in considering a 12(b)(2) motion. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (citation omitted). Where not directly controverted, plaintiff's version of the facts is taken as true. *Id.* (citation omitted). Conflicts between the facts contained in the parties' affidavits must be resolved in plaintiffs' favor for purposes of deciding whether a prima facie case for personal jurisdiction exists. *Id.* (citation omitted).

Personal jurisdiction may be either general or specific. General personal jurisdiction exists when the defendant's contacts "are so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler*, 571 U.S. at 127 (quotation marks and citation omitted). Specific personal jurisdiction exists when the defendant's contacts with the forum state are more limited but the plaintiff's claims arise out of or relate to those contacts. *Id.* at 127–28.

**C. Failure to State a Claim – Rule 12(b)(6)**

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a motion to dismiss, the Court's review is

limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

**D. Leave to Amend**

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

**III. DISCUSSION**

Nexo moves to dismiss (1) all claims against all Defendants for lack of subject matter jurisdiction due to a lack of Article III standing under Rule 12(b)(1); (2) all claims against Defendants Nexo Financial Services Ltd., Nexo Services OÜ, Nexo AG, and Nexo Financial LLC for lack of personal jurisdiction under Rule 12(b)(2); (3) all claims for failure to state a claim under Rule 12(b)(6); and (4) the breach of contract and declaratory judgment claims against all Defendants under the *forum non conveniens* doctrine. The Court considers each motion in turn.

**A. 12(b)(1) Motion – Article III Standing**

Nexo argues that Plaintiff fails to adequately allege that he has Article III standing to bring his claims. "[T]he 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). A plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Id.* (citations omitted). To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and

particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 339 (citing *Lujan*, 504 U.S. at 560). Further, to establish that an injury is fairly traceable to a defendant's conduct, a plaintiff must show that the injury is "not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (alterations and citations omitted).

Nexo argues that Plaintiff has failed to plead Article III standing for any of his claims because (1) Plaintiff has failed to plead his alleged injury was fairly traceable to the suspension of XRP and (2) Plaintiff has failed to plead facts sufficient to meet either (a) the traceability requirement or (b) the concrete injury requirement for Nexo's alleged failure to provide notice of the XRP suspension. *See* Motion, ECF No. 27 at 10–14. In response, Plaintiff argues that his standing to seek declaratory judgment and equitable relief under the UCL and CLRA is undisputed. *See* Opposition, ECF No. 35 at 9. Further, Plaintiff argues that he has pled sufficient facts that but for Nexo's XRP suspension and its failure to provide notice for that suspension, Plaintiff would have (1) sold his XRP on December 23 before its price dropped and ultimately retained approximately $100,000 of XRP that Nexo liquidated and (2) retained the non-XRP crypto assets he liquidated in attempting to maintain his LTV ratio. *See id.* at 10–12.

The Court considers the Article III standing issues briefed by the parties as to (1) Nexo's suspension of XRP, (2) Nexo's alleged failure to provide notice of the suspension, and (3) Plaintiff's declaratory judgment and equitable relief claims. Further, the Court considers Article III standing issues related to Plaintiff's theory related to lack of notice regarding Nexo's liquidation of his collateral.

**1. Suspension of XRP – Traceability**

Nexo argues that Plaintiff failed to adequately allege he has Article III standing to bring any claims based on Nexo's suspension of XRP, because his alleged injuries were not traceable to the suspension. Nexo argues that since Plaintiff was able to use cryptocurrencies other than XRP to maintain his LTV ratio, he has failed to plead facts sufficient to show that his injuries were fairly traceable to Nexo's suspension of XRP. *See* Motion, ECF No. 27 at 12. Nexo further argues that Plaintiff's losses were triggered by an independent cause—the SEC's announcement of its lawsuit against Ripple, which caused the price of XRP to drop. *See id.* at 12–13. In response, Plaintiff

argues that had he been able to use his XRP collateral to pay down his loan on December 23 following the SEC announcing its litigation against Ripple Labs Inc., he could have immediately paid off his loan when XRP was at a higher value and ultimately retained $100,000 worth of XRP. *See* Opposition, ECF No. 35 at 10–11.  Further, Plaintiff argues that if Nexo had not suspended the use of XRP to pay down loans, then Plaintiff would not have used over $11,000 in other cryptocurrencies in attempting to pay down his loan.  *Id.*  Plaintiff additionally argues that (1) Nexo's arguments about the drop in XRP prices between December 23 and December 29 are irrelevant because damages are measured at the time of breach and (2) Nexo's argument that Plaintiff could have paid down his loan with other cryptocurrencies is an improper mitigation of damages argument inapplicable to standing.  *Id.*  On reply, Nexo argues that the XRP suspension was neither a breach nor a material breach that would have suspended Plaintiff's obligation to maintain his LTV ratio.  Reply, ECF No. 41 at 9–10.

The Court agrees with Plaintiff.  Plaintiff has adequately alleged that without Nexo's suspension of XRP, he could have paid down his loan using his XRP collateral when its value was higher and ultimately retained some XRP.  Further, he would not have used any other cryptocurrency assets to try to pay down his loan, since he could have paid down his loan entirely with the value of his XRP collateral.  Instead, with XRP suspended, Plaintiff tried and failed to pay down his loan with other cryptocurrency assets and ultimately had his XRP collateral liquidated, leaving him with nothing.  While the Court recognizes that Nexo was not responsible for the drop in the price of XRP and assets other than XRP were available for paying down loans, these facts are insufficient to negate Plaintiff's allegations connecting Nexo's conduct to his losses.

At the very least, Nexo's suspension of XRP made it more difficult for Plaintiff to pay down his loan, which plausibly contributed to his injury.  In fact, Plaintiff alleges that Nexo's suspension made it nearly impossible for him to pay down his loan, since removing any XRP from the amount Plaintiff had staked with Nexo might cause a liquidation event.  *See* Complaint, ECF No. 1 ¶ 9.  This difficulty was compounded by other alleged features of Nexo's platform, like the fact that converting digital assets into cash and then using that cash on the Nexo platform to pay down loans takes as much as a week.  *See id.* ¶ 94.  Thus, Plaintiff has plausibly pled how Nexo's conduct—not the

conduct of third parties—contributed to his injury. The Court does not consider the Article III standing traceability requirement to demand anything more from Plaintiff at this stage. *See, e.g.*, *Natural Resources Defense Council v. Southwest Marine, Inc.*, 236 F.3d 985, 995 (9th Cir. 2000) ("[T]he threshold requirement of traceability does not mean that plaintiffs must show to a scientific certainty that [defendant] caused the precise harm suffered by the plaintiffs[.]").

Nexo's argument that Plaintiff could use other types of assets to pay down his loan is beside the point. *See, e.g., Leung v. XPO Logistics, Inc.*, 164 F.Supp.3d 1032, 1038 (N.D. Ill. 2015) ("[B]lame-the-victim arguments, although they may work in *mitigation* of damages, fail in the standing context.") The fact that other types of assets were usable for payment on Nexo's platform does not change the fact that Nexo's suspension of XRP allegedly made it more difficult for Plaintiff to pay down his loan. Nexo's argument is further undermined by the fact that Plaintiff alleges that he tried to maintain his LTV ratio using other assets but ultimately failed to do so. *See* Complaint, ECF No. 1 ¶ 135.

Accordingly, the Court finds that Plaintiff has adequately alleged that his losses were traceable to Nexo's suspension of XRP. Since Nexo does not challenge the injury-in-fact or redressability elements, and the Court finds that Plaintiff has adequately alleged the traceability element, the Court DENIES Nexo's 12(b)(1) motion as to Plaintiff's breach of contract claim regarding the suspension of XRP.

**2. Lack of Notice of Suspension**

Nexo further argues that Plaintiff failed to adequately allege he has Article III standing to bring any claims based on Nexo's failure to provide notice regarding the suspension of XRP.

a. Traceability

Nexo argues that Plaintiff fails to plead any facts indicating how his lack of notice regarding the XRP suspension impacted his losses. Motion, ECF No. 27 at 13. In response, Plaintiff argues that the sooner he learned of the suspension as the price of XRP fell on December 23, 2020, the greater the value he could have obtained for his XRP. Opposition, ECF No. 35 at 12.

As outlined above, the Court finds Plaintiff's allegations to be sufficient to connect Nexo's conduct to his losses. Upon learning that XRP was about to be suspended as a means for paying

down a loan, Plaintiff alleges he could have paid off his loan in its entirety and ultimately retained some XRP rather than having Nexo liquidate it all. The Court finds it plausible based on Plaintiff's allegations that by not notifying Plaintiff of the suspension, Nexo further contributed to his failure to pay off his loan. Again, the Court does not consider the traceability requirement of Article III standing to require anything more. *See Southwest Marine, Inc.*, 236 F.3d at 995.

b. Concrete Injury

Nexo further argues that Plaintiff has failed to allege that he suffered an injury-in-fact based on Nexo's failure to provide notice of the suspension of XRP. *See* Motion, ECF No. 27 at 14. Nexo points to the *TransUnion*, *Spokeo*, and *Adobe* cases in support of his argument, arguing that these cases establish that a mere lack of notice, without more, is insufficient to satisfy the "concrete injury" requirement of Article III. *See id.* (citing *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190 (June 25, 2021), *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), and *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1211 (N.D. Cal. 2014)).

The cases Nexo cites establish that a statutory procedural violation, including a violation of a statutory notice requirement, is insufficient to constitute an injury-in-fact for Article III standing purposes—a plaintiff must also plead a "concrete injury" from the violation. This Court has previously held that a breach of contract alone is also not sufficient to show concrete injury—a plaintiff must also show an injury-in-fact. *See Svenson v. Google Inc.*, No. 13–cv–04080–BLF, 2016 WL 8943301, at *10 (N.D. Cal. Dec. 21, 2016) (finding that where a statute permits nominal damages for breach of contract, "a plaintiff still must show the *fact* of injury in order to have Article III standing") (emphasis in original). However, the Court finds that Plaintiff has adequately alleged a concrete injury related to Nexo's lack of notice regarding the suspension of XRP. Plaintiff alleges that he would have retained XRP and other cryptocurrency assets had he received notice of the XRP suspension, which is a plausible concrete injury for Article III standing purposes. *See TransUnion*, 141 S.Ct. at 2204 ("[C]ertain harms readily qualify as concrete injuries under Article III. The most obvious are traditional tangible harms, such as physical harms and monetary harms.").

Accordingly, the Court finds that Plaintiff has adequately alleged concrete injury based on lack of notice regarding Nexo's suspension of XRP.

**3. Lack of Notice Prior to Liquidation**

It is unclear from the Complaint whether Plaintiff is also asserting a breach of contract claim based on Nexo's alleged failure to provide notice prior to liquidation of Plaintiff's collateral. *See* Complaint, ECF No. 1 ¶¶ 166–73; *see also id.* ¶¶ 83–84; *Tinian Women Ass'n v. United States Dep't of the Navy*, 976 F.3d 832, 841 (9th Cir. 2020). The parties fail to address this theory in their briefing regarding Article III standing. To the extent Nexo is not moving to dismiss under 12(b)(1) Plaintiff's breach of contract claim based on the lack of notice prior to liquidation, the Court finds it necessary, *sua sponte*, to consider whether Plaintiff has adequately alleged Article III standing as to this theory. *See Bernhardt v. Cty. of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002) ("[F]ederal courts are required sua sponte to examine jurisdictional issues such as standing.") (citing *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir.1999)); *see also* Fed.R.Civ.P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

To the extent Plaintiff is asserting that Nexo was in breach of contract for failing to provide notice prior to liquidation of Plaintiff's collateral, the Court finds that Plaintiff has inadequately pled an injury-in-fact. Plaintiff has not adequately alleged how lack of notice prior to Nexo's liquidation of his collateral—as opposed to notice that his LTV ratio was too high, which is not an alleged requirement of the Borrow Terms, and which may have allowed Plaintiff to remedy his LTV ratio—caused him any injury.

Accordingly, Plaintiff has failed to adequately allege that he has Article III standing for purposes of his breach of contract claim for lack of notice prior to liquidation of his collateral. *See Svenson*, 2016 WL 8943301, at *10.

**4. Declaratory Judgment and Injunctive Relief**

Nexo generally argues that all four of Plaintiff's claims should be dismissed for lack of Article III standing, including his claims for declaratory judgment and injunctive relief under the CLRA and UCL. *See* Motion, ECF No. 27 at 10. Nexo argues that all four claims "hinge on" Nexo's allegations related to the suspension of XRP without notice. *See id.* In response, Plaintiff argues that Nexo fails to dispute that Plaintiff has standing to bring his declaratory judgment and

United States District Court
Northern District of California

equitable relief claims. *See* Opposition, ECF No. 35 at 9. Plaintiff argues that he has standing to seek declaratory relief because he is entitled to seek clarification of contractual rights over which he and Nexo disagree. *See id.* Further, Plaintiff argues that he has standing to seek equitable relief because he "face[s] a substantial, certainly impending risk of harm" from defendant's enforcement of the contract. *See id.* On reply, Nexo fails to dispute Plaintiff's arguments. *See* Reply, ECF No. 41 at 9–10.

Regarding standing for injunctive relief, "[p]ast exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010). Article III requires plaintiffs show a "real or immediate threat . . . that [they] will again be wronged in a similar way" to obtain injunctive relief. *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). In a class action, a named plaintiff must show that he or she personally faced the threat of harm—a likelihood of future injury to the class not faced by a named plaintiff is not sufficient for pleading injunctive relief. *See In re Yahoo Mail Litig.*, 308 F.R.D. 577, 587 (N.D. Cal. 2015) (citing *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1044–45 (9th Cir. 1999)); *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013).

In the Complaint, Plaintiff's only allegation of future harm in support of his injunctive relief claim is "he faces the imminent prospect of irreparable harm in the likely event—including because of the uncertain regulatory status of many currently 'acceptable' digital assets on the Nexo platform—that Nexo invokes the unconscionable provisions of the Nexo Borrow Terms and Conditions that it invoked on December 30, 2020." Complaint, ECF No. 1 ¶ 140; *see also id.* ¶¶ 141, 201–204. The Court does not consider Plaintiff's allegations sufficient to plead Article III standing to bring injunctive relief. Plaintiff makes no allegations regarding what harm would come to him personally if Nexo were to suspend other currently acceptable digital assets or otherwise invoke its allegedly unconscionable contractual provisions. According to Plaintiff, his XRP collateral has already been liquidated, and he does not allege that he holds or plans to hold any other assets through the Nexo platform or the Nexo Crypto Credit. *See id.* ¶¶ 16, 135. Allegations about "increased demand for Nexo services" are not enough. *Id.* ¶ 141. Plaintiff must plead a likelihood

of future harm that will come to *him*—not members of the class or the public. *See Yahoo Mail*, 308 F.R.D. at 587; *Chinese Daily News*, 737 F.3d at 545. Accordingly, the Court DISMISSES Plaintiff's claims for injunctive relief under the UCL for lack of Article III standing WITH LEAVE TO AMEND.[1]

Regarding standing for declaratory relief, the Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Since the Court has already found that Plaintiff's claims stem from an actual controversy regarding the suspension of XRP without notice, which Plaintiff has adequately alleged caused him concrete injury traceable to Nexo's conduct, the Court finds that Plaintiff has standing to pursue his related claim for declaratory judgment. *See* Motion, ECF No. 27 at 5 (Plaintiff's "four claims hinge on the allegations that Nexo harmed him by" suspending XRP without notice). Accordingly, the Court declines to dismiss Plaintiff's declaratory judgment claim on Article III standing grounds.

* * *

Based on the above reasoning, the Court DENIES Nexo's 12(b)(1) motion regarding Plaintiff's breach of contract theory based on the suspension of XRP without notice. Further, the Court DENIES Nexo's 12(b)(1) motion regarding Plaintiff's declaratory judgment claim. Additionally, the Court DISMISSES Plaintiff's claims for (1) injunctive relief under the UCL and (2) breach of contract based on lack of notice regarding the liquidation of Plaintiff's XRP collateral, based on lack of subject matter jurisdiction due to a failure to adequately plead Article III standing, WITH LEAVE TO AMEND.

**B. 12(b)(2) Motion – Personal Jurisdiction**

Nexo moves to dismiss all claims against all Defendants except Nexo Capital Inc. for lack of personal jurisdiction. Plaintiff alleges that the Court has personal jurisdiction over all Defendants based on their contacts with California both (1) individually and (2) operating as a single enterprise.

---

[1] As outlined below, the Court dismisses Plaintiff's CLRA claim without leave to amend.

*See* Complaint, ECF No. 1 ¶¶ 22–37; Opposition, ECF No. 35 at 3–8. Nexo concedes that Nexo Capital Inc., which issued Plaintiff the credit line at issue in this case, is subject to specific personal jurisdiction in California for purposes of this case. *See* Motion, ECF No. 27 at 6 n.1; Declaration of Antoni Trenchev ("Trenchev Decl."), ECF No. 27-1 ¶ 19. Nexo moves to dismiss Plaintiff's claims against all other Defendants for lack of personal jurisdiction: the European Defendants—Nexo Financial Services Ltd., Nexo Services OÜ, and Nexo AG—and Nexo Financial LLC, which is a Delaware corporation. *See* Motion, ECF No. 27 at 6; Complaint, ECF No. ¶¶ 17–22. Nexo argues that Plaintiff has failed to allege that Nexo Financial Services Ltd., Nexo Services OÜ, Nexo AG, or Nexo Financial LLC are subject to personal jurisdiction in California under (1) general jurisdiction, (2) specific jurisdiction, or (3) based on a single-enterprise liability theory. *See* Motion, ECF No. 27 at 6–10. Nexo submits a declaration of Antoni Trenchev, a director of Nexo Capital Inc., disputing Plaintiff's jurisdiction-related allegations. *See* Trenchev Decl., ECF No. 27-1. Plaintiff argues in support of personal jurisdiction over all Defendants, and in the alternative requests that the Court grant him jurisdictional discovery. *See* Opposition, ECF No. 35 at 3–9.

The Court considers the issues of (1) general jurisdiction and (2) specific jurisdiction over Nexo Financial Services Ltd., Nexo Services OÜ, Nexo AG, and Nexo Financial LLC individually. Further, the Court considers (3) whether it is warranted to treat Defendants' contacts with California together under a single-enterprise liability theory.

**1. General Jurisdiction**

Plaintiff does not allege that the Court has general jurisdiction over any of Defendants. *See* Complaint, ECF No. 1 ¶¶ 30–37; Opposition, ECF No. 35 at 3–8.

**2. Specific Jurisdiction**

Nexo argues that Plaintiff has not alleged sufficient facts to show that this Court has specific personal jurisdiction in California over the European Nexo Entities or Nexo Financial LLC. *See* Motion, ECF No. 27 at 7. Plaintiff argues that this Court has specific personal jurisdiction over the European Nexo Entities and Nexo Financial LLC because of their contacts with California through Nexo's highly interactive website and Nexo Financial LLC's California Finance Lender license. *See* Opposition, ECF No. 35 at 3–5.

Courts use a three-prong test for determining whether there is specific personal jurisdiction over a defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). A purposeful availment analysis is most often used in suits sounding in contract, whereas a purposeful direction analysis is most often used in suits sounding in tort. *Id*.

a. Purposeful Availment

Plaintiff argues that the first prong of the specific jurisdiction test is satisfied based on a purposeful availment analysis. *See* Opposition, ECF No. 35 at 3–5. "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802. By taking such actions, a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The purposeful availment inquiry focuses on whether a defendant has voluntarily derived some benefit from its interstate activities such that it "will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Global Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma*, 972 F.3d 1101, 1107 (9th Cir. 2020) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985).

Plaintiff raises two arguments to support that he has alleged sufficient facts to show purposeful availment for the European Nexo Entities and Nexo Financial LLC. First, Plaintiff

argues that all Defendants have purposefully availed themselves of the privilege of conducting business in California by "collectively operating and maintaining" a highly interactive website made available in California. *See* Opposition, ECF No. 35 at 3–4. Second, Plaintiff argues that Nexo Financial LLC's California Finance Lender ("CFL") license further supports purposeful availment for Nexo Financial LLC. *Id.* at 4. The Court considers each argument in turn.

i. Website – European Nexo Entities and Nexo Financial LLC

Plaintiff argues that Nexo's highly interactive website is sufficient to show purposeful availment in California. *See* Opposition, ECF No. 35 at 3–4. The Ninth Circuit has found that when a defendant's contacts with a forum comprise an interactive website, the extent of the defendant's purposeful availment in that forum is proportional to the interactivity of the website. *See Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418–19 (9th Cir. 1997). There is no personal jurisdiction where "a website advertiser [does] nothing other than register a domain name and post an essentially passive website." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1157 (9th Cir.2006) (quotations omitted). But operating a more interactive website in a forum can be sufficient to constitute purposeful availment. *See Cybersell*, 130 F.3d at 418–19.

In the Complaint, Plaintiff alleges that all Defendants offer services through a highly interactive website—nexo.io—which they make available in California. *See* Complaint, ECF No. 1 ¶¶ 32–35. Plaintiff alleges that (1) the website links to Nexo's whitepaper, which co-founder Trenchev stated has been "instrumental" in raising funds; (2) it allows users to reach descriptions and advertisements of Nexo's business and services; (3) it has multiple links to the "Terms and Conditions"; and (4) customers use the website to post collateral, take out loans, monitor their LTV ratios, maintain accounts, and other critical activities involving transmission of computer files and data. *See id.* ¶ 33(a)–(f). Plaintiff argues that the highly interactive Nexo website is sufficient to show purposeful availment for all Defendants, including the European Nexo Entities and Nexo Financial LLC. *See* Opposition, ECF No. 35 at 3–4. In response, Nexo argues that (1) only Nexo Capital Inc. is the operator of the Nexo website; (2) the website directed California customers to Nexo Capital Inc., rather than the other Defendants; and (3) while Nexo Services OÜ was the operator of the Nexo app when the events in this lawsuit occurred, Jeong does not allege he used

the app and Nexo Services OÜ did not issue the credit line to Jeong.  *See* Reply, ECF No. 41 at 5–6; Trenchev Decl., ECF No. 27-1 ¶ 15; Reply Declaration of Antoni Trenchev ("Trenchev Reply Decl."), ECF No. 41-1 ¶ 3.  Nexo does not dispute that the Nexo website was highly interactive or made available in California.  *See* Reply, ECF No. 41 at 4–6.  Nexo instead disputes that any of the Defendants other than Nexo Capital Inc., the operator of the Nexo website, were sufficiently connected to the website to show that they purposefully availed themselves of the privilege of conducting business in California.  *See id.*

The first question is whether Plaintiff has alleged sufficient facts to show purposeful availment for the European Nexo Entities or Nexo Financial LLC based on the Nexo website.  The parties appear to agree that it is the "operation" of an interactive website that matters for the purposeful availment analysis.  *See* Opposition, ECF No. 35 at 3 ("[T]he operation of an interactive website has been interpreted by courts as subjecting the operator to specific jurisdiction.") (quoting *iCall, Inc. v. Reliance Commc'ns Ltd.*, 2010 WL 11583236, at *4 (N.D. Cal. Sept. 16, 2010)); Reply, ECF No. 41 at 4–6.  Nexo presents evidence that Nexo Capital Inc.—not any of the other Defendants—was the operator of the Nexo website when the events at the heart of the case took place.  *See* Trenchev Decl., ECF No. 27-1 ¶ 3, 19; Trenchev Reply Decl., ECF No. 41-1 ¶ 3.  Plaintiff's conclusory allegations regarding the fact that Defendants "collectively operat[e] and maintain[] the Nexo website" are insufficient to overcome Nexo's evidence.  *See* Opposition, ECF No. 35 at 4 (citing Complaint ¶¶ 18, 19, 22).  Accordingly, the Court finds that Plaintiff has not alleged sufficient facts to meet its burden for showing that the European Nexo Entities or Nexo Financial LLC purposefully availed themselves of the privilege of conducting business in California through the Nexo website.  *See Circle Click Media LLC v. Regus Management Grp. LLC*, No. 12–04000 SC, 2013 WL 57861, at *3 (N.D. Cal. Jan. 3, 2013).

The second question is whether the facts regarding Nexo Services OÜ's involvement with the Nexo app are sufficient to show purposeful availment for that entity.  Nexo presents evidence that Nexo Services OÜ was the operator of the Nexo app at the time the events at the heart of this lawsuit took place.  *See* Trenchev Reply Decl, ECF No. 41-1 ¶ 4.  Further, Plaintiff alleges that the Nexo website "may be accessed through Nexo applications."  Complaint, ECF No. 1 ¶ 33(e).  Since

there is no dispute that the website was highly interactive, and based on the alleged facts users could access the Nexo website via the Nexo app, the Court finds that Nexo Services OÜ's operation of the app is sufficient to satisfy the purposeful availment prong of the specific jurisdiction test. *See Cybersell*, 130 F.3d at 418–19.

Accordingly, the Court finds that Plaintiff's website and app-related allegations are sufficient to meet its burden for showing purposeful availment as to Nexo Services OÜ, but not as to any of the other European Nexo Entities or Nexo Financial LLC.

ii. California Finance Lender License – Nexo Financial LLC

Plaintiff argues that it has pled sufficient facts to show purposeful availment for Nexo Financial LLC by alleging that it had a CFL license in California and operates as a money services business through a branch in California. *See* Opposition, ECF No. 35 at 4–5 (citing Complaint, ECF No. 1 ¶ 17). In response, Nexo argues and presents evidence that (1) Nexo Financial LLC has no connection to California other than holding the CFL license and (2) Nexo Financial LLC did not obtain the license until after the events at the heart of this case. *See* Motion, ECF No. 27 at 7; Reply, ECF No. 41 at 4; Trenchev Decl., ECF No. 27-1 ¶ 20. While the evidence Nexo submitted supports that Nexo Financial LLC did not obtain the CFL license until after December 2020, Nexo does not dispute Plaintiff's allegation that Nexo Financial LLC has a money services branch in California or indicate whether this was established before or after December 2020. *See* Complaint ¶ 17. Nexo argues that Nexo Financial LLC "has no connection to California other than holding that license," but the Court must accept as true Plaintiff's allegation that Nexo operates a branch of its money services business in California without any evidence to the contrary. *See* Motion, ECF No. 27 at 7; Trenchev Decl., ECF No. 27-1 ¶ 20 ("Nexo Financial LLC is registered to do business and has a registered agent for service of process in California[.]"). Accordingly, the Court considers Plaintiff's allegations sufficient to show purposeful availment for Nexo Financial LLC.

b. Arising Out of Forum-Related Activities

The second requirement for specific jurisdiction is that the claim "arises out of or relates to the defendant's forum-related activities." *Schwarzenegger*, 374 F.3d at 802. To satisfy this requirement, the defendant's forum-related activities must be a "but for" cause of the plaintiff's

claims. *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000), *overruled in part on other grounds by Walden*, 571 U.S. at 285.

Regarding Nexo Services OÜ, the only potential basis for specific jurisdiction in California is its operation of the Nexo app at the time of the events at the heart of this case. However, as Nexo argues, Plaintiff has not alleged that he used the Nexo app, and Nexo Services OÜ did not issue the credit line to Plaintiff. Reply, ECF No. 41 at 5. Accordingly, the Court finds that Plaintiff has not alleged sufficient facts to support that Nexo Services OÜ's forum-related activities were a "but for" cause of Plaintiff's claims.

Regarding Nexo Financial LLC, Nexo argues that "Plaintiff's claims arise out of Nexo's maintenance of the highly interactive website and out of Nexo Financial's practice of lending money in California." Opposition, ECF No. 35 at 5. But Nexo has submitted evidence indicating that Nexo Financial LLC (1) did not operate the Nexo website, (2) did not lend money to Plaintiff, and (3) did not obtain its CFL license until after December 2020. *See* Trenchev Decl., ECF No. 27-1 ¶ 20; Trenchev Reply Decl., ECF No. 41-1 ¶ 3. Accordingly, the Court finds that Plaintiff has failed to allege sufficient facts to support that his claims arose out of Nexo Financial LLC's forum-related activities.

Accordingly, while Plaintiff has alleged sufficient facts to support a showing of purposeful availment as to Nexo Services OÜ and Nexo Financial LLC, he has not adequately pled that his claims arose out of these Defendants' forum-related activities.

c. Reasonableness

Because Plaintiff has not met his burden to satisfy the first two prongs of the test, the Court does not reach the third prong. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068–69 (9th Cir. 2017)

* * *

Accordingly, the Court finds that Plaintiff has not alleged sufficient facts to meet its burden for showing specific personal jurisdiction in California as to any of the European Nexo Entities (Nexo Financial Services Ltd., Nexo Services OÜ, and Nexo AG) or Nexo Financial LLC.

**3. Single-Enterprise Liability**

Plaintiff alleges that Defendants should be treated as a single enterprise for purposes of personal jurisdiction. *See* Complaint, ECF No. 1 ¶¶ 23–29; Opposition, ECF No. 35 at 5–8. "If . . . one corporation [is] the alter ego of another, the Court may 'pierce the corporate veil' jurisdictionally and attribute 'contacts' accordingly." *RAE Sys., Inc. v. TSA Sys., Ltd.*, No. C 04–2030 FMS, 2005 WL 1513124, AT *3 (N.D. Cal. June 24, 2005) (quoting *Certified Building Prods., Inc. v. NLRB*, 528 F.2d 968, 969 (9th Cir. 1975)). Courts treat two entities as alter egos or a single enterprise for purposes of personal jurisdiction where a plaintiff makes a prima facie case that (1) there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (citations omitted). Conclusory allegations of "alter ego" status are insufficient to state a claim. *Sandoval v. Ali*, 34 F.Supp.3d 1031, 1040 (N.D. Cal. Mar. 28, 2014) (quoting *Neilson v. Union Bank of Cal., N.A.*, 290 F.Supp.2d 1101, 1116 (C.D. Cal. 2003)). Rather, a plaintiff must allege specifically both elements of alter ego liability, as well as facts supporting each. *Id.* Disregarding the corporate entity is recognized as an "extreme remedy," and courts will only pierce the corporate veil in "exceptional circumstances." *Gonzalez v. Drew Indus. Inc.*, No. CV 06–08233 DDP (JWJx), 2008 WL 11338569, at *1 (C.D. Cal. Apr. 1, 2008) (quoting *Calvert v. Huckins*, 875 F.Supp. 674, 678 (E.D. Cal. 1995)).

In support of his single enterprise theory, Plaintiff alleges that (1) Nexo states that it is "powered" by Credissimo, which is a European Financial/Technological ("FinTech) Group based in Bulgaria whose majority shareholders and founders—Kosta Kantchev, Georgi Shulev, and Antoni Trenchev—are the majority shareholders and founders of Nexo; (2) Kantchev, Shulev, and Trenchev are publicly identified as "co-founders" and "managing partners" of "Nexo," without distinguishing between Defendants; (3) Defendants commingle funds and assets; (4) Defendants do not maintain distinct minutes or corporate records; (5) Defendants have similar equitable ownership because Kantchev, Shulev, and Trenchev hold the majority of equity in each Defendant; (6) Defendants have similar supervision and management in that some combination of Kantchev, Shulev, and Trenchev is responsible for oversight of each entity; (7) one or more of Nexo Financial

LLC, Nexo Financial Services Ltd., and Nexo AG may serve as a mere shell, instrumentality, or conduit for Nexo Services OÜ; and (8) Defendants do not honor corporate formalities or maintain an arm's-length relationship, and they treat employees as working for "Nexo" as a whole. *See* Complaint, ECF No. 1 ¶ 23(a)–(h). Plaintiff further alleges that Trenchev has repeatedly referred to Nexo as a single, global entity, including by saying, "We are a global enterprise. We are operating in any jurisdiction, apart from the sanctioned countries, so this varies from country to country," and, "[I]t is important to know that Nexo is SEC-compliant and adheres to all relevant European legislation[.]" *Id.* ¶¶ 24, 25, 27(b); *see also id.* ¶ 27(a). Plaintiff also points to Nexo Capital Inc.'s suit against a customer for defaming "Nexo." *Id.* ¶ 28. And Plaintiff points to the fact that on Nexo Financial LLC's CFL license, the listed address of Nexo Financial LLC is the London address of both Nexo Financial Services Ltd. (the U.K. entity) and Nexo Capital Inc. (the Cayman Islands entity). *Id.* ¶ 26.

a. Unity of Interest

The "unity of interest and ownership" prong requires "a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former." *Ranza*, 793 F.3d at 1073 (citations omitted). This test envisions "pervasive control over the subsidiary, such as when a parent corporation dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation." *Id.* (citations and quotations omitted). "Total ownership and shared management personnel are alone insufficient to establish the requisite level of control." *Id.* (citations omitted). Further, one company being "involved directly in decision-making" of another where each entity "observe[s] all of the corporate formalities necessary to maintain corporate separateness" is insufficient to show that they should be treated as a single enterprise for personal jurisdiction. *Unocal*, 248 F.3d at 928. Courts consider nine factors when assessing the first prong of the alter ego test:

> (1) inadequate capitalization, (2) commingling of funds and other assets, (3) disregard of corporate formalities and failure to maintain an arm's length relationship, (4) holding out by one entity that is liable to the debts of the other, (5) identical equitable ownership, (6) use of the same offices and employees, (7) lack of segregation of corporate records, (8) manipulating assets between entities so as to concentrate

> the assets in one and the liabilities in another, and (9) identical directors and officers.

*City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 491 F.Supp.3d 610, 635 (N.D. Cal. 2020) (citing *Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1250 (9th Cir. 2017)).

Nexo argues that (1) Plaintiff's allegation regarding Credissimo has no apparent connection to his single-enterprise liability theory, (2) the other allegations in paragraph 23 of the complaint are conclusory and boilerplate, and (3) the allegations regarding media quotes and press releases are legally immaterial. *See* Motion, ECF No. 27 at 9 (citing *Ranza*, 793 F.3d at 1074). Nexo further provides the declaration of Antoni Trenchev, which contravenes several of Plaintiff's allegations. *See* Trenchev Decl., ECF No. 27-1. In response, Plaintiff argues that Nexo fails to dispute Plaintiff's allegations regarding (1) Kantchev, Shulev, and Trenchev's supervision of and equity in each of Defendants; (2) the principal place of business shared between Nexo Capital Inc. and Nexo Financial Services Ltd.; (3) Nexo's shared employees; (4) Nexo Capital Inc.'s lawsuit; and (5) Nexo's public statements about its single-entity character. *See* Opposition, ECF No. 35 at 6–7 (citing Complaint, ECF No. 1 ¶¶ 21, 23(b, e, f, h), 24–25, 28). On reply, Nexo argues that the present case parallels *Reynolds v. Binance Holdings Ltd.*, where the Court found there to be no unity of interest. *See* Reply, ECF No. 41 at 6–8 (citing *Reynolds*, 481 F.Supp.3d 997 (N.D. Cal. 2020)).

The Court considers Plaintiff's allegations under the *Daewoo* factors. Plaintiff's allegations fail to address the first, fourth, and eighth *Daewoo* factors—(1) whether any of the Nexo entities were inadequately capitalized; (4) whether any Nexo entity was held out as liable for the debts of any other; and (8) whether the Nexo entities manipulated assets between entities so as to concentrate the assets in one and the liabilities in another. *See Purdue Pharma*, 491 F.Supp.3d at 635. Accordingly, the Court finds that the first, fourth, and eighth factors weigh against a finding of unity of interest. *See Stewart v. Screen Gems-EMI Music, Inc.*, 81 F.Supp.3d 938, 955–956 (N.D. Cal. 2015); *Reynolds*, 481 F.Supp.3d at 1005.

Further, Plaintiff's allegations related to the second, third, and seventh *Daewoo* factors—(2) whether the Nexo entities commingled funds and other assets, (3) whether the Nexo entities show a disregard of corporate formalities and failure to maintain an arm's length relationship, and (7) whether the Nexo entities lacked segregation of corporate records—are conclusory and controverted

United States District Court
Northern District of California

by the declaration of Antoni Trenchev.  *See Purdue Pharma*, 491 F.Supp.3d at 635; Complaint, ECF No. 1 ¶ 23(c) ("These Nexo entities commingle funds and assets[.]"); *id.* ¶ 23(d) ("These Nexo entities do not maintain distinct minutes or corporate records[.]"); *id.* ¶ 23(g) ("One or more of Nexo Financial, Nexo Financial Services, and Nexo AG *may* serve as a mere shell, instrumentality, or conduit for the Nexo Services business based and operating in Bulgaria and Estonia.") (emphasis added); *id.* ¶ 23(h) ("These Nexo entities do not honor corporate formalities, [and] do not maintain arm's length relationships[.]"); Trenchev Decl., ECF No. 27-1 ¶¶ 18, 22 (stating Nexo entities "have maintained corporate formalities, . . . have maintained separate bank accounts, have not commingled assets or funds, [and] have maintained separate books and records").  Plaintiff fails to address Nexo's evidence and arguments regarding its allegations related to these factors in its Opposition. *See* ECF No. 35 at 6–7.  Accordingly, the Court finds that the second, third, and seventh *Daewoo* factors weigh against a finding of unity of interest, given that Plaintiff's allegations are conclusory and controverted.  *See Sandoval*, 34 F.Supp.3d at 1040; *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F.Supp.3d 1011, 1042–43 (C.D. Cal. 2015) (collecting cases finding conclusory allegations to be insufficient to support unity of interest).

Plaintiff alleges facts to show that the fifth, sixth, and ninth *Daewoo* factors provide some support for his claim of single-enterprise liability.  For the fifth and ninth factors—(5) identical equitable ownership and (9) identical directors and officers—Plaintiff alleges, and Nexo fails to dispute, that Nexo's co-founders Kantchev, Shulev, and Trenchev hold most of the equity in each Nexo entity and, "in some combination," are responsible for oversight of each entity.  *See Purdue Pharma*, 491 F.Supp.3d at 635; Complaint, ECF No. 1 ¶¶ 23(a), (e), (f).  The vague and conclusory nature of these allegations—"effectively identical equitable ownership," "some combination of Kantchev, Shulev, and Trenchev is responsible for . . . oversight"— undercuts their support for the unity of interest between the Nexo entities.  *See* Complaint, ECF No. 1 ¶¶ 23(a), (e), (f).  Based on these allegations, it is unclear whether or to what extent the Nexo entities have "*identical* equitable ownership" and "*identical* directors and officers."  *Purdue Pharma* 491 F. Supp. 3d at 635 (emphasis added).  Further, courts tend not to weigh these factors heavily, particularly in the absence of other alleged facts. *See Ranza*, 793 F.3d at 1074–75 ("Total ownership and shared management personnel

are alone insufficient to establish the requisite level of control.") (citing *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003)); *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th Cir.1980) (no alter ego relationship where, *inter alia*, parent placed several directors on subsidiary's board).

Plaintiff also pleads facts in support of the sixth *Daewoo* factor—(6) use of the same offices and employees.  Plaintiff pleads that (1) the Nexo entities "treat the employees of any particular entity as working for 'Nexo' as a whole"; (2) Nexo Capital Inc. and Nexo Financial Services Ltd. share the same principal place of business; and (3) Nexo Financial LLC lists the address of Nexo Capital Inc. and Nexo Financial Services Ltd.'s principal place of business on its CFL license.  *See* Complaint, ECF No. 1 ¶¶ 21, 23(h), 26.  The Court finds that Plaintiff's allegations regarding the shared principal place of business, employees working for Nexo "as a whole", and an address shared among multiple Nexo entities provides some support for single-enterprise liability.  However, the Court notes that courts have found similar facts not to weigh heavily in the single-enterprise liability analysis.  *See Reynolds*, 481 F.Supp.3d at 1005-1006 (shared business address "is insufficient to demonstrate the entities' requisite unity of interest"); *M.H. Pillars Ltd. v. Realini*, No. 15–cv–1383–PJH, 2017 WL 916414, at *12 (N.D. Cal. Mar. 8, 2017) (declining to find unity of interest where entities had same business address and same agent for service of process); *Gerritsen v. Warner Bros. Entm't Inc.*, 116 F. Supp. 3d 1104, 1139 (C.D. Cal. 2015) (allegations of, *inter alia*, shared office location, common business departments, and shared employees are insufficient to indicate alter ego relationship).

Plaintiff additionally points to several public statements by Nexo and its co-founders referring to the Nexo entities as a single entity "Nexo" and characterizing the entities as part of a single "global enterprise."  *See* Complaint, ECF No. 1 ¶¶ 24, 25, 27; *see also id.* ¶¶ 23(b), 28.  Nexo argues that such allegations are "legally immaterial."  Motion, ECF No. 27 at 9.  The Court does not agree with Nexo that such allegations are completely immaterial to Plaintiff's single-enterprise liability claim.  Courts have found that such allegations support a finding of unity of interest.  *See, e.g., Purdue Pharma*, 491 F. Supp. 3d at 636; *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F.Supp.3d 1033, 1061–62 (S.D. Cal. 2017); *Seiko Epson Corp. v. Print-Rite Holdings, Ltd.*,

No. CV 01–500–BR, 2002 WL 32513403, at *23 (D. Or. Apr. 30, 2002) (finding public portrayal of entities as a single vertically integrated corporation was "some evidence of the way the parties relate to one another"). However, courts have found that such allegations provide only marginal support for unity of interest between entities. *See, e.g.*, *Reynolds*, 481 F.Supp.3d at 1006 (collecting cases); *Packaged Seafood*, 242 F.Supp.3d at 1061 (marketing-related allegations are insufficient "standing alone" and only "slightly bolster[]" unity of interest claim); *Seiko*, 2002 WL 32513403, at *23; *Corcoran v. CVS Health Corp.*, 169 F.Supp.3d 970, 984 (N.D. Cal. 2016) ("[C]ourts recognize that separate corporate entities presenting themselves as one online does not rise to the level of unity of interest required to show companies are alter egos."); *BBA Aviation PLC v. Superior Court*, 190 Cal.App.4th 421, 434–35 (2010) ("[T]he mere appearance of a parent's logo on its subsidiary's documents' does not constitute[] pervasive control over day-to-day operations[.]"); *Gerritsen*, 116 F.Supp.3d at 1140 ("joint issuance of press releases" does not support unity of interest). Further, the specific statements Plaintiff points to are not especially supportive or suggestive of a unity of interest between the Nexo entities—the statements generally hinge on shorthand references to "Nexo" as if it were a single entity, as opposed to any specific statements about how the various entities are managed or organized. The Court adopts the shorthand "Nexo" to refer to Defendants throughout this order, but that does not have any bearing on the details of Defendants' relationship. Accordingly, while the Court finds that Plaintiff's allegations regarding Trenchev and Nexo's public statements provide some support for a unity of interest finding, that support is minimal based on the caselaw and the content of the statements at issue.[2]

Considering Plaintiff's alleged facts in support of the fifth, sixth, and ninth *Daewoo* factors, along with Plaintiff's allegations regarding Nexo's generalized statements about its single-entity or "global enterprise" character, the Court finds that Plaintiff's allegations are insufficient to support a showing of unity of interest. *See Stewart v. Screen Gems-EMI Music, Inc.*, 81 F.Supp.3d 938, 956

[2] The Court also agrees with Nexo that Plaintiff's allegations regarding Credissimo have no bearing on the unity of interest between the Nexo entities. *See* Complaint, ECF No. 1 ¶ 23(a); Motion, ECF No. 27 at 9.

(N.D. Cal. 2015) (finding no single-enterprise liability where same three factors—equitable ownership, use of same offices and employees, and identical officers and directors—supported single-enterprise liability). Accordingly, the Court finds that Plaintiff has failed to plead sufficient facts to plausibly allege that there was a unity of interest between the Nexo entities for purposes of the first single-enterprise liability prong.

b. Inequitable Result

Where a plaintiff fails to satisfy the "unity of interest" prong, a court need not analyze the "fraud or injustice prong." *Ranza*, 793 F.3d at 1075 n.9 (citing *Unocal*, 248 F.3d at 928). Since the Court finds that Plaintiff has failed to allege sufficient facts to satisfy the "unity of interest" prong here, the Court declines to consider the second prong of the test for single-enterprise liability.

* * *

Finding that Plaintiff has failed to plead sufficient facts to support the unity of interest between the Nexo entities, the Court finds that Plaintiff has failed to adequately allege that any of the Nexo entities' contacts with the forum should be considered to apply to all the Nexo entities collectively.

Since Plaintiff has failed to adequately plead that this Court has general or specific personal jurisdiction over Defendants Nexo Financial LLC, Nexo Financial Services Ltd., Nexo Services OÜ, or Nexo AG, the Court hereby GRANTS Nexo's Rule 12(b)(2) motion to dismiss as to those Defendants for lack of personal jurisdiction.

**4. Request for Jurisdictional Discovery**

Plaintiff seeks leave to conduct jurisdictional discovery. *See* Opposition, ECF No. 35 at 8–9. "A district court is vested with broad discretion to permit or deny discovery, and a decision to deny discovery will not be disturbed except upon the clearest showing that the denial of discovery results in actual and substantial prejudice to the complaining litigant." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (quotation marks and citation omitted). The Ninth Circuit has stated that jurisdictional discovery "should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986)

(quotation marks and citation omitted).

Courts require a plaintiff to establish a "colorable" basis for personal jurisdiction before granting jurisdictional discovery. *See, e.g.*, *Mitan v. Feeney*, 497 F.Supp.2d 1113, 1119 (C.D. Cal. 2007). "This 'colorable' showing should be understood as something less than a *prima facie* showing, and could be equated as requiring the plaintiff to come forward with 'some evidence' tending to establish personal jurisdiction over the defendant." *Id.* at 1119 (citations omitted). A court may deny a request to conduct jurisdictional discovery if, for example, "a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants," *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006), or "it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction," *Laub*, 342 F.3d at 1093 (9th Cir. 2003) (citation omitted).

In support of his jurisdictional discovery request, Plaintiff argues that since Nexo controverts his allegations supporting his single-enterprise liability theory, he is entitled to discovery to challenge Nexo's assertions. *See* Opposition, ECF No. 35 at 8–9. Further, Plaintiff argues that he has shown more than what courts consider to be sufficient for jurisdictional discovery—namely, a "colorable basis," which requires only "some evidence" tending to establish personal jurisdiction. *See id.* at 9 (citing *Tevra Brands LLC v. Bayer Healthcare LLC*, No. 19-cv-04312-BLF, 2020 WL 6149714, at **1–2 (N.D. Cal. Oct. 20, 2020)). Plaintiff additionally argues that Nexo has failed to establish that "further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *See id.* (citing *Laub v. United States Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003)). In response, Nexo argues that the Court should rule similarly to the *Reynolds* court, which found that the plaintiff was not entitled to jurisdictional discovery where his single-enterprise theory was based on "no more than a hunch." *See* Reply, ECF No. 41 at 8–9 (citing *Reynolds*, 481 F.Supp.3d at 1009–10).

The Court agrees with Nexo. As the Court outlined above, Plaintiff's allegations supporting his specific jurisdiction and single-enterprise liability claims are "both attenuated and based on bare allegations in the face of specific denials made by the defendants." *Pebble Beach*, 453 F.3d at 1160. The Court is not convinced by Plaintiff's argument that he is entitled to discovery simply because

his allegations are controverted by Nexo. *See* Opposition, ECF No. 35 at 8–9. The Court does not consider it appropriate for Plaintiff to make bare, unsupported allegations like, "These Nexo entities commingle funds and assets, failing to segregate funds," wait for Nexo to controvert these allegations, and then seek jurisdictional discovery because "pertinent facts bearing on the question of jurisdiction are controverted." *See* Complaint, ECF No. 1 ¶ 23(c); Opposition, ECF No. 35 at 8 (citing *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977)). Such an approach smacks of a fishing expedition—in other words, it appears that Plaintiff is seeking jurisdictional discovery based on a mere "hunch," which courts have found to be insufficient. *See, e.g., Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008). Further, the Court does not agree with Plaintiff that he has alleged a "colorable basis" for jurisdictional discovery—ignoring Plaintiff's conclusory allegations, he has only alleged minimal facts supporting a small fraction of the factors relevant to single-enterprise liability, which is far removed from the "exceptional circumstances" necessary to invoke this "extreme remedy." *Gonzalez*, 2008 WL 11338569, at *1. Further, Plaintiff's allegations in support of specific jurisdiction for Defendants individually are as minimal as pointing to a website operated by only one of the Defendants (for which Nexo concedes personal jurisdiction) and a CFL license granted after the events at issue in this case. *See* Opposition, ECF No. 35 at 3–5. Accordingly, it is clear to the Court that, based on Plaintiff's alleged facts, "further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Laub*, 342 F.3d at 1093.

Based on the above reasoning, Plaintiff's request for jurisdictional discovery is hereby DENIED.

* * *

Since Plaintiff has failed to meet his burden for showing personal jurisdiction over Nexo Financial Services Ltd., Nexo Services OÜ, Nexo AG, or Nexo Financial LLC, and the Court has denied his request for jurisdictional discovery, the Court finds that amendment would be futile. Accordingly, the Court DISMISSES all claims against Nexo Financial Services Ltd., Nexo Services OÜ, Nexo AG, and Nexo Financial LLC WITHOUT LEAVE TO AMEND. *See Eminence Capital*, 316 F.3d at 1052.

**C. 12(b)(6) Motion – Failure to State a Claim**

Nexo moves to dismiss Plaintiff's claims of (1) breach of contract for suspension of XRP and failure to provide notice for that suspension; (2) declaratory judgment; (3) violation of the CLRA; and (4) violation of the UCL (a) unlawful, (b) unfair, and (c) unfair, deceptive, untrue or misleading advertising prongs. The Court considers each issue in turn.

**1. Breach of Contract**

Plaintiff alleges that Nexo violated various provisions of the Borrow Terms, which all users of Nexo Crypto Credit must agree to. *See* Complaint, ECF No. 1 ¶ 46. "To be entitled to damages for breach of contract, a plaintiff must plead and prove (1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff." *Walsh v. W. Valley Mission Cmty. Coll. Dist.*, 66 Cal. App. 4th 1532, 1545 (1998). Plaintiff alleges that Nexo breached the Borrow Terms through (1) the suspension of XRP and (2) the failure to provide notice of that suspension. *See id.* ¶¶ 166–73. Plaintiff also pleads facts related to Nexo's alleged breach of the Borrow Terms by failing to provide notice prior to liquidation of Plaintiff's collateral, although it is unclear to what extent Plaintiff is asserting this as a separate theory. *See id.* ¶¶ 166–73, 83–84. Further, to the extent that Nexo did not literally breach the Borrow Terms, Plaintiff alleges in the alternative that Nexo breached the duty of good faith and fair dealing by suspending XRP without notice. *See id.* ¶¶ 65–81, 169. Defendant moves to dismiss Plaintiff's breach of contract claim. *See* Motion, ECF No. 27 at 14–18.

The Court considers each of Plaintiff's breach of contract theories in turn: (1) for suspension of XRP; (2) for the lack of notice of the suspension; (3) for the lack of notice of liquidation of Plaintiff's collateral; and (4) for the breach of duty of good faith and fair dealing.

a. Suspension of XRP Payments

Plaintiff alleges that by suspending the use of XRP to repay a user's loans, Nexo violated the following Borrow Terms provision:

> You may repay at any time prior to the Maturity Date and any amount: (i) by transferring into the Nexo Account the same Digital Assets as the Nexo Crypto Credit granted, or other Digital Assets acceptable to Nexo; (ii) with the Collateral; or (iii) by combination of (i) and (ii). Certain rules may apply to repayments from time to time, as indicated

> on the Nexo Platform.

Trenchev Decl., ECF No. 27-1, Ex. D, Borrow Terms § VIII.2; *see* Complaint, ECF No. 1 ¶ 61. In the Motion, Nexo argues that Plaintiff fails to point to any provisions of the Borrow Terms that Nexo breached in suspending XRP as a repayment option. *See* Motion, ECF No. 27 at 15. Nexo points to the language in the above provision that "[c]ertain rules may apply to repayments from time to time[.]" *Id.* (citing Trenchev Decl., ECF No. 27-1, Ex. D, Borrow Terms § VIII.2). Further, Nexo points to the following provisions from the Borrow Terms:

> At any time, at our sole and absolute discretion, without liability to you, we can . . . suspend the provision of the Nexo Crypto Credit or of all or part of the other Nexo services[.]

*Id.* (citing Trenchev Decl., ECF No. 27-1, Ex. D, Borrow Terms § III.3).

> Nexo will grant you a Nexo Crypto Credit in Digital Assets, if you provide the required Digital Assets as collateral, by transferring them into the Nexo Account, or by using ones available thereinto ("Collateral"). All such Digital Assets are indicated on the Nexo Platform and in the Nexo Account and are subject to revision from time to time.

*Id.* (citing Trenchev Decl., ECF No. 27-1, Ex. D, Borrow Terms § IV.1).

The parties disagree on whether Plaintiff adequately alleges that Nexo breached any provision of the Borrow Terms by suspending XRP as a repayment option. The only provision of the Borrow Terms that Plaintiff points to provides that a user may repay their loan "with the Collateral" or with a combination of their collateral and a transfer of digital assets "acceptable to Nexo." Trenchev Decl., ECF No. 27-1, Ex. D, Borrow Terms § VIII.2. By suspending the use of XRP, Plaintiff argues that Nexo prevented users with XRP collateral from repaying their loans with collateral or a combination of collateral and digital assets. *See* Opposition, ECF No. 35 at 12–13. However, as Nexo points out, the provision of the Borrow Terms Plaintiff relies on contains the following language: "Certain rules may apply to repayments from time to time, as indicated on the Nexo Platform." Trenchev Decl., ECF No. 27-1, Ex. D, Borrow Terms § VIII.2.

Based on the language of the Borrow Terms, the Court finds that Plaintiff has not adequately

United States District Court
Northern District of California

alleged that Nexo breached any provision of the Borrow Terms by suspending the use of XRP. The Borrow Terms explicitly authorized rules applied to repayments. *See id*. Yet Plaintiff has failed to allege how the XRP suspension did not constitute just such a rule. Further, other contractual provisions Nexo points to appear to give Nexo considerable discretion to suspend and change various aspects of the Nexo Crypto Credit and other aspects of its services, including the types of cryptocurrency Nexo offers and accepts as collateral. *See id.* § IV.1 ("Nexo will grant you a Nexo Crypto Credit in Digital Assets, if you provide the required Digital Assets as collateral. . . . All such Digital Assets . . . are subject to revision from time to time."); *id.* § III.3 ("At any time, at our sole and absolute discretion, without liability to you, we can . . . (iii) suspend the provision of the Nexo Crypto Credit or of all or part of the other Nexo services; or (iv) change, update, remove, cancel, suspend, disable or discontinue any features, component, content . . . of the Nexo Crypto Credit."). Plaintiff fails to adequately allege why these provisions do not apply.

Given the express rights Nexo has under the Borrow Terms, which Plaintiff has failed to adequately allege did not encompass Nexo's suspension of XRP, the Court finds that Plaintiff has failed to plead a plausible breach of the Borrow Terms based on the suspension of XRP as a repayment option.

b. Lack of Notice of Suspension

Plaintiff alleges that Nexo breached the Borrow Terms by failing to provide notice of the XRP suspension. *See* Complaint, ECF No. 1 ¶¶ 80–92. Plaintiff points to the following provisions of the Borrow Terms as support:

> If the LTV increases above certain thresholds, as indicated on the Nexo Platform, you shall, at our request, provide additional Collateral and/or make the required repayments to rebalance the Nexo Crypto Credit.

*Id.* ¶ 82 (citing Trenchev Decl., ECF No. 27-1, Ex. D, Borrow Terms § VI.1).

> If the LTV increases above the maximum permitted threshold, as indicated on the Nexo Platform, Nexo shall, after notifying you, liquidate the necessary amount of Collateral to rebalance your Nexo Crypto Credit.

*Id.* ¶ 83 (citing Trenchev Decl., ECF No. 27-1, Ex. D, Borrow Terms § VI.2). Nexo moves to dismiss this claim, arguing that there is nothing in the Borrow Terms requiring Nexo to provide

United States District Court
Northern District of California

notice of the XRP suspension. *See* Motion, ECF No. 27 at 15–16. Further, Nexo argues that the following provision of the Borrow Terms authorized it to suspend XRP without notice:

> At any time, at our sole and absolute discretion, without liability to you, we can . . . suspend the provision of the Nexo Crypto Credit or of all or part of the other Nexo services[.]

Trenchev Decl., ECF No. 27-1, Ex. D, Borrow Terms § III.3; *see also* Reply, ECF No. 41 at 10–11 (citing Trenchev Decl., ECF No. 27-1, Ex. D, Borrow Terms §§ III.3, IV.1, VIII.2). Plaintiff fails to respond to Nexo's arguments in its Opposition, instead arguing only that the duty of good faith and fair dealing required Nexo to provide notice of the XRP suspension. Opposition, ECF No. 35 at 12–15.

The Court agrees with Nexo. Plaintiff has failed to adequately allege that the Borrow Terms contained any provision that required Nexo to provide notice of the XRP suspension. Neither of the Borrow Terms provisions Plaintiff points to say anything about a notice requirement for a suspension of a particular cryptocurrency or payment method. *See* Trenchev Decl., ECF No. 27-1, Ex. D, Borrow Terms § VI.1, VI.2. Rather, they only describe notice requirements pertaining to liquidation of a user's collateral. *See id.*

Accordingly, the Court finds that Plaintiff has failed to state a claim for breach of contract based on the lack of notice regarding the XRP suspension.[3]

c. Lack of Notice Before Liquidation

As outlined above, it is unclear whether Plaintiff is also asserting a breach of contract claim based on Nexo's alleged failure to provide notice prior to liquidation of Plaintiff's collateral. *See* Complaint, ECF No. 1 ¶¶ 166–73; *see also id.* ¶¶ 83–84; *Tinian Women*, 976 F.3d at 841 (9th Cir. 2020) ("[A] district court's job is not to piece together a jigsaw puzzle of claims."). Plaintiff points to a provision in the Borrow Terms stating: "If the LTV increases above the maximum permitted threshold, as indicated on the Nexo Platform, Nexo shall, after notifying you, liquidate the necessary

---

[3] The parties also brief issues related to damages resulting from Nexo's alleged breach of contract. Motion, ECF No. 27 at 16–17; Opposition, ECF No. 35 at 14–15. Since the Court finds that Plaintiff has failed to adequately allege breach of contract, the Court declines to address these issues.

amount of Collateral to rebalance your Nexo Crypto Credit." *Id.* ¶ 83 (citing Trenchev Decl., ECF No. 27-1, Ex. D, Borrow Terms § VI.2). Since Plaintiff has inadequately pled facts supporting Article III standing regarding his breach of contract claim based on a lack of notice of liquidation, the Court declines to consider the merits of Plaintiff's breach of contract claim under this theory. *See Echevarria v. Aerotek, Inc.*, 814 Fed.Appx. 321, 322 (9th Cir. 2020).

d. Breach of the Duty of Good Faith and Fair Dealing

Plaintiff also alleges that Nexo violated the duty of good faith and fair dealing by suspending XRP as a repayment option, since if Nexo had this right the contract would be illusory. *See* Complaint, ECF No. 1 ¶¶ 60, 65–92. "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 683 (1988) (citation omitted). "[T]he covenant has both a subjective and an objective aspect—subjective good faith and objective fair dealing. A party violates the covenant if it subjectively lacks belief in the validity of its act or if its conduct is objectively unreasonable." *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal.4th 342, 372 (1992). The implied covenant does not alter a party's existing rights or duties under a contract. *See Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317, 327 (2000). Rather, the implied covenant supplements "the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." *Avidity Partners, LLC v. State*, 221 Cal.App.4th 1180, 1204 (2013) (citation omitted). Accordingly, "if defendants were given the right to do what they did by the express provisions of the contract there can be no breach." *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal.App.4th 44, 56 (Cal. Ct. App. 2002) (citation omitted). An agreement is illusory, and no enforceable contract has been created, if a promisor is "free to perform or to withdraw from the agreement at his own unrestricted pleasure." *Mattei v. Hopper*, 51 Cal.2d 119, 122 (1958). Generally, "[a] contract is unenforceable as illusory when one of the parties has the unfettered or arbitrary right to modify or terminate the agreement or assumes no obligations thereunder." *Harris v. Tap Worldwide, LLC*, 248 Cal.App.4th 373, 385 (2016).

Nexo argues that Plaintiff's good faith and fair dealing claim is an attempt to improperly

rewrite the Borrow Terms, which gave Nexo the "express and unfettered" right to suspend XRP as a repayment option. *See* Motion, ECF No. 27 at 17–18. In response, Plaintiff argues that (1) courts use the duty of good faith and fair dealing to limit contractual provisions giving a party an "unfettered" right to modify the agreement and (2) Plaintiff has adequately alleged that Nexo acted in bad faith. *See* Opposition, ECF No. 35 at 12–14. On reply, Nexo argues that (1) the Borrow Terms were not illusory because of the benefits Plaintiff received under the contract that served as adequate independent consideration and (2) Plaintiff fails to adequately allege Nexo's lack of "subjective good faith," which is required for a duty of good faith and fair dealing claim. *See* Reply, ECF No. 41 at 13.

There are two main disputes underlying the parties' disagreement: (1) whether Plaintiff has adequately alleged that the Borrow Terms were illusory if Nexo had the right to suspend XRP as a repayment option without notice under the Borrow Terms and (2) whether Plaintiff has adequately alleged Nexo's bad faith in suspending XRP as a repayment option without notice. The Court considers each issue in turn.

i. Illusory Contract

First, the Court considers whether the Borrow Terms would be illusory if they gave Nexo the right to suspend XRP as a repayment option without notice. Nexo argues that Plaintiff is seeking to use the covenant of good faith and fair dealing to contradict the express terms of the contract, which gave it the unfettered right to suspend XRP as a repayment option. *See* Motion, ECF No. 17–18. In response, Plaintiff argues that courts apply the covenant of good faith and fair dealing to contradict the express terms of the contract when necessary to protect it from being illusory, which the Court should do here. *See* Opposition, ECF No. 35 at 13–14. On reply, Nexo argues that courts only invoke the duty of good faith and fair dealing in "rare instances" when a contractual provision granting a party express discretionary power would render the agreement illusory, *i.e.*, unsupported by "adequate independent consideration," which Plaintiff has not shown here. *See* Reply, ECF No. 41 at 11–12.

The Court agrees with Nexo. Plaintiff is correct that courts sometimes apply the covenant of good faith and fair dealing to contradict the express terms of a contract when it is necessary to

keep it from being illusory. *See, e.g.*, *Third Story Music, Inc. v. Waits*, 41 Cal.App.4th 798, 806 (1995); *Storek & Storek, Inc. v. Citicorp Real Est., Inc.*, 100 Cal.App.4th 44, 57 (2002). Accordingly, this issue cannot be resolved simply because the duty of good faith and fair dealing might limit the "unfettered" discretion Nexo asserts the Borrow Terms expressly provide. *See* Motion, ECF No. 27 at 18. However, courts only find the duty of good faith and fair dealing contradicts an express grant of discretion to a party when necessary to maintain the mutuality of the contract. *See Third Story*, 41 Cal. App. at 808; *Sweet v. Google Inc.*, No. 17–cv–03953–EMC, 2018 WL 1184777, at *9 (N.D. Cal. Mar. 7, 2018); *Wolf v. Walt Disney Pictures & Television*, 162 Cal.App.4th 1107, 1122–24 (2008). If the contract is supported by "adequate consideration regardless of the discretionary power," then courts do not apply the duty of good faith and fair dealing to limit that discretion. *See Storek*, 100 Cal.App.4th at 57; *Third Story*, 41 Cal.App.4th at 808–809.

Plaintiff has failed to adequately allege that the Borrow Terms would not be supported by adequate independent consideration if Nexo had the right to suspend XRP as a repayment option without notice. Plaintiff's theory is that if Nexo were allowed to suspend XRP, then the Borrow Terms would be illusory, because Nexo would have the "unfettered or arbitrary right to modify or terminate the agreement[.]" *See* Opposition, ECF No. 35 at 13–14. Plaintiff's argument appears to be based on the notion that the only provision of the Borrow Terms under which Nexo could have the right to suspend XRP is the provision granting Nexo the right to "suspend the provision of the Nexo Crypto Credit or of all or part of the other Nexo services[.]" *See* Opposition, ECF No. 35 at 13. But this is not the only provision of the Borrow Terms that supports Nexo's right to suspend the use of particular cryptocurrencies on its platform. Even with XRP suspended, Plaintiff still had a Nexo Crypto Credit loan that he could maintain and pay down using a variety of different types of assets. Complaint, ECF No. 1 ¶¶ 16, 135. Further, regardless of how "unfettered" Nexo's rights under the Borrow Terms are generally, the contract appears to give Nexo broad authority to restrict or suspend, without notice, the types of cryptocurrency accepted by Nexo. *See, e.g.*, Trenchev Decl., ECF No. 27-1, Ex. D, Borrow Terms § IV.1 (digital assets that can be used as collateral "are subject to revision from time to time"); *id.* ("Certain rules may apply to repayments from time to time, as

indicated on the Nexo Platform."). As outlined above, Plaintiff has failed to adequately allege why these provisions conferring Nexo the right to choose the cryptocurrencies it accepts without notice of the Borrow Terms do not apply. Accordingly, Plaintiff has not adequately alleged that the Borrow Terms would be illusory if Nexo were able to suspend XRP without notice.

Accordingly, the Court finds that Plaintiff has not pled sufficient facts to indicate that Nexo's right to suspend XRP as a repayment option under the Borrow Terms rendered the contract illusory.

ii. Bad Faith or Frustration of Common Purpose

The parties also disagree on whether Plaintiff has adequately pled that Nexo acted in bad faith or frustrated a common purpose. Plaintiff points to (1) Nexo's suspension of XRP as a repayment option and subsequent selling off of XRP for substantial value; (2) Nexo's suspension of XRP transactions for international users—not just US users; and (3) Nexo's December 30 statement justifying its suspension of XRP for customers on the basis of legal uncertainty when Nexo was selling off XRP for substantial value. *See* Opposition, ECF No. 35 at 14. In response, Nexo argues that pleading a breach of the duty of good faith requires pleading (1) a lack of subjective good faith or (2) a frustration of common purpose. *See* Reply, ECF No. 41 at 13 (citing *Wolf*, 162 Cal.App.4th at 1123–24 (2008)). Nexo argues that Plaintiff has failed to adequately plead a lack of subjective good faith based on the alleged facts of (1) the SEC's regulatory action against Ripple Labs and (2) the plummeting value of Ripple. *See id.* Further, Nexo argues that Plaintiff has failed to adequately plead a frustration of common purpose, because the common purpose of the Borrow Terms was to provide a secured credit line. *See id.*

Based on the Borrow Terms, Nexo's alleged suspension of XRP without notice was expressly authorized, and Plaintiff has failed to adequately allege that the provisions of the Borrow Terms authorizing that suspension did not apply under the duty of good faith and fair dealing. Accordingly, the Court finds that Plaintiff has not adequately alleged bad faith or frustration of a common purpose, since as alleged, Nexo's suspension of XRP without notice was within the terms of the contract. *See, e.g.*, *Carma Devs.*, 2 Cal.4th at 372 ("A party violates the covenant if it subjectively lacks belief in the validity of its act or if its conduct is objectively unreasonable.").

* * *

Accordingly, the Court finds that Plaintiff has failed to adequately allege a claim for breach of the Borrow Terms or the duty of good faith and fair dealing. The Court GRANTS Nexo's Motion to Dismiss Plaintiff's breach of contract claim WITH LEAVE TO AMEND.

**2. Declaratory Judgment**

Nexo moves to dismiss Plaintiff's request for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*. *See* Motion, ECF No. 27 at 18–19. Under the Declaratory Judgment Act, the Court may "declare the rights and other legal relations of any interested party." 28 U.S.C. § 2201. "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Declaratory relief is appropriate when (1) "the judgment will serve a useful purpose in clarifying and settling the legal relations in issue," and (2) "it will terminate and afford relief from the uncertainty . . . giving rise to the proceeding." *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir. 1984) (citations omitted). The existence of another adequate remedy does not preclude a declaratory judgment. Fed. R. Civ. Proc. 57; 28 U.S.C. § 2201. However, "courts have dismissed companion claims for declaratory relief where the breach of contract claims resolved the dispute completely and rendered additional relief inappropriate." *Davis v. Capitol Records, LLC,* No. 12-cv-1602, 2013 WL 1701746, at * *3-4 (N.D. Cal. Apr. 18, 2013).

In the Complaint, Plaintiff seeks declaratory judgment on three issues. First, Plaintiff seeks declaratory judgment that "Nexo is not entitled to suspend customer use of XRP for payments." Complaint, ECF No. 1 ¶ 178. Second, Plaintiff seeks declaratory judgment of the following:

> Nexo does not possess the unfettered right to change any material conditions for the use of the Nexo Crypto Credit; to suspend the provision of the Crypto Credit; or to change, suspend, disable, or discontinue any features or content of the Crypto Credit; and that Nexo may not take any such steps, even in good faith, without providing notice of such steps to its customers.

*Id.* ¶ 183. Third, Plaintiff seeks declaratory judgment that "under the applicable common law, with

respect to the collateral that Nexo's customers have posted, Nexo does not acquire the ownership of the collateral while the Nexo Crypto Credit is outstanding." *Id.* ¶ 189. Nexo argues that Plaintiff fails to state a claim for declaratory judgment under any of these theories. *See* Motion, ECF No. 27 at 18–19.

a. Nexo's Right to Suspend XRP

Nexo argues that Plaintiff's claim for declaratory judgment regarding Nexo's right to suspend XRP under the Borrow Terms fails because it is duplicative of Plaintiff's breach of contract claim. *See* Motion, ECF No. 27 at 18. In response, Plaintiff argues that his breach of contract claim might be resolved without resolving issues on which he seeks declaratory relief. *See* Opposition, ECF No. 35 at 15–16.

The Court agrees with Nexo. As alleged, the question of whether Nexo is entitled to suspend customer use of XRP for payments is duplicative of Plaintiff's breach of contract claim. *See, e.g.*, Complaint, ECF No. 1 ¶¶ 168–70. Plaintiff has failed to allege sufficient facts to support that a resolution of his breach of contract claim would not completely resolve the question of whether Nexo is entitled to suspend the use of XRP for payments.

Accordingly, the Court finds that Plaintiff has inadequately pled a claim for declaratory relief based on the question of whether Nexo had the right to suspend customer use of XRP for payments. *See, e.g.*, *Tyler v. Travelers Com. Ins. Co.*, 499 F.Supp.3d 693, 702 (N.D. Cal. 2020) ("Where a claim for declaratory relief is merely duplicative of other causes of action asserted by a plaintiff, dismissal is proper.")

b. Nexo's "Unfettered" Rights

The parties raise the same arguments for Nexo's declaratory judgment claim seeking to clarify that Nexo does not possess certain "unfettered" rights under the Borrow Terms. *See* Motion, ECF No. 27 at 18; Opposition, ECF No. 35 at 15–16. To support that this issue might not be resolved by the breach of contract claim, Plaintiff argues that the Court might find that Nexo breached the Borrow Terms by suspending XRP without resolving whether Nexo breached by failing to give notice of the XRP suspension. *See* Opposition, ECF No. 35 at 15–16.

The Court agrees with Plaintiff. As the Court outlined above, Nexo's right to suspend the

use of particular cryptocurrencies on its platform without notice is supported by provisions of the Borrow Terms outside of the provision allegedly conferring Nexo with certain "unfettered" rights to modify the Nexo Crypto Credit. *See, e.g.*, Trenchev Decl., ECF No. 27-1, Ex. D, Borrow Terms § IV.1 ("All such Digital Assets are indicated on the Nexo Platform and in the Nexo Account and are subject to revision from time to time."); *id.* § VIII.2 ("Certain rules may apply to repayments from time to time, as indicated on the Nexo Platform."). Accordingly, there is a possibility that the Court could resolve Plaintiff's breach of contract claim without reaching the issue of whether Nexo had the "unfettered" rights provided in Section III.3 of the Borrow Terms. Courts decline to dismiss declaratory judgment claims "where a breach of contract claim will not settle all of the contractual issues concerning which plaintiff seeks declaratory relief." *See Teague v. Biotelemetry, Inc.*, No. 16–cv–06527–TSH, 2018 WL 5310793, at *13 (N.D. Cal. Oct. 25, 2018). Further, Nexo's assertion in its briefing that it "can suspend all or part of the Nexo services that it provides on its platform" confirms that the parties have a dispute about Nexo's rights under the Borrow Terms. *See* Motion, ECF No. 27 at 15; *Pac. Coal & Oil*, 312 U.S. at 273; *see also* Complaint, ECF No. 1 ¶¶ 68–69.

Based on the above reasoning, the Court finds that Plaintiff has adequately pled a declaratory judgment claim regarding whether Nexo has certain "unfettered" rights regarding the Nexo Crypto Credit under the Borrow Terms.

c. Ownership

Nexo argues that none of the declarations Plaintiff seeks regarding Nexo's "ownership" of users' collateral has any connection to Plaintiff's damages or claims. *See* Motion, ECF No. 27 at 18–19. Accordingly, Nexo argues that the requested declarations would serve no purpose for settling or clarifying this case. *See id*. Further, Nexo argues that Plaintiff is improperly seeking a retrospective advisory opinion that his rights were violated. *Id.* at 19. In response, Plaintiff argues that the ownership of collateral issue is (1) relevant to his UCL deceptive and misleading advertising claim; (2) relevant to his CLRA claim regarding unconscionable contractual provisions; and (3) determinative of tax consequences for Plaintiff and Nexo's customers. *See* Opposition, ECF No. 35 at 16.

The Court agrees with Plaintiff. Since Plaintiff's CLRA claim is inadequately pled and this case has nothing to do with Plaintiff or Nexo's customers' tax liability, Plaintiff's proffered second and third grounds for his ownership-related declaratory judgment claim are inadequate. However, the Court agrees with Plaintiff that the ownership issue is relevant to Plaintiff's UCL unfair advertising claim, which the Court finds Plaintiff has properly pled, as outlined below. Accordingly, resolving the ownership issue "will serve a useful purpose in clarifying and settling the legal relations in issue[.]" *Bilbrey*, 738 F.2d at 1470.

Based on the above reasoning, the Court finds that Plaintiff has plausibly pled a declaratory judgment claim based on the issue of whether Nexo has ownership over Nexo Crypto Credit users' collateral.

* * *

Accordingly, the Court DENIES Nexo's Motion to Dismiss the declaratory judgment claims based on Nexo's "unfettered" rights and the question of Nexo's ownership over users' collateral. *See* Complaint, ECF No. 1 ¶¶ 183, 189. The Court GRANTS WITHOUT LEAVE TO AMEND Nexo's Motion to Dismiss the declaratory judgment claim based on Nexo's right to suspend XRP, since amendment would be futile as to this duplicative claim. *See* Complaint, ECF No. 1 ¶ 178; *Eminence Capital*, 316 F.3d at 1052.

**3. CLRA Claim**

In Claim Four, Plaintiff pleads that Nexo violated the CLRA. *See* Complaint, ECF No. 1 ¶ 206–214. Nexo argues Plaintiff's CLRA claim should be dismissed because the CLRA does not apply to an extension of credit. *See* Motion, ECF No. 27 at 19–21. The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices . . . undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770(a). "Goods" means "tangible chattels bought or leased for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for these goods, and including goods that, at the time of the sale or subsequently, are to be so affixed to real property as to become a part of real property, whether or not they are severable from the real property." Cal. Civ. Code § 1761(a). "Services" means "work, labor, and services for

other than a commercial or business use, including services furnished in connection with the sale or repair of goods." Cal. Civ. Code § 1761(b). The CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760.

Plaintiff alleges in the Complaint that the Nexo Crypto Credit is a "service" under the CLRA. *See* Complaint, ECF No. 1 ¶ 207. Nexo argues that since an extension of credit like it provides through Nexo Crypto Credit is not a "service" and no "ancillary services" exception applies, the CLRA is inapposite. *See* Motion, ECF No. 27 at 19–21. In response, Plaintiff argues that Nexo offers a "service" under the CLRA by providing and maintaining an online platform that Nexo continually updates. *See* Opposition, ECF No. 35 at 16–17. Plaintiff points to customers' ability to use the Nexo platform to maintain their LTV ratios and to use a cryptocurrency exchange. *See id.* Further, Plaintiff points to statements on Nexo's website referring to Nexo's "service" and "services." *Id.* at 17.

The Court agrees with Nexo. In *Berry*, the California Court of Appeal held that an extension of credit was neither a "good" nor a "service" under the CLRA. *See Berry v. Amer. Express Publ'g, Inc.*, 147 Cal.App.4th 224, 229, 233 (2007). In finding that an extension of credit was not a "good" under the CLRA, the court found that it was not a "tangible chattel" as the CLRA requires. *Id.* at 229 (citing Cal. Civ. Code § 1761(a)). While the Court acknowledged that a credit card is tangible, it "has no intrinsic value and exists only as indicia of the credit extended to the card holder," so it is not a "good" under the CLRA. *Id.* In *Fairbanks*, the California Supreme Court took the *Berry* court's holding a step further, finding that ancillary services offered by the sellers of intangible goods did not bring those goods within the purview of the CLRA. *See Fairbanks v. Super. Ct.*, 46 Cal.4th 56, 65 (2009). Otherwise, courts would "defeat the apparent legislative intent in limiting the definition of 'goods' to include only 'tangible chattels.'" *Id.* In light of *Berry* and *Fairbanks*, many courts have found that offering services in connection with loans does not bring a party within the purview of the CLRA. *See, e.g.*, *Alborzian v. JPMorgan Chase Bank, N.A.*, 235 Cal.App.4th 29, 40 ("Chase loaned plaintiffs money. A mortgage loan is not a 'good' because it is not a 'tangible

chattel;' it is not a 'service' because it is not 'work, labor, or services . . . furnished in connection with the sale or repair of goods.'") (quoting Cal. Civ. Code § 1761(a), (b)); *Mazonas v. Nationstar Mortgage LLC*, No. 16–cv–00660–RS, 2016 WL 2344196, at *4 (N.D. Cal. May 4, 2016) (home loan servicer not subject to CLRA); *Consumer Sols. REO, LLC v. Hillery*, 658 F.Supp.2d 1002, 1016 (N.D. Cal. 2009) ("Because [defendant] has challenged only the validity of the mortgage loan and not any nonancillary services related to the loan, the Court dismisses the CLRA claim with prejudice."); *see also Meyer v. Capital All. Grp.*, No. 15–CV–2405–WVG, 2017 WL 5138316, at *6 (S.D. Cal. Nov. 6, 2017) ("Short-term business loans are not materially distinguishable from the mortgage loans at issue in *Alborzian*—at bottom, both are contractual obligations to lend money.") (citing *Alborzian*, 235 Cal.App.4th 29). Courts have also found virtual currencies to be outside the purview of the CLRA, since they "exist only as an indicia of the credit extended" like in *Berry*. *See Doe v. Epic Games, Inc.*, 435 F.Supp.3d 1024, 1046 (N.D. Cal. 2020); *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F.Supp.2d 989, 1007–1009 (N.D. Cal. 2012).

In light of the caselaw, the Court finds that Plaintiff has not alleged sufficient facts to support that the CLRA applies to the present case. Plaintiff alleges that Nexo violated the CLRA via unconscionable contractual provisions pertaining to Nexo Crypto Credit. *See* Complaint, ECF No. 1 ¶¶ 211–12. Plaintiff has not alleged sufficient facts to show that the loans Nexo offers through Nexo Crypto Credit are a "service" under the CLRA. Under *Berry*, a loan is not a "good" under the CLRA because it is not a "tangible chattel." *Berry*, 147 Cal.App.4th at 229; *Alborzian*, 235 Cal.App.4th at 40. Further, under *Fairbanks*, Plaintiff cannot bring an intangible good like a loan within the purview of the CLRA by pointing to Nexo's ancillary services related to the loan. *Fairbanks*, 46 Cal.4th at 65; *Hillery*, 658 F.Supp.2d at 1016. Here, Plaintiff points to Nexo's online platform as the "service" that Nexo provides, which (1) allows users to maintain their LTV ratios through their own acts or through "automatic transfers that Nexo oversees and implements" and (2) allows users to use a cryptocurrency exchange. *See* Opposition, ECF No. 35 at 16. The Court finds that Plaintiff has failed to allege these features of Nexo's website are anything more than ancillary services related to the offering of a loan. For example, based on Plaintiff's allegations, the LTV ratio aspect of the website is merely a service to maintain a user's eligibility for a loan. *See, e.g.*,

Complaint, ECF No. 1 ¶ 3–4. Further, the Court does not see how Nexo's alleged "service" of allowing users to use a cryptocurrency exchange is related to Plaintiff's CLRA allegations, which pertain exclusively to allegedly unconscionable contract provisions related to cash loans it provides through Nexo Crypto Credit. *See id.* ¶¶ 211–12. Additionally, just as with an extension of credit, the underlying "good" in a cryptocurrency exchange is not a "tangible chattel." *See Epic Games*, 435 F.Supp.3d at 1046; *Fife v*, 905 F.Supp.2d at 1007–1009. Accordingly, the Court finds that Plaintiff has not pled sufficient facts regarding the services Nexo provides to show that the CLRA applies to Nexo's alleged conduct.

Plaintiff cites the *In re Yahoo* case in support of its position that the services Nexo offers via its online platform bring it within the purview of the CLRA. *See* Opposition, ECF No. 35 at 16–17 (citing *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F.Supp.3d 1113 (N.D. Cal. 2017)). In the *Yahoo* case, the court found that Yahoo provides a "service" under the CLRA where "Plaintiffs have signed up for accounts on a web-based platform, maintained by Yahoo, where they can engage in activities ranging from private email communication to bank and stock trading to photo storage." *Yahoo*, 313 F.Supp.3d at 1142. The Court finds the present case to be factually distinguishable. First, rather than pertaining to an extension of credit, which courts have repeatedly found to be an intangible good outside the purview of the CLRA, *Yahoo* pertained primarily to an email service. *Id.* at 1140. Second, the alleged violations at the heart of *Yahoo* constituted conduct that allegedly led to several data breaches that allowed access to users' Yahoo accounts. *Id.* at 1122–24. Under these facts, the wide variety of services Yahoo offered to users who signed up for accounts was relevant to the underlying allegations. In the present case, the variety of alleged services Nexo offered users with accounts is irrelevant to the underlying allegations, which pertain exclusively to the offering of loans through Nexo Crypto Credit. Accordingly, the Court finds the *Yahoo* case to be inapposite.

Plaintiff further argues that the Court should find that Nexo offers a "service" under the CLRA in light of the CLRA provision that indicates it should be "liberally construed and applied to promote its underlying purposes[.]" *See* Opposition, ECF No. 35 at 17 (citing Cal. Civ. Code § 1760). This Court agrees with the many courts that have rejected this argument as an attempt to

rewrite the CLRA under the guise of a broad construction. *See, e.g.*, *Berry*, 147 Cal.App.4th at 232 ("Although CLRA has been interpreted broadly, courts have not expanded it beyond its express terms."); *Fife*, 905 F.Supp.2d at 1008–1009; *Fairbanks*, 46 Cal.4th at 64.

Additionally, Plaintiff argues that Nexo has repeatedly represented itself as offering a "service." *See* Opposition, ECF No. 35 at 17 (citing Complaint ¶ 208). Plaintiff argues that the *In re Yahoo* court found similar facts to support that Yahoo plausibly offered a "service" under the CLRA. *Id.* (citing *Yahoo*, 313 F.Supp.3d at 1142). While the *Yahoo* court found that Yahoo's references to its "service" supported that the CLRA applied, this was in the context of a factually distinguishable case, as the Court outlined above. *See id.* at 1122–24. The Court finds that while Nexo's representations about its "service" may marginally support Plaintiff's position, they are not enough to overcome the fact that Plaintiff has failed to allege that Nexo offered anything more than intangible goods and ancillary services. *See, e.g.*, *Mazonas*, 2016 WL 2344196, at *4.

Accordingly, the Court finds that Plaintiff has not alleged sufficient facts to support that Nexo offered "services" under the CLRA. Nexo's Motion to Dismiss Plaintiff's CLRA claim is hereby GRANTED. Nexo argues that the appropriate outcome is dismissal of Plaintiff's CLRA claim with prejudice. *See* Motion, ECF No. 27 at 21. The Court agrees. Given that the Nexo Crypto Credit comprises services related to two intangible goods (cryptocurrencies and loans), the Court does not see how Plaintiff could amend its claims to plausibly allege that Nexo offers anything other than intangible goods and ancillary services—neither of which courts consider to be within the purview of the CLRA. Finding that amendment would be futile, the Court DISMISSES Plaintiff's CLRA claim WITHOUT LEAVE TO AMEND. *See Eminence Capital*, 316 F.3d at 1052.

**4. UCL Claim**

Nexo seeks to dismiss Plaintiff's UCL claim under the (1) unlawful, (2) unfair, and (3) unfair, deceptive, untrue, or misleading advertising prongs. Under the UCL, any person or entity that has engaged, is engaging or threatens to engage "in unfair competition may be enjoined in any court of competent jurisdiction." Cal. Bus. & Prof. Code §§ 17201, 17203. "Unfair competition" includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." *Id.* § 17200. The UCL's "coverage is sweeping, embracing anything that

United States District Court
Northern District of California

can properly be called a business practice and that at the same time is forbidden by law." *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999) (internal quotations and citation omitted). The UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Id.* (internal quotations and citation omitted). Further, the UCL creates "three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Id.*

a. Unlawful Prong

For the unlawful prong of the UCL, Plaintiff argues that his breach of contract and CLRA claims serve as predicate violations for the UCL claim. *See* Complaint, ECF No. 1 ¶¶ 192–93; Opposition, ECF No. 35 at 18. Nexo argues that Plaintiff has not adequately alleged a predicate violation of the UCL, because his other claims fail. *See* Motion, ECF No. 27 at 22.

The Court agrees with Nexo. Since Plaintiff's breach of contract and CLRA claims are insufficiently pled, the Court finds that Plaintiff has not adequately alleged a predicate violation for his UCL unlawful prong claim.

Accordingly, the Court GRANTS Nexo's motion to dismiss as to Plaintiff's UCL unlawful prong claim. Because leave to amend is allowed on the breach of contract claim, Plaintiff is granted leave to amend this claim as well.

b. Unfair Prong

For the unfair prong of the UCL, Plaintiff alleges that (1) Nexo's suspension of XRP and (2) Nexo's failure to provide notice of the suspension of XRP constituted unfair business practices. *See* Complaint, ECF No. 1 ¶¶ 194–95. Nexo argues that Plaintiff fails to state a claim for the same reasons he failed to state a claim for breach of contract. *See* Motion, ECF No. 27 at 22. Plaintiff argues that he has adequately alleged that Nexo's suspension and failure to provide notice of that suspension was unfair, because it was substantially injurious to consumers and for Nexo's own financial benefit. *See* Opposition, ECF No. 18.

The Court agrees with Nexo. Plaintiff failed to adequately plead that Nexo's suspension of XRP or its lack of notice regarding that suspension was a breach of contract. Further, Plaintiff fails to adequately allege that Nexo was not explicitly authorized by the Borrow Terms to suspend XRP

without notice.

Accordingly, the Court finds that Plaintiff has failed to adequately allege that Nexo's suspension of XRP or its lack of notice regarding that suspension were unfair business practices under the UCL. The Court GRANTS Nexo's motion to dismiss as to Plaintiff's UCL unfair prong claim WITH LEAVE TO AMEND.

c. Unfair, Deceptive, Untrue, or Misleading Advertising

Plaintiff alleges that Nexo violated the UCL by engaging in unfair, deceptive, untrue, or misleading advertising. Complaint, ECF No. 1 ¶¶ 196–97. Courts have interpreted "advertising" broadly to include essentially any statement made in connection with the sale of goods or services. *See Chern v. Bank of America*, 15 Cal.3d 866, 875–876 (1976). The test for unfair, deceptive, untrue, or misleading advertising is whether "members of the public are likely to be deceived." *In re Tobacco II Cases*, 46 Cal.4th 298, 312 (2009) (quotation marks and citation omitted). Whether the public is likely to be deceived is viewed through the lens of a "reasonable consumer." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1152, 1169 (9th Cir. 2012). Whereas a common law fraudulent deception must be (1) actually false, (2) known to be false by the perpetrator, and (3) reasonably relied upon by a victim (4) who incurs damages, none of these elements are required to state a claim for injunctive relief under the UCL. *Id.* (quoting *Day v. AT & T Corp.*, 63 Cal.App.4th 325, 332 (1998)).

Plaintiff alleges that Nexo violated the unfair, deceptive, untrue, or misleading advertising prong of the UCL by "using language on its website, in its whitepaper, and in online interviews" indicating that it did not acquire ownership of users' collateral. Yet according to Plaintiff's allegations, Nexo then proceeded to claim a contractual right of "ownership" over its customers' collateral following the suspension of XRP and the liquidation of users' collateral. *See* Complaint, ECF No. 1 ¶¶ 196–97, 112–17; *see also id.* ¶¶ 72, 99–103. Plaintiff also points to the following provision from Nexo's Borrow Terms: "Unless prohibited by any Applicable Law, by virtue of this Agreement Nexo acquires the ownership of the Collateral while the Nexo Crypto Credit is outstanding." *See* Trenchev Decl., ECF No. 27-1, Ex. D Borrow Terms § IV.5. Nexo seeks to dismiss this claim on the basis that none of Plaintiff's claims are predicated on and none of his

alleged damages flow from deceptive or misleading advertising about ownership. *See* Motion, ECF No. 27 at 22. Nexo further argues that its Borrow Terms provide a carve-out if the "ownership" provision is "prohibited by any Applicable Law." *See id.* at 17. In response, Plaintiff argues he has adequately pled that Nexo's false advertising was a violation of the UCL and that he has pled reliance and prospective damage. *See* Opposition, ECF No. 35 at 19. Plaintiff also argues that the carve-out in the "ownership" provision is insufficient to cure Nexo's false advertising violation, because as a default the Borrow Terms provide for Nexo's ownership of users' collateral. *See id.*

The Court agrees with Plaintiff. The only requirement of a UCL false advertising claim is that "members of the public are likely to be deceived." *Tobacco II*, 46 Cal.4th at 312. Accordingly, Nexo's arguments about damages are irrelevant. Additionally, the Court notes that Plaintiff alleges he "read and considered the Nexo whitepaper and description of the Nexo business and services on the Nexo website before deciding to use the Nexo Crypto Credit service." Complaint, ECF No. 1 ¶ 34; *see also id.* ¶ 115 (alleging that the whitepaper stated that "[c]lients retain 100% ownership of their digital assets"). Further, Nexo's argument about the "ownership" provision having a carveout goes to the weight of the evidence, particularly considering that Plaintiff alleges Nexo invoked this provision to justify its liquidation of users' collateral. *See* Complaint, ECF No. 1 ¶¶ 72, 99–103. Finding that Plaintiff has plausibly pled that a reasonable consumer would have been deceived by Nexo's public statements about lack of ownership over users' collateral given its alleged invocation of ownership to liquidate that collateral, the Court finds that Plaintiff has adequately pled a false advertising claim under the UCL.

* * *

Accordingly, the Court DENIES Nexo's motion to dismiss Plaintiff's UCL claim, because Plaintiff has adequately pled a claim under the unfair, deceptive, untrue, or misleading advertising prong. The Court GRANTS Nexo's motion to dismiss Plaintiff's UCL claim as to the unlawful and unfair prongs WITH LEAVE TO AMEND.

**5. UCL and CLRA Claims Under *Sonner***

In the Complaint, Plaintiff seeks equitable relief under the UCL and CLRA in addition to the legal remedies he seeks for breach of contract. *See, e.g.*, Complaint, ECF No. 1 ¶¶ 134–41.

Under the UCL, Plaintiff seeks restitutionary disgorgement for the value of collateral Nexo allegedly wrongfully liquidated.  *See id.* ¶¶ 198–99.  Further, under the UCL and CLRA, Plaintiff seeks an injunction precluding Nexo from invoking certain contractual provisions that purportedly allow it to suspend borrowing services without notice and to liquidate collateral on the basis that it owns the collateral.  *See id.* ¶¶ 200, 210–13.  Plaintiff alleges that without an injunction, UCL and CLRA Subclass members will suffer irreparable injury and lack an adequate legal remedy if Nexo invokes these contractual provisions against the interests of the Subclasses in the future.  *See id.* ¶¶ 200–201, 213–14.

Nexo argues that Plaintiff's UCL and CLRA claims should be dismissed because (1) he cannot seek equitable remedies where he has not adequately alleged that legal remedies are inadequate under the *Sonner v. Premier Nutrition Corp.* case and its progeny and (2) he has not pled how his restitutionary disgorgement claim under the UCL is different from damages.  *See* Motion, ECF No. 27 at 21–22 (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020)).  In response, Plaintiff argues that (1) the equitable remedies he seeks under the CLRA and UCL are in addition to any remedies at law, (2) his restitutionary disgorgement claim is brought in the alternative to contract damages, which courts allow at the pleading stage, and (3) the injunctive relief he claims is a distinct remedy from contract damages, because his injunctive relief claim is forward looking.  *See* Opposition, ECF No. 35 at 17–18.  On reply, Nexo argues that many courts have dismissed equitable relief claims under *Sonner* at the pleading stage.  *See* Reply, ECF No. 41 at 14–15.

*Sonner* pertained to a plaintiff with claims for both damages and equitable relief under the UCL and CLRA who dropped all claims for legal remedies on the eve of trial in the interest of securing a bench trial rather than trying her case before a jury.  *See Sonner*, 971 F.3d at 837.  The Ninth Circuit upheld the district court's dismissal of her equitable restitution claim on the basis that the plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA."  *Id.* at 844.  Since *Sonner*, courts have held that it extends to claims for injunctive relief in addition to equitable restitution.  *See, e.g., In re Macbook Keyboard Litig.*, No. 5:18–cv–02813–EJD, 2020 WL 6047253, at **2–3 (N.D. Cal. Oct.

13, 2020).

As a threshold matter, the Court considers to what extent *Sonner* is applicable to the pleading stage. Courts in the Ninth Circuit are divided on how exacting of a standard *Sonner* imposes on plaintiffs who plead claims for equitable and legal remedies at the pleading stage. *See, e.g.*, *Byton N. Am. Co. v. Breitfeld*, No. CV 19–10563–DMG (JEMx), 2020 WL 3802700, at *9 (C.D. Cal. Apr. 28, 2020) (referencing an "intra-circuit split on the issue of whether courts may allow UCL claims to proceed past the pleading stage when other adequate remedies exist") (citing *Eason v. Roman Catholic Bishop of San Diego*, 414 F. Supp. 3d 1276, 1282 (S.D. Cal. 2019)). The Court finds that *Sonner* has limited applicability to the pleading stage because it pertained to circumstances in which a plaintiff dropped all damages claims on the eve of trial. *See Sonner*, 971 F.3d at 837. Accordingly, *Sonner* provides limited guidance for pleading claims for legal and equitable relief. Therefore, the Court is more inclined to agree with those courts that do not consider *Sonner* to impose strict requirements at the pleading stage. *See, e.g.*, *Freeman v. Indochino Apparel, Inc.*, 443 F.Supp.3d 1107, 1114 (N.D. Cal. 2020) ("Plaintiff may allege claims in the alternative at the pleading stage. The equitable remedies afforded by the UCL and CLRA are expressly stated to be in addition to other available remedies at law."); *Byton*, 2020 WL 3802700, at *9 ("[T]he Ninth Circuit's general rule is that plaintiffs may plead alternative claims, even if those claims are inconsistent."). With this in mind, the Court proceeds to its analysis of Plaintiff's UCL and CLRA claims.

Regarding Plaintiff's claims for injunctive relief, as outlined above, the Court finds that Plaintiff has not alleged sufficient facts to show that Plaintiff has Article III standing. Accordingly, the Court declines to address whether Plaintiff's allegations are sufficient to support his claim for injunctive relief alongside his claim for contract damages. Further, since the Court dismisses Plaintiff's CLRA claim without leave to amend, it will not consider whether Plaintiff properly seeks equitable relief under that claim. Therefore, the only remaining issue related to *Sonner* and equitable relief before the Court is Plaintiff's claim for equitable restitution under the UCL.

Regarding Plaintiff's equitable restitution claim, the parties disagree as to whether Plaintiff can seek equitable restitution and contract damages in the alternative. Nexo points to district court

caselaw holding that a plaintiff cannot plead equitable restitution under the UCL in the alternative to damages. *See* Motion, ECF No. 27 at 21; Reply, ECF No. 41 at 14–15. Plaintiff points to countervailing district court case law finding that pleading an equitable restitution claim in the alternative is appropriate at the pleading stage. The Court finds that in light of *Sonner*'s limited applicability to the pleading stage, there is no binding precedent that holds that pleading equitable restitution in the alternative is improper. *See Freeman*, 443 F.Supp.3d at 1114; *Summit Est., Inc. v. United Healthcare Ins. Co.*, No. 4:19–cv–06724 YGR, 2020 WL 5436655, at *9 (N.D. Cal. Sept. 10, 2020); *Byton*, 2020 WL 3802700, at *9; *Sagastume v. Psychemedics Corp.*, 2020 WL 8175597, at *7 (C.D. Cal. Nov. 30, 2020) ("*Sonner* does not hold that plaintiffs may not seek alternative remedies at the pleading stage.") (citations omitted); *Krause-Pettai v. Unilever United States, Inc.*, No 20cv1672 DMS (BLM), 2021 WL 1597931, at *4 (S.D. Cal. Apr. 23, 2021). Further, given the general liberal policy courts have toward pleading in the alternative, this Court finds that Plaintiff may proceed with his equitable restitution claim at this stage even though he is also seeking contract damages. *See, e.g.*, Fed. R. Civ. Proc. 8(a)(3); *Byton*, 2020 WL 3802700, at *9. While the Court may reassess at a later stage of the case, it declines to trim out Plaintiff's equitable restitution claim at this early stage.

Accordingly, the Court finds that Plaintiff has adequately pled a claim for equitable restitution under the UCL.

**D. Motion to Dismiss Under the *Forum Non Conveniens* Doctrine**

Nexo seeks to dismiss Plaintiff's breach of contract and declaratory judgment claims under the *forum non conveniens* ("FNC") doctrine based on forum selection clauses in its Borrow Terms and Wallet Terms. *See* Motion, ECF No. 27 at 23; Reply, ECF No. 41 at 15. "[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens." *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 60 (2013). Federal law applies to interpretation of forum selection clauses. *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). A forum selection clause "must contain language that clearly designates a forum as the exclusive one." *N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir. 1995). An ambiguous

forum selection clause should be interpreted against the drafter. *See Doe 1 v. AOL LLC*, 552 F.3d 1077, 1082 n.10 (9th Cir. 2009); *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 78 (9th Cir. 1987); *see also Dodd v. iGATE Techs., Inc.*, No. 15–cv–00431–VC, 2015 WL 1843036, at * 1 (N.D. Cal. Apr. 8, 2015).

Plaintiff alleges that the terms that govern the Nexo Crypto Credit are the Borrow Terms. *See* Complaint, ECF No. 1 ¶¶ 8, 39; Opposition, ECF No. 35 at 20. Plaintiff alleges that the forum selection clause in Nexo's Borrow Terms indicates that any dispute shall be referred to a court as determined by the procedural law of "Nexo jurisdiction," which is an undefined term. *See* Complaint ¶ 40; *see also id.* ¶ 43 (general terms and conditions cite "Website Owner's jurisdiction"). Plaintiff alleges that the undefined term "Nexo jurisdiction" renders the forum selection clause unenforceable, or it should be interpreted to mean that Nexo consents to jurisdiction in California, given the business Nexo does in the state. *See id.* ¶¶ 40–42.

Nexo argues that the Court should dismiss Plaintiff's breach of contract and declaratory judgment claims because of a forum selection clause found in a separate agreement—Nexo's Wallet Terms, which Nexo asserts that all users of the Nexo platform agree to. *See* Motion, ECF No. 27 at 3. Nexo argues that the Wallet Terms indicate that any disputes "shall be referred to the competent court in London, England, determined as per the procedural law of England and Wales" and governed by the substantive law of England and Wales. *Id.* at 23–25 (citing Trenchev Decl., ECF No. 27-1, Ex. B, Wallet Terms § XVIII.1-.2). In response, Plaintiff argues that (1) the Borrow Terms, not the Wallet Terms, apply to this dispute; (2) the Borrow and Wallet Terms do not cross-reference each other; and (3) this is underscored by Nexo's attempt to add a definitional cross-reference between the Borrow and Wallet Terms since December 2020. *See* Opposition, ECF No. 35 at 19–21. On reply, Nexo argues that since all Nexo users must agree to the Wallet Terms in signing up for an account, and since the Wallet Terms contain various references to the Nexo Crypto Credit service as part of its "Wallet Services," the Court should interpret "Nexo jurisdiction" in the Borrow Terms to refer to the U.K. jurisdiction laid out in the Wallet Terms. *See* Reply, ECF No. 41 at 15.

The Court agrees with Plaintiff. The Borrow Terms—not the Wallet Terms—are at issue in

this case. Plaintiff's allegations pertain to Nexo's lending practices through its Nexo Crypto Credit service, which is governed by the Borrow Terms. *See* Trenchev Decl., ECF No. 27-1, Ex. D, Borrow Terms § I.1 ("These Nexo Crypto Credit General Terms and Conditions govern…your use of cryptocurrency credit facilities granted by Nexo[.]"). While the Complaint references the Borrow Terms throughout, it does not reference the Wallet Terms at all. Even Nexo cites almost exclusively to the Borrow Terms in its briefing supporting the Motion, citing the Wallet Terms only for the forum selection clause and some stray references to other clauses in the "Factual Background" section of the Motion. *See* Motion, ECF No. 27 at 4, 23–25; Reply, ECF No. 41 at 1, 15. Further, since the Borrow Terms provide the more specific provisions governing the Nexo Crypto Credit service, they should govern over the more general provisions of the Wallet Terms. *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1063 (9th Cir. 2020).

The forum selection clause in the Borrow Terms provides the following:

> XV. GOVERNING LAW AND JURISDICTION
>
> 1. The Agreement shall be governed exclusively by the substantive law of Nexo jurisdiction.
>
> 2. Any dispute arising out of or in connection with the Agreement (the General Terms), unless amicably settled between the Parties, shall be referred to the competent court or other dispute resolution authority, determined as per the procedural law of Nexo jurisdiction. You agree that any dispute resolution proceeding subject to the Applicable Law under the preceding sentence shall be conducted only on an individual basis and not as a plaintiff or class member in any purported class, consolidated or representative action or proceeding. No court or other dispute resolution authority can consolidate or join more than one claim and can otherwise preside over any form of a consolidated, representative, or class proceeding. Any relief awarded cannot affect other Clients of Nexo.

Trenchev Decl., ECF No. 27-1, Ex. D, Borrow Terms § XV.1–.2. The term "Nexo jurisdiction" is not defined in the Borrow Terms. *See id.* § II ("Definitions"). Since this clause does not "clearly designate[] a forum as the exclusive one," the Court finds that it is not enforceable as a mandatory forum selection clause. *See Pittsburg-Des Moines Steel*, 69 F.3d at 1037. Moreover, to the extent this clause is ambiguous, it should be construed against Nexo as the drafter of the contract. *See* Complaint, ECF No. 1 ¶¶ 40–41; *AOL*, 552 F.3d at 1082 n.10.

Nexo argues that "Nexo jurisdiction" in the Borrow Terms should be interpreted to mean the U.K. jurisdiction referred to in the Wallet Terms, which all Nexo customers must agree to. Reply, ECF No. 41 at 15. Nexo points to the fact that the Wallet Terms list "Nexo Crypto Credit" and the "Digital Asset Wallet" necessary to obtain a Nexo credit line as examples of "Nexo Wallet Services." *Id.* (citing Trenchev Decl., ECF No. 27-1, Ex. B, Wallet Terms § III.1). Nexo further points to sections of the Wallet Terms generally describing a user's ability to use the Nexo Crypto Credit service to borrow against digital assets. *Id.* (citing Trenchev Decl., ECF No. 27-1, Ex. B, Wallet Terms §§ V.1, VI.1). The Court does not consider the Wallet Terms' minimal, generalized references to the Nexo Crypto Credit service (rather than the Borrow Terms themselves) sufficient to incorporate the exclusive forum from the Wallet Terms' forum selection clause into the Borrow Terms' forum selection clause. Nexo apparently did not consider these cross-references to be sufficient either—Plaintiff submits evidence that Nexo added a clause to the Borrow Terms since December 2020 incorporating definitions from the Wallet Terms into the Borrow Terms. *See* Decl. of Edward Normand, ECF No. 35-1 ¶¶ 3–4. Even if the Borrow Terms are read in light of the Wallet Terms, "Nexo jurisdiction" is still an undefined term. *See* Trenchev Decl., ECF No. 27-1, Ex. B, Wallet Terms § II ("Definitions"). Accordingly, the Court finds that the forum selection clause in the Wallet Terms does not change its interpretation of the Borrow Terms' forum selection clause.

Nexo's only basis for dismissal under the FNC doctrine is the forum selection clause in the Borrow Terms. *See* Motion, ECF No. 27 at 23. Since the Court finds that the Borrow Terms do not contain an enforceable forum selection clause, the Court declines to reach Nexo's public policy arguments in support of dismissal under the FNC doctrine. *Id.* at 23–25.

Accordingly, the Court DENIES Nexo's motion to dismiss Plaintiff's breach of contract and declaratory judgment claims under the FNC doctrine.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Nexo's Rule 12(b)(1) Motion to Dismiss for lack of subject matter jurisdiction is GRANTED WITH LEAVE TO AMEND as to (1) the breach of contract claim based on Nexo's failure to provide notice of liquidation and (2) the claims for injunctive relief and

DENIED as to all other claims;

2. Nexo's Rule 12(b)(2) Motion to Dismiss for lack of personal jurisdiction for Nexo Financial Services Ltd., Nexo Services OÜ, Nexo AG, and Nexo Financial LLC is GRANTED WITHOUT LEAVE TO AMEND;

3. Plaintiff's request for jurisdictional discovery is DENIED;

4. Nexo's Rule 12(b)(6) Motion to Dismiss Plaintiff's breach of contract claim is GRANTED WITH LEAVE TO AMEND;

5. Nexo's Rule 12(b)(6) Motion to Dismiss Plaintiff's declaratory judgment claim is GRANTED WITHOUT LEAVE TO AMEND as to Plaintiff's claim related to Nexo's right to suspend XRP and DENIED as to Plaintiff's other claims;

6. Nexo's Rule 12(b)(6) Motion to Dismiss Plaintiff's CLRA claim is GRANTED WITHOUT LEAVE TO AMEND;

7. Nexo's Rule 12(b)(6) Motion to Dismiss Plaintiff's UCL claim is GRANTED WITH LEAVE TO AMEND as to the unlawful and unfair prongs and DENIED as to the unfair, deceptive, untrue, or misleading advertising prong;

8. Nexo's Motion to Dismiss under the *forum non conveniens* doctrine is DENIED; and

9. Plaintiff SHALL have 21 days from the date of this Order to file an Amended Complaint.

Dated: January 19, 2022

Beth Labson Freeman

BETH LABSON FREEMAN
United States District Judge