EVERSHEDS SUTHERLAND (US) LLP
Ian S. Shelton (SBN 264863)
ianshelton@eversheds-sutherland.com
500 Capitol Mall, Suite 1750
Sacramento, CA 95814
Telephone:     (916) 844-2965
Facsimile:     (916) 241-0501

EVERSHEDS SUTHERLAND (US) LLP
Michael Bahar (admitted *pro hac vice*)
michaelbahar@eversheds-sutherland.com
700 Sixth Street, NW, Suite 700
Washington, DC  20001-3980
Telephone:  (202) 383-0882
Facsimile:   (202) 637-3593

*Attorneys for Defendant Nexo Capital Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUNHAN JEONG, individually and on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>NEXO CAPITAL INC.,<br><br>Defendant. | CASE NO. 5:21-CV-02392-BLF<br><br>The Honorable Beth Labson Freeman<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT (ECF 55) PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)**<br><br>Hearing Date:  July 21, 2022<br>Hearing Time: 9:00 a.m.<br><br>Courtroom:  No. 3, 5th Floor<br>Address:     U.S. Courthouse<br>            280 South 1st Street<br>            San Jose, CA 95113 |

MOTION TO DISMISS SECOND AMENDED COMPLAINT

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on July 21, 2022, at 9:00 a.m., or as soon thereafter as the matter may be heard in the above-entitled Court, located at San Jose Courthouse, Courtroom 3 – 5th Floor, 280 South 1st Street, San Jose, California 95113, the sole remaining Defendant Nexo Capital Inc. ("Nexo") will move this Court to dismiss the Second Amended Complaint (ECF 55) filed by Plaintiff Juhan Jeong ("Jeong") pursuant Federal Rule of Civil Procedure 12(b).

The Court previously issued a detailed order dismissing certain claims in Jeong's Original Complaint. ECF 48. As to those claims dismissed with leave to amend, the Court gave Jeong until February 9, 2022 to attempt to cure his pleading deficiencies in a First Amended Complaint. ECF 48 at 54-55. While Jeong filed his First Amended Complaint by the deadline (ECF 52), he retained an Estonian entity, Nexo Services OU, as a named defendant despite the fact that the Court previously dismissed that entity without leave to amend for lack of personal jurisdiction. ECF 48 at 55. Jeong also retained certain declaratory relief claims that the Court previously dismissed without leave to amend. *Id.*

After Nexo brought this issue to the attention of Jeong's counsel, Jeong filed a Second Amended Complaint (ECF 55) to correct these problems without Nexo's written consent or the Court's leave as required by Federal Rule of Civil Procedure 15(a)(2). While this unilateral second amendment was procedurally improper, because Jeong dropped Nexo Services OU and struck certain declaratory relief claims from his Second Amended Complaint, Nexo consents to the amendment retroactively and directs this motion to dismiss to the operative pleading—Jeong's Second Amended Complaint. *See Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) ("It is well-established in our circuit that an 'amended complaint supersedes the original, the latter being treated thereafter as non-existent.'") (internal citation omitted).

In particular, Nexo seeks the following relief with respect to the Second Amended

MOTION TO DISMISS SECOND AMENDED COMPLAINT

Complaint:

1. As to the first cause of action in the Second Amended Complaint, Nexo seeks Rule 12(b)(6) dismissal of the breach of contract claim based on "Nexo's suspension of XRP payments" because Sections III.3, IV.1, and VIII.2 of the Borrow Terms[1] expressly authorize Nexo to suspend XRP payments.

2. As to the first cause of action in the Second Amended Complaint, Nexo seeks Rule 12(b)(6) dismissal of the breach of contract claim based on "Nexo's failure to give notice of the [XRP] suspension" because Section III.3 of the Borrow Terms expressly authorize Nexo to suspend XRP payments "[a]t any time" and without notice.

3. As to the first cause of action in the Second Amended Complaint, Nexo seeks Rule 12(b)(6) dismissal of the breach of contract claim based on "Nexo's subsequent liquidation of the collateral" because Sections IV.3 and VI.2 of the Borrow Terms expressly authorize liquidation of the collateral for failure to maintain the required Loan-to-Value Ratio ("LTV").

4. As to the first cause of action in the Second Amended Complaint, Nexo seeks Rule 12(b)(6) dismissal of the breach of contract claim because Section XII.5 of the Borrow Terms contains a limitation of liability provision that bars Jeong's claim.

5. As to the first cause of action in the Second Amended Complaint, Nexo seeks Rule 12(b)(6) dismissal of the breach of contract claim, to the extent it is based entirely on the implied covenant of good faith and fair dealing, because the covenant cannot alter the express terms of a contract, and the Court already concluded there was no breach of the implied covenant.

6. As to the second cause of action in the Second Amended Complaint, Nexo seeks Rule 12(b)(6) dismissal of the declaratory judgment claim because it is not a stand-alone cause of action, and the substantive claims upon which it is based fail as a matter of law.

---

[1] All citations to the "Borrow Terms" refer to ECF 41-2.  For ease of reference, Nexo has attached the Borrow Terms, ECF 41-2, as Exhibit 1 to this motion.

7. As to the second cause of action in the Second Amended Complaint, Nexo seeks Rule 12(b)(6) dismissal of the declaratory judgment claim alleging that Nexo may not "suspend, disable, or discontinue any features or content of the Crypto Credit" because, to the extent Jeong is referring to suspension of XRP payments, such claim is duplicative of the breach of contract claim. To the extent Jeong seeks an advisory opinion on Nexo's ability to suspend other unidentified features of the platform in hypothetical future circumstances, Jeong lacks both Article III and UCL standing.

8. As to the second cause of action in the Second Amended Complaint, Nexo seeks Rule 12(b)(6) dismissal of the declaratory judgment claim alleging that "Nexo does not acquire the ownership of the collateral while the Nexo Crypto Credit is outstanding," to the extent Jeong is referring to liquidation of his collateral, because such claim is duplicative of the breach of contract claim. To the extent Jeong seeks an advisory opinion on Nexo's "ownership" of collateral at unidentified times in hypothetical future circumstances, Jeong lacks both Article III and UCL standing.

9. As to the third cause of action in the Second Amended Complaint, Nexo seeks Rule l2(b)(6) dismissal of the unfair competition law ("UCL") claim under the "unlawful" prong because Nexo did not commit any breach of contract. As to Jeong's contention that Nexo did not have a license, he fails to plausibly allege that a cryptocurrency credit line requires such a license, and he lacks both Article III and UCL standing because he did not suffer any injury from the alleged lack of licensure.

10. As to the third cause of action in the Second Amended Complaint, Nexo seeks Rule 12(b)(6) dismissal of the UCL claim under the "unfair" prong because Nexo did not act unfairly by engaging in conduct expressly authorized by the Borrow Terms.

11. As to the third cause of action in the Second Amended Complaint, Nexo seeks Rule 12(b)(6) dismissal of the UCL claim based on "deceptive" advertising because Jeong fails to plausibly allege it is deceptive given the disclosures in the Borrow Terms, and he lacks both Article III and UCL standing because he did not suffer any injury from the advertising.

MOTION TO DISMISS SECOND AMENDED COMPLAINT

12. As to the third cause of action in the Second Amended Complaint, Nexo seeks Rule 12(b)(1) dismissal of the UCL claim seeking injunctive relief for lack of Article III and UCL standing because Jeong fails to plead a likelihood of future harm to him as to the hypothetical issues for which he has suffered no injury.

13. As to the class allegations, Nexo seeks to dismiss or strike all three classes (the Damages Class, Equitable-Relief Class, and California UCL Class) based on the class action waiver in Section XV.2 of the Borrow Terms; dismiss or strike all three classes because the pleadings alone demonstrate that the requirements of commonality, typicality and adequacy cannot possibly be met; dismiss or strike the Equitable-Relief Class and the California UCL Class (to the extent the latter seeks equitable relief) for lack of Article III and UCL standing; and dismiss or strike the non-California class allegations as to the Damages Class and Equitable-Relief Class.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the pleadings and other papers on file in this action; and such other declarations, evidence, and argument as may be presented before or at the hearing.

DATED:   March 28, 2022                EVERSHEDS SUTHERLAND (US) LLP


                                       By /s/ Ian S. Shelton
                                          Ian S. Shelton

                                          *Attorneys for Defendant Nexo Capital Inc.*

MOTION TO DISMISS SECOND AMENDED COMPLAINT

1

# TABLE OF CONTENTS

2  INTRODUCTION .................................................................................................... 1

3  ARGUMENT ......................................................................................................... 3

4      I.      The Court Should Dismiss for Failure to State a Claim .......................... 3

5          A.      The Court Should Dismiss the Breach of Contract Claim with Prejudice ...................................................................................... 3

6

7                  1.      The Court's Prior Order Compels Dismissal of the Breach of Contract Claim with Prejudice .......................................... 3

8                  2.      The Court's Prior Order Compels Dismissal of the Implied Covenant Claim with Prejudice ....................................... 5

9

10          B.      The Court Should Dismiss the Declaratory Judgment Claim with Prejudice ...................................................................................... 6

11                  1.      Jeong's Declaratory Judgment Claim is Duplicative of his Breach of Contract Claim ....................................................... 8

12                  2.      Jeong Does Not Have Article III or UCL Standing to Seek an Advisory Opinion on Hypothetical Issues ....................................... 8

13

14          C.      The Court Should Dismiss the UCL Claim with Prejudice ....................... 11

15                  1.      Jeong Fails to Plausibly Allege that Nexo's Actions were Unlawful ...................................................................................... 11

16

17                  2.      Jeong Fails to Plausibly Allege that Nexo's Actions were Unfair ...................................................................................... 12

18                  3.      Jeong Fails to Plausibly Allege that Nexo's Advertising was Deceptive ................................................................................ 13

19

20      II.      The Court Should Strike the Class Allegations .................................................. 18

21          A.      The Court Should Strike the Class Allegations Based on the Class Action Waiver in the Borrow Terms .......................................... 18

22          B.      The Court Should Strike the Class Allegations Because Jeong's Individualized Claim is Facially Incompatible with Class Treatment ........ 19

23

24          C.      The Court Should Strike the Non-California Class Allegations as to the Damages Class and the Equitable-Relief Class Because Jeong Cannot Assert Claims on Behalf of Non-California Customers .................. 20

25  CONCLUSION ........................................................................................................ 23

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbit v. ING USA Annuity & Life Ins. Co.*,
    252 F. Supp. 3d 999 (S.D. Cal. 2017) ................................................................. 15

*Adkins v. Facebook, Inc.*,
    No. C 18-05982 WHA, 2019 U.S. Dist. LEXIS 134781 (N.D. Cal. Aug. 9,
    2019) .................................................................................................................... 5

*In re Adobe Sys. Privacy Litig.*,
    66 F. Supp. 3d 1197 (N.D. Cal. 2014) ................................................................. 8

*Aguilera v. Matco Tools Corp.*,
    No. 3:19-cv-01576-AJB-AHG, 2020 U.S. Dist. LEXIS 43283 (S.D. Cal. Mar.
    12, 2020)............................................................................................................... 7

*Austero v. Aurora Loan Servs.*,
    No. C-11-00490 JCS, 2011 U.S. Dist. LEXIS 86340 (N.D. Cal. Apr. 27, 2011) ...................... 4

*Bailey v. Vulcan Materials Co.*,
    No. 1:21-CV-0998-MHC, 2021 U.S. Dist. LEXIS 235444, at *6 (N.D. Ga. Nov.
    16, 2021)............................................................................................................... 19

*Birdsong v. Apple, Inc.*,
    590 F.3d 955 (9th Cir. 2009) ................................................................................ 7

*Bishay v. Icon Aircraft, Inc.*,
    No. 2:19-cv-00178-KJM-AC, 2019 U.S. Dist. LEXIS 124499 (E.D. Cal. July
    24, 2019)............................................................................................................... 5

*Bulletin Mktg. LLC v. Google LLC*,
    No. 17-cv-07211-BLF, 2018 U.S. Dist. LEXIS 117381 (N.D. Cal. July 13,
    2018) .................................................................................................................... 6

*Cardenas v. NBTY, Inc.*,
    870 F. Supp. 2d 984 (E.D. Cal. 2012)................................................................. 7

*Carpenter v. PetSmart, Inc.*,
    441 F. Supp. 3d 1028, 1039 (S.D. Cal. 2020) ..................................................... 21

*Churchill Vill., LLC v. GE Co.*,
    169 F.Supp.2d 1119 (N.D. Cal. 2000), *aff'd* 361 F.3d 566 (9th Cir. 2004)............................ 21

*Convergys Corp. v. NLRB*,
    866 F.3d 635 (5th Cir. 2017) ............................................................................... 19

*Cover v. Windsor Surry Co.*,
    No. 14-cv-05262-WHO, 2016 U.S. Dist. LEXIS 16475 (N.D. Cal. Feb. 10,
    2016) .......................................................................................................... 22

*Darnaa, LLC v. Google Inc.*,
    236 F. Supp. 3d 1116 (N.D. Cal. 2017) .................................................... 5

*Davis v. HSBC Bank*,
    691 F.3d 1152 (9th Cir. 2012) ................................................................ 15

*Davison v. Kia Motors Am., Inc.*,
    No. SACV 15-00239-CJC(RNBx), 2015 U.S. Dist. LEXIS 85080 (C.D. Cal.
    June 29, 2015).......................................................................................... 22

*Dinan v. SanDisk LLC*,
    No. 18-cv-05420-BLF, 2020 U.S. Dist. LEXIS 10155 (N.D. Cal. Jan. 22, 2020).................. 16

*Fisher v. Nationstar Mortg. LLC*,
    No. 17-cv-02994-BLF, 2018 U.S. Dist. LEXIS 69004 (N.D. Cal. Apr. 24, 2018) ............. 7, 12

*Gardiner v. Walmart, Inc.*,
    No. 20-cv-04618-JSW, 2021 U.S. Dist. LEXIS 211251 (N.D. Cal. July 28,
    2021) .......................................................................................................... 5

*Garza v. Bank of Am.*,
    No. 1:12cv0140 LJO DLB, 2012 U.S. Dist. LEXIS 17596 (E.D. Cal. Feb. 13,
    2012) ........................................................................................................ 10

*General Telephone Co. of the Southwest v. Falcon*,
    457 U.S. 147 (1982)................................................................................. 19

*Giotta v. Ocwen Fin. Corp.*,
    No. 15-cv-00620-BLF, 2015 U.S. Dist. LEXIS 167108 (N.D. Cal. Dec. 11,
    2015) ........................................................................................................ 12

*Hancock v. Jackson Hewitt Tax SVC., Inc.*,
    No. 1:19-CV-852-LY, 2020 U.S. Dist. LEXIS 84960, at *8 (W.D. Tex. May
    14, 2020)................................................................................................... 19

*Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*,
    No. 18-cv-06664-BLF, 2019 U.S. Dist. LEXIS 102023 (N.D. Cal. June 18,
    2019) ........................................................................................................ 13

*Kittel v. City of Oxnard*,
    No. CV-17-6709-MWF, 2018 U.S. Dist. LEXIS 238476 (C.D. Cal. Feb. 20,
    2018) ........................................................................................................ 19

*Koehler v. Litehouse, Inc.*,
    No. CV 12-04055 SI, 2012 U.S. Dist. LEXIS 176971 (N.D. Cal. Dec. 13, 2012).................. 21

MOTION TO DISMISS SECOND AMENDED COMPLAINT

*Korea Week, Inc. v. GOT Capital, LLC*,
   No. 15-6351, 2016 U.S. Dist. LEXIS 69646 (E.D. Pa. May 27, 2016) .................................. 19

*Larsen v. Vizio, Inc.*,
   No. SACV 14-01865-CJC, 2015 U.S. Dist. LEXIS 191757 (C.D. Cal. Apr. 21,
   2015) .......................................................................................................................... 22

*Lewis v. YouTube, LLC*,
   244 Cal. App. 4th 118 (2015) ................................................................................... 5

*Lincoln Ben. Life Co. v. Fundament*,
   No. SA CV 18-0260-DOC, 2018 U.S. Dist. LEXIS 139486 (C.D. Cal. Aug. 7,
   2018) ............................................................................................................................ 8

*Littlehale v. Hain Celestial Grp., Inc.*,
   No. C 11-6342 PJH, 2012 U.S. Dist. LEXIS 162530 (N.D. Cal. July 2, 2012) ...................... 22

*Livermore v. Wells Fargo Bank*,
   No. 17-cv-03347-BLF, 2017 U.S. Dist. LEXIS 209463 (N.D. Cal. Dec. 20,
   2017) .......................................................................................................................... 12

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ................................................................................... 22

*Morales v. Unilever U.S., Inc.*,
   No. 2:13-2213 WBS EFB, 2014 U.S. Dist. LEXIS 49336 (E.D. Cal. Apr. 9,
   2014) .......................................................................................................................... 21

*Palmer v. Convergys Corp.*,
   No. 7:10-cv-145 (HL), 2012 U.S. Dist. LEXIS 16200 (M.D. Ga. Feb. 9, 2012) .................... 19

*Perez v. Nidek*,
   711 F.3d 1109 (9th Cir. 2013) ................................................................................. 22

*Pulaski & Middleman, LLC v. Google, Inc.*,
   802 F.3d 979 (9th Cir. 2015) ................................................................................... 13

*Quynh Phan v. Sargento Foods, Inc.*,
   No. 20-cv-09251-EMC, 2021 U.S. Dist. LEXIS 103629 (N.D. Cal. June 2,
   2021) .......................................................................................................................... 20

*Rocha v. CIT Bank, N.A.*,
   No. 17-cv-05082-BLF, 2018 U.S. Dist. LEXIS 57671 (N.D. Cal. Apr. 3, 2018) .................... 13

*Rubio v. Capital One Bank*,
   613 F.3d 1195 (9th Cir. 2010) ................................................................................... 7

*Rugg v. Johnson & Johnson*,
   No. 17-cv-05010-BLF, 2018 U.S. Dist. LEXIS 101727 (N.D. Cal. Jun. 18,
   2018) ....................................................................................................................14, 16

*S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*,
    72 Cal. App. 4th 861 (1999) ................................................................................. 13

*Sanders v. Apple Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009) ................................................................. 18

*Sandoval v. Ali*,
    34 F. Supp. 3d 1031 (N.D. Cal. 2014) ................................................................. 18

*Schubert v. Anthem Blue Cross Life & Health Ins. Co.*,
    No. CV-14-06221-MWF-JC, 2015 U.S. Dist. LEXIS 200105 (C.D. Cal. Oct. 2,
    2015) ...................................................................................................................... 19

*Scripps Clinic v. Superior Court*,
    108 Cal. App. 4th 917 (2003) ............................................................................... 13

*Serpa v. SBC Telecomms., Inc.*,
    No. C 03-4223 MHP, 2004 U.S. Dist. LEXIS 18307 (N.D. Cal. Sep. 7, 2004)...................... 17

*Shin v. ICON Found.*,
    No. 20-cv-07363-WHO, 2021 U.S. Dist. LEXIS 245897 (N.D. Cal. 2021)........................... 10

*Simon Greenstone Panatier Bartlett PC v. John Crane, Inc.*,
    No. 2:16-cv-01179-CBM-AGR, 2016 U.S. Dist. LEXIS 126402 (C.D. Cal.
    Aug. 26, 2016) ........................................................................................................ 9

*Stevens v. Britax Child Safety, Inc.*,
    No. 2:20-cv-07373-MCS-AS, 2021 U.S. Dist. LEXIS 252732 (C.D. Cal. July
    13, 2021) ................................................................................................................. 9

*Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*,
    100 Cal. App. 4th 44 (2002) ............................................................................. 5, 6

*Third Story Music, Inc. v. Waits*,
    41 Cal. App. 4th 798 (1995) ................................................................................. 17

*Tyler v. Travelers Commer. Ins. Co.*,
    499 F. Supp. 3d 693 (N.D. Cal. 2020) ................................................................... 8

*U1it4less, Inc. v. FedEx Corp.*,
    No. 11-cv-1713 (KBF), 2015 U.S. Dist. LEXIS 82933, at *9 (S.D.N.Y. June 25,
    2015) ...................................................................................................................... 19

*Watson v. Bank of Am., Nat'l Ass'n*,
    No. 16cv513-GPC(MDD), 2016 U.S. Dist. LEXIS 85580 (S.D. Cal. June 30,
    2016) ....................................................................................................................... 6

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) .............................................................................. 11

MOTION TO DISMISS SECOND AMENDED COMPLAINT

*York v. Am. Sav. Network, Inc.*,
  2:15-cv-0563 KJM DB, 2017 U.S. Dist. LEXIS 129131, at *6 (E.D. Cal. Aug.
  11, 2017)..................................................................................................................... 13

*Zeiger v. WellPet LLC*,
  304 F. Supp. 3d 837 (N.D. Cal. 2018) ................................................................... 22

MOTION TO DISMISS SECOND AMENDED COMPLAINT

**INTRODUCTION**

This case remains a meritless breach of contract case, notwithstanding Jeong's second attempt to rewrite the Borrow Terms through the implied covenant and the UCL, and to obtain advisory opinions on hypothetical questions untethered to his individualized claim for past damages. Nexo's suspension of XRP as a repayment option in response to an SEC enforcement action and liquidation of Jeong's collateral for breach of his LTV obligation was authorized by contract. Jeong fails to state a plausible claim on an individual or class action basis.

*First*, the Court correctly dismissed Jeong's breach of contract claim the first time when it concluded that the Borrow Terms *expressly authorize* the suspension of XRP as a repayment option and *do not* require notice of suspension of a particular cryptocurrency or payment method. ECF 48 at 32-33. While the Court previously granted leave to amend, Jeong did not—and cannot—add anything to his Second Amended Complaint to cure this fatal pleading defect. The Borrow Terms say what they say, and Jeong agreed to them before obtaining his six-figure cryptocurrency credit line. Unable to alter the black-letter text of the Borrow Terms, Jeong relies entirely on the implied covenant of good faith and fair dealing to rewrite the contract, but this Court already rejected the same argument in its prior order—Nexo's suspension of XRP as a repayment option in response to SEC action did not render the contract illusory or frustrate its purpose. *Id.* at 34-38. If all this were not enough to dismiss the breach of contract and implied covenant claims with prejudice, Jeong also agreed to a limitation of liability provision that independently bars those claims as well.

*Second*, Jeong pivots to injunctive and equitable relief, asking the Court to opine on and enjoin (1) the same issues that underlie his defective breach of contract claim, or alternatively (2) different issues on hypothetical subjects that caused him no harm. In previously dismissing the claims for injunctive relief under the UCL for lack of Article III standing, this Court recognized that Jeong was seeking an advisory opinion on abstract issues that did not harm him. *Id.* at 13-14.

This Court previously dismissed Jeong's declaratory judgment claim based on the suspension of XRP because it was entirely duplicative of the breach of contract claim. *Id.* at 39. While the Court found that Jeong stated declaratory judgment claims as to Nexo's "unfettered rights" to modify the crypto credit program and "ownership" of collateral, the Court did not address

whether Jeong had UCL standing to assert such claims, or whether they run afoul of the prohibition on issuing advisory opinions and declaring rights in hypothetical cases. *Id.* at 39-41. They certainly do. Jeong is suing based on alleged losses stemming from Nexo's suspension of XRP as a repayment option and lack of notice regarding the same. The issues of whether Nexo has the "unfettered right" to make *other* (unidentified) changes to the platform in *other* (unidentified) hypothetical circumstances, or whether Nexo had "ownership" of the collateral *it had contractual authority to liquidate*, is not properly before the Court. Jeong cannot claim he was economically harmed by changes Nexo never made, or by purported "ownership" rights that Nexo never asserted and that never caused him any harm.

*Third*, Jeong seeks to resurrect his breach of contract claim by recharacterizing Nexo's conduct as unlawful or unfair conduct, or false advertising, under the UCL. The UCL cannot be used to rewrite a contract and prohibit a party from doing what the contract allowed it to do.

*Finally*, the Court should dismiss all class allegations regarding the three identified classes at the pleading stage based on the class action waiver in Section XV.2 of the Borrow Terms, and because class treatment of this individualized claim is facially inappropriate. Alternatively, the Court should dismiss the Equitable-Relief Class and the California UCL Class (to the extent the latter seeks equitable relief) for lack of Article III and UCL standing, and dismiss the non-California class allegations as to the Damages Class and Equitable-Relief Class.

In sum, this purported class action should be dismissed in its entirety and not allowed to proceed to discovery. Jeong knows from the Court's prior dismissal order that he fails to state a viable individual claim for breach of contract or the implied covenant. ECF 48 at 55. So he turns to the UCL to manufacture a class action seeking advisory opinions regarding hypothetical future harms that he never suffered, and that he lacks standing to pursue. This Court cannot and should not opine *in a vacuum* on the scope of Nexo's right to change its terms and conditions, or its purported ownership of its customer's collateral. How can the Court do so without any facts? What other terms are being changed? Under what circumstances? What alleged ownership interest in collateral is being claimed, at what time, on what grounds, and for what purpose? Jeong's boilerplate unconscionability arguments as to these issues are conclusory *by necessity* (and therefore subject to

MOTION TO DISMISS SECOND AMENDED COMPLAINT

dismissal) because no Nexo customer has ever been harmed by these make-believe injuries. And as to the ownership issue, there is no case or controversy because Nexo does not contend that it "owned" Jeong's collateral prior to his LTV breach and liquidation. Nexo's Borrow Terms rely on the plain and ordinary meaning of the term "collateral," and Nexo liquidated that collateral because Jeong breached his LTV obligation, not because Nexo claimed "ownership" over it. Jeong simply has no viable claim—with actual facts and injury—for the Court to adjudicate.

ARGUMENT

## I.      THE COURT SHOULD DISMISS FOR FAILURE TO STATE A CLAIM

### A.      The Court Should Dismiss the Breach of Contract Claim with Prejudice

Jeong's Second Amended Complaint adds no new allegations that support a viable claim for breach of contract. In its first order, the Court correctly found that the Borrow Terms expressly authorize the suspension of XRP as a repayment option and do not require notice of such suspension. ECF 48 at 31-32. That should be the end of this case. Furthermore, the Court already ruled that Nexo's actions did not violate the implied covenant of good faith and fair dealing. *Id.* at 34-38. Because Jeong alleges nothing new and further amendment would be futile in light of the black-letter text of the contract, the Court should dismiss the breach of contract and implied covenant claims with prejudice.

#### 1.      The Court's Prior Order Compels Dismissal of the Breach of Contract Claim with Prejudice

This matter remains a defective breach of contract case. The Second Amended Complaint fixes none of the original claim's deficiencies. Jeong alleges that (1) Nexo's suspension of XRP payments, and (2) lack of notice preceding suspension breached the implied covenant of good faith and fair dealing. ECF 55 ¶¶ 174–75. However, the Court already found that "[t]he Borrow Terms explicitly authorized rules applied to repayments," like the suspension of XRP repayment, and that the Borrow Terms contain no provision requiring Nexo to provide notice of XRP suspension. ECF 48 at 32–33. Finally, the Court held that neither of these terms renders the Borrow Terms illusory, that "Nexo's alleged suspension of XRP without notice was expressly authorized, and Plaintiff has failed to adequately allege that the provisions of the Borrow Terms authorizing that suspension did

1    not apply under the duty of good faith and fair dealing." *Id.* at 37.

2          Jeong's new allegations are arguments that do not change the Court's prior analysis. *See*

3    ECF 55 ¶¶ 63–73, 80–88. Jeong again argues that Nexo's suspension of XRP payments was in bad

4    faith. *Id.* ¶¶ 71–73. Jeong further argues that the Borrow Terms are "illusory" and that Nexo's

5    actions frustrated the common purpose of the contract. *Id.* ¶¶ 84–88. The Court already rejected

6    these arguments.  ECF 48 at 34-37.  None of them alter the Court's correct conclusion that the

7    suspension of XRP and subsequent liquidation was authorized under the Borrow Terms, and "[e]ven

8    with XRP suspended, Plaintiff still had a Nexo Crypto Credit loan that he could maintain and pay

9    down using a variety of different types of assets." *Id.* at 36. Further, as the Court already found, the

10   common purpose of the Borrow Terms was to provide a secured credit line, and "Nexo's alleged

11   suspension of XRP without notice was expressly authorized." *Id.* at 37. Finally, the Court held that

12   Jeong's allegations of Nexo's own XRP transactions after the suspension of XRP did not adequately

13   allege bad faith. *Id.* None of the expanded bad faith allegations change the substance of Jeong's

14   claims or the Court's ruling that "Plaintiff has failed to adequately allege that the provisions of the

15   Borrow Terms authorizing that suspension did not apply under the duty of good faith and fair

16   dealing." *Id.* These new allegations simply reword and restate what Jeong already plead: that Nexo

17   ought not be allowed to exercise its express rights under the Borrow Terms.  Jeong cannot rely on

18   conclusory unconscionability allegations to avoid dismissal of facially defective claims.  *Austero v.*

19   *Aurora Loan Servs.*, No. C-11-00490 JCS, 2011 U.S. Dist. LEXIS 86340, at *23-24 (N.D. Cal. Apr.

20   27, 2011).  California law does not support this implied covenant claim and the Court should dismiss

21   it again, this time with prejudice and without leave to amend.

22         The Court should also dismiss the breach of contract claim because Section XII.5 of the

23   Borrow Terms contains a limitation of liability provision that bars Jeong's claim:

24              IN NO EVENT WILL OUR AGGREGATE LIABILITY FOR ANY
           LOSS OR DAMAGE ARISING IN CONNECTION WITH THE

25              NEXO CRYPTO CREDIT EXCEED THE FEES YOU PAID TO
           NEXO FOR YOUR USE OF THE SERVICES DURING THE 12

26              MONTH PERIOD IMMEDIATELY PRECEDING THE EVENT
           GIVING RISE TO THE CLAIM OR LIABILITY. THE

27              FOREGOING LIMITATIONS OF LIABILITY SHALL APPLY TO

28

THE FULLEST EXTENT PERMITTED BY ANY APPLICABLE LAW.

Jeong does not and cannot plead that his six-figure damages claim is below the contractual liability cap. California courts regularly dismiss breach of contract claims barred by limitation of liability provisions at the pleading stage. *See Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118, 126 (2015); *Bishay v. Icon Aircraft, Inc.*, No. 2:19-cv-00178-KJM-AC, 2019 U.S. Dist. LEXIS 124499, at *14 (E.D. Cal. July 24, 2019); *Adkins v. Facebook, Inc.*, No. C 18-05982 WHA, 2019 U.S. Dist. LEXIS 134781, at *10 (N.D. Cal. Aug. 9, 2019); *Darnaa, LLC v. Google Inc.*, 236 F. Supp. 3d 1116, 1126 (N.D. Cal. 2017).

Recognizing that the limitation of liability provision bars his claim, Jeong alleges in conclusory fashion that the provision is unconscionable. Courts routinely reject such boilerplate challenges, *see Gardiner v. Walmart, Inc.*, No. 20-cv-04618-JSW, 2021 U.S. Dist. LEXIS 211251, at *18-19 (N.D. Cal. July 28, 2021), which is inconsistent with Jeong's own allegation that he is a sophisticated investor that had unlimited time to carefully review the Borrow Terms before depositing over $250,000 worth of cryptocurrency collateral and obtaining the benefit of a six-figure cryptocurrency credit line with Nexo. ECF 55 ¶ 17. As to his adhesion contract allegation, there is no procedural unconscionability because Jeong could have simply elected not to use Nexo's platform if dissatisfied with the contractual terms that he now seeks to ignore. Particularly given the fact that Jeong fails to plead a viable breach of contract or implied covenant claim, there is nothing unconscionable about barring Jeong's declaratory judgment and UCL claims seeking to rewrite the contract and impose non-contractual liability that the parties expressly agreed to waive.

**2.      The Court's Prior Order Compels Dismissal of the Implied Covenant Claim with Prejudice**

Jeong has removed all allegations from the Second Amended Complaint that Nexo violated any express provision of the Borrow Terms, conceding that, if the Borrow Terms stand, Jeong has no breach of contract claim. *See* ECF 55 ¶¶ 172–78 (Jeong's breach of contract claim is based entirely on the implied covenant). However, as the Court previously held, without a breach of the contract, there can be no breach of the implied covenant. ECF 48 at 34.  *See Storek & Storek, Inc.*

*v. Citicorp Real Estate, Inc.*, 100 Cal. App. 4th 44, 56 (2002) (citation omitted) ("[I]f defendants were given the right to do what they did by the express provisions of the contract there can be no breach.").

This Court previously dismissed claims like Jeong's in *Bulletin Mktg. LLC v. Google LLC*, No. 17-cv-07211-BLF, 2018 U.S. Dist. LEXIS 117381, at *7 (N.D. Cal. July 13, 2018). The *Bulletin* plaintiff brought a claim of breach of contract through the implied covenant of good faith and fair dealing based on actions explicitly permitted by the contract at issue. *Id.* The *Bulletin* plaintiff and defendant were parties to a contract in which the defendant permitted website publishers like the plaintiff to display advertisements in exchange for a share of the advertising revenue. *Id.* at *2. A few days before the defendant was due to pay the plaintiff's earnings, the defendant disabled without notice the plaintiff's account for policy violations. *Id.* at *3. The plaintiff brought a claim of breach of the implied covenant of good faith and fair dealing. The Court held that the claim failed, stating:

> [T]he implied covenant of good faith and fair dealing's application is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract. However, as pled, the FAC's allegations attempt to add obligations that do not expressly appear in the Google Services Agreement.

*Id.* at *7 (internal quotations marks omitted). As in *Bulletin*, Jeong's allegations are an attempt to render the valid and controlling contract moot.  California law does not permit this, and the Court should dismiss Jeong's breach of contract claim premised on the implied covenant.

**B.      The Court Should Dismiss the Declaratory Judgment Claim with Prejudice**

Jeong's second cause of action for declaratory judgment should be dismissed because there is no stand-alone claim for declaratory judgment separate from his substantive breach of contract and UCL claims, which fail for the reasons discussed herein.  "A claim for declaratory relief is not a stand-alone claim, but rather depends upon whether or not Plaintiff states some other substantive basis for liability." *See Watson v. Bank of Am., Nat'l Ass'n*, No. 16cv513-GPC(MDD), 2016 U.S. Dist. LEXIS 85580, at *62, *68 (S.D. Cal. June 30, 2016) (dismissing UCL claims for lack of standing and declaratory judgment claim for failure of underlying causes of action).

The declaratory judgment claim is also either duplicative of the contract claim or

MOTION TO DISMISS SECOND AMENDED COMPLAINT

inappropriately premised on hypothetical and abstract future harms based on unknown events that Jeong does not have Article III or UCL standing to assert. ECF 55 ¶¶ 179–191. A plaintiff asserting a UCL claim must show both Article III and UCL standing. *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 n.4 (9th Cir. 2009). To have standing to assert a UCL claim, the plaintiff must show that he "has lost 'money or property' sufficient to constitute an 'injury in fact' under Article III of the Constitution." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203-04 (9th Cir. 2010). Thus, the plaintiff asserting a UCL claim must have Article III standing *in the form of economic injury*. *Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 991 (E.D. Cal. 2012) (emphasis added); *see also Birdsong*, 590 F. 3d at 960 n.4 ("[T]he UCL incorporates Article III's injury in fact requirement . . . .") (citation omitted).

"More importantly, to have standing to assert a UCL claim, a plaintiff must '(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, *i.e.*, economic injury, and (2) *show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim*." *Fisher v. Nationstar Mortg. LLC*, No. 17-cv-02994-BLF, 2018 U.S. Dist. LEXIS 69004, at *15 (N.D. Cal. Apr. 24, 2018) (emphasis added). The economic injury requirement under the UCL is "substantially narrower than federal standing . . . which may be predicated on a broader range of injuries." *Aguilera v. Matco Tools Corp.*, No. 3:19-cv-01576-AJB-AHG, 2020 U.S. Dist. LEXIS 43283, at *21 (S.D. Cal. Mar. 12, 2020).

Jeong seeks declaratory judgment on two issues, neither of which are permissible. First, Jeong seeks declaratory judgment that "Nexo does not possess the unfettered right to change any material conditions for the use of the Nexo Crypto Credit; to suspend the provision of the Crypto Credit; or to change, suspend, disable, or discontinue any features or content of the Crypto Credit; and that Nexo may not take any such steps, even in good faith, without providing notice of such steps to its customers." *Id.* ¶ 185. Second, Jeong seeks declaratory judgment that "under the applicable common law, with respect to the collateral that Nexo's customers have posted, Nexo does not acquire the ownership of the collateral while the Nexo Crypto Credit is outstanding." *Id.* ¶ 191.

### 1.   Jeong's Declaratory Judgment Claim is Duplicative of his Breach of Contract Claim

As this Court previously recognized, "[w]here a claim for declaratory relief is merely duplicative of other causes of action asserted by a plaintiff, dismissal is proper." ECF 48 at 39; *Tyler v. Travelers Commer. Ins. Co.*, 499 F. Supp. 3d 693, 702 (N.D. Cal. 2020). Jeong only has Article III and UCL standing to challenge Nexo's suspension of repayment with XRP, which is subsumed by his meritless breach of contract claim. To the extent he seeks declaratory relief regarding Nexo's right to make other *undefined* changes to its platform in other *undefined* circumstances, it is beyond the scope of his substantive claims and he has no standing to assert it.

### 2.   Jeong Does Not Have Article III or UCL Standing to Seek an Advisory Opinion on Hypothetical Issues

"[A] federal court only has jurisdiction to award declaratory relief where a true case or controversy exists." *Lincoln Ben. Life Co. v. Fundament*, No. SA CV 18-0260-DOC, 2018 U.S. Dist. LEXIS 139486, at *16 (C.D. Cal. Aug. 7, 2018). "A claim for relief under the Declaratory Judgment Act requires a dispute that is: (1) 'definite and concrete, touching the legal relations of parties having adverse legal interests'; (2) 'real and substantial'; and (3) 'admit[ting] of *specific relief* through a decree of a conclusive character, as distinguished from *an opinion advising what the law would be upon a hypothetical state of facts*.'" *In re Adobe Sys. Privacy Litig.*, 66 F. Supp. 3d 1197, 1221 (N.D. Cal. 2014) (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)) (emphasis added).

Jeong is asking the Court to provide an advisory opinion based upon hypothetical facts and without alleging specific relief. ECF 55 ¶¶ 104–114. More specifically, Jeong alleges that he is entitled to declaratory and injunctive relief because "he faces the imminent prospect of irreparable harm in the likely event—including because of the uncertain regulatory status of many currently 'acceptable' digital assets on the Nexo platform[,]" *id.* ¶ 146, and that "given the uncertain regulatory status of many of the digital assets that Nexo currently deems 'acceptable' for use on its platform, the question of the extent of Nexo's contractual rights in this regard is highly likely to continue to arise between the parties." *Id.* ¶ 184. Nowhere in the Second Amended Complaint does

Jeong allege *specific facts* that show a plausible claim for relief under the Declaratory Judgment Act, nor does he plead sufficient facts that show "imminent . . . irreparable harm." In fact, the only facts pled regarding irreparable harm is that California residents have displayed "increased demand for Nexo services[,]" *id.* ¶ 147, and that declaratory and injunctive relief is in the interest of the public. *Id.* These facts alone are not sufficient to plead declaratory judgment because "[t]he [Declaratory Judgment] Act is not available to provide relief in the form of advisory opinions on what the law would be given a hypothetical state of facts, to merely adjudicate past conduct, or to establish future liability." *Simon Greenstone Panatier Bartlett PC v. John Crane, Inc*., No. 2:16-cv-01179-CBM-AGR, 2016 U.S. Dist. LEXIS 126402, at *10 (C.D. Cal. Aug. 26, 2016).

California courts have made it clear that claims based on a theory of past harm are inappropriate under the Declaratory Judgment Act. For example, in *Stevens v. Britax Child Safety, Inc*., No. 2:20-cv-07373-MCS-AS, 2021 U.S. Dist. LEXIS 252732, at *7–8 (C.D. Cal. July 13, 2021), the plaintiff's claims were based on a theory of past harm in the form of overpayment. The court held that the plaintiff could not show Article III standing because the Complaint failed to show how the plaintiff would suffer impending future injury. *Id.* ("Without additional facts showing Plaintiff will suffer a certainly impending future injury, injunctive relief is unavailable to her. Plaintiff's requests for injunctive relief must be dismissed for failure to establish Article III standing."). Similarly, nowhere in the Second Amended Complaint did Jeong plead an impending risk of future injury as to undefined changes to Nexo's terms and conditions, which the Court is unable to adjudicate in a vacuum without reference to any facts and circumstances.

As to Jeong's request for declaratory relief as to ownership of collateral, Jeong fails to plausibly allege that the "ownership" provision has any connection to his alleged harm. Nexo suspended the use of XRP as a repayment option as it was entitled to do under Sections III.3, IV.1 and VII.2 of the Borrow Terms, and Nexo liquidated Jeong's collateral when he failed to maintain the required LTV as it was entitled to do under Sections IV.3 and VI.2. These contractually authorized actions were not based on Nexo's invocation of the ownership provision of Section IV.5. Nexo's alleged "ownership" of Jeong's collateral *prior to liquidation* has no relevance to his claimed damages *arising from the liquidation*. Jeong is not suing Nexo for tax losses or other unidentified

MOTION TO DISMISS SECOND AMENDED COMPLAINT

damages flowing from Nexo's purported "ownership" of Jeong's collateral. Jeong has no Article III or UCL standing to seek an advisory opinion on this abstract issue unconnected to the damages claimed in this case.

Jeong's abstract allegations as to "ownership" also ignore the double qualifying language in Section IV.5, stating that Nexo only acquires ownership of the collateral "by virtue of this Agreement" and to the extent not "prohibited by any Applicable Law."  The ownership interest in collateral created "by virtue of this Agreement" is ownership of the collateral in the event of liquidation under Section VI.2. This point is confirmed by Section VIII.4, which provides that "[o]nce the Nexo Crypto Credit has been repaid in full, all remaining Collateral shall be transferred back to the Client's Nexo Account."  This provision confirms that, prior to liquidation due to breach of the LTV, Nexo holds possession or custody of the collateral as security for the credit line, not full ownership. To the extent Jeong alleges that Section IV.5 is unlawful, the provision contains a further disclaimer stating that the provision is not operative if unlawful. Consequently, Jeong is seeking an advisory opinion, concerning an issue that caused him no damage, based on a reading of the provision that is inconsistent with the contract.  To be clear:  Nexo does not contend that Jeong "sold" his collateral to Nexo in exchange for a credit line, that it "owned" Jeong's collateral prior to his LTV breach and liquidation, or that it relied upon the "ownership" provision of Section IV.5 as the basis for that liquidation.

The only concrete legal issues that Jeong has standing to assert are subsumed by his defective breach of contract claim. As this Court previously recognized, "[w]hen a claim for declaratory relief seeks to address past wrongs and is duplicative of other claims, then the declaratory relief is unnecessary and redundant." *Garza v. Bank of Am.*, No. 1:12cv0140 LJO DLB, 2012 U.S. Dist. LEXIS 17596, at *9 (E.D. Cal. Feb. 13, 2012). For example, when this court found that the issue of "ownership" of ICX tokens could be decided on other grounds, it concluded that a declaratory judgment would be needlessly duplicative. *See also Shin v. ICON Found.*, No. 20-cv-07363-WHO, 2021 U.S. Dist. LEXIS 245897, at *18–19 (N.D. Cal. 2021) (holding that "[a] declaratory judgment asserting Shin's ownership [of ICX tokens] offers no greater clarity or settlement of the rights between the parties than would a decision on [other] substantive claims."). Similarly, Jeong's

declaratory judgment claim regarding Nexo's "unfettered right" to change other unidentified terms in undefined circumstances, or its ownership of collateral, do not provide any clarity or settlement of rights between the parties that the underlying substantive claims do not already address.

Therefore, the Court should dismiss the declaratory judgment claim because the issues are either duplicative of the breach of contract claim or seek advisory opinions that Jeong does not have standing to seek.

### C.      The Court Should Dismiss the UCL Claim with Prejudice

Jeong cannot allege a UCL claim because all his underlying claims fail. Under the UCL, any person or entity that has engaged, is engaging, or threatens to engage "in unfair competition may be enjoined in any court of competent jurisdiction." Cal. Bus. & Prof. Code §§ 17201, 17203. "Unfair competition" includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." *Id.* § 17200. The UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). Further, the UCL creates "three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Id.*

#### 1.      Jeong Fails to Plausibly Allege that Nexo's Actions were Unlawful

Jeong's UCL claims based on unlawfulness remain deficient. Jeong bases this claim on two predicates: (1) breach of contract; and (2) lending without a finance lender license. ECF 55 ¶¶ 193–211. Both should fail. Jeong's UCL claim predicated on breach of contract fails because, as discussed above, there was no breach of contract or breach of the implied covenant. Jeong also fails to plausibly allege that California licensing requirements apply to the type of cryptocurrency credit line he obtained.  Even if they did, Jeong fails to identify any harm from lack of licensure.

First, Jeong does not plead that he received his credit line proceeds in United States Dollars (USD) rather than a stablecoin cryptocurrency such as USDT or USDC. *See, e.g.,* Cal. Fin. Code § 2003(p) (defining "Money" as "a medium of exchange that is authorized or adopted by the United States or a foreign government"). Though stablecoins such as USDT and USDC generally track the value of fiat currency, *they are not fiat currency issued by a government*. Jeong fails to plausibly

allege that his receipt of a stablecoin credit line in exchange for his pledge of another cryptocurrency as collateral requires a California lending license.

Jeong also fails to plausibly alleged harm resulting from the alleged lack of licensure. To assert a UCL claim, a plaintiff must "show that that economic injury was the result of, *i.e.*, caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Fisher*, 2018 U.S. Dist. LEXIS 69004, at *15; *see also Livermore v. Wells Fargo Bank*, No. 17-cv-03347-BLF, 2017 U.S. Dist. LEXIS 209463, at *9 (N.D. Cal. Dec. 20, 2017) (a UCL plaintiff must plead that he has suffered injury and has lost money or property *as a result* of the defendant's unfair conduct). Jeong alleges nothing to suggest that the sequence of events leading to Nexo's suspension of XRP as a repayment option might have been altered had Nexo held a CFL license in December 2020. None of the alleged harm was caused in any way by Nexo's licensure. This claim should fail.

### 2.    Jeong Fails to Plausibly Allege that Nexo's Actions were Unfair

Jeong's claims of unfairness under the UCL mirror its breach of contract claims—that Nexo's suspension of XRP and failure to provide notice of the suspension were unfair—and should therefore fail. ECF 55 ¶ 194. As shown above, Nexo merely exercised its own contractual rights as granted by the Borrow Terms. "A UCL claim stands or falls 'depending on the fate of antecedent substantive causes of action.'" *Fisher*, 2018 U.S. Dist. LEXIS 69004, at *8 (quoting *Krantz v. Bt Visual Images*, 89 Cal. App. 4th 164, 178 (2001)). Because Jeong concedes that Nexo's actions were explicitly permitted by the Borrow Terms, Jeong has failed to allege that Nexo's actions were wrongful or unfair. *See Giotta v. Ocwen Fin. Corp.*, No. 15-cv-00620-BLF, 2015 U.S. Dist. LEXIS 167108, at *34 (N.D. Cal. Dec. 11, 2015) (dismissing a claim under the unfair prong of the UCL because the plaintiff did not allege that the defendant's actions were "wrongful").

Jeong's claims of unfairness rest on the same factual allegations as the breach of contract claims, which remain essentially unchanged from the Original Complaint. Those factual allegations allege nothing wrongful or unfair, as the Court already ruled. *See* ECF 48 at 46 ("Plaintiff argues that he has adequately alleged that Nexo's suspension and failure to provide notice of that suspension as unfair, because it was substantially injurious to consumers and for Nexo's own financial benefit . . . The Court agrees with Nexo . . . Plaintiff fails to adequately allege that Nexo

was not explicitly authorized by the Borrow Terms . . . Accordingly, the Court finds that Plaintiff has failed to adequately allege that Nexo's suspension of XRP or its lack of notice regarding that suspension were unfair business practices under the UCL."). Jeong again has not shown, and cannot show, that Nexo's actions are "tethered" to specific constitutional, statutory, or regulatory provisions, *Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917, 940 (2003), or that they are "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886–87 (1999) (internal quotation marks omitted). Jeong cannot use the implied covenant to "impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement"; exercising a contractual right is not an unfair business practice. *See Rocha v. CIT Bank, N.A.*, No. 17-cv-05082-BLF, 2018 U.S. Dist. LEXIS 57671, at *17 (N.D. Cal. Apr. 3, 2018) (dismissing a claim based on the unfair prong of the UCL because plaintiffs failed to allege that any express terms of the contract at issue had been breached).

### 3.    Jeong Fails to Plausibly Allege that Nexo's Advertising was Deceptive

Plaintiff has failed to plausibly allege that Nexo's advertising violates the UCL or the FAL. The UCL prohibits "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. "The FAL prohibits 'untrue or misleading' statements in the course of business." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985 (9th Cir. 2015) (quoting Cal Bus. & Prof. Code § 17500). A claim for false advertising must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *York v. Am. Sav. Network, Inc.*, No. 2:15-cv-0563 KJM DB, 2017 U.S. Dist. LEXIS 129131, at *6 (E.D. Cal. Aug. 11, 2017). Claims under the UCL and the FAL are judged under the "reasonable consumer test," which states that a plaintiff must sufficiently allege that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*, No. 18-cv-06664-BLF, 2019 U.S. Dist. LEXIS 102023, at *9 (N.D. Cal. June 18, 2019) (dismissing a claim under the FAL and UCL).  The details of Nexo's collateralized credit lines are fully disclosed in the Borrow Terms, consistent with the commonly understood meaning of a collateralized credit line, and are not misleading.

1    Jeong alleges "deceptive" advertising on Nexo's part, none of which would mislead a

2    reasonable customer. Nexo will address each in turn.

3    *First*, Jeong argues that Nexo falsely advertised that Nexo customers would not have to give

4    up ownership of their cryptocurrency collateral. ECF 55 ¶¶ 41–44.  As explained above, Nexo does

5    not contend that it had ownership of Jeong's collateral prior to LTV breach and liquidation.  Jeong's

6    theory that his posting of collateral constitutes a "sale" is a fiction of his own making.  It ignores the

7    age-old understanding of a collateralized credit line and the fulsome explanation of the transaction

8    in Nexo's public-facing documents.

9    Jeong's false advertising allegations are not plausible given the disclosures made to Nexo's

10   customers.  Nexo does not contend that it "owned" Jeong's collateral prior to his LTV breach and

11   liquidation, that its alleged "ownership" of collateral was the ground for the liquidation at issue, or

12   that Jeong "sold" his collateral to Nexo in exchange for a credit line.  Given the disclosures in the

13   Borrow Terms that Nexo customers post collateral in exchange for a credit line, which they get back

14   once the credit line is repaid, no reasonable consumer would interpret the contract in this manner,

15   much less be harmed by these imaginary positions.

16   Nexo's use of the term "collateral" in its contract correlates with commonly known

17   dictionary definitions and the traditional understanding of collateral under U.S. law. Webster's

18   Dictionary defines collateral as "property . . . pledged by a borrower to protect the interests of the

19   lender." *Collateral*, Webster's Dictionary (11th ed. 2020). Similarly, Oxford's Dictionary describes

20   collateral as "something pledged as security for repayment of a loan in the event of a default."

21   *Collateral*, Oxford's Dictionary (Version 12.4.191 2020).  Reasonable consumers are familiar with

22   the concept of using a house or a car as collateral for a credit line and would understand the

23   possibility of liquidation in such an arrangement.

24   *Rugg v. Johnson & Johnson*, No. 17-cv-05010-BLF, 2018 U.S. Dist. LEXIS 101727, at *8

25   (N.D. Cal. Jun. 18, 2018) is illuminating.  In *Rugg*, this Court dismissed a UCL and FAL false

26   advertising claim on a 12(b)(6) motion. The plaintiff argued that the defendant's use of the term

27   "hypoallergenic" was deceptive. *Id.* at *6–7. This Court, looking at the dictionary definition of the

28   word "hypoallergenic," found the plaintiff's arguments implausible because the plaintiff could not

-14-

MOTION TO DISMISS SECOND AMENDED COMPLAINT

argue that a reasonable consumer would understand a word to imply meaning beyond its plain definition. *Id.* at *8–9. Similarly, reasonable consumers hold a common, timeworn understanding of a collateralized credit line and the definition of "collateral," and would not find Nexo's advertising misleading.

Any possible misconceptions a reasonable customer might take from the above representation are addressed by the Whitepaper and Borrow Terms, both of which are discussed in Jeong's Second Amended Complaint, are freely available to the public, and explain the circumstances under which Nexo might sell its customers' collateral. *See* ECF 55 ¶¶ 97–98. As Jeong himself alleges, Nexo's public facing Whitepaper and Borrow Terms fully explain the mechanics of a crypto-collateral credit line with Nexo, including what would happen if a customer breaches the LTV. *Id.* Jeong's allegations show that Nexo explained the mechanics of its credit line to potential customers. *See Abbit v. ING USA Annuity & Life Ins. Co.*, 252 F. Supp. 3d 999, 1029 (S.D. Cal. 2017) (dismissing UCL and FAL claim because sales brochure and application fully disclosed and explained terms of credit card). *See also Davis v. HSBC Bank*, 691 F.3d 1152, 1163 (9th Cir. 2012) (dismissing a fraud claim) ("Moreover, the existence of the annual fee was within [the plaintiff's] observation, because he concedes he was able to discover the annual fee when he revised [the defendant's] website and scrolled through the Important Terms & Disclosure Statement.").

*Second*, Jeong's claim based on Nexo's representation that it would impose no hidden fees, ECF 55 ¶ 40, fails under the UCL and FAL. As Jeong alleges, Nexo disclosed its need to liquidate collateral if a customer breaches the LTV in Nexo's oft-cited Whitepaper. *Id.* ¶¶ 97–98. Liquidation is not a fee, and no amount of labeling it a "liquidation fee" can make it so. Webster's Dictionary defines the verb "to liquidate" as "to determine by agreement or by litigation the precise amount of indebtedness, damages, or accounts," "to determine the liabilities and apportion assets toward discharging the indebtedness of," or "to settle a debt by payment or other settlement." *Liquidate*, Webster's Dictionary (11th ed. 2020). "Fee," meanwhile, is defined as "a fixed charge," or "a sum paid or charged for a service." *Fee*, Webster's Dictionary (11th ed. 2020). No reasonable customer would understand Nexo's representation that it would not impose hidden fees to mean that it would

MOTION TO DISMISS SECOND AMENDED COMPLAINT

1  not liquidate a customer's collateral to maintain the required LTV. *Rugg*, 2018 U.S. Dist. LEXIS

2  101727, at *8.

3      This is particularly true given that the Whitepaper, which Jeong claims contains the

4  "misleading" representation of no hidden fees, also explains the circumstances under which Nexo

5  will liquidate a customer's cryptocurrency collateral. ECF 55 ¶¶ 12, 40, 96, & 202. Jeong cannot

6  assert a claim of false or misleading advertisement when the allegedly misleading representation is

7  clarified within the same advertisement. *Dinan v. SanDisk LLC*, No. 18-cv-05420-BLF, 2020 U.S.

8  Dist. LEXIS 10155, at *2 (N.D. Cal. Jan. 22, 2020), shows this. In *Dinan*, this Court dismissed a

9  putative class action bringing FAL and UCL claims based on the contention that the defendant

10  misled the public as to the definition of "gigabyte" on the packaging. *Id.* This Court dismissed these

11  claims on the basis that "the Ninth Circuit and district courts therein have held that allegations do

12  not satisfy the reasonable consumer test where the packaging containing the alleged

13  misrepresentation includes disclosures that makes the meaning of the representation clear." *Id.* at

14  *20. Similarly, the Court should dismiss Jeong's claims here—Jeong cannot allege that a

15  representation is misleading while also alleging that the representation is clarified in the same

16  advertisement.

17      *Finally*, Jeong puts forward several instances in which Nexo states certain aspects and

18  procedures of taking out a crypocurrency credit line with Nexo and alleges that these representations

19  were deceptive. ECF 55 ¶¶ 92–98. None of these allegations are plausible.

20      Jeong alleges that Nexo stated in its Whitepaper that clients can repay credit lines in multiple

21  ways (bank transfer, fiat, or cryptocurrency) and are not subject to monthly repayments. ECF 55 ¶

22  94. However, it is undisputed that Jeong had the right to repay his credit line in multiple ways.

23  Nexo's suspension of XRP did not eliminate this right. Jeong could have used an alternative

24  cryptocurrency, or a fiat currency, to repay his credit line. And Jeong does not allege he was subject

25  to a monthly repayment. *Id.* ¶¶ 35–37.

26      Jeong alleges that Nexo represented that its customers have the right to withdraw crypto

27  assets as long as they maintain the necessary LTV. *Id.* ¶ 96. This statement is not deceptive because

28  Nexo's discretion under the Borrow Terms did not infringe on customers' withdrawal rights.

1   Jeong alleges that Nexo represented that customers have the right to maintain minimum LTV

2   by adding more collateral or by partial credit line repayment. *Id.* ¶ 97. But Jeong fails to allege that

3   this representation was false, as he does not allege that Nexo's suspension of XRP prevented him

4   from using other types of cryptocurrency to maintain his LTV or partially repay his credit line.

5   Jeong alleges that Nexo represented that customers are subject to "rebalancing maintenance"

6   only if the customer does not act on the notifications issued by Nexo. *Id.* ¶ 97. Jeong misconstrues

7   the Whitepaper. As Jeong alleges, the Whitepaper states that failure to respond to these notifications

8   may result in liquidation. The Whitepaper never states, or implies, that this is the only circumstance

9   under which a Nexo customer must maintain a minimum LTV.

10   Jeong alleges that Nexo represented that customers bear no separate tax costs for using its

11   services. *Id.* ¶ 120. This allegation rests on Jeong's arguments regarding the ownership of

12   cryptocurrency used as collateral, and is unconnected to Jeong's alleged harm. Additionally, Jeong's

13   allusion to "immense consequences for how Nexo structures its loans and businesses" does not meet

14   Rule 9(b)'s heightened pleading standards.

15   In sum, Jeong's arguments pertaining to Nexo's allegedly deceptive advertising of rights

16   under the Borrow Terms are based on the false premise that the discretion granted to Nexo renders

17   all representations of Nexo customers' rights under the Borrow Terms false. Discretion under a

18   contract, however, does not eliminate contractual rights. *Third Story Music, Inc. v. Waits*, 41 Cal.

19   App. 4th 798, 809 (1995). Jeong cannot equate Nexo's contractual discretion with an elimination of

20   all Nexo customers' contractual rights and responsibilities. As the Court previously ruled, Nexo's

21   contractually granted rights do not render the Borrow Terms illusory.

22   The Borrow Terms are and remain clear—they grant Nexo the right to act as it did. When a

23   theory presented in an amended complaint lacks legal foundation, or where previous attempts have

24   failed to cure the original complaint's deficiencies and amendment cannot correct the defect, the

25   Court has discretion to deny leave to amend. *Serpa v. SBC Telecomms., Inc.*, No. C 03-4223 MHP,

26   2004 U.S. Dist. LEXIS 18307, at *12-13 (N.D. Cal. Sep. 7, 2004). Jeong has had two attempts to

27   articulate cognizable claims and failed to do so. The Court already ruled, and Jeong conceded, that

28   Nexo acted with the rights it was granted in the Borrow Terms. ECF 48 at 39-40. Given this, Jeong

cannot articulate breach of contract or UCL claims. Any further amendment would be futile. The Court should dismiss the Second Amended Complaint with prejudice.

## II.     THE COURT SHOULD STRIKE THE CLASS ALLEGATIONS

Jeong brings this action as a class action pursuant to Fed. R. Civ. P. 23 and seeks certification of the following classes: Damages Class, Equitable-Relief Class, and the California UCL Class. ECF 55 ¶ 148. However, seeking class treatment violates the class action waiver in Nexo's Borrow Terms and, as such, should be dismissed as a matter of law. In the alternative, the Equitable-Relief Class and the California UCL Class (to the extent it seeks equitable relief) should be dismissed for lack of Article III and UCL standing for the same reasons discussed above. Finally, this Court should strike the nationwide class allegations as to the Damages Class and Equitable-Relief Class.

### A.     The Court Should Strike the Class Allegations Based on the Class Action Waiver in the Borrow Terms

Where a "complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery." *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009). Rule 23(d)(1)(D) provides that "the court may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1043 (N.D. Cal. 2014).

It is undisputed that Nexo's Borrow Terms includes a valid, enforceable class action waiver. Section XV.2 states in relevant part:

> You agree that any dispute resolution proceeding subject to the Applicable Law under the preceding sentence shall be conducted only on an individual basis and not as a plaintiff or class member in any purported class, consolidated or representative action or proceeding. No court or other dispute resolution authority can consolidate or join more than one claim and can otherwise preside over any form of a consolidated, representative, or class proceeding. Any relief awarded cannot affect other Clients of Nexo.

Further, the Borrow Terms define "Applicable Law" as "any law, statute, regulation, ordinance, treaty, guideline, policy and act issued by any governmental or regulatory authority, including but not limited to the governing law under Art. XV.1. and Art. XV.2. of these General Terms." Borrow

Terms II.1.

In the Complaint, Jeong alleges that the class action waiver "does not apply" because it "fail[s] to give notice to a reasonable reader of Nexo's intent," and is "unenforceable under the applicable common law because it is unconscionable." ECF 55 ¶ 158–171. More specifically, Jeong alleges that the class action waiver is unenforceable because "under the applicable common law, the provision is both procedurally and substantively unconscionable." *Id.* ¶ 163. However, a class action is a procedural device that can be contractually waived. *See Convergys Corp. v. NLRB*, 866 F.3d 635, 637 (5th Cir. 2017). Many courts have enforced stand-alone class action waivers without an arbitration clause. *See Korea Week, Inc. v. GOT Capital, LLC*, No. 15-6351, 2016 U.S. Dist. LEXIS 69646, at *34 (E.D. Pa. May 27, 2016) (concluding that "class action waivers outside of arbitration are enforceable"); *U1it4less, Inc. v. FedEx Corp.*, No. 11-cv-1713 (KBF), 2015 U.S. Dist. LEXIS 82933, at *9 (S.D.N.Y. June 25, 2015) (same); *See also Palmer v. Convergys Corp.*, No. 7:10-cv-145 (HL), 2012 U.S. Dist. LEXIS 16200, at *6–7 (M.D. Ga. Feb. 9, 2012) (collecting cases) (same); *Bailey v. Vulcan Materials Co.*, No. 1:21-CV-0998-MHC, 2021 U.S. Dist. LEXIS 235444, at *6 (N.D. Ga. Nov. 16, 2021) (same); *Hancock v. Jackson Hewitt Tax SVC., Inc*., No. 1:19-CV-852-LY, 2020 U.S. Dist. LEXIS 84960, at *8 (W.D. Tex. May 14, 2020) (same).  Because Nexo's class action waiver is valid and enforceable, the Court should strike Jeong's class allegations.

**B.     The Court Should Strike the Class Allegations Because Jeong's Individualized Claim is Facially Incompatable with Class Treatment**

In *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982), the Supreme Court explained that the pleadings alone may demonstrate that the requirements of commonality, typicality and adequacy cannot possibly be met. This is particularly true when recovery depends on myriad individual questions and seeks nationwide relief. *See Schubert v. Anthem Blue Cross Life & Health Ins. Co*., No. CV-14-06221-MWF-JC, 2015 U.S. Dist. LEXIS 200105, at *24 (C.D. Cal. Oct. 2, 2015) ("In sum, Plaintiff class allegations are insufficient to show that common issues would predominate over individual ones in this action and must therefore be stricken from the complaint."); *Kittel v. City of Oxnard*, No. CV-17-6709-MWF (GJSx), 2018 U.S. Dist. LEXIS 238476, at *24, 28–29 (C.D. Cal. Feb. 20, 2018) ("There are simply too many individualized inquiries necessary for

Plaintiff to possibly meet the commonality and typicality requirements of Rule 23."); *Quynh Phan v. Sargento Foods, Inc.*, No. 20-cv-09251-EMC, 2021 U.S. Dist. LEXIS 103629, at *19, 22, 28 (N.D. Cal. June 2, 2021) ("And because the laws of all 50 states are implicated, Plaintiff has not sufficiently shown that common questions of fact or law predominate over individualized issues — or that a class action would be manageable.").

On its face, Jeong's meritless breach of contract claim shows that this case involves a "class of one." Particularly given the large size of Jeong's claim, his allegations raise complex and individualized issues regarding what customers allegedly would have done if provided notice of XRP suspension, in what time period, and what losses they allegedly incurred based on the unique mix of crypto assets and credit lines held by each customer. Furthermore, Jeong seeks to pursue breach of contract claims on a classwide basis under the laws of all 50 states, apparently based solely on the "implied covenant" that he does not plausibly allege is interpreted identically among all 50 states, or even recocognized in every state.  Class treatment is facially improper here.

**C.**     **The Court Should Strike the Non-California Class Allegations as to the Damages Class and the Equitable-Relief Class Because Plaintiff Cannot Assert Claims on Behalf of Non-California Customers**

In the alternative, should the Court not strike the class altogether, the Court should strike all non-California class allegations as to the Damages Class and Equitable-Relief Class (the California UCL Class is already limited to California customers only). Jeong alleges that he is a California resident who used Nexo's services in California; but there are no plaintiffs in other states, making certification of a nationwide class inappropriate on standing grounds. If there were, class certification for violations of California law where there is no nexus to California would violate the presumption against extraterritorial application of California law.

Because Jeong seeks to assert *California* class claims on behalf of non-California customers—and has based his breach of contract, implied covenant, and declaratory relief claims exclusively on California law—the Court should strike those class allegations because they violate the rule against extraterritorial application of California law and due process. "California law embodies a presumption against the extraterritorial application of its statutes." *Churchill Vill., LLC*

*v. GE Co.*, 169 F.Supp.2d 1119, 1126 (N.D. Cal. 2000), *aff'd* 361 F.3d 566 (9th Cir. 2004). In regard to California statutory consumer protection claims, non-California residents' claims are not supported "where none of the alleged misconduct or injuries occurred in California." *Id.* (citing *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal.App.4th 214, 222 (1999). This is because "beyond California's presumption against the extraterritorial application of its laws, a California court's adjudication of non-residents' claims that lack a nexus with California raises significant due process problems." *Id.* at 1126–27 (internal quotations omitted).

Applying this law, the court in *Koehler v. Litehouse, Inc.*, No. CV 12-04055 SI, 2012 U.S. Dist. LEXIS 176971, at *20 (N.D. Cal. Dec. 13, 2012) dismissed the class action allegations to the extent asserted on behalf of a nationwide class. The *Koehler* court explained: "Plaintiff's UCL, FAL, and CLRA claims, purportedly brought as a nationwide class action, would necessarily include purchases outside of California made by non-California residents. These plaintiffs do not have the requisite contacts with California, and therefore violate the presumption against the extraterritorial application of California laws and raise significant due process issues." *Id.* at *19. This Court should reach the same conclusion.

To the extent Jeong asserts *non-California* class claims on behalf of non-California customers (*i.e.*, applying the breach of contract and implied covenant laws (if any) of all 50 states), Jeong lacks standing to assert claims under the laws of states in which he does not reside. *See Carpenter v. PetSmart, Inc.*, 441 F. Supp. 3d 1028, 1039 (S.D. Cal. 2020) ("California district courts frequently address the issue of Article III standing at the pleading stage and dismiss claims asserted under the laws of states in which no plaintiff resides or has purchased products."); *Morales v. Unilever U.S., Inc.*, No. 2:13-2213 WBS EFB, 2014 U.S. Dist. LEXIS 49336, at *15 (E.D. Cal. Apr. 9, 2014) (holding that because the named plaintiffs were only residents of two states and did not purchase defendant's products in any state but their own they did "not have standing to assert a claim under the consumer protection laws of the other states named in the Complaint.") (quoting *Pardini v. Unilever U.S., Inc.*, 961 F. Supp. 2d 1048, 1061 (N.D. Cal. 2013).

In light of Ninth Circuit authority holding that non-California class claims must be based upon the law of each customers' state of residence, other courts in California have routinely struck

nationwide class action allegations not limited to California customers. Under *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." 666 F.3d at 594. For example, in *Larsen v. Vizio, Inc.*, No. SACV 14-01865-CJC (JCGx), 2015 U.S. Dist. LEXIS 191757, at *2 (C.D. Cal. Apr. 21, 2015), the plaintiffs brought claims under the UCL, FAL, and CLRA on behalf of a nationwide class of consumers, alleging that the defendant misrepresented its television refresh rate and misleading the plaintiffs into purchasing the television. *Id.* The defendants moved to dismiss the Complaint, arguing in part that the Court should strike the nationwide class allegations under *Mazza*. *Id.* at *3. The court agreed, holding that plaintiff's California UCL, FAL, and CLRA claims could not be brought on behalf of a nationwide class because the interests of other states outweighed California's interest in having its law applied. *Id. See also Littlehale v. Hain Celestial Grp., Inc.*, No. C 11-6342 PJH, 2012 U.S. Dist. LEXIS 162530, at *6 (N.D. Cal. July 2, 2012) (dismissing plaintiff's UCL and CLRA claims under *Mazza* where alleged transactions occurred in Pennsylvania; holding that claims should be governed by Pennsylvania law); *Davison v. Kia Motors Am., Inc.*, No. SACV 15-00239-CJC(RNBx), 2015 U.S. Dist. LEXIS 85080, at *6 (C.D. Cal. June 29, 2015) (disposing of nationwide class allegations at the pleadings, noting "the principle articulated in *Mazza* applies generally and is instructive even when addressing a motion to dismiss."); *Cover v. Windsor Surry Co.*, No. 14-cv-05262-WHO, 2016 U.S. Dist. LEXIS 16475, at *15 (N.D. Cal. Feb. 10, 2016) ("Multiple California district courts have applied *Mazza* at a motion to dismiss stage.") (citing cases); *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 847 (N.D. Cal. 2018) (holding that "*Mazza* is not only relevant but controlling, even at the pleading stage," and concluding that "without named representatives from any other states, plaintiffs' nationwide class allegations must be DISMISSED"); *Perez v. Nidek*, 711 F.3d 1109, 1113-14 (9th Cir. 2013) (approving a court's consideration of standing before class certification). Because Jeong cannot assert nationwide class action claims on behalf of non-California customers, under the laws of California or the other 49 states, the Court should strike all non-California class allegations.

1

## **CONCLUSION**

2      The Court should dismiss the Second Amended Complaint with prejudice in its entirety.

3

4   DATED:   March 28, 2022                    EVERSHEDS SUTHERLAND (US) LLP

5

6                                              By */s/ Ian S. Shelton*
                                                  Ian S. Shelton

7
                                               *Attorneys for Defendant Nexo Capital Inc.*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS SECOND AMENDED COMPLAINT