Kyle W. Roche (*pro hac vice*)
Edward Normand (*pro hac vice*)
Alex Potter (*pro hac vice*)
Stephen Lagos (*pro hac vice*)
ROCHE FREEDMAN LLP
99 Park Avenue, 19th Floor
New York, NY 10016
Tel.: 646-970-7509
Email: kyle@rochefreedman.com

Ivy Ngo (SBN 249860)
ROCHE FREEDMAN LLP
1 SE 3rd Ave.
Suite 1240
Miami, FL 33131
Tel.: 786-924-2900
ingo@rochefreedman.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUNHAN JEONG, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>NEXO CAPITAL INC.<br><br>Defendant. | Case Number: 5:21-CV-02392-BLF<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT**<br><br>Date: July 21, 2022<br>Time: 9:00 a.m.<br>Judge: Hon. Beth Labson Freeman<br>Courtroom: No. 3, 5th Floor |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ....................................................................................................................... 2

I.  PLAINTIFF STATES A CLAIM FOR BREACH OF CONTRACT ................................. 2

    A.  The Limitation of Liability Clause Does Not Bar Plaintiff's Claim........................ 2

    B.  Plaintiff Sufficiently Alleges Nexo's Obligation to Act in Good Faith.................... 4

    C.  Plaintiff Sufficiently Alleges That Nexo Breached Its Obligations......................... 7

II.  PLAINTIFF'S DECLARATORY JUDGMENT CLAIM REMAINS
     SUFFICIENTLY PLEADED ........................................................................................ 9

    A.  Plaintiff's Declaratory Judgment Claim Is Not Duplicative of His Implied ..............
       Covenant Claim .................................................................................................... 9

    B.  Plaintiff Has Standing to Assert His Declaratory Judgment Claim........................ 10

III.  PLAINTIFF'S UCL CLAIM REMAINS SUFFICIENTLY PLEADED........................... 12

    A.  Plaintiff Sufficiently Alleges Nexo's Actions Were Unlawful................................ 12

    B.  Plaintiff Sufficiently Alleges Nexo's Actions Were Unfair .................................... 14

    C.  Plaintiff Sufficiently Alleges Nexo's Actions Were Deceptive .............................. 16

IV.  NEXO'S MOTION TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS IS
     PREMATURE AND WRONG ON THE MERITS .......................................................... 19

    A.  Plaintiff's Motion to Strike Plaintiff's Class Allegations Based on the
       Purported Class Action Waiver Is Premature and Wrong on the Merits................ 19

    B.  Nexo's Motion to Strike Plaintiff's Damages Class Allegations on the
       Pleadings Is Premature and Wrong on the Merits ................................................. 23

    C.  Nexo's Motion to Strike Plaintiff's Damages Class and Equitable Relief
       Class Allegations on Standing Grounds Is Premature and Wrong on the Merits .... 24

CONCLUSION..................................................................................................................... 25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acree v. Gen. Motors Acceptance Corp.*,
   92 Cal. App. 4th 385 (2001) ................................................................................ 16

*Adkins v. Facebook, Inc.*,
   2019 WL 3767455 (N.D. Cal. Aug. 9, 2019) ......................................................... 2

*Adobe Sys. Inc. v. A&S Elecs., Inc.*,
   153 F. Supp. 3d 1136 (N.D. Cal. 2015) ................................................................. 1

*AdTrader, Inc. v. Google LLC*,
   2018 WL 3428525 (N.D. Cal. July 13, 2018)........................................................ 4

*Ahl-E-Bait Media, Inc. v. Jadoo TV, Inc.*,
   2013 WL 11324312 (C.D. Cal. Apr. 16, 2013) .................................................. 5, 6

*Allied Grape Growers v. Bronco Wine Co.*,
   203 Cal. App. 3d 432 (1988), *as modified on denial of reh'g* (Aug. 26, 1988)................ 15, 16

*Anson v. Weinstein*,
   2019 WL 6655260 (C.D. Cal. Mar. 26, 2019)................................................... 1, 10

*Ariza v. Autonation, Inc.*,
   2006 WL 8442746 (C.D. Cal. Nov. 3, 2006)........................................................ 21

*Bailey v. Rite Aid Corp.*,
   338 F.R.D. 390 (N.D. Cal. 2021)......................................................................... 23

*Bikram's Yoga Coll. of India v. Philadelphia Indem. Ins. Co.*,
   2014 WL 12607689 (C.D. Cal. Aug. 26, 2014)................................................... 15

*Bishay v. Icon Aircraft, Inc.*,
   2019 WL 3337885 (E.D. Cal. July 24, 2019) ........................................................ 2

*Bloomington Chrysler Jeep Eagle, Inc. v. DaimlerChrysler Motor Co.*,
   2005 WL 3577133 (D. Minn. Dec. 29, 2005)...................................................... 24

*Bondanza v. Peninsula Hosp. & Med. Ctr.*,
   23 Cal. 3d 260 (1979) ......................................................................................... 16

*Campbell v. eBay, Inc.*,
   2014 WL 3950671 (N.D. Cal. Aug. 11, 2014) ....................................................... 8

*Cappello v. Walmart Inc.*,
   394 F. Supp. 3d 1015 (N.D. Cal. 2019) .............................................................. 12

*Carma Devs. (Cal.) Inc. v. Marathon Dev. Cal., Inc.*,
   2 Cal. 4th 342 (1992) ............................................................................................ 7

*Carroll v. Nakatani*,
   342 F.3d 934 (9th Cir. 2003) ................................................................................ 2

*Choi v. Kimberly-Clark Worldwide, Inc.*,
   2019 WL 4894120 (C.D. Cal. Aug. 28, 2019) ...................................................... 24

*Cimoli v. Alacert Corp.*,
   2022 WL 580789 (N.D. Cal. Feb. 25, 2022) ........................................................ 19

*Darnaa, LLC v. Google Inc.*,
   236 F. Supp. 3d 1116 (N.D. Cal. 2017) ................................................................ 2

*Discover Bank v. Superior Court*,
   36 Cal. 4th 148 (2005) .......................................................................................... 21

*Doe 1 v. Wolf*,
   2020 WL 7043881 (N.D. Cal. Dec. 1, 2020) ........................................................ 2

*Ellsworth v. U.S. Bank, N.A.*,
   2014 WL 2734953 (N.D. Cal. June 13, 2014) ...................................................... 25

*Fitzpatrick v. Country Thunder Holdings, LLC*,
   2020 WL 5947624 (C.D. Cal. July 24, 2020) ...................................................... 6

*Gabana Gulf Distribution, Ltd. v. GAP Int'l Sales, Inc.*,
   2008 WL 111223 (N.D. Cal. Jan. 9, 2008), *aff'd*, 343 F. App'x 258 (9th Cir. 2009) .............. 12

*Halcyon Syndicate Ltd., LLC v. Graham Beck Enters. (PTY), Ltd.*,
   2020 WL 4051865 (N.D. Cal. July 20, 2020) ...................................................... 9

*Harris v. Tap Worldwide, LLC*,
   248 Cal. App. 4th 373 (2016) .............................................................................. 6

*Hernandez v. Wells Fargo Bank, N.A.*,
   2020 WL 469893 (N.D. Cal. Jan. 29, 2020) ........................................................ 25

*Hicks v. E.T. Legg & Assocs.*,
   89 Cal. App. 4th 496 (2001) ................................................................................ 7

*House of Lebanon Org., Inc. v. House of Pac. Rels. Int'l Cottages. Inc.*,
   2017 WL 2380121 (S.D. Cal. June 1, 2017) ........................................................ 12

*Household Bank v. JFS Grp.*,
   320 F.3d 1249 (11th Cir. 2003) ............................................................................ 11

*I.B. ex rel. Fife v. Facebook, Inc.*,
 905 F. Supp. 2d 989 (N.D. Cal. 2012) ................................................................. 10

*In re Adobe Sys., Inc. Priv. Litig.*,
 66 F. Supp. 3d 1197 (N.D. Cal. 2014) ................................................................. 15

*In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*,
 270 F.R.D. 521 (N.D. Cal. 2010) ......................................................................... 24

*In re Google Assistant Priv. Litig.*,
 457 F. Supp. 3d 797 (N.D. Cal. 2020) ................................................................. 15

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
 313 F. Supp. 3d 1113 (N.D. Cal. 2018) ............................................................. 3, 4

*Keck v. Alibaba.com, Inc.*,
 2018 WL 4181955 (N.D. Cal. Aug. 30, 2018) ..................................................... 20

*Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.*,
 925 F.2d 556 (2d Cir. 1991) ................................................................................. 11

*Lee v. Hertz Corp.*,
 330 F.R.D. 557 (N.D. Cal. 2019) ......................................................................... 23

*Lewis v. YouTube, LLC*,
 244 Cal. App. 4th 118 (2015) ................................................................................. 2

*Leyva v. Medline Indus. Inc.*,
 716 F.3d 510 (9th Cir. 2013) ................................................................................ 23

*Lhotka v. Geographic Expeditions, Inc.*,
 181 Cal. App. 4th 816 (2010) ................................................................................. 4

*Lira v. Nat'l Distrib. Ctrs., LLC*,
 2021 WL 6693934 (C.D. Cal. Dec. 22, 2021) ..................................................... 22

*Livermore v. Wells Fargo*,
 2017 WL 6513649 (N.D. Cal. Dec. 20, 2017) ..................................................... 13

*Lytle v. Nutramax Lab'ys, Inc.*,
 2019 WL 8060070 (C.D. Cal. Sept. 26, 2019) .................................................... 24

*Mazza v. Am. HondaMotor Co.*,
 666 F.3d 581 (9th Cir. 2012) ................................................................................ 25

*Medina v. Safe-Guard Products, Int'l*,
 164 Cal. App. 4th 105 (2008), *as modified* (July 11, 2008) ................................ 14

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
   540 F.3d 1049 (9th Cir. 2008) ............................................. 10

*Meyer v. Kalanick*,
   185 F. Supp. 3d 448 (S.D.N.Y. 2016) ............................... 21, 22

*Nelson v. Dual Diagnosis Treatment Ctr.*,
   --- Cal. Rptr. 3d ----, 2022 WL 1165853 (Cal. Ct. App. Apr. 19, 2022) ................... 3

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022) ............................................. 25

*Olyaie v. Gen. Elec. Capital Bus. Asset Funding Corp.*,
   217 F. App'x 606 (9th Cir. 2007) ....................................... 7

*Parker v. Right Thing, Inc.*,
   2010 WL 11596138 (C.D. Cal. Apr. 26, 2010) ......................... 8

*Perdue v. Crocker Nat'l Bank*,
   38 Cal. 3d 913 (1985) ................................................. 7

*Pinel v. Aurora Loan Servs., LLC*,
   814 F. Supp. 2d 930 (N.D. Cal. 2011) ................................ 14

*Pro Water Sol., Inc. v. Angie's List, Inc.*,
   457 F. Supp. 3d 845 (C.D. Cal. 2020) ................................ 16

*Reyes v. Wells Fargo Bank, N.A.*,
   2011 WL 30759 (N.D. Cal. Jan. 3, 2011) ............................. 7

*Richards v. Direct Energy Servs., LLC*,
   915 F.3d 88 (2d Cir. 2019) ........................................... 24

*Rocha v. CIT Bank, N.A.*,
   2018 WL 1609636 (N.D. Cal. Apr. 3, 2018) .......................... 15

*Saunders v. Superior Ct.*,
   27 Cal. App. 4th 832 (1994) .......................................... 15

*Schubert v. Anthem Blue Cross Life & Health Ins. Co.*,
   2015 WL 13916131 (C.D. Cal. Oct. 2, 2015) ......................... 23

*Silicon Valley Self Direct, LLC v. Paychex, Inc.*,
   2015 WL 4452373 (N.D. Cal. July 20, 2015) ....................... 2, 3, 4

*Sonner v. Schwabe N. Am., Inc.*,
   2015 WL 13307076 (C.D. Cal. Nov. 18, 2015) ........................ 25

*Steffel v. Thompson*,
   415 U.S. 452 (1974)............................................................................................... 10

*Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*,
   100 Cal. App. 4th 44 (2002) ................................................................................. 8

*Sumotext Corp. v. Zoove, Inc.*,
   2018 WL 1876937 (N.D. Cal. Apr. 19, 2018) ............................................... 1, 9, 10

*Swain v. LaserAway Med. Grp., Inc.*,
   57 Cal. App. 5th 59 (2020) .................................................................................... 3

*Taylor v. Shutterfly*,
   2020 WL 1307043 (N.D. Cal. Mar. 19, 2020)...................................................... 20

*Third Story Music, Inc. v. Waits*,
   41 Cal. App. 4th 798 (1995) ............................................................................. 5, 7

*Underwood v. Future Income Payments, LLC*,
   2018 WL 4964333 (C.D. Cal. Apr. 26, 2018) ................................................. 19, 21

*Vasquez v. Cebridge Telecom CA*, LLC,
   2021 WL 5113217 (N.D. Cal. Nov. 3, 2021) ........................................................ 22

*Williams v. Cty. of San Diego*,
   2018 WL 1744671 (S.D. Cal. Apr. 11, 2018)........................................................ 11

**Other Authorities**

Cal. Fin. Code § 22001(a)(4) .................................................................................. 14, 16

Plaintiff respectfully submits this memorandum of law in opposition to Nexo's Motion to Dismiss the Amended Complaint.

## PRELIMINARY STATEMENT

On January 19, 2022, the Court found that Plaintiff had stated a claim for deceptive advertising under the UCL and for declaratory relief. (Dkt. No. 48 (the "Order").) The Court also granted Plaintiff leave to amend, with respect to his breach of contract claim and other grounds for Nexo's liability under the UCL. Plaintiff filed an Amended Complaint (Dkt. No. 52) adding allegations concerning, for example, Nexo's bad faith and further liability under the UCL. Plaintiff refiled his Amended Complaint (as the operative Dkt. No. 55) to make certain corrections conforming it to the Court's Order.[1] Nexo moved to dismiss. Plaintiff now files this opposition. As the Court is familiar with the factual background, Plaintiff does not repeat it here.

## LEGAL STANDARD

In its prior order in this matter, the Court set forth the general standards governing a motion to dismiss. (*See* Order at 6-7.) On this round of briefing, moreover, the Court applies a "reconsideration" standard with respect to Plaintiff's claims at the time of Nexo's prior motion to dismiss. *See Anson v. Weinstein*, 2019 WL 6655260, at *4 (C.D. Cal. Mar. 26, 2019) (collecting cases and declining to consider arguments directed at claims that had previously survived motion to dismiss); *Sumotext Corp. v. Zoove, Inc.*, 2018 WL 1876937, at *7 (N.D. Cal. Apr. 19, 2018) ("Repetition of arguments previously considered and rejected by the Court does not constitute a basis for dismissal under Rule 12(b)(6)."); *Adobe Sys. Inc. v. A&S Elecs., Inc.*, 153 F. Supp. 3d 1136, 1144 n.3 (N.D. Cal. 2015) (noting that party who filed motion to dismiss failed to comply with requirements under Civil Local Rule 7-9 for a "motion for reconsideration"). Under that standard, the Court declines to hear arguments it considered and rejected on Nexo's prior motion, as well as any arguments that

---

[1] Nexo calls the Amended Complaint a "Second Amended Complaint." Nexo does not contend the refiling was anything other than a correction without any prejudice to Nexo.

1   Nexo could have asserted but failed to assert in its prior motion. *See, e.g.*, *Carroll v. Nakatani*, 342

2   F.3d 934, 945 (9th Cir. 2003) (motion for reconsideration "may not be used to raise arguments or

3   present evidence for the first time when they could reasonably have been raised earlier in the liti-

4   gation.") In short, as to Plaintiff's original claims, Nexo is not given a "do over." *Doe 1 v. Wolf*,

5   2020 WL 7043881, at *1 (N.D. Cal. Dec. 1, 2020).

## ARGUMENT

### I.     PLAINTIFF STATES A CLAIM FOR BREACH OF CONTRACT

#### A.     The Limitation of Liability Clause Does Not Bar Plaintiff's Claim

Nexo's argument (at 4) that the Court should dismiss Plaintiff's implied covenant claim because it is barred by the limitation of liability provision is meritless. On its face, that provision does not bar liability; it purports to limit damages to "the fees" customers "paid to Nexo" for use of Nexo's Crypto Credit service "during the 12 month period immediately preceding the event giving rise to the claim or liability." (Borrow Terms § XII.5.) None of Nexo's cited cases suggest that this language is sufficient to warrant dismissal. *See Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118, 124-26 (2015) (provision precluded liability for "any direct, indirect, incidental, special, punitive, or consequential damages whatsoever"); *Darnaa, LLC v. Google Inc.*, 236 F. Supp. 3d 1116, 1123-26 (N.D. Cal. 2017) (same); *Adkins v. Facebook, Inc.*, 2019 WL 3767455, at *2-3 (N.D. Cal. Aug. 9, 2019) (provision limited liability "to the fullest extent permitted by applicable law"); *Bishay v. Icon Aircraft, Inc.*, 2019 WL 3337885, at *4-5 (E.D. Cal. July 24, 2019) (plaintiff sought specific performance and provision limited liability to "full refund").

If read to preclude liability altogether, moreover, the provision is unconscionable. "Under California law, a contractual clause is unenforceable if it is both procedurally and substantively unconscionable." *Silicon Valley Self Direct, LLC v. Paychex, Inc.,* 2015 WL 4452373, at *6 (N.D. Cal. July 20, 2015). Accordingly, "[t]he Ninth Circuit has held that 'a contract is procedurally unconscionable under California law if it is a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

contract or reject it.'" *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1136-37 (N.D. Cal. 2018) (quotation omitted); *see also Silicon Valley*, 2015 WL 4452373, at *6 ("CLF is correct that the PPSA's adhesive nature imparts it with a degree of procedural uncon- scionability."). Nexo presents the Borrow Terms "on a 'take it or leave it' basis." (AC ¶ 164.) Nexo "does not negotiate" the terms "with its customers": "If the prospective customer wants to use the Nexo Crypto Credit, it must agree" to the Borrow Terms, which are "adhesion" contracts. (*Id.* ¶¶ 164, 169-70.) And "Nexo and its prospective customers do not have remotely equal bar- gaining power." (*Id.* ¶ 164.)

Nexo contends (at 5) that "there is no procedural unconscionability because [Plaintiff] could have simply elected not to use Nexo's platform," but the "Ninth Circuit has consistently followed the California courts that reject the notion that the existence of 'marketplace alternatives' bars a finding of procedural unconscionability." *Yahoo*, 313 F. Supp. 3d at 1137 (quotation omit- ted); *see also Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1100 (2002) (rejecting argument that procedural unconscionability requires showing that "no meaningful opportunity existed to ob- tain the offered goods or services from any other provider"); *Swain v. LaserAway Med. Grp., Inc.*, 57 Cal. App. 5th 59, 70-71 (2020) (rejecting argument that "arbitration agreement was not adhesive because . . . Swain had 'ample opportunity to look elsewhere for a more favorable contract or seek services elsewhere'"). And Nexo's assertion that Plaintiff alleged that he was "a sophisticated in- vestor that had unlimited time to carefully review the Borrow Terms" (citing AC ¶ 17) mischarac- terizes the Amended Complaint, which says no such thing.

The Borrow Terms are likewise substantively unconscionable. "Substantively unconscion- able terms may generally be described as unfairly one-sided." *Nelson v. Dual Diagnosis Treatment Ctr.*, --- Cal. Rptr. 3d ----, 2022 WL 1165853, at *10 (Cal. Ct. App. Apr. 19, 2022) (quotation omitted). "Drastic limitations on one party's remedies support a finding of unconscionability." *Id.* The Borrow Terms impose such limitations. And Nexo does not even attempt to defend the sub- stance of the provision that it invokes. Nor does Nexo bother to disclose that, in another provision,

the Borrow Terms further purport to preclude Plaintiff from recovering "any type of incidental, special, exemplary, punitive, indirect or consequential damages." (*Id.* § XII.1.) These provisions, considered together, are significantly more one-sided, and impose greater limitations, than provisions deemed substantively unconscionable by other courts applying California law. *See Yahoo*, 313 F. Supp. 3d at 1136 (concluding that provision was substantively unconscionable that purported to preclude liability "for any punitive, indirect, incidental, special, consequential, or exemplary damages" even though it included "no bar on direct damages")*; Silicon Valley*, 2015 WL 4452373, at *6 (striking near-identical clause). The provisions here not only preclude "nearly every type of damages claim," but they also impose significant limits on direct damages.

Moreover, even ignoring the provision that purports to exclude certain categories of damages (as Nexo does), the provision invoked by Nexo is substantively unconscionable because it guarantees that Plaintiff "could not possibly obtain anything approaching full recompense" for his harm. *Lhotka v. Geographic Expeditions, Inc.*, 181 Cal. App. 4th 816, 824-26 (2010) (clause that limited damages to the amount paid for trip was unconscionable); *cf. AdTrader, Inc. v. Google LLC*, 2018 WL 3428525, at *6-7 (N.D. Cal. July 13, 2018) (declining to dismiss declaratory judgment claim to invalidate a clause purporting to preclude "indirect, special, incidental, consequential, exemplary, or punitive damages" and to limit damages to amounts "received and retained under [the] agreement" for year prior to claim arising). Nexo concedes this much, by observing (at 4) that, in its view, the provision it invokes bars Plaintiff's "six-figure damages claim."

### B.   Plaintiff Sufficiently Alleges Nexo's Obligation to Act in Good Faith

The Court should reject Nexo's arguments (at 3-6) that it is not obligated to exercise its contractual discretion in good faith. Where the Borrow Terms, read literally, grant Nexo unfettered discretion to suspend XRP, that discretion must be limited by the implied covenant to save the Borrow Terms from being rendered illusory and unenforceable. (AC ¶¶ 59-62.)

The Court's Order explains that "the duty of good faith and fair dealing contradicts an express grant of discretion to a party when necessary to maintain the mutuality of the contract."

(Order at 36.) That necessity does not arise where "the contract is supported by 'adequate consideration regardless of the discretionary power.'" (*Id.* (quoting *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal. App. 4th 44, 57 (2002)).) Where all of a party's contractual obligations are subject to its unfettered discretion, however, "a promise to use good faith" in exercising that discretion is "necessarily" implied. *Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798, 808 (1995); *see Ahl-E-Bait Media, Inc. v. Jadoo TV, Inc.*, 2013 WL 11324312, at *7-8 (C.D. Cal. Apr. 16, 2013) (imposing covenant, where "the bargained-for consideration" one party would receive was subject to other party's discretion).

The Court previously dismissed Plaintiff's implied covenant claim on the grounds that Plaintiff "failed to adequately allege that the Borrow Terms would not be supported by adequate consideration if Nexo had the right to suspend XRP as a repayment option without notice." (Order at 36.) The Court explained that Plaintiff's argument "appear[ed] to be based on the notion that the only provision of the Borrow Terms under which Nexo could have the right to suspend XRP is the provision granting Nexo the right to 'suspend the provision of the Nexo Crypto Credit or of all or part of the other Nexo services,'" and that other provisions of the Borrow Terms supported "Nexo's right to suspend the use of particular cryptocurrencies on its platform," including Section IV.1, which provided that "digital assets that can be used as collateral 'are subject to revision from time to time'" and that "[c]ertain rules may apply to repayments from time to time, as indicated on the Nexo Platform." (*Id.* (quoting Borrow Terms § IV.1).) The Court further observed that "[e]ven with XRP suspended, Plaintiff still had a Nexo Crypto Credit loan that he could maintain and pay down using a variety of different types of assets." (*Id.*)

Plaintiff's Amended Complaint cures the deficiencies that the Court identified. Plaintiff alleges that the provisions cited by the Court "do not impose any actual obligations on Nexo," but instead purport to "allow Nexo in its sole and absolute discretion (a) to revise at any time the digital assets that can be used as collateral and (b) to rewrite at any time the rules that apply to repayments, as indicated on the Nexo Platform." (AC ¶ 64.) As a result, Plaintiff alleges, these provisions

"provide no independent consideration or further limitation on Nexo's claimed unfettered discretion under" the Borrow Terms. (*Id.* ¶ 65.)

Plaintiff further alleges that "[t]he existence of other repayment options besides XRP" would "not provide independent consideration under the contract where Nexo retains the unilateral discretion to revise or suspend the provision of those methods of repayment." (*Id.* ¶ 66.) Indeed, the Borrow Terms purport to grant Nexo the "sole and absolute discretion" to "change the conditions" for "use of the Nexo Crypto Credit," "suspend the provision of the Nexo Crypto Credit or of all or part of the other Nexo Services," or "change, update, remove, cancel, suspend, disable, or discontinue any feature, component, content, incentive or referral plan of the Nexo Crypto Credit." (*Id.* ¶ 59 (quoting Borrow Terms § III.3).) Nexo has asserted that it can exercise the foregoing rights "without any liability to its clients, without notice and for whatever reason." (*Id.* ¶ 62.)

Accordingly, regardless of "the presence of certain other provisions" in the Borrow Terms, Nexo has "no obligations at all" under that agreement: it can change those provisions as it pleases. (*Id.* ¶ 63 (emphasis in original)); *see Harris v. Tap Worldwide, LLC*, 248 Cal. App. 4th 373, 385 (2016) (contract is "illusory when one of the parties has the unfettered or arbitrary right to modify or terminate the agreement or assumes no obligations thereunder"). In other words, there is no provision in the Borrow Terms under which Nexo provided independent consideration. The duty of good faith and fair dealing must therefore be implied to save the Borrow Terms from being illusory. *See Ahl-E-Bait Media*, 2013 WL 11324312, at *7 (courts "save" illusory agreements "by reading into them an implied covenant that limits the party's discretion and requires that it be exercised in good faith"); *cf. Fitzpatrick v. Country Thunder Holdings, LLC*, 2020 WL 5947624, at *4 (C.D. Cal. July 24, 2020) (implied covenant would not permit defendants, "in their unfettered discretion," to "cancel" event and "abscond with the money").

Nexo nevertheless argues (at 6) that implying a duty of good faith and fair dealing would "render the valid and controlling contract moot" by "add[ing] obligations that do not expressly appear" in the parties' agreement. That argument is meritless here, where imposing the covenant

is necessary to uphold the parties' contract. *See Third Story Music*, 41 Cal. App. 4th at 805 (explaining "courts prefer to imply a covenant at odds with the express language of the contract rather than literally enforce a discretionary language clause and thereby render the agreement unenforceable"); *Reyes v. Wells Fargo Bank, N.A.*, 2011 WL 30759, at *16 (N.D. Cal. Jan. 3, 2011) ("The conclusion . . . is not that Wells Fargo did not breach the Agreement but rather, that the Agreement gives Wells Fargo such unfettered discretion in connection with its purported contract obligations that it is illusory unless the Court implies a covenant of good faith and fair dealing into it.").

### C.      Plaintiff Sufficiently Alleges That Nexo Breached Its Obligations

Nexo suggests that, to state a claim for breach of the implied covenant, Plaintiff must allege that Nexo breached an "express provision of the Borrow Terms." That is not the law: "[B]reach of a specific provision of the contract is not a necessary prerequisite." *Carma Devs. (Cal.) Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 373 (1992). Indeed, if Nexo were correct, "the covenant would have no practical meaning." *Id.* Under the correct legal standard, Plaintiff sufficiently pleads that Nexo breached the implied covenant.

"The issue of whether the implied covenant of good faith and fair dealing has been breached is ordinarily a question of fact." *Hicks v. E.T. Legg & Assocs.*, 89 Cal. App. 4th 496, 509 (2001) (alterations and citations omitted). As the Court explained, a party "violates the covenant if it subjectively lacks belief in the validity of its act or if its conduct is objectively unreasonable." (Order at 34 (quotation omitted).) Although a "complete catalogue of the types of bad faith is impossible," courts have recognized that it includes the "abuse of a power to specify terms." *Olyaie v. Gen. Elec. Capital Bus. Asset Funding Corp.*, 217 F. App'x 606, 611-12 (9th Cir. 2007) (citation omitted)); *see also Perdue v. Crocker Nat'l Bank*, 38 Cal. 3d 913, 924 (1985) (finding that defendant's discretion to set price was subject to implied covenant and stating that plaintiff could seek a "declaration determining whether the charges" set were "consonant with that duty"). Indeed, the implied covenant prohibits "a party vested with discretion from exercising that discretion in a

manner that is contrary to the contract's purposes and the parties' legitimate expectations." *Campbell v. eBay, Inc.*, 2014 WL 3950671, at *3 (N.D. Cal. Aug. 11, 2014) (quotation omitted).

Nexo abused its contractual discretion to determine which cryptoassets to accept. With respect to the subjective prong, Plaintiff alleges that Nexo's stated basis for suspending XRP—uncertainty with respect to its legal status in the United States—was not Nexo's actual basis, and that, in reality, Nexo merely sought to reduce its own financial exposure to XRP. (AC ¶¶ 67-79); *cf. Storek & Storek*, 100 Cal. App. 4th at 59 (lack of good faith "suggests a moral quality, such as dishonesty, deceit, or unfaithfulness to duty"). Plaintiff cites evidence to support that theory, including that Nexo continued to use XRP for its own profit after suspending its customers' use of XRP. (AC ¶¶ 69-72, 74-75.) And Plaintiff adds allegations in the Amended Complaint going to Nexo's subjective bad faith, for example that:

> after confiscating Plaintiff's XRP collateral under the guise of regulatory uncertainty over the prospective status of XRP as a viable, transferrable store of value, Nexo turned around and offered to extend a new loan to Plaintiff to buy his XRP back at the then-current market price. That is, Nexo immediately turned around and offered a new arrangement with Plaintiff, profitable for Nexo, under which Nexo would treat XRP as a viable, transferrable store of value.

(*Id.* ¶ 72.) In addition, Plaintiff alleges facts from which it can be inferred that Nexo's conduct was objectively unreasonable. Plaintiff alleges that Nexo suspended customers' use of XRP without any notice, did so to limit its own exposure to XRP at the expense of its own customers, and continued to transact with XRP after suspending customers' use of XRP. (*Id.* ¶¶ 69-72, 74-75, 78-87.) Plaintiff further alleges that this conduct was "unfair" because, by failing to provide notice of the suspension, Nexo caused customers to suffer unnecessary and avoidable liquidations of their cryptoassets—all so Nexo could maintain its own profits. (*Id.* ¶¶ 85-87); *cf. Parker v. Right Thing, Inc.*, 2010 WL 11596138, at *7 (C.D. Cal. Apr. 26, 2010) (employee terminated without cause before retirement benefits were scheduled to vest).

Nexo's conduct, moreover, frustrated the "common purpose" of the Borrow Terms, which included (i) "permitting customers to order their affairs and arrange to pay down their loans with

cash or cryptoassets" and (ii) treating "the accepted posted, collateral as a viable, transferrable store of value through which customers" could "properly maintain the requisite LTV ratio." (AC ¶¶ 68, 88.) Indeed, although the Borrow Terms entitled Plaintiff to repay his loan with "the Collateral" or "other Digital Assets" and to receive notice from Nexo prior to any liquidation (*see* Borrow Terms §§ VI.2, VIII.2), Nexo's suspension of XRP without notice "prevented [its] customers from making the necessary arrangements to pay down their loans" with their cryptoassets. (AC ¶ 88.) Plaintiff likewise alleges that Nexo's conduct frustrated his reasonable expectation that he would have the right to repay his loans with XRP—the same cryptoasset that he had posted as collateral—because "(i) XRP was among the best-known and most widely used cryptoassets at the time, (ii) Nexo had long accepted XRP, and (iii) many customers had posted XRP as collateral." (*Id.*); *cf. Halcyon Syndicate Ltd., LLC v. Graham Beck Enters. (PTY), Ltd.*, 2020 WL 4051865, at *25 (N.D. Cal. July 20, 2020) (allegations that defendant "abruptly ended its decade-long exclusive distributorship relationship" were sufficient).

## II.   PLAINTIFF'S DECLARATORY JUDGMENT CLAIM REMAINS SUFFICIENTLY PLEADED

### A.   Plaintiff's Declaratory Judgment Claim Is Not Duplicative of His Implied Covenant Claim

Nexo argues (at 7-8, 11) that Plaintiff's claim for a declaratory judgment that Nexo does not possess unfettered discretion under the Borrow Terms is duplicative of his contract claim. The Court previously rejected that argument (Order at 39-40), and should do so again here. *See Sumotext Corp.*, 2018 WL 1876937, at *7 ("Repetition of arguments previously considered and rejected by the Court does not constitute a basis for dismissal under Rule 12(b)(6)."). It remains true that "there is a possibility that the Court could resolve Plaintiff's breach of contract claim without reaching the issue of whether Nexo had the 'unfettered' rights provided in Section III.3 of the Borrow Terms." (Order at 39-40.)

Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss
Case No. 5:21-CV-02392-BLF

**B.     Plaintiff Has Standing to Assert His Declaratory Judgment Claim**

Nexo next argues (at 8-11) that Plaintiff lacks standing to assert his declaratory judgment claims. The Court already rejected that argument, too, finding that Plaintiff had "standing to pursue" his "claim for declaratory judgment." (Order at 14.) Nothing warrants reversing course. *See Anson*, 2019 WL 6655260, at *4; *Sumotext Corp.*, 2018 WL 1876937, at *7.

*First*, Nexo's arguments conflate the standards applicable to claims for injunctive relief with those applicable to claims for declaratory relief. Nexo faults Plaintiff (at 8-9) for purportedly failing to sufficiently plead that he will suffer irreparable harm absent declaratory relief, but it is well established that "a failure to demonstrate irreparable harm" does not preclude "the granting of declaratory relief." *Steffel v. Thompson*, 415 U.S. 452, 471-72 (1974). Similarly, Nexo asserts (at 9) that dismissal is proper because Plaintiff did not "plead an impending risk of future injury," but that argument overlooks that "[a]ctions brought under the Declaratory Judgment Act" are "not limited to those seeking to prevent future harm." *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1005 (N.D. Cal. 2012). Instead, "[c]ourts recognize that a plaintiff may seek declaratory relief as to the rights under, and validity of, a contract." *Id.* (denying motion to dismiss). That is what Plaintiff, who continues to be bound by Nexo's terms, seeks here. (AC ¶¶ 15-17, 145, 181-91.)

*Second*, if Plaintiff were required to plead a risk of future harm, he has met that burden. Plaintiff plausibly alleges that Nexo will invoke its disputed interpretation of its terms against Plaintiff again because regulatory actions against issuers of other cryptoassets—like the SEC's action against Ripple that prompted Nexo to suspend XRP—are "likely" to occur in the future. (*Id.* ¶¶ 145-46.) Specifically, Plaintiff continues to hold USDC on Nexo's platform (*id.* ¶17), and the issuer of USDC, Circle, recently announced that it "received an investigative subpoena from the SEC Enforcement Division" (*see* Normand Decl. Ex. B); *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 n.7 (9th Cir. 2008) (SEC filings subject to judicial notice). Given these facts and Plaintiff's allegations that Nexo continues to assert that it has unfettered rights

under the Borrow Terms and acquires ownership over customer collateral (AC ¶¶ 181-90), Plaintiff

is "likely to be wronged again in a similar way," *Williams v. Cty. of San Diego*, 2018 WL 1744671,

at *4-5 (S.D. Cal. Apr. 11, 2018) (existence of investigation coupled with defendant's continued

adherence to contested policy established standing to seek injunctive relief).

    *Third*, the Court has already rejected Nexo's argument that Plaintiff "fails to plausibly al-

lege that the 'ownership' provision has any connection to his alleged harm," agreeing "with Plain-

tiff that the ownership issue is relevant to Plaintiff's UCL unfair advertising claim." (Order at 41.)

Nexo never explains why the Court's analysis warrants reconsideration.

    *Fourth*, Nexo cannot obtain a dismissal with prejudice by conceding that Plaintiff's inter-

pretation of the Borrow Terms is correct. *Cf. Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.*,

925 F.2d 556, 562-63 (2d Cir. 1991) (rejecting argument that defendant could "unilaterally bar

Kidder's claims for declaratory relief by simply representing that it will not bring an action under

the federal securities laws"). Although Nexo now admits (at 10) that it does not acquire ownership

of customer collateral while the Nexo Crypto Credit is outstanding, there is nothing to stop it from

later changing its mind. *See Household Bank v. JFS Grp.*, 320 F.3d 1249, 1259-60 (11th Cir. 2003)

("Regardless of their present renunciation, without a binding, judicially enforceable agreement,

the Alabama Defendants could still put Household and Block to the task of defending against the

non-frivolous federal law claims alleged in this declaratory judgment action."). Under these cir-

cumstances, the proper outcome is judgment against Nexo, not judgment against Plaintiff. *See*

*Kidder*, 925 F.2d at 563 ("Maxus cannot complain that the district court declared the rights of the

parties in accordance with the very representations it made.").

    *Fifth*, to the extent that Nexo argues (at 7) that Plaintiff lacks "UCL standing" to assert his

declaratory judgment claims, that argument, which is not developed in Nexo's brief, is meritless

because Plaintiff suffered pecuniary losses as a result of Nexo's suspension of XRP without notice,

and Nexo sought to justify that conduct by asserting that it (i) had unfettered rights under the

Borrow Terms and (ii) acquired "ownership" over a customer's collateral while the Nexo Crypto

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Credit is outstanding. (AC ¶¶ 17, 62, 102, 139.) In addition, Plaintiff alleges that he was induced to use Nexo's services, and thus incurred fees and his pecuniary losses, by Nexo's public representations that Nexo would not have unfettered rights and would not acquire ownership of Plaintiff's collateral. (*Id.* ¶¶ 12, 17, 139, 198-201, 203.)

## III.   PLAINTIFF'S UCL CLAIM REMAINS SUFFICIENTLY PLEADED

Plaintiff brings his UCL claim under three prongs—the "unlawful," "unfair," and "deceptive" prongs—each of which "provides a 'separate and distinct theory of liability' and an independent basis for relief." *Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1018 (N.D. Cal. 2019). The Court has already determined in its Order that Plaintiff stated a claim under the "deceptive" prong with respect to Nexo's claims of ownership of customers' collateral. None of Nexo's arguments cast doubt on that holding or the other grounds for UCL liability Plaintiff advances.

### A.   Plaintiff Sufficiently Alleges Nexo's Actions Were Unlawful

Nexo contends (at 11) that Plaintiff has failed to plead a UCL claim premised upon Nexo's unlawful conduct, which included (1) breaching its contract with Plaintiff and (2) lending to Plaintiff without a license in violation of California Finance Law (the "CFL").

*First*, Nexo contends that its actions were not "unlawful" because there was no breach of contract. Nexo does not dispute, however, that Plaintiff satisfies the unlawful prong of a UCL claim by adequately pleading a breach of contract. *See House of Lebanon Org., Inc. v. House of Pac. Rels. Int'l Cottages. Inc.*, 2017 WL 2380121, at *4 (S.D. Cal. June 1, 2017) (denying motion to dismiss UCL unlawful prong claim because "Plaintiff has adequately alleged that Defendants violated the California common law prohibiting breach of contract"); *Gabana Gulf Distribution, Ltd. v. GAP Int'l Sales, Inc.*, 2008 WL 111223, at *10 (N.D. Cal. Jan. 9, 2008) (noting courts allow "common law theories—such as breach of the covenant of good faith—as a basis for actions pursuant to § 17200."), *aff'd*, 343 F. App'x 258 (9th Cir. 2009); *Cappello*, 394 F. Supp. 3d at 1020 ("Plaintiffs have standing under the UCL" where they adequately alleged breach). As this Court

found, since "leave to amend is allowed on the breach of contract claim," "Plaintiff is granted leave to amend this [UCL] claim as well." (Order at 46.)

*Second*, Nexo argues (at 11) that Plaintiff's additional basis for an "unlawful prong" claim—that Nexo lent to Plaintiff without a California lending license—is insufficiently pleaded because Plaintiff "does not plead that he received his credit line proceeds" in U.S. Dollars rather than stablecoin cryptocurrency, relying on the CFL's definition of "money" to argue that it does not include "stablecoins." But Nexo cites *no* provision of the CFL providing that licensing is only required for loans issued in "money" as statutorily defined; Nexo's argument is baseless.[2]

Nexo next argues for dismissal of Plaintiff's "unlawful prong" claim on the ground that its unlicensed lending did not cause Plaintiff's injury. According to the cases relied on by Nexo, however, economic injury is an issue of standing to be determined separate and apart from whether a plaintiff adequately pleads unlawful conduct. *See, e.g.*, *Livermore v. Wells Fargo*, 2017 WL 6513649, at *4 (N.D. Cal. Dec. 20, 2017) ("Because the Court finds that Livermore has failed to allege standing, it need not decide whether Livermore has adequately pled a UCL violation under the unlawful, unfair, or fraudulent prongs."). Plaintiff alleges that if he "had not been subject to Nexo's unlawful, unfair, misleading and deceptive business practices"—which includes Nexo's unlicensed lending—"he would not have suffered losses through the use of Nexo's Crypto Credit, for which he is entitled to restitution." (AC ¶ 140.) Nexo publicly stated that a receipt of licensure by a separate Nexo entity, Nexo Financial LLC, was "a significant milestone" for its "expanding client base" because it made Nexo "fully compliant" with California's regulations. (AC ¶ 46(b).) In making this public statement, Nexo acknowledged the materiality of licensure to consumers using Nexo's Crypto Credit. The Nexo entity that lent to Plaintiff, however, "does not hold, and has never held, a license in California, from the California Department of Business Oversight, to

---

[2] Since the "stablecoins" cited by Nexo are simply tokens pegged to USD, they should be considered "money" as defined in the CFL in any event.

operate as a finance lender within the state." (*Id.* ¶ 45.) Plaintiff accordingly seeks to redress the "harm to Nexo consumers in California resulting from Nexo's unlawful, unfair, deceptive, and misleading business practices in violation of" the UCL.  (*Id.* ¶ 1.)

In addition, the statutorily defined purpose of California's Finance Lender License is to "protect borrowers against unfair practices by some lenders, having due regard for the interests of legitimate and scrupulous lenders." Cal. Fin. Code § 22001(a)(4). Plaintiff has amply alleged how Nexo's unfair practices—the kind meant to be controlled through California's licensing regime— have harmed him. This is not a case like *Medina v. Safe-Guard Products, Int'l*, where there was *no* allegation that, apart from the defendant there being unlicensed, the plaintiff "was given unsatisfactory service" or sold an inferior product. 164 Cal. App. 4th 105, 114 (2008), *as modified* (July 11, 2008). At the least, Plaintiff is entitled to the reasonable inference that he has pleaded injury from Nexo's unlicensed lending. If the Court were to conclude that more is required, however, then Plaintiff requests leave to amend to assert additional allegations of injury.

### B.    Plaintiff Sufficiently Alleges Nexo's Actions Were Unfair

Nexo contends (at 11) that Plaintiff "cannot allege a UCL claim because all his underlying claims fail," but a "business practice that is not unlawful may nonetheless be actionable as an 'unfair' business practice." *Pinel v. Aurora Loan Servs., LLC*, 814 F. Supp. 2d 930, 940 (N.D. Cal. 2011). While the test for what constitutes an unfair business practice in the consumer context is "in flux," courts have distilled that

> there are at least two possible tests: (1) the "tethering test," which requires "that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions," and (2) the "balancing test," which examines whether the challenged business practice is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim."

*In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1226 (N.D. Cal. 2014); *see also In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 843 (N.D. Cal. 2020) (discussing unfairness test as in flux but involving the weighing of the utility of conduct against gravity of harm).

*First*, Plaintiff has properly alleged that Nexo engaged in "unfair" business acts in violation of the UCL under the "balancing test," since Nexo's suspension of XRP payments and failure to give notice of that suspension was substantially injurious to its customers, including Plaintiff, and for its own financial benefit. (*See* AC ¶¶ 193, 194-95.) Nexo contends (at 12) that these allegations do not amount to "unfair" conduct because "Nexo merely exercised its own contractual rights as granted by the Borrow Terms." But Nexo is mistaken: the Court need not find that Nexo breached its contract to find "unfair" business conduct under the UCL. *See Adobe*, 66 F. Supp. 3d at 1226 ("The 'unfair' prong of the UCL creates a cause of action for a business practice that is unfair even if not proscribed by some other law.").

Indeed, "'[u]nfair' simply means any practice whose harm to the victim outweighs its benefits." *Saunders v. Superior Ct.*, 27 Cal. App. 4th 832, 839 (1994); *see also Bikram's Yoga Coll. of India v. Philadelphia Indem. Ins. Co.*, 2014 WL 12607689, at *3 (C.D. Cal. Aug. 26, 2014) ("The California Supreme Court has expressly stated that [a] UCL claim does not duplicate the contract and tort causes of actions involved in bad faith litigation." (quotation omitted)). Plaintiff alleges throughout his Amended Complaint that Nexo operated in an "unfair and dishonest manner" and alleges the "extreme unfairness" of its conduct beyond just his contractual claims. (AC ¶ 68.) The Court's opinion in *Rocha v. CIT Bank, N.A.*, 2018 WL 1609636, at *5 (N.D. Cal. Apr. 3, 2018), cited by Nexo, is not to the contrary—the Court's holding under the UCL unfairness prong was not predicated on the breach of contract claim at issue there.

Where the conduct at issue is governed by contract, a Plaintiff may still bring a UCL claim. *See Allied Grape Growers v. Bronco Wine Co.*, 203 Cal. App. 3d 432, 453 (1988), *as modified on denial of reh'g* (Aug. 26, 1988) (finding trial court properly awarded injunctive relief under UCL unfairness prong in addition to damages on breach of contract claim for same conduct); *Acree v.*

*Gen. Motors Acceptance Corp.*, 92 Cal. App. 4th 385, 396 (2001) (explaining that "an unfair business practice claim under section 17200 is more akin to a tort than a contract claim"); *Bondanza v. Peninsula Hosp. & Med. Ctr.*, 23 Cal. 3d 260, 267 (1979) ("The underlying unfairness of the practice is also clear, as the admission agreement . . . is an adhesion contract"). That is especially the case where, as here, a contract has been systematically breached. *See Pro Water Sol., Inc. v. Angie's List, Inc.*, 457 F. Supp. 3d 845, 854 (C.D. Cal. 2020) ("[A] systematic breach of certain types of contracts (e.g., breaches of standard consumer or producer contracts involved in a class action) can constitute an unfair business practice under the UCL." (citation omitted)); *Allied Grape*, 203 Cal. App. 3d at, 453, *as modified on denial of reh'g* (Aug. 26, 1988) (breaches that also formed the basis of UCL judgment "occurred during the course of hundreds of deliveries" and conduct "was inflicting damage to many different growers").

*Second*, Plaintiff has likewise sufficiently pleaded "unfair" business practices under the "tethering" test. Nexo contends (at 13) that Plaintiff "has not shown, and cannot show, that Nexo's actions are 'tethered' to specific constitutional, statutory, or regulatory provisions," but Plaintiff's claim under the UCL are tethered to the CFL, the purpose of which is to "protect borrowers against *unfair practices* by some lenders." Cal. Fin. Code § 22001(a)(4) (emphasis added). Plaintiff has alleged that Nexo violated Sections 22100 et. seq. of the CFL by "engaging in the business of a finance lender or broker without obtaining a license," and engaged in deceptive and misleading advertising. (*Id.* ¶¶ 192-211.) Accordingly, Plaintiff has adequately pleaded an "unfair practice" tethered to a specific statutory provision.

### C.   Plaintiff Sufficiently Alleges Nexo's Actions Were Deceptive

*First*, Nexo contends (at 13-15) that it has not engaged in deceptive advertising with respect to its claims of "ownership" of Plaintiff and other customers' collateral. The Court has already determined that "Plaintiff has plausibly pled that a reasonable consumer would have been deceived by Nexo's public statements about lack of ownership over users' collateral given its alleged invocation of ownership to liquidate that collateral, the Court finds that Plaintiff has adequately pled a

false advertising claim under the UCL." (Order at 48.) Plaintiff has still adequately pleaded that claim. Nexo seeks reconsideration, however, by incredibly claiming (at 14) that "Nexo does not contend that it had ownership of Jeong's collateral prior to LTV breach and liquidation." Despite this newfound position, as of the date of this Opposition, Nexo's Borrow Terms *still* state that Nexo obtains ownership over customer collateral:

> Unless prohibited by any Applicable Law, by virtue of this Agreement Nexo acquires the ownership title and all attendant rights of ownership of the Collateral while the Nexo Crypto Credit is outstanding, and can dispose of this Collateral in any manner at its sole and absolute discretion.

(Normand Decl. Ex. A § IV.5.) Even the different version of the Borrow Terms Nexo submits in connection with its Motion provides similarly, though not identically, that: "Unless prohibited by any Applicable Law, by virtue of this Agreement Nexo acquires the ownership of the Collateral while the Nexo Crypto Credit is outstanding." (Dkt. No. 56-1 § IV.4.) And the still-different version of the Borrow Terms submitted in connection with the Trenchev Declaration and Nexo's first motion to dismiss states similarly. (*See* Dkt. No. 27-5 § IV.5.)

Irrespective of Nexo's transparent attempt to avoid liability by denying ownership of customer collateral, Nexo expressly invoked those contractual rights of ownership in connection with its suspension of XRP without notice. On December 30, 2020, Nexo issued a public statement, claiming that Nexo owned the XRP held as collateral, and, therefore, Nexo was entitled to sell such XRP, as it did on December 23, 2020: "Taking into consideration the fact that by virtue of the GTC Nexo acquires the ownership of the collateral while the Nexo crypto credit is outstanding, when liquidations are effected, Nexo disposes of its own digital assets . . . ." (AC ¶ 102.) In the face of those statements, Nexo's claim (at 14) that "Nexo does not contend that it 'owned' Jeong's collateral prior to his LTV breach and Liquidation" or "that its alleged 'ownership' of collateral was the ground for the liquidation at issue" is no basis for its motion.

Nexo further attempts (at 15) to convince the Court to reconsider its finding that Plaintiff plausibly alleged a reasonable consumer would have been deceived by Nexo, arguing that

"reasonable consumers hold a common, timeworn understanding of a collateralized credit line and the definition of 'collateral,' and would not find Nexo's advertising misleading." But that is just the point—Nexo's claim to ownership while simultaneously touting the language of "collateral" and "credit" in its Terms and advertisements is the root of the deception.

*Second*, Nexo argues (at 16), without merit, that Plaintiff has not plausibly alleged deceptive advertising related to hidden fees, because "[l]iquidation is not a fee" and Nexo "explains the circumstances" of liquidation. Nexo's argument proceeds from the incorrect premise that Plaintiff *equates* liquidation with a fee. Plaintiff actually alleges that: (1) Nexo advertised "no liquidation fees" to consumers; (2) Plaintiff "saw and relied upon Nexo's advertisements that it does not charge fees, including liquidation fees, as a substantial factor in his decision to take out a loan through Nexo's Crypto Credit service"; and (3) Plaintiff "was, however, charged fees when he suffered liquidations of his collateral." (AC ¶ 40.) Plaintiff even alleges the undisclosed fee he was charged, stating he was "assessed an undisclosed 1.26% fee on each of these liquidations, causing him losses of approximately $1607.01." (*Id.* ¶ 139.) Plaintiff plainly does not conflate "liquidation" with the undisclosed fee itself, and the Court should accordingly find he has sufficiently pleaded his UCL claim for deceptive advertising as to Nexo's undisclosed fees.

*Third*, Plaintiff alleges that Nexo also deceptively advertised "to the extent that the Borrow Terms & Conditions do not impose any obligations on Nexo . . . by using language on its website and in its Whitepaper that Nexo would owe and afford its borrowing customers legal rights in connection with their purported loans." (AC ¶ 201; *see also id.* ¶ 93 ("Nexo has continuously advertised, including through advertising that Plaintiff saw and relied upon in deciding to use the Crypto Credit service, that Nexo would owe and afford its borrowing customers legal rights in connection with their purported loans.").) Nexo contends (at 17) that Plaintiff's allegations to this effect rely on the premise "that the discretion granted to Nexo renders all representations of Nexo customers' rights under the Borrow Terms false." But it is not the *discretion* alone that renders those representations false—it is Nexo's claim that it has completely "unfettered" discretion to

"alter or remove features on the platform" and even "suspend all part of the Nexo services that it provides on its platform" or "alter the Digital Assets . . . offered on its platform." (Dkt. No. 27 at 23, 26.) It is only "in light of Nexo's interpretation of what they mean" that it becomes clear Nexo believes its terms convey *no* contractual obligations such that its advertising and statements to the contrary are deceptive, because they would lead a reasonable consumer to believe they in fact had rights under Nexo's Terms. (*See* AC ¶¶ 92-97.) Plaintiff has accordingly stated a claim under the UCL on this basis as well.

## IV.   NEXO'S MOTION TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS IS PREMATURE AND WRONG ON THE MERITS

### A.   Plaintiff's Motion to Strike Plaintiff's Class Allegations Based on the Purported Class Action Waiver Is Premature and Wrong on the Merits

Nexo merely assumes (at 18), without foundation, that "[i]t is undisputed that Nexo's Borrow Terms includes a valid, enforceable class action waiver." This is wrong on all counts. Indeed, Nexo simply ignores Plaintiff's explanation and factual allegations for why this contractual provision is inapplicable, unconscionable, and unenforceable. (*See* AC ¶¶ 158-71.) As to the governing standards, "[b]ecause the unconscionability of class waiver is fact driven, courts rarely strike class allegations at the pleading stage." *Underwood v. Future Income Payments, LLC*, 2018 WL 4964333, at *6 (C.D. Cal. Apr. 26, 2018). This result follows from the law that the courts "have applied a very strict standard to motions to strike class allegations on the pleadings." *Cimoli v. Alacert Corp.*, 2022 WL 580789, at *3 (N.D. Cal. Feb. 25, 2022) (citations omitted).

"Only if the court is convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed may the allegations be stricken." *Id.* (quotations omitted). "Thus, even if a motion to strike class allegations is considered at the pleading stage, it may only be granted under rare circumstances where the complaint demonstrates that a class action cannot be maintained on the facts alleged." *Id.* (quotations omitted). This case, as shown below, does not involve such circumstances. *See, e.g.*, *Taylor v. Shutterfly*, 2020

WL 1307043, at *4 (N.D. Cal. Mar. 19, 2020); *Keck v. Alibaba.com, Inc.*, 2018 WL 4181955, at

*3 (N.D. Cal. Aug. 30, 2018).

    i. <u>By its Own Terms the Purported Waiver Does Not Apply.</u>

  The Borrow Terms apply here. (Order at 52-54.) They state in relevant part:

> You agree that any dispute resolution proceeding subject to the Ap-
> plicable Law under the preceding sentence shall be conducted only
> on an individual basis and not as a plaintiff or class member in any
> purported class, consolidated or representative action or proceeding.
> No court or other dispute resolution authority can consolidate or join
> more than one claim and can otherwise preside over any form of a
> consolidated, representative, or class proceeding. Any relief
> awarded cannot affect other Clients of Nexo.

(AC ¶ 159.) The Terms further state: "Applicable Law means any law, statute, regulation, ordi-

nance, treaty, guideline, policy and act issued by any governmental or regulatory authority, includ-

ing but not limited to the governing law under Art. XV.1. and Art. XV.2. of these General Terms."

(*Id.* ¶ 160.)

  Plaintiff's claims do not trigger this purported waiver: this action is not a "dispute resolu-

tion proceeding subject to the Applicable Law." This is because the waiver could apply only if the

Borrow Terms were to define the "Applicable Law," which they do not. Instead, the Borrow Terms

state only that they are "governed exclusively by the substantive law of Nexo jurisdiction," which

jurisdiction the Terms *also* fail to define (*see* Order at 53), and provide no means or information

for the customer to determine. Indeed, only through Nexo's production of personal affidavits—

submitted to defeat personal jurisdiction—was the Court able to assess which of the many Nexo

entities based in a half-dozen different jurisdictions is the customer's supposed counterparty pur-

suant to the Borrow Terms. (*Id*. at 14.)

    ii. <u>The Purported Waiver Fails to Provide the Requisite Clear Notice.</u>

  A purported class action waiver, like a forum-selection clause, is unenforceable if it fails

"clearly" to specify how it operates. (Order at 51, 53 (quotations omitted).) Just as the Court de-

cided with respect to the appropriate forum for this matter, in referring to the undefined terms

"Nexo jurisdiction" and "Applicable Law," the purported class action waiver here is *at best*

ambiguous, and thus "should be construed against Nexo as the drafter of the contract." (*Id.* at 53.) On this additional basis, the purported class action waiver does not apply. *See, e.g.*, *Ariza v. Autonation, Inc.*, 2006 WL 8442746, at *4-5 (C.D. Cal. Nov. 3, 2006) (concluding that "the provision is ambiguous as to whether Plaintiffs waived their right to maintain this class action," construing the provision against the defendant as the drafter, and thus rejecting defendants' argument for waiver).

### iii.   The Purported Waiver Is Unconscionable.

In the absence of any arbitration provision, a class action waiver may be unenforceable because it is unconscionable. That is, "the principle that class action waivers are, under certain circumstances, unconscionable and unlawfully exculpatory is a principle of California law" that applies "to class action litigation waivers in contracts without arbitration agreements." *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 165-66 (2005); *see Meyer v. Kalanick*, 185 F. Supp. 3d 448, 455-59 (S.D.N.Y. 2016) (analyzing the precedent and explaining the Supreme Court's opinions regarding arbitration provisions "do not invalidate *in toto* the California rule that class action waivers may be held unconscionable"); *Underwood*, 2018 WL 4964333, at *5-6 (applying *Discover Bank* in the absence of any arbitration agreement).

Under this law, a class action waiver is unenforceable when it is "found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." *Discover Bank*, 36 Cal. 4th at 162-63. Plaintiff alleges that, through its adhesion contracts, Nexo has done just that. (AC ¶¶ 34, 105, 164, 169.) Such allegations preclude the dismissal of claims on the basis of the purported waiver. *See Underwood*, 2018 WL 4964333, at *5-6 ("Whether a class waiver is unconscionable depends on the facts and circumstances developed during the course of litigation . . . . Plaintiff has not had an opportunity to conduct discovery regarding unconscionability. It is rare to strike class allegations before discovery

1
2

has started."); *Meyer*, 185 F. Supp. 3d at 455-59 (finding plaintiff's allegations of such a scheme sufficient to defeat defendant's motion to dismiss and reconsideration motion on the same issue).

3

iv.    <u>The Purported Waiver Is Otherwise Unenforceable.</u>

4
5
6
7
8
9
10
11
12

A class action waiver "that waives the right to seek public injunctive relief in any forum is contrary to California public policy and is thus unenforceable under California law." *Lira v. Nat'l Distrib. Ctrs., LLC*, 2021 WL 6693934, at *6 (C.D. Cal. Dec. 22, 2021) (cleaned up); *accord Vasquez v. Cebridge Telecom CA*, LLC, 2021 WL 5113217, at *6 (N.D. Cal. Nov. 3, 2021). A contractual provision that permits the customer to seek relief only "on an individual basis" purports to waive their right to seek public injunctive relief. *See Lira*, 2021 WL 6693934, at *6; *Vasquez*, 2021 WL 5113217, at *6. Accordingly, where the plaintiff seeks public injunctive relief and the purported class waiver would preclude him from doing so, the waiver is unenforceable. *See Lira*, 2021 WL 6693934, at *6-7; *Vasquez*, 2021 WL 5113217, at *6-7.

13
14
15
16
17
18
19
20
21
22
23
24

Plaintiff seeks public injunctive relief: "The California UCL Class is entitled to an injunction precluding Nexo from suspending its borrowing services in bad faith and without notice, and precluding Nexo from liquidating customers' collateral on the purported basis that Nexo owns it." (AC ¶ 206.) Plaintiff further alleges: "If an injunction is not issued, the California UCL Class members will suffer irreparable injury, and lack of adequate legal remedy, in the event of Nexo's subsequent revocation of the contractual provisions at issue against the interests of the California UCL Class." (*Id.* ¶ 207.) Plaintiff seeks this relief to benefit "the public interest," because "the public" includes "prospective Nexo customers." (*Id.* ¶ 210.) Indeed, the statutory scheme of the UCL is "explicitly designed to provide for public injunctive relief that is by definition primarily for the benefit of the general public." *Vasquez*, 2021 WL 5113217, at *7 (cleaned up). Plaintiff is prepared to spell out, moreover, his implicit intention to seek public injunctive relief against Nexo's false advertising, once resolved. (*See* AC ¶¶ 198-204.).)

25
26
27
28

Nexo's purported class action waiver, in turn, would preclude Plaintiff from pursuing this public injunctive relief. The provision provides: "You agree that any dispute resolution proceeding

subject to the Applicable Law under the preceding sentence shall be conducted only on an individual basis and not as a plaintiff or class member in any purported class, consolidated or representative action or proceeding." (*Id.* ¶ 159.) The provision further provides: "No court or other dispute resolution authority can consolidate or join more than one claim and can otherwise preside over any form of a consolidated, representative, or class proceeding. Any relief awarded cannot affect other Clients of Nexo." (*Id.*) Under the law, as noted, these provisions purport to operate as the customer's waiver to seek public injunctive relief. Accordingly, they are unenforceable.

**B.    Nexo's Motion to Strike Plaintiff's Damages Class Allegations on the Pleadings Is Premature and Wrong on the Merits**

Nexo mistakenly contends (at 19-20) that the Court should strike Plaintiff's class allegations because his "breach of contract claim" is "a 'class of one' such that commonality, typicality, and adequacy under Rule 23 are not met. *First*, the authority cited by Nexo makes clear that striking class allegations at the pleading stage is "disfavored," "in fact rare," and "premature." *Schubert v. Anthem Blue Cross Life & Health Ins. Co.*, 2015 WL 13916131, at *5 (C.D. Cal. Oct. 2, 2015) (internal citations omitted). In fact, "a motion to strike almost inevitably is a less efficient way of moving towards a resolution on the merits" and "[w]hile a court has the authority to grant a motion to strike class claims at the pleading stage, such motions are rarely successful." *Lee v. Hertz Corp.*, 330 F.R.D. 557, 562 (N.D. Cal. 2019).

*Second*, Nexo is simply wrong. Whether Nexo breached the covenant of good faith and fair dealing "by suspending XRP payments" or "failing to give notice of its suspension of XRP payments" is premised upon common issues of both law and fact—"even a single common question will do." *Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 398 (N.D. Cal. 2021). Nexo does not appear to even dispute that there *are* issues common to all class members—instead focusing on the proposition that questions like "what losses they allegedly incurred" might differ. *Cf. Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (the "amount of damages is invariably an individual question and does not defeat class action treatment.")

Nexo hangs its hat (at 20) on the idea that Plaintiff does "not plausibly allege" that the implied covenant "is interpreted identically among all 50 states." But that exact argument is premature on a motion to strike. *See, e.g., Choi v. Kimberly-Clark Worldwide, Inc.*, 2019 WL 4894120, at *6 (C.D. Cal. Aug. 28, 2019) (motion to strike class allegations because "variance in state law will overwhelm common issues and preclude predominance for a single nationwide class" was "premature."). Plaintiff has also specifically pleaded that the "common law across states" would subject Nexo "to the implied covenant of good faith and fair dealing" that it breached. (AC ¶ 60.) And it would. *See, e.g., Bloomington Chrysler Jeep Eagle, Inc. v. DaimlerChrysler Motor Co.*, 2005 WL 3577133, at *5 (D. Minn. Dec. 29, 2005) (Minnesota law) ("Without an implied covenant of good faith, an agreement vesting complete discretion in one party may be illusory."); *Richards v. Direct Energy Servs., LLC*, 915 F.3d 88, 105 (2d Cir. 2019) (Connecticut law) ("The implied covenant of good faith and fair dealing obliged Direct Energy to act in good faith when it set the variable rate, and 'good faith is enough to avoid the finding of an illusory promise.'"). That is because, as "several courts have recognized," "the law relating to the element of breach does not vary greatly from state to state." *In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 529 (N.D. Cal. 2010) (certifying nationwide breach of contract class). Plaintiff's pleading is thus perfectly plausible.

*Third*, Nexo confines its argument (at 19) only to Plaintiff's "breach of contract claim" (*i.e.* the "Damages Class")—it makes no argument that Plaintiff's declaratory (the "Equitable-Relief Class") and UCL claims (the "California UCL Class"), constitute a "class of one." (AC ¶ 148.)

### C.    Nexo's Motion to Strike Plaintiff's Damages Class and Equitable Relief Class Allegations on Standing Grounds Is Premature and Wrong on the Merits

Nexo contends (at 20) in "the alternative" that the court should strike non-California class allegations from the Damages and Equitable-Relief classes "on standing grounds." *First*, such an argument is premature. *See Lytle v. Nutramax Lab'ys, Inc.*, 2019 WL 8060070, at *7 (C.D. Cal. Sept. 26, 2019) (rejecting argument that "plaintiffs lack standing to represent non-California residents bringing claims under the laws of other states for purchases outside of California" because

it is simply a "premature class certification opposition"); *Sonner v. Schwabe N. Am., Inc.*, 2015 WL 13307076, at *8–9 (C.D. Cal. Nov. 18, 2015) ("courts should engage in a choice-of-law analysis to determine if the various laws at issue conflict. Such analysis, however, is untimely. A detailed choice-of-law analysis would be inappropriate for a Motion to Strike." (quotation omitted).)

*Second*, despite acknowledging that its argument does not address the UCL Class, Nexo relies upon paragraphs of case law standing for the proposition that "statutory consumer protection claims" are not applied extraterritorially. Nexo's extensive reliance on *Mazza v. Am. HondaMotor Co.* and its progeny is inapposite. 666 F.3d 581 (9th Cir. 2012). "Following <u>Mazza</u>, courts in this Circuit have routinely held that decision does not hold that nationwide classes are, as a matter of law, uncertifiable under California's consumer protection laws." *Sonner*, 2015 WL 13307076, at *8–9 (collecting cases). And *Mazza* itself "expressed no opinion" as to whether the district court there could "certify a class with members more broadly but with subclasses for class members in different states, with different jury instruction for materially different bodies of state law." *Mazza*, 666 F.3d at 594, *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022). Nexo does not rely upon a *single case* that says it is inappropriate to certify a nationwide class for breach of contract or declaratory judgment because the named plaintiff resides in California and lacks standing to assert such claims. That is because "only the named plaintiffs need to have standing to assert a breach of contract claim based on an identical form contract on behalf of class members in states with similar contract laws." *Ellsworth v. U.S. Bank, N.A.*, 2014 WL 2734953, at *31 (N.D. Cal. June 13, 2014); *see Hernandez v. Wells Fargo Bank, N.A.*, 2020 WL 469893, at *3 (N.D. Cal. Jan. 29, 2020) (certifying nationwide breach of contract class and noting any "variations from state to state can be handled within the overall management of the classwide trial of the contract claim.").

## **CONCLUSION**

Plaintiff respectfully submits, for the foregoing reasons, that the Court should deny Nexo's motion to dismiss or, in the alternative, grant Plaintiff leave to amend where relevant.

Dated: May 12, 2022

                                    Respectfully submitted,

                                    */s/ Edward Normand*
                                    Kyle W. Roche (*pro hac vice*)
                                    Edward Normand (*pro hac vice*)
                                    Alex Potter (*pro hac vice*)
                                    Stephen Lagos (*pro hac vice*)
                                    ROCHE FREEDMAN LLP
                                    99 Park Avenue, Suite 1910
                                    New York, NY 10016
                                    Tel.: 646-970-7509
                                    kyle@rochefreedman.com
                                    tnormand@rochefreedman.com
                                    apotter@rochefreedman.com
                                    slagos@rochefreedman.com

                                    Ivy Ngo (SBN 249860)
                                    ROCHE FREEDMAN LLP
                                    1 SE 3rd Ave.
                                    Suite 1240
                                    Miami, FL 33131
                                    Tel.: 786-924-2900
                                    ingo@rochefreedman.com

                                    *Counsel for Plaintiff*

Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss
Case No. 5:21-CV-02392-BLF