1
2
3          **UNITED STATES DISTRICT COURT**
4          **NORTHERN DISTRICT OF CALIFORNIA**
5          **SAN JOSE DIVISION**
6

7    JUNHAN JEONG,                              Case No.  21-cv-02392-BLF
8                    Plaintiff,
                                                **ORDER GRANTING IN PART AND**
9          v.                                   **DENYING IN PART DEFENDANT**
                                                **NEXO CAPITAL INC.'S MOTION TO**
10   NEXO CAPITAL INC.,                         **DISMISS SECOND AMENDED**
                                                **COMPLAINT**
11                  Defendant.
                                                [Re:  ECF No. 56]
12

13         Before the Court is Defendant Nexo Capital Inc.'s ("Nexo") motion to dismiss Plaintiff

14   Junhan Jeong's second amended complaint in this breach of contract and consumer protection case

15   regarding Nexo's Crypto Credit service, which allows users to take out loans against cryptocurrency

16   collateral.   Plaintiff alleges in response to an action filed by the Securities and Exchange

17   Commission ("SEC") targeting the cryptocurrency Ripple ("XRP"), Nexo limited the use of Ripple

18   on its platform in response to its cratering price, causing customers to default on loans taken out

19   against XRP collateral.   Plaintiff alleges that Nexo's conduct breached the duty of good faith and

20   fair dealing related to its contracts with customers and constituted a violation of California's Unfair

21   Competition Law ("UCL").   Plaintiff further seeks declaratory judgment on issues related to the

22   contract between Nexo and its customers.   Nexo moves to dismiss Plaintiff's second amended

23   complaint ("SAC").   *See* Motion, ECF No. 56; SAC, ECF No. 55.   This is Nexo's second effort to

24   dismiss Plaintiff's pleadings after the Court granted in part and denied in part Nexo's motion to

25   dismiss Plaintiff's initial complaint with leave to amend.   *See* Order on Motion to Dismiss Initial

26   Complaint, ECF No. 48.   Nexo argues that Plaintiff's claims should be dismissed for failure to plead

27   sufficient facts and that Plaintiff's class claims should be stricken, including under a class action

28

*United States District Court*
*Northern District of California*

waiver provision in Nexo's contract with customers. *See* Motion, ECF No. 56; Reply, ECF No. 62. Plaintiff opposes. *See* Opposition, ECF No. 59.

Based on the below reasoning, the Court GRANTS IN PART and DENIES IN PART Nexo's motion.

## I.    BACKGROUND

### A.    Factual Background

Nexo is a Cayman Islands corporation with its principal place of business in England. *See* SAC, ECF No. 55 ¶ 18. Nexo offers cryptocurrency services via its website throughout the United States. *See id.* Plaintiff is a California resident who allegedly obtained a loan through Nexo's website. *See id.* ¶ 17.

Nexo offers a website on which users can transact loans in any of several cryptocurrencies, including XRP. One feature of the website is the Nexo Crypto Credit service, which allows users to stake any of a variety of cryptocurrencies to serve as collateral for loans in cash or other cryptocurrencies. *See id.* ¶ 35. Users can also fund a "Savings Wallet" to serve as backup collateral. *See id.* Users can take out loans up to a loan-to-value ("LTV") ratio of 83.3%—*i.e.*, the loan can only be approximately five-sixths (83.3%) of the value of the collateral. *See id.* ¶¶ 36–39. If a user's LTV ratio rises above 83.3%, then Nexo will, after providing notice to the user, liquidate the collateral to the extent necessary to bring the LTV ratio back within the 83.3% threshold. *See id.* ¶ 38. Users can keep their LTV ratios low by staking additional collateral or using their existing collateral to pay down part of the outstanding loan. *See id.* ¶ 4. A user's LTV ratio on the Nexo platform fluctuates with the price of the underlying collateral. *See id.* ¶ 3.

On December 22, 2020, the SEC announced its action against Ripple Labs Inc.—the issuer of XRP—and two of its executives, alleging that XRP constituted an unregistered securities offering. *See id.* ¶ 47. In response to the news, over the course of a few hours on December 23, 2020, the price of XRP dropped from $0.45 to $0.21. *See id.* Plaintiff alleges that Nexo, seeing the price drop, suspended users' ability to use XRP as collateral or to pay down loans (the "Suspension")—to ensure that Nexo would not be left holding the bag. *See id.* ¶¶ 48–49. The Suspension remains in place to this day. *See id.* ¶ 48. Nexo provided no notice of the Suspension to users. *See id.* As

United States District Court
Northern District of California

a result of the suspension, users with loans based on XRP collateral were "effectively locked out" of maintaining their LTV ratios, since they could neither use their XRP to pay down their loans nor sell their XRP on the open market, since this would require withdrawing XRP collateral and further raising the LTV ratio. *See id.* ¶ 90. Users whose XRP collateral was not entirely liquidated on December 23 were "foreseeably locked into unfavorable LTV ratios" in the days that followed, since the process of converting digital assets into cash and using that cash to pay down loans on the Nexo platform can take as much as a week. *See id.* ¶ 91. Meanwhile, the price of XRP continued to fall over the days following December 23, 2020—reaching a price of $0.17 on December 29, 2020. *See id.* Within hours of the Suspension, Nexo proceeded to sell "massive quantities" of XRP held as customer collateral, including U.S.-based customers and customers outside the U.S. *See id.* ¶ 49.

Plaintiff alleges that at the time of the Suspension, he had staked collateral of 598,384.6188 XRP—approximately $269,300—for a loan of $169,400 from Nexo. *See id.* ¶ 139. As a result of Nexo's conduct around December 20, 2020, Plaintiff alleges that he lost his entire XRP collateral, in addition to the following digital assets that he liquidated in an unsuccessful attempt to pay down his loans as his LTV value rose:  47,190.47043 Lumen (approximately $6,000); 0.009255 Bitcoin (approximately $215); 6.1674 Ether (approximately $3,600); and 168.18851 Link (approximately $1,800). *See id.* ¶ 139. Additionally, Plaintiff alleges he was assessed an undisclosed 1.26% fee for each liquidation, costing him approximately $1,607.01. *See id.*

Plaintiff alleges that the Suspension breached the Nexo Borrow Terms & Conditions, which users must sign to use the Nexo Crypto Credit service. *See* Borrow Terms, ECF No. 56-1. The Borrow Terms allow users to provide collateral in the form of "Digital Assets," which the Borrow Terms define as "any digital assets (such as cryptocurrencies, stablecoins and tokenized assets), accepted by Nexo." *See* Borrow Terms, ECF No. 56-1 §§ IV.1, II.2; *see also id.* § X.1(b) (providing that a user has an "obligation to maintain Digital Assets with Nexo considered by Nexo to be acceptable and adequate pursuant to these General Terms"). The Borrow Terms indicate that "such Digital Assets are indicated on the Nexo Platform and in the Nexo Account and are subject to revision from time to time." *See id.* § IV.2. The Borrow Terms further provide that users "shall at all times maintain the necessary Collateral" in accordance with the LTV threshold, and, "[i]f the

LTV increases above certain thresholds, as indicated on the Nexo Platform, [users] shall, at [Nexo's] request, provide additional Collateral and/or make the required repayments" to lower their LTV below the threshold.  *See id.* §§ IV.2–3, VI.1.  Additionally, the Borrow Terms state that "[i]f the LTV increases above the maximum payment threshold, as indicated on the Nexo Platform, Nexo shall, after notifying you, liquidate the necessary amount of Collateral to rebalance your Nexo Crypto Credit."  *See id.* § VI.2.

The Borrow Terms also contain provisions that purport to provide Nexo with various rights. First, there is a provision granting Nexo broad rights under its "sole and absolute discretion" ("Discretion Provision"):

> At any time, at our sole and absolute discretion, without liability to you, we can:  (i) refuse your request for granting of a Nexo Crypto Credit; (ii) change the conditions for entering into the Agreement or use of the Nexo Crypto Credit; (iii) suspend the provision of the Nexo Crypto Credit or of all or part of the other Nexo services; or (iv) change, update, remove, cancel, suspend, disable or discontinue any features, component, content, incentive or referral plan of the Nexo Crypto Credit."

*Id.* § III.3.  Second, there is the following "ownership" provision of the Borrow Terms ("Ownership Provision"):

> Unless prohibited by any Applicable Law, by virtue of this Agreement Nexo acquires the ownership of the Collateral while the Nexo Crypto Credit is outstanding.

*Id.* § IV.4.   Third, the Borrow Terms contain the following limitation of liability provision ("Limitation of Liability Provision"):

> IN NO EVENT WILL OUR AGGREGATE LIABILITY FOR ANY LOSS OR DAMAGE ARISING IN CONNECTION WITH THE NEXO CRYPTO CREDIT EXEED THE FEES YOU PAID TO NEXO FOR YOUR USE OF THE SERVICES DURING THE 12 MONTH PERIOD IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO THE CLAIM OR LIABILITY.   THE FOREGOING LIMITATIONS OF LIABILITY SHALL APPLY TO THE FULLEST EXTENT PERMITTED BY ANY APPLICABLE LAW.

*Id.* § XII.5.

Plaintiff alleges that Nexo breached the Borrow Terms by breaching the implied covenant of good faith and fair dealing through the Suspension.  Specifically, Plaintiff alleges that Nexo breached the covenant by (1) removing XRP as an accepted Digital Asset while indicating on the Nexo platform that XRP was accepted, *id.* ¶¶ 54–55 and (2) doing so without notice, *id.* ¶ 56—thereby excusing Nexo customers of the contractual obligation to maintain their LTV ratios, *id.* ¶ 57.  Plaintiff asserts that Nexo's conduct was not allowed under the Discretion Provision or any other such provision of the Borrow Terms, since that would render the contract illusory.  *See id.* ¶¶ 59–66, 93–97.  Further, Plaintiff asserts that Nexo's conduct was not allowed under the Ownership Provision, since it is unconscionable and "completely ambiguous," given the Borrow Terms' failure to define "Applicable Law."  *See id.* ¶¶ 104–14.  Additionally, Plaintiff alleges that Nexo's conduct shows it acted in bad faith and dishonestly.  First, while Nexo publicly purported to suspend XRP because of regulatory uncertainty, Plaintiff alleges that Nexo's motivation was in fact to reduce its own exposure to XRP losses—a reality belied by Nexo's willingness to sell off XRP, offer to sell Plaintiff's XRP back to him, and the fact that the Suspension applied to Nexo customers outside the U.S.  *See id.* ¶¶ 68–80.  Second, Plaintiff alleges that Nexo's failure to provide notice of the Suspension to customers was in bad faith, because it was unfair and it frustrated the common purpose of the Borrow Terms to allow customers to pay down their loans.  *See id.* ¶¶ 81–89.

Plaintiff further alleges that Nexo engaged in false and misleading advertising in violation of the UCL.  First, Plaintiff alleges that Nexo has advertised to consumers that it does not own users' collateral while acting otherwise—invoking its ownership right over users' collateral to justify liquidation of that collateral.  *See id.* ¶¶ 41–44; 115–37; 199–200.  Plaintiff points to language in Nexo's marketing materials indicating that users maintain ownership over their staked crypto assets, including the following lines from Nexo's Whitepaper available on its website:  "Clients retain 100% ownership of their digital assets. . . . Nexo's clients can enjoy their crypto wealth immediately, without having to sell their digital assets."  *See id.* ¶ 118; *see also id.* ¶¶ 116–37.  However, in a public statement on December 30, 2020, Nexo invoked its ownership over users' XRP collateral as a justification for its liquidation of users' assets:  "Taking into consideration the fact that . . . Nexo acquires the ownership of the collateral while the Nexo crypto credit is outstanding, when

liquidations are effected, Nexo disposes of its own digital assets rather than rendering services to its clients, as it is the case with the repayments and the standard Nexo exchange service." *See id.* ¶ 102. Second, Plaintiff alleges that Nexo has advertised to consumers that there are "#ZeroFees" associated with its services. *See id.* ¶¶ 40; 139; 202. However, Plaintiff alleges that he was charged fees when Nexo liquidated his XRP collateral. *See id.* Third, Plaintiff alleges that Nexo engaged in false advertising by publicizing that its users would have particular legal rights in connection with their purported loans—rights that Nexo ignored by virtue of Borrow Terms provisions like the Discretion Provision. *See id.* ¶ 201.

Additionally, Plaintiff alleges that Nexo has engaged in unlawful or unfair business practices under the UCL. In addition to alleging Nexo engaged in unlawful and unfair business practices through its breach of contract outlined above, Plaintiff alleges that Nexo violated the unlawful prong of the UCL by offering loans in California despite lacking a California Finance Lender ("CFL") License. *See id.* ¶¶ 45–46; 194.

Plaintiff seeks damages and restitution. *See id.* ¶¶ 139–143. Further, Plaintiff seeks declaratory and injunctive relief, alleging the "imminent prospect of irreparable harm" due to the uncertain regulatory status of many currently "acceptable" digital assets on the Nexo platform and "increased demand" for Nexo's services. *See id.* ¶¶ 16, 146–47. Plaintiff continues to hold cryptoassets on Nexo's platform. *See id.* ¶ 17.

Plaintiff brings his action on behalf of three classes, outlined below:

> Damages class: All persons who reside in the United States who suffered damages from breach of contract arising from Nexo's suspension of XRP payments on December 23, 2020, and thereafter.

> Equitable-Relief Class: All persons who reside in the United States and who maintain accounts or wallets with Nexo.

> California UCL Class: All persons who reside in California and who, as a result of Nexo's violations of the UCL as set forth in this Amended Complaint, suffered losses from their use of Nexo's Crypto Credit service.

*See id.* ¶ 148. Plaintiff notes that the Borrow Terms "purport to include a class action waiver," but Plaintiff asserts that it does not apply, it reflects no meeting of the minds, it is unenforceable as

ambiguous, and it is unconscionable.  *See id.* ¶¶ 158–71.  The relevant provision of the Borrow Terms (the "Class Action Waiver Provision") reads as follows:

> You agree that any dispute resolution proceeding subject to the Applicable Law under the preceding sentence shall be conducted only on an individual basis and not as a plaintiff or class member in any purported class, consolidated or representative action or proceeding. No court or other dispute resolution authority can consolidate or join more than one claim and can otherwise preside over any form of a consolidated, representative, or class proceeding.  Any relief awarded cannot affect other Clients of Nexo."

*See* Borrow Terms, ECF No. 56-1 § XV.2.

**B.    Procedural Background**

The Court previously granted in part and denied in part Nexo's motion to dismiss Plaintiff's initial complaint.  *See* Order, ECF No. 48.  The Court will provide a brief summary of that order.

The Court dismissed some of Plaintiff's claims without leave to amend.  Plaintiff initially sued a variety of Nexo entities—Nexo Capital Inc., Nexo Financial LLC, Nexo Financial Services Ltd., Nexo Services OÜ, and Nexo AG.  The Court dismissed Plaintiff's claims without leave to amend against all entities except Nexo Capital Inc. for lack of personal jurisdiction.  *See id.* at 14–29. Further, Plaintiff initially brought a claim under the California Consumers Legal Remedies Act. The Court dismissed Plaintiff's CLRA claim without leave to amend, finding that it was not plausible that Nexo offered "services" under the CLRA.  *See id.* at 41–45.

For other of Plaintiff's claims, the Court dismissed with leave to amend.  First, the Court dismissed Plaintiff's breach of contract claim with leave to amend.  *See id.* at 30–38.  As to Plaintiff's claim that the Suspension breached the Borrow Terms, the Court found that the Borrow Terms expressly provided that "[c]ertain rules may apply to repayments from time to time, as indicated on the Nexo Platform," and clauses like the Discretion Provision gave Nexo "considerable discretion to suspend and change various aspects . . . of its services, including the types of cryptocurrency Nexo offers and accepts as collateral."  *See id.* at 31–32 (citing Borrow Terms, ECF No. 56-1 §§ VIII.2, IV.1, III.3).  Accordingly, the Court found that Plaintiff failed to adequately allege that the Suspension was outside the purview of Nexo's express rights under the Borrow

United States District Court
Northern District of California

Terms.  As to Plaintiff's claim that Nexo's lack of notice to consumers of the Suspension breached the Borrow Terms, the Court found that Plaintiff failed to adequately allege that the Borrow Terms provided such a notice requirement.  *See id.* at 32–33.  As to Plaintiff's breach of the duty of good faith and fair dealing under the Borrow Terms, the Court found that Plaintiff had failed to adequately allege that if Nexo had the right to effect the Suspension without notice to consumers, then the Borrow Terms were illusory.  *See id.* at 35–37.  Specifically, the Court found that "[e]ven with XRP suspended, Plaintiff still had a Nexo Crypto Credit loan that he could maintain and pay down using a variety of different types of assets."  *Id.* at 36.  Further, the Court found that Plaintiff did not adequately allege that Nexo acted in bad faith or in frustration of a common purpose of the Borrow Terms, since Nexo acted within the terms of the contract.  *See id.* at 37.  Accordingly, the Court dismissed Plaintiff's breach of contract claim with leave to amend.  *See id.* at 38.

The Court further dismissed claims related to the breach of contract claim.  *See id.* at 39, 46–47.  First, the Court dismissed Plaintiff's declaratory relief claim regarding its right to effect the Suspension under the Borrow Terms, finding it duplicative of Plaintiff's breach of contract claim.  *See id.* at 39.  Second, the Court dismissed Plaintiff's UCL claim as to the unlawful and unfair prongs, since they were based on Nexo's alleged breach of contract.  *See id.* at 46–47

The Court declined to dismiss Plaintiff's remaining claims.  As to Plaintiff's unfair or misleading advertising claim under the UCL, the Court found that Plaintiff had pled sufficient facts under the theory related to Nexo's purported "ownership" of users' collateral.  *See id.* at 47–48.  Further, the Court found that Nexo had plausibly pled claims for declaratory relief on the issues of Nexo's rights under the Borrow Terms and Nexo's "ownership" of users' collateral.  *See id.* at 38–41.

The Court also denied Nexo's 12(b)(1) motion to dismiss all claims related to (1) the Suspension and (2) Nexo's lack of notice of the Suspension due to lack of standing, finding that Plaintiff had adequately alleged standing to sue regarding this conduct.  *See id.* at 7–11.  The Court further denied Nexo's 12(b)(1) motion as to Plaintiff's standing to seek declaratory relief.  *See id.* at 12–14.  However, the Court granted Nexo's 12(b)(1) motion as to Nexo's lack of notice of liquidation of consumers' collateral, finding that Plaintiff had not adequately alleged an injury-in-

fact as to this conduct.  *See id.* at 12.

After the Court issued its order, Plaintiff amended his complaint twice, ultimately filing the Second Amended Complaint—which is at issue in Nexo's Motion—on March 9, 2022.  *See* Second Amended Complaint ("SAC"), ECF No. 55; *see also* First Amended Complaint ("FAC"), ECF No. 52.  The Second Amended Complaint only asserts claims against Nexo Capital, Inc—dropping claims against all other Nexo entities Plaintiff previously sued.  *See* SAC, ECF No. 55 at 1.  Further, Plaintiff expands his allegations in support of his claims, including further allegations to support his claim for Nexo's breach of the duty of good faith and fair dealing, *see, e.g., id.* ¶¶ 63–66, 68, 70–73, 80, 88; additional allegations to support his UCL claim, *see, e.g., id.* ¶¶ 40–46, 92–97, 105–107, 120, 139, 142–43, 195, 198–99, 201–203; and other added factual allegations.

Plaintiff now asserts three claims.  *See id.* ¶¶ 172–211.  First, Plaintiff asserts a breach of contract claim, now exclusively under a theory based on a breach of the duty of good faith and fair dealing.  *See id.* ¶¶ 172–78.  Second, Plaintiff asserts a claim for declaratory relief, seeking a declaration that (a) Nexo does not possess the "unfettered right" to change any material conditions for use of the Nexo Crypto Credit, including suspending provision of the Crypto Credit without notice and (b) Nexo does not acquire ownership of Plaintiff's collateral while the Nexo Crypto Credit is outstanding.  *See id.* ¶¶ 179–91.  Third, Plaintiff asserts a UCL claim under the unlawful, unfair, and deceptive or misleading advertising prongs.  *See id.* ¶¶ 192–211.  Under the unlawful prong, Plaintiff alleges a UCL violation based on Nexo's (1) alleged breach of contract and (2) lending without a CFL license in violation of the California Finance Law, §§ 22100 *et seq.*  *See id.* ¶¶ 194.  Under the unfair prong, Plaintiff alleges a UCL violation based on the Suspension and Nexo's lack of notice to consumers regarding the Suspension, asserting that Nexo's justifications for its conduct did not counterbalance its "substantial financial impact on its victims." *See id.* ¶ 196; *see also id.* ¶ 197.  Under the deceptive or misleading advertising prong, Plaintiff alleges a UCL violation based on Nexo's advertising relating to (1) legal rights of its customers; (2) Nexo's lack of ownership over its customers' collateral; and (3) the lack of fees associated with Nexo's Crypto Credit services.  *See id.* ¶¶ 199–202.

Nexo moves to dismiss Plaintiff's Second Amended Complaint for failure to state a claim

United States District Court
Northern District of California

1    under Rule 12(b)(6).  *See* Motion, ECF No. 56; *see also* Reply, ECF No. 62.  First, Nexo moves to

2    dismiss Plaintiff's breach of contract claim, arguing that Plaintiff's new allegations do not change

3    the Court's prior analysis that Nexo's conduct was expressly authorized by the Borrow Terms and

4    the duty of good faith and fair dealing was not necessary to keep the Borrow Terms from being

5    illusory.  *See* Motion, ECF No. 56 at 3–6.  Second, Nexo moves to dismiss Plaintiff's breach of

6    contract claim under the Limitation of Liability Provision, arguing that Plaintiff cannot plead that

7    his six-figure damages claim is below the contractual liability cap.  *See id.* at 4–5.  Third, Nexo

8    moves to dismiss Plaintiff's declaratory judgment claim, since it is either duplicative or on

9    hypothetical issues Plaintiff does not have standing to seek an advisory opinion about.  *See id.*

10   at 6–11.  Fourth, Nexo moves to dismiss Plaintiff's UCL claim. Under the unlawful prong, Nexo

11   argues Plaintiff's allegations are insufficient, since breach of contract is inadequately pled and

12   Plaintiff's lack of licensure theory is deficient.  *See id.* at 11–12.  Under the unfair prong, Nexo

13   argues Plaintiff's claim fails for the same reason his breach of contract claim fails.  *See id.* at 12–13.

14   And under the deceptive or misleading advertising prong, Nexo argues that none of Plaintiff's

15   theories are adequately pled.  *See id.* at 13–18.

16        Additionally, Nexo moves to strike Plaintiff's class allegations under Rule 12(f).  *See id.*

17   at 18–22.  First, Nexo argues that the Court should strike Plaintiff's class allegations based on the

18   Class Action Waiver Provision of the Borrow Terms.  *See id.* at 18–19.  Second, Nexo argues that

19   the Court should strike Plaintiff's class allegations because of the facially "individualized" nature

20   of Plaintiff's claims, which cannot be sufficient to satisfy the requirements of commonality,

21   typicality, and adequacy under Rule 23.  *See id.* at 19–20.  Third, Nexo argues in the alternative that

22   the Court should strike all non-California class allegations as to the Damages Class and Equitable

23   Relief Class, since Plaintiff lacks standing to assert class claims on behalf of non-California

24   customers applying the law of non-California states under *Mazza v. Am. Honda Motor Co.*,

25   666 F.3d 581 (9th Cir. 2012).  *See id.* at 20–22.

26        Plaintiff opposes Nexo's Motion.  *See* Opposition, ECF No. 62.  Generally, Plaintiff argues

27   that the Court should allow him to proceed as to the claims the Court previously declined to dismiss

28   in its prior order.  Further, Plaintiff argues that as to the claims that the Court previously dismissed

with leave to amend, the allegations he added in his Second Amended Complaint are sufficient to overcome the Court's prior dismissal.  Additionally, as to the arguments Nexo makes under the Limitation of Liability and Class Action Waiver Provisions, Plaintiff argues that those provisions are inapplicable, unconscionable, and otherwise unenforceable.

## II.   LEGAL STANDARD

### A.   Rule 12(b)(6) – Motion to Dismiss for Failure to State a Claim

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).  While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable.  *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

### B.   Rule 12(f) – Motion to Strike

Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Motions to strike are "generally viewed with disfavor, and will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties."  *Sliger*

United States District Court
Northern District of California

11

United States District Court
Northern District of California

*v. Prospect Mortg., LLC*, 789 F.Supp.2d 1212, 1216 (E.D. Cal. 2012) (citations omitted); *see also United States v. Wang*, 404 F.Supp.2d 1155, 1156 (N.D. Cal. 1991) ("[M]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation."). If a claim is stricken, "[i]n the absence of prejudice to the opposing party, leave to amend should be freely given." *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 826 (9th Cir. 1979) (citations omitted).

## III.   DISCUSSION

### A.   Motion to Dismiss under Rule 12(b)(6)

#### 1.   Breach of Contract

Nexo raises two issues pertaining to Plaintiff's breach of contract claim. First, Nexo argues that Plaintiff's claim—which is now based exclusively on the breach of the duty of good faith and fair dealing—is inadequately pled, because Plaintiff fails to address the deficiencies identified in the Court's prior order. Second, Nexo argues that Plaintiff's breach of contract claim should be dismissed based on the Limitation of Liability Provision in the Borrow Terms. The Court addresses each issue in turn.

##### a.   Breach of the Duty of Good Faith and Fair Dealing

Nexo argues that Plaintiff has failed to adequately allege a breach of the duty of good faith and fair dealing. *See* Motion, ECF No. 56 at 3–6. "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 683 (1988) (citation omitted). "[T]he covenant has both a subjective and an objective aspect—subjective good faith and objective fair dealing. A party violates the covenant if it subjectively lacks belief in the validity of its act or if its conduct is objectively unreasonable." *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal.4th 342, 372 (1992). The implied covenant does not alter a party's existing rights or duties under a contract. *See Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317, 327 (2000). Rather, the implied covenant supplements "the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." *Avidity Partners, LLC v. State*, 221 Cal.App.4th 1180, 1204 (2013) (citation omitted).

Accordingly, "if defendants were given the right to do what they did by the express provisions of the contract there can be no breach." *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal.App.4th 44, 56 (Cal. Ct. App. 2002) (citation omitted).  An agreement is illusory, and no enforceable contract has been created, if a promisor is "free to perform or to withdraw from the agreement at his own unrestricted pleasure." *Mattei v. Hopper*, 51 Cal.2d 119, 122 (1958). Generally, "[a] contract is unenforceable as illusory when one of the parties has the unfettered or arbitrary right to modify or terminate the agreement or assumes no obligations thereunder." *Harris v. Tap Worldwide, LLC*, 248 Cal.App.4th 373, 385 (2016).

The Court previously dismissed Plaintiff's claim for breach of contract and breach of the duty of good faith and fair dealing with leave to amend.  *See* Order, ECF No. 48 at 30–38.  The Court found that Plaintiff failed to adequately allege that Nexo had breached any provision of the Borrow Terms through the Suspension.  *See id.* at 30–34.  Further, the Court found that Plaintiff failed to adequately allege that the duty of good faith and fair dealing must be implied to save the Borrow Terms from being an illusory contract because "[e]ven with XRP suspended, Plaintiff still had a Nexo Crypto Credit loan that he could maintain and pay down using a variety of different types of assets." *Id.* at 36–37.  Additionally, the Court found that Plaintiff failed to adequately allege bad faith or frustration of common purpose in support of his claim that Nexo breached the duty of good faith and fair dealing, since Plaintiff had failed to adequately allege that Nexo's alleged suspension of XRP without notice was not expressly authorized by the Borrow Terms.  *See id.* at 37.

Nexo argues that the Court's prior order compels dismissal of Plaintiff's breach of contract claim, because the Court found that Nexo was authorized to effect the Suspension without notice under the Borrow Terms.  *See* Motion, ECF No. 56 at 3–4.  Further, Nexo argues that there can be no breach of the duty of good faith or fair dealing based on actions explicitly permitted by the Borrow Terms.  *See id.* at 5–6.  Additionally, Nexo argues that none of its actions rendered the Borrow Terms illusory, because it merely exercised its pre-existing contractual right to suspend part of its services without changing anything in the Borrow Terms.  *See* Reply, ECF No. 62 at 6.  Nexo argues that Plaintiff continued to have the ability to maintain his LTV through other repayment options after the Suspension.  *See id.* at 6–7.

In response, Plaintiff argues that he cured the deficiencies with his initial Complaint that the Court identified in its prior order. *See* Opposition, ECF No. 59 at 5–7. Plaintiff points to his allegations that the Borrow Terms purport to allow Nexo to revise at any time the digital assets that can be used as collateral and to rewrite the rules that apply to repayments as indicated on the Nexo Platform. *See id.* (citing SAC, ECF No. 55 ¶ 64). Further, Plaintiff points to his allegations that the existence of other payment options besides XRP does not provide independent consideration under the Borrow Terms given that Nexo retains the unilateral discretion to revise or suspend the provision of those methods of repayment. *See id.* at 6 (citing SAC, ECF No. 55 ¶ 66). Based on these allegations, Plaintiff argues that he has adequately pled that the duty of good faith and fair dealing must be implied to save the Borrow Terms from being illusory. *See id.* at 6–7 (citing, *e.g.*, *Third Story Music, Inc. v. Waits*, 41 Cal.App.4th 798, 808 (1995)). Further, Plaintiff argues that he has adequately alleged a breach of the duty of good faith and fair dealing, pointing to his allegations regarding Nexo's subjective bad faith—including Nexo's continued use of XRP for its own profit after the Suspension—as support for the inference that Nexo's conduct was objectively unreasonable. *See id.* at 8. Additionally, Plaintiff argues that he has adequately pled that Nexo frustrated the common purpose of the Borrow Terms. *See id.* at 8–9.

The Court agrees with Plaintiff. Plaintiff added allegations in the Second Amended Complaint to support his contention that the Borrow Terms are illusory if read to authorize the Suspension without notice. *See, e.g.*, SAC, ECF No. 55 ¶¶ 14, 42, 54–56, 63–66, 84, 174–75. The Court previously held that even after the Suspension, "Plaintiff still had a Nexo Crypto Credit loan that he could maintain and pay down using a variety of different types of assets." *See* Order, ECF No. 48 at 36. Plaintiff directly addresses the Court's prior holding in the Second Amended Complaint: "The existence of other repayment options besides XRP, for example, would not provide independent consideration under the contract where Nexo retains the unilateral discretion to revise or suspend the provision of those methods of repayment." *See* SAC, ECF No. 55 ¶ 66. Based on Plaintiff's amended pleadings, the Court is satisfied that Plaintiff has adequately alleged that the duty of good faith and fair dealing must be implied to save the Borrow Terms from being illusory.

1    Further, the Court finds that Plaintiff has adequately alleged that Nexo acted in bad faith or

2    in frustration of a common purpose.  Plaintiff added allegations in the Second Amended Complaint

3    indicating that Nexo acted in bad faith in connection with the Suspension, including by offering to

4    sell Plaintiff's collateral back to him after purporting to effect the Suspension because of the

5    regulatory uncertainty surrounding XRP.  *See id.* ¶¶ 68, 70–73, 80; *see also id.* ¶ 88.  These

6    allegations supplement the ample allegations of bad faith the Plaintiff pled in the initial Complaint,

7    including the unreasonableness of suspending XRP for Nexo's international customers when an

8    SEC action pertaining to XRP would only have an impact on its use in the United States.  *See, e.g.*,

9    *id.* ¶¶ 68–69, 74–79, 81–87.  Accordingly, the Court finds that Plaintiff has adequately alleged that

10   Nexo engaged in a breach of the duty of good faith and fair dealing by effecting the Suspension

11   without notice to customers.

12   Based on the above reasoning, the Court finds that Plaintiff has adequately alleged breach

13   of contract.

14                              **b.  Limitation of Liability Clause**

15   Nexo argues that Plaintiff's breach of contract claim should be dismissed because of the

16   following limitation of liability provision in the Borrow Terms:

17
18          IN NO EVENT WILL OUR AGGREGATE LIABILITY FOR ANY
            LOSS OR DAMAGE ARISING IN CONNECTION WITH THE
19          NEXO CRYPTO CREDIT EXCEED THE FEES YOU PAID TO
            NEXO FOR YOUR USE OF THE SERVICES DURING THE 12
20          MONTH PERIOD IMMEDIATELY PRECEDING THE EVENT
            GIVING RISE TO THE CLAIM OR LIABILITY. THE
21          FOREGOING LIMITATIONS OF LIABILITY SHALL APPLY TO
            THE FULLEST EXTENT PERMITTED BY ANY APPLICABLE
22          LAW.

23   Borrow Terms, ECF No. 56-1 § XII.5 ("Limitation of Liability Provision").  Further, Nexo argues

24   that Plaintiff's unconscionability allegations are insufficient to render the Limitation of Liability

25   Provision unenforceable.  *See* Motion, ECF No. 56 at 5; Reply, ECF No. 62 at 12.

26   In response, Plaintiff argues that Nexo cites to no authority indicating that contract language

27   like the Limitation of Liability Provision warrants dismissal.  *See* Opposition, ECF No. 59 at 2.

28   Further, Plaintiff argues that if the Limitation of Liability Provision is read to preclude liability, then

United States District Court
Northern District of California

15

1    it is unconscionable.  *See id.* at 2–4.

2         The Court agrees with Plaintiff that the Limitation of Liability Provision does not warrant

3    dismissal.  The Limitation of Liability limits damages—it does not speak to the facial plausibility

4    of Plaintiff's claims.  The Court defers on considering the enforceability and applicability of this

5    provision until a later stage of the case.

6                                                    * * *

7         Based on the above reasoning, the Court DENIES Nexo's motion to dismiss Plaintiff's

8    breach of contract claim.

9                              **2.  Declaratory Judgment**

10        Nexo moves to dismiss Plaintiff's declaratory judgment claim.  Under the Declaratory

11   Judgment Act, the Court may "declare the rights and other legal relations of any interested party."

12   28 U.S.C. § 2201.  "[T]he question in each case is whether the facts alleged, under all the

13   circumstances, show that there is a substantial controversy, between parties having adverse legal

14   interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

15   *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).  Declaratory relief is appropriate

16   when (1) "the judgment will serve a useful purpose in clarifying and settling the legal relations in

17   issue," and (2) "it will terminate and afford relief from the uncertainty . . . giving rise to the

18   proceeding."  *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir. 1984) (citations omitted).

19   The existence of another adequate remedy does not preclude a declaratory judgment.

20   Fed. R. Civ. Proc. 57; 28 U.S.C. § 2201.   However, "courts have dismissed companion claims for

21   declaratory relief where the breach of contract claims resolved the dispute completely and rendered

22   additional relief inappropriate."  *Davis v. Capitol Records, LLC*, No. 12-cv-1602,

23   2013 WL 1701746, at * *3-4 (N.D. Cal. Apr. 18, 2013).

24        Plaintiff seeks a declaration that (a) Nexo does not possess the "unfettered right" to change

25   any material conditions for use of the Nexo Crypto Credit, including suspending provision of the

26   Crypto Credit without notice and (b) Nexo does not acquire ownership of Plaintiff's collateral while

27   the Nexo Crypto Credit is outstanding.  *See id.* ¶¶ 179–91.

28        The Court previously found that Plaintiff had adequately pled a declaratory judgment claim

United States District Court
Northern District of California

16

regarding whether Nexo has certain "unfettered" rights relating to the Nexo Crypto Credit under the Borrow Terms. *See* Order, ECF No. 48 at 39–40. Specifically, the Court found that since "the Court could resolve Plaintiff's breach of contract claim without reaching the issue of whether Nexo had the 'unfettered' rights provided in Section III.3 of the Borrow Terms," the breach of contract claim may not settle all the contractual issues concerning which Plaintiff seeks declaratory relief. *See id.* at 40. Further, the Court found that Plaintiff had adequately pled a declaratory judgment claim regarding the ownership issue, since it is relevant to Plaintiff's sufficiently pled UCL unfair advertising claim. *See id.* at 40–41.

In seeking to dismiss Plaintiff's Second Amended Complaint, Nexo argues that Plaintiff's declaratory judgment claim as to Nexo's "unfettered" rights under the Borrow Terms should be dismissed because it is duplicative of Plaintiff's breach of contract claim. *See* Motion, ECF No. 56 at 8. Further, Nexo argues that Plaintiff does not have standing to support any other declaratory judgment claim. *See id.* at 8–11. Nexo argues that Plaintiff fails to plead facts that show imminent, irreparable harm—rather, his claims are based on past harm. *See id.* at 8–9. Further, Nexo argues that the issue of Nexo's "ownership" of customers' collateral has any connection to his alleged harm. *See id.* at 9.

In response, Plaintiff argues that a party can seek declaratory judgment regarding the terms of a contract that continues to bind the party—as Plaintiff alleges here regarding the Borrow Terms. *See* Opposition, ECF No. 59 at 10. Further, Plaintiff argues that since he alleges that regulatory actions like the SEC's suit against Ripple Labs are "likely" to occur in the future, he has adequately alleged future harm. *See id.* at 10–11. Additionally, Plaintiff argues that the Court previously found that his declaratory judgment claim related to the ownership issue was adequately pled, because it is relevant to Plaintiff's plausible UCL unfair advertising claim. *See id.* at 11.

As to Plaintiff's declaratory judgment claim related to whether Nexo has certain "unfettered rights" under the Borrow Terms, the Court agrees with Nexo. Now that Plaintiff has adequately alleged a breach of contract claim on the theory that the duty of good faith and fair dealing is necessary to save the Borrow Terms from being illusory, Plaintiff's "unfettered rights" declaratory judgment claim is duplicative of his breach of contract claim. Accordingly, the Court GRANTS

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Nexo's motion as to Plaintiff's declaratory judgment claim regarding Nexo's "unfettered rights"

2  under the Borrow Terms.

3      As to Plaintiff's declaratory judgment claim related to Nexo's ownership of customers'

4  collateral, the Court agrees with Plaintiff.  The Court previously found that Plaintiff's ownership-

5  related declaratory judgment claim is adequately pled because it is relevant to Plaintiff's plausible

6  UCL unfair advertising claim.  *See* Order, ECF No. 48 at 40–41.  The Court sees no reason to

7  reconsider its prior ruling, given that the Court finds that Plaintiff has plausibly pled a UCL unfair

8  advertising claim in his Second Amended Complaint.  Accordingly, the Court DENIES Nexo's

9  Motion as to Plaintiff's ownership-related declaratory judgment claim.

10     **3.  UCL**

11     Nexo moves to dismiss Plaintiff's UCL claim, which Plaintiff brings under (1) the unlawful

12  prong; (2) the unfair prong; and (3) the unfair, deceptive, untrue, or misleading advertising prongs

13  of the UCL.  *See* SAC, ECF No. 55 ¶¶ 192–211.  Nexo challenges the sufficiency of Plaintiff's

14  allegations under each asserted prong of the UCL.  *See* Motion, ECF No. 56 at 11–18.  Plaintiff

15  opposes.  *See* Opposition, ECF No. 59 at 12–19.  The Court considers each UCL prong in turn.

16     **a.  Unlawful Prong**

17     Nexo argues that Plaintiff has failed to adequately allege that Nexo violated the unlawful

18  prong of the UCL.  *See* Motion, ECF No. 56 at 11–12.  The UCL's "coverage is sweeping,

19  embracing anything that can properly be called a business practice and that at the same time is

20  forbidden by law."  *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999)

21  (internal quotations and citation omitted).  The UCL "borrows violations of other laws and treats

22  them as unlawful practices that the unfair competition law makes independently actionable."  *Id.*

23  (internal quotations and citation omitted).

24     The Court previously found that Plaintiff failed to adequately allege a UCL unlawful prong

25  claim, because Plaintiff's predicate breach of contract and CLRA claims were implausibly pled.  *See*

26  Order on First Motion to Dismiss, ECF No. 48 at 46.  In his Second Amended Complaint, Plaintiff

27  drops his CLRA claim, amends his breach of contract claim, and adds further UCL unlawful prong

28  allegations regarding Nexo's lending without a license in violation of the CFL.  *See* SAC,

1    ECF No. 55.

2        Nexo argues that Plaintiff's breach of contract claim is not an adequate predicate for a UCL

3    unlawful prong claim because Plaintiff fails to plausibly plead breach of contract.  *See* Motion,

4    ECF No. 56 at 11.  Further, Nexo argues that Plaintiff's UCL unlawful prong claim based on the

5    CFL is implausible.  *See* Motion, ECF No. 56 at 11–12; Reply, ECF No. 62 at 7–8.  First, Nexo

6    argues that the CFL defines "money" as "a medium of exchange that is authorized or adopted by

7    the United States or a foreign government," Cal. Fin. Code § 2003(p), but Plaintiff fails to plead his

8    loan was in "money," rather than a non-fiat currency "stablecoin" like USDT or USDC.  *See id.*

9    Second, Nexo argues that Plaintiff does not plead any of his alleged harm resulted from Nexo's lack

10   of licensure.  *See id.*

11       In response, Plaintiff argues that his breach of contract claim is sufficiently pled, so his UCL

12   unlawful prong claim predicated on breach of contract is plausible.  *See* Opposition, ECF No. 59

13   at 12–13.  Further, Plaintiff argues that he adequately pled a UCL unlawful prong claim based on

14   Nexo's lack of licensure under the CFL.  *See* Opposition, ECF No. 59 at 13–14.  Plaintiff argues

15   that Nexo can point to no provision of the CFL providing that licensing is only required for loans

16   issued in "money" as statutorily defined.  *See id.* at 13.  Additionally, Plaintiff argues that

17   "stablecoins" should be considered "money" under the UCL, so Nexo's point is moot.  *See id.*

18   at 13 n.2.  Plaintiff also argues that he has adequately pled that his harm resulted from Nexo's lack

19   of licensure, pointing to allegations that he would not have suffered losses if not for Nexo's unlawful

20   business practices, including unlicensed lending, and that Nexo has publicly acknowledged the

21   importance of licensure to consumers.  *See* Opposition, ECF No. 59 at 13–14.

22       As to Plaintiff's UCL unlawful prong claim based on breach of contract, the Court agrees

23   with Plaintiff.  As outlined above, the Court finds that Plaintiff has adequately pled breach of

24   contract.  Accordingly, Plaintiff's UCL unlawful prong claim based on breach of contract is

25   plausibly pled as well.

26       As to Plaintiff's UCL unlawful prong claim based on Nexo's lack of licensure under the

27   CFL, the Court agrees with Plaintiff.  Plaintiff asserts that Nexo violated the CFL (California

28   Financial Code § 22100, *et seq*) by lending to California residents without a license.  *See* SAC,

1   ECF No. 55 ¶ 194.  California Financial Code § 22100(a) provides that "[n]o person shall engage

2   in the business of a finance lender or broker without obtaining a license from the commissioner."

3   Nothing in this provision suggests that engaging in the "business of a finance lender or broker"

4   requires lending "money" according to a particular statutory definition.  Under the CFL, a "finance

5   lender" includes "any person who is engaged in the business of making consumer loans or making

6   commercial loans."  Cal. Fin. C. § 22009.  "Consumer loan" is defined as "a loan, whether secured

7   by either real or personal property, or both, or unsecured, the proceeds of which are intended by the

8   borrower for use primarily for personal, family, or household purposes"—which again provides no

9   insight on whether a loan must be in fiat currency.  *Id.* § 22203.  The definition of "finance lender"

10  indicates that "[t]he business of making consumer loans or commercial loans may *include* lending

11  money," *id.* § 22009 (emphasis added), but this is an inclusive definition—it does not suggest that

12  a loan *must* be in fiat currency.

13          Nexo points to California Financial Code § 2003(p), which defines "money" as "a medium

14  of exchange that is authorized or adopted by the United States or a foreign government."  But this

15  definition is part of a different division of the California Financial Code than the CFL, and § 2003

16  states that the definitions it lists apply "[f]or purposes of *this division*[.]"  Cal. Fin. C. § 2003

17  (emphasis added).  Accordingly, the Court agrees with Plaintiff that Nexo "cites *no* provision of the

18  CFL providing that licensing is only required for loans issued in 'money' as statutorily defined."

19  Opposition, ECF No. 59 at 13.

20          In keeping with the CFL provision that it should be "liberally construed and applied to

21  promote its underlying purposes and policies," one of which is "[t]o protect borrowers against unfair

22  practices by some lenders," Cal. Fin. C. § 22001(a)(4), the Court finds that Plaintiff is not required

23  to plead that his loan was in fiat currency.  Accordingly, the Court declines to dismiss Plaintiff's

24  UCL unlawful prong claim under the CFL on the basis that he did not plead his loan was in fiat

25  currency.

26          Nexo also argues that Plaintiff's CFL-based UCL unlawful prong claim fails because

27  Plaintiff does not plausibly connect any harm he suffered to Nexo's lack of licensure.  The Court

28  disagrees.  Plaintiff's allegations are sufficient to plausibly allege that suffered injury at least in part

United States District Court
Northern District of California

1    due to Nexo's lack of licensure under the CFL. *See* SAC, ECF No. 55 ¶¶ 1, 45, 46(b), 140.

2        Accordingly, the Court DENIES Nexo's motion to dismiss Plaintiff's UCL unlawful prong

3    claim.

4            **b.  Unfair Prong**

5        Nexo argues that Plaintiff has failed to adequately allege that Nexo violated the unfair prong

6    of the UCL. *See* Motion, ECF No. 56 at 12–13.  The unfair prong of the UCL "creates a cause of

7    action for a business practice that is unfair even if not proscribed by some other law." *Cappello v.*

8    *Walmart Inc.*, 394 F. Supp. 3d 1015, 1023 (N.D. Cal. 2019).  While the definition of "unfair" is "in

9    flux," California courts have coalesced around two tests. *See Lozano v. AT&T Wireless Servs., Inc.*,

10   504 F.3d 718, 736 (9th Cir. 2007).  Some courts apply a balancing test in which the court "weigh[s]

11   the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis*

12   *v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).  Others apply the "tethering test,"

13   which asks whether the unfair act is "tethered to some legislatively declared policy" or whether

14   there is "proof of some actual or threatened impact on competition." *Lozano*, 504 F.3d at 735.

15       The Court previously dismissed Plaintiff's UCL unfair prong claim because it was based on

16   Plaintiff's breach of contract claim, which the Court found inadequately pled. *See* Order on First

17   Motion to Dismiss, ECF No. 48 at 46–47.  Plaintiff's Second Amended Complaint adds allegations

18   regarding breach of contract and Nexo's lack of a California lending license required under the CFL.

19   *See* SAC, ECF No. 55.

20       Nexo argues that Plaintiff does not plead a plausible UCL unfair prong claim because

21   Plaintiff's breach of contract claim fails and his allegations fail to tether Nexo's conduct to specific

22   constitutional, statutory, or regulatory provisions. *See* Motion, ECF No. 56 at 12–13.  In response,

23   Plaintiff argues that his UCL unfair prong claim is sufficient regardless of the adequacy of his breach

24   of contract allegations, since his allegations are adequate under the balancing test (substantial injury

25   to consumers with financial benefit to Nexo) and the tethering test (given his lending license-related

26   allegations tethered to the CFL). *See* Opposition, ECF No. 59 at 14–16.

27       The Court agrees with Plaintiff.  Plaintiff has plausibly alleged a UCL unfair prong claim

28   based on his breach of contract allegations.  Further, Plaintiff has plausibly alleged a UCL unfair

United States District Court
Northern District of California

1    prong claim under a tethering theory based on Nexo's lack of licensure under the CFL.  As the Court

2    outlines above, Nexo's objections to this theory are unavailing.

3        Accordingly, the Court DENIES Nexo's motion to dismiss Plaintiff's UCL unfair prong

4    claim.

5            **c.   Unfair, Deceptive, Untrue, or Misleading Advertising Prong**

6        Nexo argues that Plaintiff has failed to adequately allege that Nexo's advertising violated

7    the UCL.  *See* Motion, ECF No. 56 at 13–18.  The UCL prohibits "unfair, deceptive, untrue or

8    misleading advertising[.]"  *See* Cal. Bus. & Profs. C. § 17200.  The test for unfair, deceptive, untrue,

9    or misleading advertising is whether "members of the public are likely to be deceived."  *In re*

10   *Tobacco II Cases*, 46 Cal.4th 298, 312 (2009) (quotation marks and citation omitted).  Whether the

11   public is likely to be deceived is viewed through the lens of a "reasonable consumer."  *Davis v.*

12   *HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1152, 1169 (9th Cir. 2012).

13       The Court previously found that Plaintiff adequately pled a UCL violation regarding Nexo's

14   advertising of its lack of ownership over users' assets, finding that "Plaintiff has plausibly pled that

15   a reasonable consumer would have been deceived by Nexo's public statements about lack of

16   ownership over users' collateral given its alleged invocation of ownership to liquidate that

17   collateral[.]"  *See* Order on First Motion to Dismiss, ECF No. 48 at 48.  Despite the Court's prior

18   finding of the sufficiency of Plaintiff's advertising-related allegations, Nexo argues that Plaintiff

19   has not adequately alleged a UCL claim based on Nexo's advertising.  *See* Motion, ECF No. 56

20   at 13–18.  Specifically, Nexo argues that it does not contend that it owned users' collateral *before* a

21   user's LTV breach, and its ownership of users' collateral *after* an LTV breach is consistent with a

22   "traditional understanding of collateral under U.S. law."  *See* Motion, ECF No. 56 at 14.

23       The Court has already found that Plaintiff adequately pled a UCL violation based on Nexo's

24   advertising.  *See* Order on First Motion to Dismiss, ECF No. 48 at 48.  The Court sees no reason to

25   reconsider its prior order, particularly where Nexo's argument is based on a newfound position

26   (Nexo did not own users' collateral before any LTV breach) that clashes with Nexo's alleged

27   conduct and the language of the Borrow Terms.  *See* SAC, ECF No. 55 ¶ 69 (reciting Nexo's

28   December 30, 2020 statement that Nexo "acquires the ownership of the collateral while the Nexo

United States District Court
Northern District of California

crypto credit is outstanding"); Borrow Terms, ECF No. 56-1 § IV.5 ("by virtue of this Agreement Nexo acquires the ownership title and all attendant rights of ownership of the Collateral while the Nexo Crypto Credit is outstanding, and can dispose of this Collateral in any manner at its sole and absolute discretion"); First Motion to Dismiss, ECF No. 27 at 17 ("a secured lender acquires possessory rights over the collateral"); *see also Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation."). Since Plaintiff has adequately pled a UCL unfair advertising claim based on Nexo's ownership-related marketing, the Court does not reach Nexo's arguments regarding Plaintiff's other UCL unfair advertising theories. *See* Motion, ECF No. 56 at 15–17.

Accordingly, Nexo's motion to dismiss Plaintiff's UCL unfair, deceptive, untrue, or misleading advertising claim is DENIED.

\* \* \*

Based on the above reasoning, the Court DENIES Nexo's motion to dismiss Plaintiff's UCL claim.

### B.    Motion to Strike under Rule 12(f)

Nexo moves to strike Plaintiff's class allegations under Rule 12(f), arguing (1) a class action waiver provision in the Borrow Terms forecloses Plaintiff's class claims and (2) Plaintiff's allegations are facially insufficient under Rule 23. *See* Motion, ECF No. 56 at 18–20. Further, Nexo moves to strike Plaintiff's nationwide class allegations, since Nexo argues that Plaintiff lacks standing to bring claims on behalf of a nationwide class. *See id.* at 20–22. Plaintiff opposes. *See* Opposition, ECF No. 59 at 19–25. The Court will consider each issue in turn.

#### 1.  Class Action Waiver

Nexo argues that a class action waiver provision in the Borrow Terms forecloses Plaintiff's class claims. *See* Motion, ECF No. 56 at 18–19. Nexo points to the following provision of the Borrow Terms:

> You agree that any dispute resolution proceeding subject to the Applicable Law under the preceding sentence shall be conducted only

> on an individual basis and not as a plaintiff or class member in any purported class, consolidated or representative action or proceeding. No court or other dispute resolution authority can consolidate or join more than one claim and can otherwise preside over any form of a consolidated, representative, or class proceeding.  Any relief awarded cannot affect other Clients of Nexo.

Borrow Terms, ECF No. 56-1 § XV.2 ("Class Action Waiver Provision").  Nexo argues that many courts have found similar stand-alone class action waivers without an arbitration clause to be valid and enforceable.  *See* Motion, ECF No. 56 at 19.  Further, Nexo argues that there is no ambiguity to the provision—"Applicable Law" is defined in the Borrow Terms as "any law, statute, regulation . . . issued by any governmental or regulatory authority."  *See* Reply, ECF No. 62 at 13 (citing Borrow Terms, ECF No. 56-1 § II.1).  Additionally, Nexo argues that injunctions for the benefit of current and future customers are not properly characterized as public injunctive relief, so the rule in California against class action waiver provisions that preclude public injunctive relief does not apply here.  *See* Reply, ECF No. 62 at 13–14 (citing, *e.g.*, *Hodges v. Comcast Cable Communs., Ltd. Liab. Co.*, 12 F.4th 1108, 1120 (9th Cir. 2021)).

In response, Plaintiff first argues that the Class Action Waiver Provision does not apply, because this action is not a "dispute resolution proceeding subject to the Applicable Law."  *See* Opposition, ECF No. 59 at 20.  Rather, the Borrow Terms state that they are "governed exclusively by the substantive law of Nexo jurisdiction"—which is undefined.  *See* Opposition, ECF No. 59 at 20 (citing Borrow Terms, ECF No. 56-1 § XV.1).  Second, Plaintiff argues that the Class Action Waiver Provision is ambiguous due to the undefined "Applicable Law" and "Nexo jurisdiction" language, so it should be interpreted against Nexo—the drafter.  *See id.* at 20–21.  Third, Plaintiff argues that he has adequately pled that the Class Action Waiver Provision is unenforceable as unconscionable, because it is a contract of adhesion and the class action waiver provision is designed to cheat large numbers of consumers out of individually small sums of money.  *See id.* at 21–22 (citing SAC, ECF No. 55 ¶¶ 34, 105, 164, 169).  Fourth, Plaintiff argues that the Class Action Waiver Provision is unenforceable because it would preclude Plaintiff from seeking public injunctive relief, which California law prohibits.  *See id.* at 22–23.

As to the alleged ambiguity of the Class Action Waiver Provision, the Court agrees with

United States District Court
Northern District of California

1   Nexo.  Plaintiff has failed to adequately allege that the Class Action Waiver Provision is inapplicable

2   or unenforceable as ambiguous.  The Borrow Terms define "Applicable Law" as "any law, statute,

3   regulation, ordinance, treaty, guideline, policy and act issued by any governmental or regulatory

4   authority[.]"  Borrow Terms, ECF No. 56-1 § II.1.  Accordingly, the language "dispute resolution

5   proceeding subject to the Applicable Law" is not ambiguous, and it clearly encompasses the present

6   litigation.

7          Further, the Court agrees with Nexo as to the alleged unconscionability of the Class Action

8   Waiver Provision.  Unconscionability requires a showing of both procedural and substantive

9   unconscionability, which courts approach by applying a "sliding scale" that balances the strength of

10  a party's showing as to each type of unconscionability.  *See Ferguson v. Countrywide Credit Indus.,*

11  *Inc.*, 298 F.3d 778, 783 (9th Cir. 2002); *Mance v. Mercedes-Benz USA*, 901 F.Supp.2d 1147, 1158

12  (N.D. Cal. 2012).  The fact that the Borrow Terms are an adhesion contract shows nothing more

13  than a "minimal level of procedural unconscionability."  *See Lira v. Nat'l Distribution Ctrs., LLC*,

14  No. EDCV 21–672 JGB (KKx), 2021 WL 6693934 (C.D. Cal. Dec. 22, 2021).  Additionally,

15  Plaintiff's contention that the Class Action Waiver Provision is designed to cheat a large number of

16  consumers out of individually small sums of money is conclusory and has no support in the Second

17  Amended Complaint.  Further, in such a conclusory form, such an argument appears

18  indistinguishable from an argument that the Supreme Court has rejected—that a class waiver

19  provision automatically renders a contract substantively unconscionable.  *See, e.g.*, *AT&T Mobility*

20  *LLC v. Concepcion*, 563 U.S. 333, 348 (2011).  Accordingly, the Court finds that Plaintiff has

21  inadequately pled that the Class Action Waiver Provision is unenforceable as unconscionable.  *See*

22  *In re Samsung Galaxy Smartphone Marketing and Sales Practices Litig.*, 298 F.Supp.3d 1285, 1303

23  (2018) (citing *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233–39 (2013)).

24         As to the issue of whether the Class Action Waiver Provision waives the right to seek public

25  injunctive relief in any forum, the Court again agrees with Nexo.  Under California law, courts find

26  unenforceable contractual provisions that waive a party's rights to seek "public injunctive relief,"

27  or "injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten

28  future injury to the general public."  *See McGill v. Citibank, N.A.*, 2 Cal.5th 945, 951 (2017).  "Relief

United States District Court
Northern District of California

that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does not constitute public injunctive relief." *See id.* at 955; *see also Hodges v. Comcast Cable Communs., LLC*, 12 F.4th 1108, 1115 (9th Cir. 2021). The injunctive relief Plaintiff seeks in this case is limited to precluding Nexo from "suspending its borrowing services in bad faith and without notice, and precluding Nexo from liquidating Nexo customers' collateral on the purported basis that Nexo owns it." *See* SAC, ECF No. 55 ¶ 206. Courts have identified such injunctive relief as "private injunctive relief" that would benefit a "group of individuals similarly situated to the plaintiff"—*i.e.*, "current and prospective Nexo customers." *See* SAC, ECF No. 55 ¶¶ 206–210. A contractual provision that waives the right to seek such injunctive relief is not unenforceable under the *McGill* rule prohibiting waiver of the right to seek *public* injunctive relief. *See Hodges*, 12 F.4th at 1114–22.

Plaintiffs also bring a deceptive or misleading advertising claim as part of their UCL allegations. *See* SAC, ECF No. 55 ¶¶ 198–203. Injunctive relief under the UCL for deceptive or misleading advertising is the paradigmatic example of "public injunctive relief" under California law. *See McGill*, 2 Cal.5th at 956–58. However, Plaintiff conceded at the June 30, 2022 hearing that he does not seek injunctive relief based on his deceptive or misleading advertising claim. Accordingly, Plaintiff's deceptive or misleading advertising allegations do not render the injunctive relief he is seeking "public injunctive relief." Since Plaintiff is not seeking public injunctive relief, the Court finds that he has not adequately shown that the Class Action Waiver Provision is unenforceable under the *McGill* rule as to any of his claims.

\* \* \*

Accordingly, the Court finds that Plaintiff has failed to adequately show that the Class Action Waiver Provision is unenforceable. Since Plaintiff cannot pursue his class claims if the Class Action Waiver Provision applies, Plaintiff's class allegations are hereby STRUCK under Rule 12(f). Since Plaintiff indicated at the June 30, 2022 hearing that he may be able to expand his allegations regarding injunctive relief for his deceptive or misleading advertising claim under the UCL, the Court's order striking his class allegations is WITH LEAVE TO AMEND. *See Wyshak*, 607 F.2d at 826.

United States District Court
Northern District of California

### 2. Other Disputes Regarding Class Allegations

Nexo argues that Plaintiff's class allegations should be struck since they are facially insufficient to meet the requirements of Rule 23. *See* Motion, ECF No. 56 at 19–20. Additionally, Nexo argues that Plaintiff does not have standing to bring claims on behalf of non-California class members. *See* Motion, ECF No. 56 at 20–22. Since the Court strikes the class allegations based on the Class Action Waiver provision of the Borrow Terms, the Court does not reach whether Plaintiff's class allegations are facially sufficient under Rule 23. Further, the Court does not reach the issue of whether Plaintiff has standing to bring claims on behalf of non-California class members.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Nexo's motion to dismiss Plaintiff's breach of contract claim is DENIED;

2. Nexo's motion to dismiss Plaintiff's declaratory judgment claim is GRANTED as to the issue of Nexo's "unfettered rights" under the Borrow Terms and DENIED as to the issue of Nexo's ownership of customers' collateral;

3. Nexo's motion to dismiss Plaintiff's UCL claim is DENIED;

4. Nexo's motion to strike Plaintiff's class allegations is GRANTED WITH LEAVE TO AMEND; and

5. Plaintiff SHALL file any amended complaint within 30 days of this Order.

Dated:  August 22, 2022

BETH LABSON FREEMAN
United States District Judge