Edward Normand (*pro hac vice*)
Alex Potter (*pro hac vice*)
Stephen Lagos (*pro hac vice*)
**FREEDMAN NORMAND FRIEDLAND LLP**
99 Park Avenue, 19th Floor
New York, NY 10016
Tel.: (646) 970-7513
Email: tnormand@fnf.law
Email: apotter@fnf.law
Email: slagos@fnf.law

Ivy Ngo (SBN 249860)
**FREEDMAN NORMAND FRIEDLAND LLP**
1 SE 3rd Ave., Suite 1240
Miami, FL 33131
Tel.: (786) 924-2900
Email: ingo@fnf.law

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JUNHAN JEONG, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>NEXO CAPITAL INC.<br><br>Defendant. | Case Number: 5:21-CV-02392-BLF<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE CLASS ALLEGATIONS**<br><br>Date: February 23, 2022<br>Time: 9:00 a.m.<br>Judge: Hon. Beth Labson Freeman<br>Courtroom: No. 3, 5th Floor |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ............................................................................................................................. 2

I.  NEXO'S CLASS ACTION WAIVER IS UNENFORCEABLE BECAUSE IT IS
    UNCONSCIONABLE .................................................................................................... 2

    A.  Nexo's Borrow Terms Are an Adhesion Contract .................................................. 3

    B.  The Agreement Predictably Involves Small Amounts of Damages ........................ 3

    C.  Nexo Has Engaged in a Scheme to Deliberately Cheat Consumers out of
        Individually Small Sums of Money ........................................................................ 6

II. NEXO'S CLASS ACTION WAIVER IS UNENFORCEABLE BECAUSE IT
    PURPORTS TO WAIVE PUBLIC INJUNCTIVE RELIEF .......................................... 8

    A.  Plaintiff's Request for Public Injunctive Relief Is Well-Pled ................................ 8

    B.  Nexo's Class Action Waiver Bars Public Injunctive Relief ................................... 10

    C.  Nexo's Class Action Waiver Is Invalid in its Entirety .......................................... 12

III. NEXO'S MOTION TO STRIKE CLASS ALLEGATIONS ON ADEQUACY
     GROUNDS IS PREMATURE AND BASELESS ........................................................... 13

    A.  There Is No Conflict Between the Firm and the Class ........................................... 14

    B.  Nexo's Allegations That the Firm Is Improperly Pursuing This Action
        Are False, Implausible, and Unsupported ............................................................. 17

    C.  Nexo's Request to Strike Is Premature .................................................................. 19

    D.  Nexo's Reliance on the Contents of Court Filings Is Improper ............................ 21

IV. NEXO'S MOTION TO STRIKE PLAINTIFF'S DAMAGES CLASS AND
    EQUITABLE RELIEF CLASS ALLEGATIONS ON STANDING GROUNDS IS
    PREMATURE AND WRONG ON THE MERITS ........................................................ 22

CONCLUSION ......................................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Adkins v. Comcast Corp.*,
   No. 16-cv-05969-VC, 2018 WL 4846548 (N.D. Cal. Feb. 15, 2018)......................................11

*AIIRAM LLC v. KB Home*,
   No. 19-CV-00269-LHK, 2019 WL 3779185 (N.D. Cal. Aug. 12, 2019) ..........................19, 20

*Andrews Farms v. Calcot, LTD.*,
   No. CV-F-07-0464LJO DLB, 2010 WL 3341963 (E.D. Cal. Aug. 23, 2010)..............15, 16, 20

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ........................................................................................................................2

*Bal v. New Penn Financial, LLC*,
   No. SACV 14-1158 AG (JCGx), 2015 WL 3867984 (C.D. Cal. June 22, 2015) ....................14

*Blair v. Rent-A-Center, Inc.*,
   No. C 17-02335 WHA, 2017 WL 4805577 (N.D. Cal. Oct. 25, 2017)....................................12

*Bodner v. Oreck Direct, LLC*,
   No. 06-4756, 2007 WL 1223777 (N.D. Cal. Apr. 25, 2007)....................................................21

*Brown v. Madison Reed, Inc.*,
   No. 21-CV-01233-WHO, 2021 WL 3861457 (N.D. Cal. Aug. 30, 2021). ................................9

*Coffee Hut v.  Cnty. of Ventura*,
   No. LA CV21-00654-JAK (Ex), 2021 WL 461591 (C.D. Cal. Feb. 9, 2021) ..........................22

*Colopy v. Uber Techs. Inc.*,
   No. 19-cv-06462, 2019 WL 6841218 (N.D. Cal. Dec. 16, 2019) .............................................20

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) ......................................................................................................................22

*Cortez v. United Natural Foods, Inc.*,
   No. 18-cv-04603-BLF, 2019 WL 955001 (N.D. Cal. Feb. 27, 2019) ......................................19

*Creative Montessori Learning Ctrs. v. Ashford Gear LLC*,
   662 F.3d 913 (7th Cir. 2011) ....................................................................................................21

*Del Campo v. Mealing*,
   No. C 01-21151 JW, 2011 U.S. Dist. LEXIS 158019 (N.D. Cal. Sep. 29, 2011)....................21

*DiCarlo v. MoneyLion, Inc.*,
   988 F.3d 1148 (9th Cir. 2021) ..................................................................................................10

*Discover Bank v. Superior Court*,
   36 Cal. 4th 148 (2005)...................................................................................2, 5

*Ellsworth v. U.S. Bank, N.A.*,
   No. C 12-02506 LB, 2014 WL 2734953 (N.D. Cal. June 13, 2014).........................................23

*Est. of Gonzales v. Hickman*,
   No. 05-660 MMM (RCX), 2007 WL 3238722 (C.D. Cal. June 11, 2007) ...............................7

*Guiterrez v. City of Long Beach*,
   No. 19-9941-DMG (Ex), 2020 WL 2747241 (C.D. Cal. May 27, 2020)................................20

*Harper v. Ultimo*,
   113 Cal. App. 4th 1402 (2003)...................................................................................5

*Hernandez v. Wells Fargo Bank, N.A.*,
   No. C 18-07354 WHA, 2020 WL 469893 (N.D. Cal. Jan. 29, 2020) .....................................23

*Hoffman v. Cingular Wireless, LLC*,
   No. 06-CV-1021 W (BLM), 2006 WL 8434236 (S.D. Cal. Oct. 26, 2006)..............................4

*Ionescu v. Extra Space Storage Inc.*,
   No. 19-CV-02226-YGR, 2019 WL 3997480 (N.D. Cal. Aug. 23, 2019) ................................11

*Jeong v. Nexo Cap. Inc.*,
   No. 21-CV-02392-BLF, 2022 WL 3590329 (N.D. Cal. Aug. 22, 2022) ..........................passim

*Jeong v. Nexo Fin. LLC*,
   No. 21-CV-02392-BLF, 2022 WL 174236 (N.D. Cal. Jan. 19, 2022)................................1, 16

*Kouchi v. Am. Airlines*,
   No. CV 18-7802 PSG (AGRx), 2021 WL 6104391 (C.D. Cal. Oct. 27, 2021) .......................20

*Laster v. T-Mobile USA, Inc.*,
   407 F. Supp. 2d 1181 (S.D. Cal. 2005), *aff'd,* 252 F. App'x 777 (9th Cir. 2007).....................6

*Lauter v. Rosenblatt*,
   No. CV 15-8481-DDP (KSx), 2017 WL 5592886 (C.D. Cal. May 18, 2017). ........................22

*Lira v. Nat'l Distribution Centers, LLC*,
   No. EDCV21672JGBKKX, 2021 WL 6693934 (C.D. Cal. Dec. 22, 2021) ......................10, 13

*Lyons v. Coxcom, Inc.*,
   718 F. Supp. 2d 1232 (S.D. Cal. 2009) ...................................................................22

*Lytle v. Nutramax Lab'ys, Inc.*,
   No. EDCV 19-835 (JGB) (SPx), 2019 WL 8060070 (C.D. Cal. Sept. 26, 2019) ....................22

*MacClelland v. Cellco P'ship*,
  No. 21-CV-08592-EMC, 2022 WL 2390997 (N.D. Cal. July 1, 2022) ...............................9, 13

*Mazza v. Am. HondaMotor Co.*,
  666 F.3d 581 (9th Cir. 2012) .................................................................................................23, 24

*McGill v. Citibank*,
  2 Cal. 5th 945 (2017) ........................................................................................................8, 9, 11

*McIlwain v. Brown*,
  No. CV 18-5275-DMG (SKx), 2019 WL 8219492 (C.D. Cal. Aug. 30, 2019) .......................16

*Meyer v. Kalanick*,
  185 F. Supp. 3d 448 (S.D.N.Y. 2016) ..................................................................................2, 6

*Meza v. Sirus XM Radio Inc.*,
  No. 17-CV-02252-AJB-JMA, 2020 WL 905588 (S.D. Cal. Feb. 25, 2020).....................19, 20

*Patel v. Trans Union, LLC*,
  308 F.R.D. 292 (N.D. Cal. 2015) ............................................................................................19

*People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*,
  20 Cal. 4th 1135 (1999)...........................................................................................................21

*Radcliffe v. Experian Info. Sols.*,
  715 F.3d 1157 (9th Cir. 2013) .................................................................................................20

*Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*,
  704 F.3d 489 (7th Cir. 2013) ...................................................................................................21

*Sandoval v. Ali*,
  34 F. Supp. 3d 1031 (N.D. Cal. 2014).....................................................................................20

*Sandoval v. M1 Auto Collisions Ctrs.*,
  309 F.R.D. 549 (N.D. Cal. 2015) ............................................................................................21

Shroyer v. New Cingular Wireless Servs., Inc.,
  498 F.3d 976 (9th Cir. 2007) .....................................................................................................3

*Simonyan v. Nationwide Ins. Co. of Am.*,
  78 Cal. App. 5th 889 (2022) ....................................................................................................15

*Simpson Strong-Tie Co., Inc. v. Oz-Post Int'l, LLC*,
  No. 3:18-cv-01188-WHO, 2018 WL 3956430 (N.D. Cal. Aug. 17, 2018)...............................17

*Smith v. Specialized Loan Servicing, LLC*,
  No. 16cv2519-GPC (BLM), 2017 WL 4181395 (S.D. Cal. Sept. 21, 2017) ............................21

*Sonic-Calabasas A, Inc. v. Moreno*,
   57 Cal. 4th 1109 (2013) ..................................................................................5

*Sonner v. Schwabe N. Am., Inc.*,
   No. EDVC 15-01358-VAP (SPx), 2015 WL 13307076 (C.D. Cal. Nov. 18, 2015) ................23

*Suski v. Marden-Kane, Inc.*,
   No. 21-CV-04539-SK, 2022 WL 3974259 (N.D. Cal. Aug. 31, 2022) ....................................2, 3

*Ting v. AT&T*,
   319 F.3d 1126 (9th Cir. 2003) ..................................................................................3

*Underwood v. Future Income Payments, LLC*,
   No. SACV171570DOCDFMX, 2018 WL 4964333 (C.D. Cal. Apr. 26, 2018) .........................2

*Valenti v. Dfinity USA Research et al.*,
   No. 3:21-cv-06118-JD (N.D. Cal.) ............................................................................13

*Vasquez v. Cebridge Telecom CA, LLC*,
   569 F. Supp. 3d 1016 (N.D. Cal. 2021) ...............................................................10, 12

*White v. Experian Info. Sols.*,
   No. SACV 05-01070 DOC(MLGx), 2014 U.S. Dist. LEXIS 61433
   (C.D. Cal. May 1, 2014) ..................................................................................21

**Other Authorities**

Cal. Rule Prof'l Conduct 1.10(a) ....................................................................16

Cal. Rule Prof'l Conduct 1.7 .............................................................................15

Fed. R. Civ. P. 23(g)(1) ..................................................................................19

Plaintiff respectfully submits this Memorandum of Law in Opposition to Nexo's Motion to Dismiss and/or Strike the Class Allegations of the Third Amended Complaint.

## PRELIMINARY STATEMENT

On January 19, 2022, the Court found that Plaintiff stated a claim for deceptive advertising under California's Unfair Competition Law (the "UCL") and for declaratory relief, with leave to amend on his breach of contract claim and other grounds for Nexo's liability under the UCL. *See Jeong v. Nexo Fin. LLC*, No. 21-CV-02392-BLF, 2022 WL 174236 (N.D. Cal. Jan. 19, 2022) ("*Jeong I*"). Plaintiff filed a Second Amended Complaint (Dkt. No. 55) (the "SAC"), adding allegations concerning, for example, Nexo's bad faith and further liability under the UCL. Nexo again moved to dismiss, and on August 22, 2022, the Court found that Plaintiff stated a claim for breach of contract, declaratory judgment, and under each of the UCL's unlawful, unfair, and deceptive prongs, and struck Plaintiff's class allegations with leave to amend. *See Jeong v. Nexo Cap. Inc.*, No. 21-CV-02392-BLF, 2022 WL 3590329, at *1 (N.D. Cal. Aug. 22, 2022) ("*Jeong II*").

On September 21, 2022, Plaintiff filed the operative Third Amended Complaint (Dkt. No. 71) (the "TAC"), adding allegations concerning Nexo's scheme to deliberately cheat large numbers of consumers out of individually small sums of money and expressly seeking public injunctive relief. Nexo moves to dismiss and/or strike Plaintiff's class allegations (Dkt. No. 74) primarily based on (1) an unconscionable class action waiver (the "Class Action Waiver") and (2) a self-serving attempt to take advantage of secretly recorded videos of a *former* partner of Plaintiff's counsel to ask this Court prematurely to find that Freedman Normand Friedland LLP (the "Firm") is "inadequate" as class counsel. The Court should deny Nexo's motion.

Nexo's attempt to enforce its purported class action waiver fails because it is unenforceable—both under *Discover Bank* and because it impermissibly purports to waive public injunctive relief. Nexo's motion to strike Plaintiff's class allegations due to the supposed inadequacy of his counsel fails for what it plainly is—a meritless attempt to gain strategic litigation advantage. As the Court is familiar with the factual background, Plaintiff does not repeat it here.

1

2

3

## **ARGUMENT**

I. **NEXO'S CLASS ACTION WAIVER IS UNENFORCEABLE BECAUSE IT IS UN-CONSCIONABLE**

Under California law, "[u]nconscionable class waivers are unenforceable." *Underwood v. Future Income Payments, LLC*, No. SACV171570DOCDFMX, 2018 WL 4964333, at \*5 (C.D. Cal. Apr. 26, 2018); *accord Suski v. Marden-Kane, Inc.*, No. 21-CV-04539-SK, 2022 WL 3974259, at \*4 (N.D. Cal. Aug. 31, 2022) ("Where, as here, a class action waiver is not coupled with an arbitration provision, California law on unconscionability applies.").

In *Discover Bank v. Superior Court*, the California Supreme Court squarely found that "class action waivers . . . may operate effectively as exculpatory contract clauses that are contrary to public policy." 36 Cal. 4th 148, 161 (2005). That is, class action waivers that would "operate to insulate a party from liability that otherwise would be imposed under California law, are generally unconscionable." *Id.* The "circumstances" in which class action waivers are "unenforceable" as exculpatory clauses under California law are where they are "[1] found in a consumer contract of adhesion [2] in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and [3] when it is alleged that a party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money . . . the waiver becomes in practice the exemption of the party" from responsibility for its own misconduct. *Id.* at 162-63.

*Discover Bank* is still the law. In *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), "the Supreme Court merely held that the Federal Arbitration Act preempted California's *Discover Bank* rule" but courts have made clear that "[w]here, as here, the class action waiver . . . is not coupled with an arbitration provision, *Concepcion* does not apply." *Suski*, 2022 WL 3974259, at \*4 n.1; *accord Meyer v. Kalanick*, 185 F. Supp. 3d 448, 455-59 (S.D.N.Y. 2016) (analyzing the precedent and explaining the Supreme Court's opinions regarding arbitration provisions "do not invalidate in toto the California rule that class action waivers may be held unconscionable");

*Underwood*, 2018 WL 4964333, at *5-6 (applying *Discover Bank* in the absence of any arbitration agreement). Accordingly, under *Discover Bank* and its progeny, the controlling law remains:

> California courts apply a three-part inquiry in order to determine whether a class action waiver in a consumer contract is unconscionable: (1) whether the agreement is a consumer contract of adhesion drafted by a party that has superior bargaining power; (2) whether the agreement occurs in a setting in which disputes between the contracting parties predictably involve small amounts of damages; and (3) whether it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money.

*Suski*, 2022 WL 3974259, at *4 (*citing Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 983 (9th Cir. 2007)). Nexo concedes (at 10) that *Suski* articulates the applicable standard here. And Nexo's class action waiver meets each prong of the *Discover Bank* test for unconscionability.

### A.    Nexo's Borrow Terms Are an Adhesion Contract

Plaintiff satisfies the first prong of the *Discover Bank* test because Nexo's Borrow Terms are a consumer contract of adhesion drafted by Nexo in which Nexo has superior bargaining power. This Court has already recognized "the fact that the Borrow Terms are an adhesion contract" in finding procedural unconscionability here. *Jeong II* at *15. Indeed, "[a] contract is procedurally unconscionable if it is a contract of adhesion, *i.e.,* a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003). So too here—Plaintiff pleads that "Nexo presents its Borrow Terms & Conditions on a 'take it or leave it' basis. Nexo does not negotiate the Terms and Conditions with its customers. If the prospective customer wants to use the Nexo Crypto Credit, it must agree to the Borrow Terms & Conditions. Nexo and its prospective customers do not have remotely equal bargaining power." TAC ¶ 164.

### B.    The Agreement Predictably Involves Small Amounts of Damages

Plaintiff has satisfied the second *Discover Bank* prong by adequately alleging that disputes between Nexo and its users predictably involve small amounts of damages.

*First*, Plaintiff has alleged that Nexo's misleading and deceptive advertising predictably involves small amounts of damages, including his own. While Nexo makes much of the fact (at 12) that Plaintiff has alleged total damages exceeding $100,000, it does not address, as the Court noted in *Jeong II*, that "Plaintiff alleges he was assessed an undisclosed 1.26% fee for each liquidation, costing him approximately $1,607.01." *Jeong II* at *2; *accord* TAC ¶¶ 17, 139. Such amounts are "small" enough to satisfy the second prong of the *Discover Bank* test. *See Hoffman v. Cingular Wireless, LLC*, No. 06-CV-1021 W (BLM), 2006 WL 8434236, at *5 (S.D. Cal. Oct. 26, 2006) (rejecting argument "that Plaintiffs' damage claims are not small within the meaning of <u>Discover Bank</u>" because "the Court finds that $2,875 is small"). Here too, as the *Hoffman* court reasoned, such an amount "is clearly not sufficient, for example, in cases such as this involving claims for deceptive trade practices where the plaintiff will likely incur significant costs in discovery and investigation." *Id.* at *6.

Nexo is wrong in claiming (at 10) that "Jeong added no new allegations . . . to his Third Amended Complaint." As Nexo's own "chart" (at 8-9) shows, Plaintiff added allegations pleading the link between the substantive claim under the UCL and the issue of the small damages Nexo's misconduct predictably would inflict on its customers. That is, Plaintiff has added allegations regarding Nexo's *intent* in engaging in its misconduct. The Court has already found that "Plaintiff adequately pled a UCL violation based on Nexo's advertising." *Jeong II* at *13. And Plaintiff alleges that "Nexo engaged in 'deceptive' and 'misleading' advertising, as shown above, by using language on its website and other means of communication that is likely to deceive reasonable customers into concluding that in using the Nexo Crypto Credit service they would not incur fees, including liquidation fees." TAC ¶ 201. Plaintiff added allegations that "Nexo *knew and intended* that its hidden fees were small percentages of overall transactions—Plaintiff was assessed an undisclosed 1.26% fee on each of his liquidations—such that for typical transactions and customers, the damages caused by the imposition of such fees would be under $5,000, if even that, making it

cost prohibitive to bring individual claims against Nexo." TAC ¶ 170 (emphasis added). These well-pled allegations satisfy the second prong of *Discover Bank*.

*Second*, Nexo misunderstands (at 11) Plaintiff's separate allegation that "many members of the Damages Class paid less than $2,500" in fees. TAC ¶ 168. As this Court addressed previously, *see Jeong II* at *9, the Borrow Terms contain a "Limitation of Liability" provision purporting to limit users' damages to fees paid:

> IN NO EVENT WILL OUR AGGREGATE LIABILITY FOR ANY LOSS OR DAMAGE ARISING IN CONNECTION WITH THE NEXO CRYPTO CREDIT EXCEED THE FEES YOU PAID TO NEXO FOR YOUR USE OF THE SERVICES DURING THE 12 MONTH PERIOD IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO THE CLAIM OR LIABILITY. THE FOREGOING LIMITATIONS OF LIABILITY SHALL APPLY TO THE FULLEST EXTENT PERMITTED BY ANY APPLICABLE LAW.

Borrow Terms, Dkt. No. 74-2 § XII.5. While the Court determined to address the "enforceability and applicability of this provision until a later stage of the case," there can be no doubt that, by Nexo's own lights, the Borrow Terms are *intended* to involve "predictably small amounts of damages" because Nexo attempts to limit liability solely to the *fees* paid by its users. *Jeong II* at *9.

Nexo's Limitation of Liability clause also goes directly to the overall unconscionability of the class action waiver provision, since it is intended to ensure that "the customer does not even have the theoretical *possibility* he or she can be made whole." *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1407 (2003) (finding arbitration clause unconscionable that incorporated limitation of liability of $2,500); *see also Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1144 (2013) (citing *Harper*). When combined with a limitation on liability that purportedly prevents recovery of anything *but* small amounts of damages, Nexo intends the class action waiver to "operate to insulate" Nexo "from liability that otherwise would be imposed under California law" for small damages and the provision is accordingly "unconscionable." *Discover Bank*, 36 Cal. 4th at 161.

*Third*, Plaintiff also alleges as a basis of his UCL claim that Nexo has "claimed the right unilaterally to change the borrowing terms . . . with respect to changes to interest, loan repayment,

or notice terms" and that "Nexo knew and intended that many types of unilateral changes to Nexo's terms predictably would result in small losses to typical customers such that their damages would be less than $5,000[.]" TAC ¶ 171. Plaintiff alleges, for example, that based on Nexo's advertising, a reasonable consumer would conclude that under the Borrow Terms "Nexo would not be entitled to impose monthly minimum payments on outstanding loans"—the type of "small amount" that Nexo's scheme to be able to unilaterally change its Terms would predictably involve. TAC ¶ 94.

### C.   Nexo Has Engaged in a Scheme to Deliberately Cheat Consumers out of Individually Small Sums of Money

"[F]or a classwide litigation bar to be considered substantively unconscionable, a plaintiff need only *allege* that a defendant engaged in a scheme to cheat consumers out of small sums of money." *Laster v. T-Mobile USA, Inc.,* 407 F. Supp. 2d 1181, 1191 (S.D. Cal. 2005) (emphasis in original), *aff'd,* 252 F. App'x 777 (9th Cir. 2007); *see also Meyer*, 185 F. Supp. 3d at 455-59 (finding plaintiff's allegations of such a scheme sufficient to defeat defendant's motion to dismiss and reconsideration motion on the same issue). This Court previously found that, in his Second Amended Complaint, Plaintiff made conclusory allegations of a scheme by Nexo to cheat consumers out of small sums of money. *Jeong II* at *15. Plaintiff's amendment has cured any such defect by making clear the link between the well-pled allegations of Nexo's breach of contract and violations of California law, on the one hand, and its scheme to deprive it customers of small amounts of money, on the other.

In *Laster*, the court found it sufficient that the plaintiffs had alleged "Defendants' practice of advertising 'free' or substantially discounted phones, while charging consumers sales tax on the full retail value of the phone, constitute[d] a scheme to mislead consumers." 407 F. Supp. 2d at 1191. As in *Laster*, Plaintiff here alleges a scheme that is directly related to the substance of his allegations—which this Court has already found state a claim for relief—and which "compels the reasonable inference that having imposed on customers a contract of adhesion through the Nexo Borrow Terms & Conditions, Nexo has carried out a scheme to deliberately cheat large numbers of customers out of individually small sums of money." TAC ¶ 169.

*First*, in connection with his well-pled claim for breach of contract, Plaintiff alleges that "Nexo understood, for example, that many customers unable to avoid liquidations would not suffer sizeable losses and therefore would face cost-prohibitive individual lawsuits" and that on information and belief "many Damages Class members suffered losses of less than $5,000 from Nexo's misconduct on December 23, 2020, and continued suspension of XRP payments, such that it would be cost-prohibitive for them to bring individual claims against Nexo." TAC ¶¶ 167, 169.

*Second*, as part of his well-pled UCL claims, Plaintiff alleges that Nexo deceptively and misleadingly advertised that it would not charge hidden fees, which "would likely avoid detection of those charges completely, let alone face individual lawsuits to recover those lost sums," and that this misconduct was directly tied to a scheme that would "mak[e] it cost prohibitive to bring individual claims against Nexo." TAC ¶ 170.

*Third,* again as part of his well-pled UCL claims, Plaintiff alleges that Nexo deceptively and misleadingly advertised that it "would owe and afford its borrowing customers legal rights in connection with their purported loans" when it in fact "claimed the right unilaterally to change the borrowing terms," which was intended to make "it cost prohibitive to bring an individual action, for example with respect to changes to interest, loan repayment, or notice terms." TAC ¶ 171. Indeed, the Court has found that the rights Nexo claims under the Borrow Terms would render them "illusory." *Jeong II* at *8. These allegations likewise go to Nexo's scheme, in purporting to provide consumers with rights under its Borrow Terms, while also purporting to have the unfettered right to modify those terms, to cheat customers out of individually small amounts.

*Fourth*, as discussed further below, any decision on Nexo's motion to strike at the pleading stage would be highly unusual given the absence of discovery and the factual issues that Plaintiff's allegations present. *See Est. of Gonzales v. Hickman*, No. 05-660 MMM (RCX), 2007 WL 3238722, at *2 (C.D. Cal. June 11, 2007) ("Questions regarding a defendant's intent or state of mind are uniquely issues of fact"). Plaintiff anticipates that discovery will yield additional evidence that Nexo's deceptive advertising coupled with its class action waiver is part of an

1
2
3
4
5

intentional scheme to prevent claims for small losses. As recently as November 15, 2022, for example, Nexo advertising solicited users to deposit small amounts on its platform—"as little as $10"—in conjunction with its ongoing misleading advertising of "No hidden fees." Normand Decl. Ex. 1. Indeed, Nexo's advertising is ongoing *in connection with borrowing against XRP* and without any disclosure that XRP cannot be used to repay loans. Normand Decl. *Id.*

6
7

## II.   NEXO'S CLASS ACTION WAIVER IS UNENFORCEABLE BECAUSE IT PURPORTS TO WAIVE PUBLIC INJUNCTIVE RELIEF

8
9
10
11
12

The California Supreme Court held in *McGill v. Citibank, N.A* that "a provision in *any* contract—even a contract that has no arbitration provision—that purports to waive, in all fora, the statutory right to seek public injunctive relief under the UCL, the CLRA, or the false advertising law is invalid and unenforceable under California law." 2 Cal. 5th 945, 962 (2017). Nexo's attempt (at 14-17) to argue itself out of that rule is unavailing.

13

### A.      Plaintiff's Request for Public Injunctive Relief Is Well-Pled

14

Nexo's threshold argument (at 16-17) that Plaintiff has failed to state a claim for public injunctive relief is plainly wrong, for several reasons.

15
16
17
18
19
20
21

*First*, this Court already held that Plaintiff states a UCL claim for deceptive and misleading advertising and that "[i]njunctive relief under the UCL for deceptive or misleading advertising is the paradigmatic example of 'public injunctive relief' under California law." *Jeong II* at *16. It was only because in his prior complaint Plaintiff had not expressly *sought* public "injunctive relief based on his deceptive or misleading advertising claim" that the Court found he had "not adequately shown that the Class Action Waiver Provision is unenforceable under the *McGill* rule" and granted Plaintiff leave to amend to assert public injunctive relief. *Id.*

22
23
24
25
26
27

Plaintiff has amended accordingly, seeking forward-looking public injunctive relief prohibiting Nexo from "engaging in the business of a finance lender or broker without obtaining a license;" "advertising to the public that it offers 'loans' through a 'lending' relationship;" "advertising to the public that it would owe and afford its borrowing customers legal rights in connection with their purported loans, or in the alternative require that Nexo disclose, in connection with any

28

Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss And/Or Strike
Case No. 5:21-CV-02392-BLF

advertisement, that it reserves the sole and absolute discretion to change the terms governing its relationship with its customers;" and "advertising that it does not charge fees, including liquidation fees." TAC at 56-57 (Request for Relief (a)-(d)).

These requests for public injunctive relief are based upon factual allegations of Nexo's violations of the UCL that the Court has already determined are well-pled. Plaintiff alleges, more-over, that Nexo targets "California-based retail customers" broadly—and that this "fact under-scores the customer and public interest in the declaratory and injunctive relief that Plaintiff seeks." TAC ¶ 147; *see also id.* ¶ 15 (seeking relief "enjoining Nexo from engaging in similar conduct in the future"). And Plaintiff lays out the inapplicability of the class action waiver given the public injunctive relief he seeks in the body of the Third Amended Complaint itself. *See* TAC ¶¶ 174-175. These allegations are ample—certainly sufficient—pleading of public injunctive relief here.

*Second*, courts have consistently rejected similar challenges to the pleading of public in-junctive relief of the sort that Nexo asserts here. In *McGill* itself, the court found sufficient allega-tions of false advertising less detailed than those here—for example that the defendant "'con-tinue[s] to violate' the UCL by selling the Plan 'with advertising that includes false, misleading or deceptive information.'" 2 Cal. 5th at 956-57; *accord MacClelland v. Cellco P'ship*, No. 21-CV-08592-EMC, 2022 WL 2390997, at *9 (N.D. Cal. July 1, 2022) (rejecting the "complain[t] that Plaintiffs have 'only conclusorily allege[d] their right to such a remedy'" because the pleading in *McGill* was even less detailed). Plaintiff alleges in detail here, for example, that "Nexo has made substantially similar advertisements that it charges '#ZeroFees' to consumers on an ongoing and continuous basis," TAC ¶ 40, and has accordingly requested "prohibit Nexo from advertising that it does not charge fees, including liquidation fees." *Id*. at 57 (Request for Relief (d)).

Indeed, the *only* relevant case Nexo cites (at 17) in connection with its pleading argument, *Brown v. Madison Reed, Inc*., in fact *supports* the sufficiency of Plaintiff's pleading. No. 21-CV-01233-WHO, 2021 WL 3861457, at *6 (N.D. Cal. Aug. 30, 2021). In *Brown*, the court found that "[b]y seeking to enjoin [the defendant] from continuing its false and misleading advertising to the

general public, [the plaintiff] requests a public injunctive relief that is similar to the relief sought in *McGill*." *Id.* And undermining Nexo's position (at 17) that somehow Plaintiff's requests for public injunctive relief needed to be set out in the body of the complaint rather than in Requests for Relief (though Plaintiff sets them out in the body as well), the *Brown* court reached that conclusion based on requests contained in the Prayer for Relief. *See id.* (*citing* Prayer for Relief ¶ F); *accord Vasquez v. Cebridge Telecom CA, LLC*, 569 F. Supp. 3d 1016, 1027 (N.D. Cal. 2021) (reviewing prayer for relief and concluding that "Plaintiff's detailed requests for relief, then, certainly qualify as public injunctions under *McGill*").

### B.  Nexo's Class Action Waiver Bars Public Injunctive Relief

Nexo also contends (at 14-16), relying on *DiCarlo v. MoneyLion, Inc.*, 988 F.3d 1148, 1152 (9th Cir. 2021), that because Plaintiff may request public injunctive relief in his "individual" capacity, its class action waiver does not violate the *McGill* rule. This argument fails as well.

*First*, Nexo's argument is a red-herring—*DiCarlo* itself counseled that "we must remember that the ultimate inquiry is what was the parties' 'objective intent, as evidenced by the words of the contract.'" *Id.* at 1157; *see Lira v. Nat'l Distribution Ctrs., LLC*, No. EDCV21672JGBKKX, 2021 WL 6693934, at *7 (C.D. Cal. Dec. 22, 2021) (considering that, as in *McGill*, the clause authorized claims to be brought "on an individual basis only" in concluding "the class action waiver provision of the Agreement is substantively unconscionable and unenforceable under McGill"). The provision at issue in *DiCarlo* "authorized . . . award [of] all remedies available in an individual lawsuit," including public injunctive relief, and the court accordingly declined to strike it down under *McGill*. 988 F.3d at 1157. In contrast, the intent of Nexo's class action waiver provision is clearly that "[a]ny relief awarded cannot affect other Clients of Nexo," regardless of whether the claim is brought individually or in a representative capacity. Borrow Terms, Dkt. No. 74-2 § XV.2.

Courts have noted that "language indicating that '[t]he arbitrator will not award relief for or against anyone who is not a party' has been found to violate the *McGill* rule." *Ionescu v. Extra*

*Space Storage Inc.*, No. 19-CV-02226-YGR, 2019 WL 3997480, at *4 (N.D. Cal. Aug. 23, 2019)

(*citing Adkins v. Comcast Corp.*, No. 16-cv-05969-VC, 2018 WL 4846548, at *1 (N.D. Cal. Feb.

15, 2018) ("The arbitrator may award relief only in favor of the individual party seeking relief . . .

The arbitrator may not award relief for or against anyone who is not a party.")). Nexo's Class

Action Waiver states:

> You agree that any dispute resolution proceeding subject to the Applicable Law under the preceding sentence shall be conducted only on an individual basis and not as a plaintiff or class member in any purported class, consolidated or representative action or proceeding. No court or other dispute resolution authority can consolidate or join more than one claim and can otherwise preside over any form of a consolidated, representative, or class proceeding. Any relief awarded cannot affect other Clients of Nexo.

Borrow Terms, Dkt. No. 74-2 § XV.2. The provision at issue in *McGill* itself makes clear that

Nexo's clause is invalid because it contained substantially similar prohibitions:

> McGill asserted that the arbitration provision purports to preclude her from seeking public injunctive relief *in any forum*. She repeats that assertion in this court, citing the following clauses of the arbitration provision: (1) '[a]n award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, *and shall not have any bearing on the rights and obligations of any other person*, or on the resolution of any other dispute'; (2) '[t]he arbitrator will not award relief for or against anyone who is not a party'; (3) 'the arbitrator may award relief only on an individual (non-class, nonrepresentative) basis'; and (4) 'neither you, we, nor any other person may pursue the Claims in arbitration as a class action, private attorney general action or other representative action.'

2 Cal. 5th at 956 (emphasis added). There is no material difference, in short, between the Nexo

provision and the provision at issue in *McGill*.

Courts have specifically found that a provision barring the award relief that would "affect"

a company's other customers impermissibly prevents public injunctive relief under *McGill*. In

*Blair v. Rent-A-Center, Inc.*, for example, the relevant agreement prohibited an arbitrator from

"award[ing] relief that would affect RAC *account holders* other than [the customer]"—essentially

the same language in Nexo's class action waiver provision—which the court found impermissible

under *McGill*. No. C 17-02335 WHA, 2017 WL 4805577, at *5 (N.D. Cal. Oct. 25, 2017) (emphasis added). Likewise, in *Vasquez v. Cebridge Telecom CA, LLC*, the court found unenforceable a clause providing that "neither You nor Suddenlink may seek, nor may the arbitrator award, non-individualized relief that would affect other *account holders*.'" 569 F. Supp. 3d at 1025 (emphasis added).

Contrary to Nexo's argument (at 15), the Court did *not* already determine that a request for relief as to "current and prospective" customers constitutes "private injunctive relief" by definition. Instead, the Court held that, in the context of Plaintiff's request for injunctive relief on his *breach of contract* claim, Plaintiff had requested "private injunctive relief" as to "current and prospective Nexo customers." *Jeong II* at *15. The Court separately addressed Plaintiff's "deceptive or misleading advertising claim as part of their UCL allegations," which it noted any injunctive relief in connection with *that* claim would be "the paradigmatic example of 'public injunctive relief' under California law." *Jeong II* at *16. In fact, that the "*McGill* plaintiff brought claims for private relief *in addition* to claims for public injunctive relief did <u>not</u> preclude application of the rule that the requests for public injunctive relief had to be litigated in court." *Vasquez*, 569 F. Supp. 3d at 1027 (emphasis in original). So too here.

### C. Nexo's Class Action Waiver Is Invalid in its Entirety

Nexo's attempt to rely on the Borrow Terms' severability clause (the "Severability Clause") to propose that the Court "is simply to strike the offending sentence and allow the rest of the Class Action Waiver Provision to stand" is misplaced. The Severability Clause provides:

> The invalidity of the whole or part of any provision of these General Terms shall not affect the validity of the whole or part of any other provision of these General Terms, the remaining provisions of these General Terms shall remain in full force and effect.

Borrow Terms, Dkt. No. 74-2 § XVI.5. On its face, the Severability Clause applies only to the "validity of the whole or part of *any other provision*" and does *not* allow the severing of particular *sentences* within the Class Action Waiver itself—which, as Nexo acknowledges (at 15-16), is the only way to save the provision should it be found unenforceable in part.

Consistent with this reasoning, rather than parse language *within* any given provision that violates the *McGill* rule, courts consistently have stricken entire class action waivers. In *Lira*, the court found the entire class action waiver clause invalid under the *McGill* rule. 2021 WL 6693934, at *7 ("The offending provision here is the class action waiver . . . the Court concludes that severance of the class action waiver provision is appropriate and that the Agreement is enforceable absent that provision."). Similarly, in *MacClelland v. Cellco P'ship*, the court struck down an entire clause containing a class action waiver after analyzing its unconscionability—including with respect to its waiver of public injunctive relief. No. 21-CV-08592-EMC, 2022 WL 2390997, at *15 (N.D. Cal. July 1, 2022).

## III. NEXO'S MOTION TO STRIKE CLASS ALLEGATIONS ON ADEQUACY GROUNDS IS PREMATURE AND BASELESS

Nexo contends (at 18-23) that the Court should strike Plaintiff's class allegations on adequacy grounds, purportedly due to the conduct of Plaintiff's former counsel, Mr. Roche, and what Nexo contends is (1) a "conflict" between Plaintiff's counsel and the Class and (2) an improper motive in pursuing this action. Nexo cites documents and filings in other courts describing an illegally obtained and highly edited video recording of Mr. Roche that was released through a conspiracy website—CryptoLeaks—which appears to have been orchestrated by the defendant in another action pending in this District. *See Valenti v. Dfinity USA Research et al*., No. 3:21-cv-06118-JD (N.D. Cal.).

In those videos, to be clear, Mr. Roche "made statements that were highly inappropriate and that [he] deeply regret[s]." Roche Decl. ¶ 5. And the Firm likewise "does not agree with th[ose] view[s], nor does it believe that such statements reflect Mr. Roche's true view." Normand Decl. ¶ 8. Following the release of the CryptoLeaks videos, Mr. Roche withdrew from this matter, as well as the firm's class action practice. *Id.* ¶ 7. As of October 17, 2022, moreover, Mr. Roche is no longer a member of FNF and is no longer associated with the firm. Normand Decl. ¶ 7; Roche Decl. ¶ 8.

Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss And/Or Strike
Case No. 5:21-CV-02392-BLF

The impropriety of Mr. Roche's statements, however, does not support granting Nexo's speculative motion. "[I]n the context of a motion to strike class allegations, in particular when such a motion is brought in advance of the close of class discovery, it is properly the defendants who must bear the burden of proving that the class is not certifiable." *Bal v. New Penn Financial, LLC*, No. SACV 14-1158 AG (JCGx), 2015 WL 3867984, at *5 (C.D. Cal. June 22, 2015) (citation omitted). Nexo cannot meet its burden; rather, as shown in detail below, Nexo's motion to strike on adequacy grounds is a transparent litigation tactic that the Court should deny for multiple reasons. *First*, Nexo cannot establish that Plaintiff's counsel is inadequate based on a purported conflict between the Firm and the Class: there is none. *Second*, Nexo cannot establish that the Firm is pursuing any improper purpose here: it is not. *Third*, Nexo's request to strike class allegations is premature and involves substantial issues of fact that cannot be resolved on the pleadings. *Fourth*, Nexo cannot carry its burden because it exclusively relies on the *contents* of court filings, and the purported truth of those mistaken filings, which are not suitable for judicial notice.

### A.    There Is No Conflict Between the Firm and the Class

Nexo asserts a purported conflict of interest between the Firm and the proposed Class. Nexo points (at 22-23) to Mr. Roche's video-recorded statements that he (1) holds AVAX tokens and equity in the issuer of AVAX tokens (a then-client called Ava Labs) and (2) that he has supposedly filed class actions to support the interests of Ava Labs.

*First*, with respect to any purported conflict, the statements Nexo relies upon for its allegation that this action was filed for the benefit of Ava Labs are false. As Mr. Roche declares: "To be clear, I have never filed a class action at the direction of or for the benefit of any entity (client or otherwise) not named a party . . . This action is no exception. Roche Freedman LLP filed this action on behalf of Plaintiff because we believe that it is meritorious, and because we believe that Plaintiff and the proposed class suffered substantial economic harm." Roche Decl. ¶¶ 6-7. Indeed, Nexo *nowhere* alleges that Mr. Roche ever stated that *this action* was brought for any improper purpose, because it was not.

Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss And/Or Strike
Case No. 5:21-CV-02392-BLF

Nexo goes on to suggest that the *entire Firm* is tainted by Mr. Roche's allegedly improper purpose in pursuing this action. In the strongest possible terms, the Firm rejects that accusation. As Plaintiff's lead counsel, Mr. Normand, declares: "To the best of my knowledge, FNF (including its predecessors) has never filed a class action at the direction of or for the benefit of any entity (client or otherwise) not named a party." Normand Decl. ¶ 3. And Mr. Normand's declaration is clear that he has "never spoken with anyone from Ava Labs about any prospective litigation or about this action." *Id.* ¶ 6.

*Second*, contrary to Nexo's insinuation, the Firm has no financial or personal interest in Ava Labs that would affect the Firm's representation of the putative class members in this case. Neither Mr. Roche nor the Firm represent Ava Labs in any matter. *See* Roche Decl. ¶ 8; Normand Decl. ¶ 6. Certain partners at the Firm have received AVAX tokens, but these tokens are publicly available to purchase. Nexo's citation to these tokens is akin to arguing that a plaintiff's law firm cannot pursue a case because certain of the firm's lawyers own certain shares of stock. Nor does the Firm's partner-ownership of AVAX tokens create a conflict here, because this lawsuit will have no predictable impact on the price of AVAX tokens—as explained below, Ava Labs is plainly not a competitor of Nexo. There is no plausible advantage for Ava Labs in FNF pursuing claims against Nexo for its misconduct.

*Third,* there is no conflict between Ava Labs and Plaintiff or the Class. Under Rule 1.7(b) (and Rule 3-310(B)) "the critical questions are the likelihood that a difference in interests exists . . . and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose course of action that reasonably should be pursued on behalf of each client." *Simonyan v. Nationwide Ins. Co. of Am.*, 78 Cal. App. 5th 889, 898 (2022) (quoting Cal. Rule Prof'l Conduct 1.7 cmt. 4). Nexo has presented "no evidence" that indicates that Ava Labs' interests (let alone, by extension, the Firm's) conflict with Plaintiff or class members. *Andrews Farms v. Calcot, LTD.*, No. CV-F-07-0464LJO DLB, 2010 WL 3341963, at *8 (E.D. Cal. Aug. 23, 2010). To the contrary, Nexo's assertion that the Firm wants to somehow

help Ava Labs by suing Nexo shows that Plaintiff and Ava Labs would have the *same* interest in this lawsuit—to maximize Plaintiff's (and the putative class's) recovery against Nexo. *See McIlwain v. Brown*, No. CV 18-5275-DMG (SKx), 2019 WL 8219492, at *8-9 (C.D. Cal. Aug. 30, 2019) (finding that facts did "not give rise to a conflict because Defendant's and Hagens' interests are aligned against Plaintiff," and "[n]either wants Plaintiff to recover"). This is not to say that it is *ever* proper for an attorney to commence an action for the benefit of anyone other than the named plaintiffs and putative class. Instead, Plaintiff merely notes that, by Nexo's own lights, Ava Labs did *not* have conflicting interests with Plaintiff or putative class members, and that Nexo's position to the contrary is implausible.

*Fourth*, if Mr. Roche had a conflict under Rule 1.7, which he does not, it cannot reasonably be imputed to the Firm, because Mr. Roche's views on class members are personal to him. *See* Cal. Rule Prof'l Conduct 1.10(a) (personal-interest conflict not imputed, where conflict "does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm."). "Only the most egregious misconduct on the part of the plaintiffs' lawyer could ever arguably justify denial of class status." *Andrews Farms*, 2010 WL 3341963, at *9 (citation omitted). FNF has not committed any misconduct. In addition, because Mr. Roche does not work on this matter and is no longer at the Firm, his views are irrelevant. Nexo suggest that the entire firm shared Mr. Roche's allegedly improper purpose in pursuing class actions. FNF rejects that accusation. It is unsupported by any evidence and false. Plaintiff's counsel commenced this action, and have pursued it on behalf of Plaintiff, because they believe that the claims are meritorious and that Defendants' wrongdoing caused substantial harm to Plaintiff and the proposed class. Normand Decl. ¶ 4. As should be obvious, moreover, Defendants do not (and cannot) suggest that this action is frivolous—this Court has *twice* found that Plaintiff has stated claims against Nexo. *See Jeong I* & *Jeong II.*

Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss And/Or Strike
Case No. 5:21-CV-02392-BLF

**B.     Nexo's Allegations That the Firm Is Improperly Pursuing This Action Are False, Implausible, and Unsupported**

Nexo asserts (at 22-23) that the Firm has "a strong pecuniary interest in damaging Nexo to benefit of Ava Labs, in tailoring documents requests to obtain documents relevant to Nexo's inner-workings, and developing the case as a tool to further the interests of Ava Labs." In other words, Nexo asserts that the Firm initiated this lawsuit to benefit Ava Labs and will abuse the discovery process to benefit Ava Labs. Nexo's allegation is false, implausible, and unsupported.

*First*, any statements by Mr. Roche that would imply discovery might be abused in this action (or any action) are false. As Mr. Roche declares: "Nor have I ever disclosed or used, for any collateral purpose, any confidential information obtained in connection with any lawsuit." Roche Decl. ¶ 6. And Mr. Normand declares: "Nor have, to the best of my knowledge, any attorneys at the Firm disclosed or used, for any collateral purpose, any confidential information obtained in connection with any lawsuit." Normand Decl. ¶ 3. Nexo presents no facts to the contrary.

*Second*, Nexo's request itself belies any concern it has regarding discovery abuse. If Nexo had *actual* concerns regarding discovery abuse, it would not merely move to strike class allegations; rather, it would move to disqualify the Firm. It has not done so. *See* Dkt. No. 74 at 23-24 ("Striking the class allegations leaves Jeong's individual claims intact but precludes his attorneys from obtaining the right to prosecute a class action for unethical reasons"). This shows that Nexo has no legitimate concerns of discovery abuse, because the Firm will still receive discovery in an individual action. And any concern about the potential of *Mr. Roche* abusing discovery cannot extend to the Firm's litigation of this action—no discovery occurred in this litigation (besides initial disclosures) while Mr. Roche was with the Firm, and he no longer is with Firm.

Instead, Nexo's sole motivation for bringing this motion is to seek strategic advantage in this litigation, to limit its financial exposure, and to avoid further attention from regulators policing its misconduct. *See Simpson Strong-Tie Co., Inc. v. Oz-Post Int'l, LLC*, No. 3:18-cv-01188-WHO, 2018 WL 3956430, at *18 (N.D. Cal. Aug. 17, 2018) (denying motion, where "several factors" suggested that movant was "not truly concerned with a potential breach of the duty of loyalty").

This Court found, for example, that Plaintiff adequately alleged bad faith in connection with his breach of contract claim. *Jeong II* at *8. One of the alleged bases of Nexo's bad faith conduct is that "Nexo further acted in bad faith in suspending XRP payments on December 23, 2020, because it did so in part to maintain Nexo's profits from its Earn Interest product, at the expense of Nexo's Crypto Credit customers." TAC ¶ 80; SAC ¶ 80.  On September 26, 2022, eight states, including California, filed enforcement actions or orders against Nexo for violating those states' securities regulations and/or consumer protection laws in offering its Earn Interest product. Normand Decl. Exs. 4-11. Nexo plainly seeks, through this motion to strike class allegations by attacking Plaintiff's counsel, to deflect any further attention from its misconduct, for its own strategic regulatory advantage.

*Third*, the bases of Nexo's motion are implausible because knowledge of Nexo's inner workings could not further Ava Labs' interests. Indeed, Nexo does not even attempt to explain how this litigation could benefit Ava Labs. Ava Labs provides a platform for individuals to build decentralized finance applications on its blockchain. Normand Decl. Exs. 2, 3 ("Avalanche is an open-source platform for launching decentralized applications and enterprise blockchain deployments in one interoperable, highly scalable ecosystem."). Unlike Nexo, it neither engages in lending monies to its customers nor operates an exchange. Exchanges like Nexo *sell* AVAX tokens. Indeed, Nexo offers AVAX tokens to its customers for purchase and allows its customers to use AVAX tokens as collateral for loans. Normand Decl. Ex. 2. The Court may take judicial notice that on November 3, 2021, Nexo even announced that "Nexo is partnering with Avalanche because it has not only built one of the fastest, most customizable DeFi ecosystems," and advertised AVAX tokens would be available on its exchange, to earn interest, and to use as collateral. *Id.* In other words, Nexo and Ava Labs both benefit from each other's existence and success. There is simply no logical or plausible support for Nexo's allegation that this litigation furthers—or somehow could further—Ava Labs' interests.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### C.      Nexo's Request to Strike Is Premature

The Court should also reject Nexo's motion to strike class action allegations, particularly given the complex factual issues here, as premature. To argue that the Firm is inadequate, Nexo relies (at 21-22) on court filings that *describe* the contents of the videos at issue. Those filings show, moreover, that the assertions in those videos are substantially contested, *see, e.g.,* Dkt. No. 74-3, Exs. 2-E, 2-F, 2-J—as do Mr. Roche's and Mr. Normand's declarations herein attesting to their falsity. Such fact-specific inquiries regarding conflicts, motives, and out-of-court conduct by Plaintiff's former counsel, which require resolution of disputed and substantial factual issues, are not suitable for resolution on a motion to strike. *See Meza v. Sirus XM Radio Inc.*, No. 17-CV-02252-AJB-JMA, 2020 WL 905588, at *5 (S.D. Cal. Feb. 25, 2020) ("[C]ourts may not resolve disputed and substantial factual or legal issue[s] in deciding . . . a motion to strike.") (internal quotations omitted). Cases finding class counsel inadequate are accordingly "all decided on motions for class certification, not motions to strike or dismiss." *AIIRAM LLC v. KB Home*, No. 19-CV-00269-LHK, 2019 WL 3779185, at *8 (N.D. Cal. Aug. 12, 2019). Nexo's motion to strike class allegations is accordingly improper. *See Cortez v. United Natural Foods, Inc.*, No. 18-cv-04603-BLF, 2019 WL 955001, at *13 (N.D. Cal. Feb. 27, 2019) ("The Ninth Circuit in *Whittlestone* cautioned that courts should not resolve 'disputed and substantial factual or legal issues in deciding a motion to strike.'").

The adequacy of class counsel is a fact-intensive determination. Federal Rule of Civil Procedure 23(g) provides "guidance for assessing the adequacy of class counsel." *Patel v. Trans Union, LLC*, 308 F.R.D. 292, 307 (N.D. Cal. 2015). Rule 23(g) requires courts to consider (1) "the work counsel has done in identifying or investigating potential claims in the action," (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action," (3) "counsel's knowledge of the applicable law," (4) "the resources that counsel will commit to representing the class," (5)  "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of then class." Fed. R. Civ. P. 23(g)(1). In addition to these requirements, courts "inquire (1) whether the . . . counsel ha[s] any conflicts of interest with the

rests of the class and (2) whether the . . . counsel will prosecute the action vigorously for the class." *Meza*, 2020 WL 905588, at *5. These are all "fact-specific questions not suited for resolution at the pleading stage." *KB Home*, 2019 WL 3779185, at *8.

Accordingly, courts in this District and the Ninth Circuit consistently find that motions to strike class allegations based on the inadequacy of counsel are premature and refuse to consider them at the pleading stage. "Courts disfavor motions to strike class allegations because issues related to class allegations are generally more appropriately resolved on a motion for class certification." *Colopy v. Uber Techs. Inc.*, No. 19-cv-06462, 2019 WL 6841218, at *10 (N.D. Cal. Dec. 16, 2019). This rule carries even more weight when the motion to strike is based on the adequacy of counsel. *See KB Home*, 2019 WL 3779185, at *7 ("[W]hether Plaintiffs' attorney is suitable class counsel under Rule 23 are questions reserved for a motion for class certification."); *see also Meza*, 2020 WL 905588, at *5 ("[A] motion to strike is an improper vehicle to test the purported conflict of interest here, the issue of adequacy of counsel may more appropriately be addressed in the context of a motion for class certification."); *Guiterrez v. City of Long Beach*, No. 19-9941-DMG (Ex), 2020 WL 2747241, at *4 (C.D. Cal. May 27, 2020) (holding that it was improper to strike class allegations at the pleading stage even though the *pro se* plaintiff had no class counsel."); *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1044-48 (N.D. Cal. 2014) (denying defendants motion to dismiss based on plaintiff's counsel's potential conflict of interest and declining to disqualify counsel at the pleading stage of the proceeding). For good reason, Nexo identifies *no* case where a court struck class allegations on counsel's adequacy grounds during the pleading stage.[1]

---

[1] None of the cases that Nexo cites struck class allegations based on counsel's adequacy at the pleading stage. *See Andrews Farms v. Calcot, Ltd.*, No. CV-F-07-0464 LJO DLB, 2010 WL 3341963 (E.D. Cal. Aug. 23, 2010) (motion to decertify class); *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157 (9th Cir. 2013) (appeal from approval of class action settlement); *Kouchi v. Am. Airlines, Inc.*, No. CV 18-7802 PSG (AGRx), 2021 WL 6104391 (C.D. Cal. Oct. 27, 2021)

**D.      Nexo's Reliance on the Contents of Court Filings Is Improper**

"The grounds for a motion to strike must appear on the face of the pleading under attack, or from matters which the Court may take judicial notice." *Smith v. Specialized Loan Servicing, LLC*, No. 16cv2519-GPC (BLM), 2017 WL 4181395, at *2 (S.D. Cal. Sept. 21, 2017). To carry its burden, Nexo relies (at 29-31) on the order of Judge Failla of the Southern District of New York amending her prior order appointing Roche Freedman LLP as interim class counsel in *In re Tether and Bitfinix Crypto Asset Litigation*, No. 1:19-cv-09236 (S.D.N.Y.), in which the Firm was one of three co-lead law firms, and asks this Court to take judicial notice of numerous court filings that describe the CryptoLeaks publication, including pleadings, motions, and letters filed by parties. Nexo's reliance on these sources is misguided.

*First*, Nexo's basis for challenging the Firm's adequacy is premised on the *contents* of the various court filings it relies on. Although a "Court may take judicial notice of the existence of a court filing to establish the fact of such litigation and its filings, it cannot take judicial notice of the truth of the contents of those filings." *Lauter v. Rosenblatt*, No. CV 15-8481-DDP (KSx), 2017

---

(motion for class certification); *Bodner v. Oreck Direct, LLC*, No. C 06-4756 MHP, 2007 WL 1223777 (N.D. Cal. Apr. 25, 2007) (motion for class certification); *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913 (7th Cir. 2011) (appeal from class certification); *Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*, 704 F.3d 489 (7th Cir. 2013) (appeal from class certification); *White v. Experian Info. Sols.*, No. SACV 05-01070 DOC(MLGx), 2014 U.S. Dist. LEXIS 61433 (C.D. Cal. May 1, 2014) (order denying motion to disqualify, motion to appoint interim class counsel, and granting cross-motion to appoint interim class counsel); *Del Campo v. Mealing*, No. C 01-21151 JW, 2011 U.S. Dist. LEXIS 158019 (N.D. Cal. Sep. 29, 2011) (order on motion to disqualify counsel); *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1153 (1999) (unrelated to Rule 23 adequacy of class counsel); *Sandoval v. M1 Auto Collisions Ctrs.*, 309 F.R.D. 549, 571 (N.D. Cal. 2015) (finding counsel adequate on motion for class certification).

21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WL 5592886, at *4 (C.D. Cal. May 18, 2017). This includes any "findings of fact from other proceedings." *Coffee Hut v. Cnty. of Ventura*, No. LA CV21-00654-JAK (Ex), 2021 WL 461591, at *3 (C.D. Cal. Feb. 9, 2021) (holding that the Court will take judicial notice of an order in another proceeding, but "not for findings of fact made in the Order"). This Court should, therefore, disregard any assertions in Nexo's motion that rely on the contents of court filings, including Judge Failla's order. And without the contents of these filings, Nexo's argument is nothing more than mere recitation of legal standards and barebone assertions that cannot satisfy its burden.

*Second*, if the Court were to consider the content of Judge Failla's order, it does not support striking class allegations based on the Firm's adequacy. Contrary to Nexo's suggestion (at 30), Judge Failla did not make any "findings about what Mr. Roche did or did no do or meant or did not mean" in the CryptoLeaks videos. Dkt. No. 74-3 at 21. Rule 23(a), as noted, requires a court to engage in a rigorous analysis of factual issues surrounding class determination. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) ("[W]e have emphasized that it may be necessary for the courts to probe behind the pleading before coming to rest on the certification question, and that certification is proper only if the trial court is satisfied, after a rigorous analysis that the prerequisite of Rule 23(a) have been satisfied."); *Lyons v. Coxcom, Inc.*, 718 F. Supp. 2d 1232, 1236 (S.D. Cal. 2009) (finding that "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action"). There is no factual record here to allow any "rigorous analysis" of Rule 23(a)'s adequacy requirement.

## IV.   NEXO'S MOTION TO STRIKE PLAINTIFF'S DAMAGES CLASS AND EQUITABLE RELIEF CLASS ALLEGATIONS ON STANDING GROUNDS IS PREMATURE AND WRONG ON THE MERITS

Nexo further contends (at 24-25) in "the alternative" that the Court should strike non-California class allegations from the Damages and Equitable-Relief classes "on standing grounds." That is wrong for at least two reasons.

*First*, the argument is premature. *See Lytle v. Nutramax Lab'ys, Inc.*, No. EDCV 19-835 (JGB) (SPx), 2019 WL 8060070, at *7 (C.D. Cal. Sept. 26, 2019) (rejecting argument that

"plaintiffs lack standing to represent non-California residents bringing claims under the laws of other states for purchases outside of California" because it is simply a "premature class certification opposition"); *Sonner v. Schwabe N. Am., Inc.*, No. EDVC 15-01358-VAP (SPx), 2015 WL 13307076, at *8–9 (C.D. Cal. Nov. 18, 2015) ("[C]ourts should engage in a choice-of-law analysis to determine if the various laws at issue conflict. Such analysis, however, is untimely. A detailed choice-of-law analysis would be inappropriate for a Motion to Strike." (quotation omitted)).

*Second*, Nexo does not rely upon a *single case* that says it is inappropriate to certify a nationwide class for breach of contract because the named plaintiff resides in California and lacks standing to assert such claims. That is because "only the named plaintiffs need to have standing to assert a breach of contract claim based on an identical form contract on behalf of class members in states with similar contract laws." *Ellsworth v. U.S. Bank, N.A.*, No. C 12-02506 LB, 2014 WL 2734953, at *31 (N.D. Cal. June 13, 2014); *see also Hernandez v. Wells Fargo Bank, N.A.*, No. C 18-07354 WHA, 2020 WL 469893, at *3 (N.D. Cal. Jan. 29, 2020) (certifying nationwide breach of contract class and noting any "variations from state to state can be handled within the overall management of the classwide trial of the contract claim."). Plaintiff has alleged in connection with his breach of contract claim that "under the common law across states, however, a provision affording such discretion is subject to the implied covenant of good faith and fair dealing." TAC ¶ 60; *see also id*. ¶ 57 (explaining that Nexo's "material breaches of contract, under well-established principles of contract law that apply under state common law, excused the contractual obligations of Nexo customers affected thereby").

Instead, despite acknowledging (at 24) that its argument does not address the UCL Class, Nexo relies upon case law standing for the proposition that "statutory consumer protection claims" are not applied extraterritorially. Nexo's reliance on *Mazza v. Am. Honda Motor Co*., 666 F.3d 581 (9th Cir. 2012), and its progeny is inapposite. "Following <u>Mazza</u>, courts in this Circuit have routinely held that decision does not hold that nationwide classes are, as a matter of law, uncertifiable under California's consumer protection laws." *Sonner v. Schwabe N. Am., Inc.*, 2015 WL

13307076, at *8–9 (C.D. Cal. Nov. 18, 2015) (collecting cases). And *Mazza* itself "expressed no opinion" as to whether the district court there could "certify a class with members more broadly but with subclasses for class members in different states, with different jury instruction for materially different bodies of state law." *Mazza*, 666 F.3d at 594.

## CONCLUSION

Plaintiff respectfully submits, for all of the foregoing reasons, that the Court should deny Nexo's motion to dismiss and/or strike Plaintiff's class allegations in its entirety. Plaintiff requests leave to amend in the event any portion of Nexo's motion is granted.

Dated: November 21, 2022

Respectfully submitted,

*/s/ Edward Normand*
Edward Normand (*pro hac vice*)
Alex Potter (*pro hac vice*)
Stephen Lagos (*pro hac vice*)
**FREEDMAN NORMAND FRIEDLAND LLP**
99 Park Avenue, Suite 1910
New York, NY 10016
Tel.: (646) 970-7513
Email: tnormand@fnf.law
Email: apotter@fnf.law
Email: slagos@fnf.law

Ivy Ngo (SBN 249860)
**FREEDMAN NORMAND FRIEDLAND LLP**
1 SE 3rd Ave., Suite 1240
Miami, FL 33131
Tel.: (786) 924-2900
Email: ingo@fnf.law

*Counsel for Plaintiff*