# EXHIBIT 5



**COMMONWEALTH OF KENTUCKY**
**PUBLIC PROTECTION CABINET**
**DEPARTMENT OF FINANCIAL INSTITUTIONS**
**DIVISION OF SECURITIES**
**ADMINISTRATIVE ACTION NO. 2022-AH-0020**

DEPARTMENT OF FINANCIAL INSTITUTIONS    COMPLAINANT

vs.

NEXO INC.,
NEXO CAPITAL INC., and
NEXO GROUP    RESPONDENTS

## EMERGENCY ORDER TO CEASE AND DESIST

The Kentucky Department of Financial Institutions (the "Department"), pursuant to Kentucky Revised Statutes ("KRS") 292.470, KRS 292.500, and 808 Kentucky Administrative Regulation ("KAR") 10:225, hereby enters this **Emergency Order to Cease and Desist** against Nexo Inc., Nexo Capital Inc., and the Nexo Group. In support thereof, the Department states as follows:

### PARTIES

1. The Commissioner is responsible for administering the provisions of KRS Chapter 292, the Securities Act of Kentucky ("the Act"), as well as any applicable rules, regulations and orders entered pursuant to the Act.

2. Nexo Inc. is a Cayman Islands corporation formed in 2018. Nexo Inc. wholly owns Nexo Capital Inc. Nexo Inc. is part of the Nexo Group, which includes entities organized primarily in European jurisdictions. Nexo Inc. is not registered to do business in Kentucky nor registered with the Department in any capacity.

3. Nexo Capital, Inc. ("Nexo Capital") is a Cayman Islands corporation formed in 2018 with a principal office address of Two Artillery Court, 2nd Floor, 161 Shedden Road, George Town, KY1-1103, Cayman Islands. Nexo Capital is part of the Nexo Group. Nexo Capital is not registered to do business in Kentucky nor registered with the Department in any capacity.

4. The Nexo Group was founded in 2018. It comprises business entities organized primarily in European jurisdictions, including but not limited to Nexo Inc. and Nexo Capital.

5. Acting collectively, the Respondents operate as "Nexo." Nexo provides virtual-currency-related financial services including trading, borrowing, depository, and lending services. Nexo conducts its business primarily through Nexo Capital on its publicly available website, accessible at http://www.nexo.io, and through the Nexo mobile application.

## STATEMENT OF FACTS

6. On July 16, 2021, the Department began its investigation into Nexo's securities-related activities. Subsequently, the Department learned of the facts and circumstances described herein.

### NEXO Token

7. In 2018, before launching its platform or offering any products, Nexo raised $52.5 million in an initial coin offering, issuing one billion units of a cryptocurrency token it called NEXO, which it planned to issue on the Ethereum blockchain. Nexo sold 525 million NEXO tokens at a fixed price of $0.10 and retained control of the remaining 475 million tokens.

8. The NEXO token contract was deployed on the Ethereum blockchain on April 20, 2018, and the Nexo platform launched on April 30, 2018.

9. Nexo represented that the NEXO token would allow it to pay 30% of its profits monthly to investors as dividends.

10. Nexo provided that investors holding its NEXO token in their cryptocurrency wallets would receive lower interest rates on loans issued by Nexo and that their NEXO tokens would be treated as collateral and increase holders' loan limits on the Nexo platform.

11. In December 2020, Nexo announced a $12 million NEXO buyback program, intending to use NEXO tokens for interest payments to customers.

12. As of July 31, 2022, Nexo Capital (which conducts the business of Nexo on its website and move application) held 959,089,216.60 in NEXO tokens, comprising 95.9% of all tokens in existence, and valued those tokens at $682,823,570.

13. Excluding Nexo Capital's net position in NEXO tokens, Nexo Capital's liabilities would exceed its assets.

### Crypto Credit

14. From about April 30, 2018 through the present, Nexo has offered and sold its "Nexo Crypto Credit" ("Crypto Credit") product, also known as "Borrow," to Kentucky residents. Crypto Credit allows Nexo's users to pledge cryptocurrency assets as collateral and receive loans in other cryptocurrencies.

15. Nexo advertises borrowing "without selling your crypto at rates starting from 0% APR." Actual interest rates on Crypto Credit loans fluctuate up to 13.9% APR, with discounted rates available at different loyalty tiers tied to holdings of NEXO tokens.

16. While Nexo advertises that users will "get funds instantly" and "keep [their] crypto," under the terms and conditions of the Crypto Credit product, Nexo actually takes title and ownership of customers' pledged collateral while loans are outstanding. Those terms provide:

> by virtue of this Agreement Nexo acquires the ownership title and all attendant rights of ownership of the Collateral while the Nexo Crypto Credit is outstanding, and can dispose of this Collateral in any manner at its sole and absolute discretion. Otherwise, [the

customer] understand[s] and agree[s] that [Nexo] can convert, pledge, re-pledge, hypothecate, rehypothecate, sell, lend, or otherwise transfer, dispose of or use any amount of such Collateral, separately or together with other property, and for any period of time, and without retaining in [Nexo's] possession and/or control for delivery a like amount thereof or any other assets, at [Nexo's] sole and absolute discretion.

17. Using a proprietary algorithm, Nexo calculates the loan-to-value ratio of the cryptocurrency paid out to the pledged collateral. If the loan-to-value ratio increases above certain thresholds, Nexo may initiate a margin call, requiring customers to provide additional collateral or make repayments to rebalance the loan.

18. In some cases, Nexo will automatically transfer cryptocurrency assets from a customer's savings wallet to his or her Crypto Credit wallet, without additional consent of the customer, to serve as additional collateral.

19. If the loan-to-value ratio increases above the maximum permitted threshold, Nexo will automatically liquidate the necessary amount of collateral to rebalance the loan, and in its terms provides that "due to the volatile nature of the Digital Assets market, it may not be technically possible for Nexo to notify [the customer] prior to . . . liquidation."

20. In allowing the deposit of certain cryptocurrencies as collateral for loans received in other cryptocurrencies, at lower than 100% loan-to-value, and allowing the use of loan proceeds for further investment in cryptocurrency, Nexo offers customers the ability to enter into margined retail commodity transactions on its platform.

21. Such margined trading is available to any Kentucky resident who meets and accepts the Nexo Crypto Credit General Terms and Conditions.

22. Nexo has allowed customers varying levels of margin consistent with the Nexo Crypto Credit General Terms and Conditions.

23. Nexo does not have policies and procedures implemented to assess any Kentucky customer's eligibility status for such margin transactions.

24. Nexo exclusively offers and provides margin for one or both sides of a transaction, and maintains physical or constructive custody of all digital assets or fiat currency purchased using margin for the duration of a customer's open margined position.

**Earn Interest Product**

25. From about June 17, 2020 through the present, Nexo has offered and sold its Earn Interest Product ("EIP") to Kentucky investors. The EIP enables investors to passively earn interest by loaning certain digital assets ("Eligible Earn Assets") to Nexo. Nexo's EIP investors have no part in selecting, monitoring, or reviewing the revenue-generating activities that Nexo utilizes to earn this interest.

26. As of March 31, 2022, Nexo had opened approximately 542 interest-earning EIP accounts in the name of Kentucky investors with a total volume of $31 million in activity attributable to those EIP wallets.

27. Nexo has promoted its financial services, including the EIP, to Kentucky investors primarily through its website at http://www.nexo.io/ and their mobile Nexo app. On its website, Nexo has provided information about its EIP and a list of supported virtual currencies and their corresponding interest rates. Nexo additionally has promoted the EIP on social media through various platforms including Twitter, Instagram, and YouTube. Through Nexo's website, blog, and social media accounts, Nexo has represented interest rates on these EIP accounts of up to 12% — significantly higher than the rates offered for short-term, investment-grade, fixed-income securities or for bank savings accounts.

28.	In offering its EIP, Nexo has failed to disclose material information about the investment, including, but not limited to, Nexo's EIP-interest-generation deployment activities, Nexo's legal and regulatory compliance in Kentucky, and the limitations of Nexo's financial representations.

29.	No Nexo entity has registered its EIP with the Department as a security, nor has any Nexo entity filed a claim of exemption from registration with the Department.

30.	Nexo has allowed, with certain limitations, anyone either 18 years or older, depending on the jurisdiction, to open a Nexo EIP account and access Nexo wallet services. When opening a Nexo account, an investor will go through several user identity-verification protocols, including, at a minimum, the provision of an investor's legal name, date of birth, and address. An investor will then transfer fiat currency (EUR, GBP, and USD) from a bank account to their Nexo account. Investors can also add cryptocurrency to their Nexo wallet by transferring assets from another crypto exchange or wallet.

31.	Nexo ceased offering its EIP to new investors in Kentucky after August 2, 2021, after the Department's regulatory inquiry into Nexo's business began. From approximately August 2, 2021, until approximately February 19, 2022, existing Kentucky investors could deposit additional fiat currency and cryptocurrency into their existing EIP wallets and could continue to earn interest on their invested EIP Eligible Earn Assets. On February 19, 2022, Nexo ceased allowing any U.S. investors who had not yet opened a Nexo Account to open an EIP savings wallet. Also on February 19, 2022, Nexo ceased allowing existing U.S. EIP wallet holders from adding additional assets into their EIP savings wallets.

32.	Nexo has offered their EIP in the form of either a Flex EIP Savings Wallet Term ("Flex Term Investment") or a Fixed EIP Savings Wallet Term ("Fixed Term Investment").

Interest from an investor's Eligible Earn Assets is credited to an investor's EIP savings wallets either at the expiration of the Fixed Term Investment, or daily for a Flex Term Investment.

33. For a Flex Term Investment, there is no required "holding" time for an investor to lend his or her Eligible Earn Assets, and these investors are able to withdraw their Eligible Earn Assets at any time subject to the terms and conditions of a Nexo wallet.

34. For a Fixed Term Investment, investors are unable to withdraw their Eligible Earn Assets for the duration of a defined term. When investing in a Fixed Term Investment, an investor can elect to utilize Nexo's "automatic renewal" feature to rollover his or her investment at the end of the defined term.

35. The interest rate Nexo pays an investor on his or her invested Eligible Earn Assets is determined by several factors, including the length of the Eligible Earn Assets loan, the type of cryptocurrency loaned, and whether the investor has a Flex Term Investment or a Fixed Term Investment. Generally, the longer that an investor agrees to maintain his or her Eligible Earn Assets with Nexo, the higher the rate of return.

36. After February 19, 2022, while Nexo disallowed additional deposits into existing EIP savings wallets, Nexo continued to allow existing Kentucky investors enrolled in a Fixed Term Investment to rollover their EIP Eligible Earn Assets into a new Fixed Term Investment.

### Deployment and Income-Generating Activities

37. In accordance with the EIP terms and conditions, the EIP savings wallet interest rate is subject to revision from time to time, at Nexo's sole and absolute discretion. Included in the EIP terms and conditions, investors are required to acknowledge that they:

> understand and agree that we [Nexo] might convert, pledge, re-pledge, hypothecate, rehypothecate, sell, lend, or otherwise transfer, dispose of or use any amount of any Digital Assets in regard to which you use the Nexo Earn Interest Product, separately or together

> with other property, and for any period of time, and without retaining in our [Nexo's] possession and/or control for delivery a like amount thereof or any other assets, at our [Nexo's] sole and absolute discretion.

As such, any profit earned by Nexo investors is earned solely through the efforts of Nexo with means determined solely by Nexo.

38. Nexo groups and deploys investors' Eligible Earn Assets with other investors' Eligible Earn Assets and similar, Nexo-owned assets (e.g., Eligible Earn Assets denominated in Bitcoin with other Nexo-owned Bitcoin assets). To earn income to pay interest to EIP investors, Nexo engages in deployment activities including the staking, lending, arbitrage, and provision of liquidity on certain decentralized finance platforms, in addition to the lending of aggregated investor Eligible Earn Assets to retail and institutional borrowers.

### Material Misrepresentations and Omissions in Offer and Sale of EIP

*EIP Interest-Generation Representations*

39. In offering the EIP to Kentucky investors, Nexo has failed to disclose material information related to interest generation. These omissions include, but are not limited to, the types of trading and investment activities that Nexo engages in while utilizing EIP Eligible Earn Assets, the identities and creditworthiness of those who borrow EIP Eligible Earn Assets, and the amount of EIP Eligible Earn Assets used in each income-generating activity.

40. Nexo has failed to disclose its lending agreements or the terms contained therein to EIP investors, and as such, Nexo's EIP investors are not provided with information as to whom Nexo's institutional lending partners are, how long the term loan is, or whether these loans are over-collateralized, despite Nexo's assurances that all loans are provided in an over-collateralized fashion. Consequently, Nexo EIP investors cannot adequately evaluate the risk associated with their participation in the EIP prior to investing their Eligible Earn Assets with Nexo.

*Legal and Regulatory Compliance Representations*

41. In offering the EIP to Kentucky investors, Nexo has failed to disclose material information related to Nexo's regulatory compliance as it pertains to the EIP offering.

42. Nexo's website represents to EIP investors that "Nexo has gone the extra mile in ensuring compliance with the applicable regulatory frameworks. Together with our top-tier legal counsel and engaging proactively with the regulatory decision-makers we ensure the sustainability of our products for years to come."

43. Concurrently, Nexo makes the following statements on its website: "The Nexo Group has legal entities in various locations throughout the world . . . and is in compliance with all applicable global and local regulations . . . rest assured that Nexo is compliant everywhere it provides services and retains top-tier legal counsels in the jurisdictions of its operation." Further, within the footer of Nexo's website, Nexo displays the phrase "Licensed & Regulated Digital Assets Institution."

44. Through these representations, Nexo gives investors the impression that their investments are less risky. On or about June 30, 2021, Nexo co-founder Antoni Trenchev appeared on a Yahoo Finance Live broadcast titled, "Crypto-focused banking: Nexo Co-Founder discusses his company's growth and business model." On this broadcast, Trenchev stated that he "would argue, from a financial perspective… that [Nexo is] safer, especially for the larger clients, than your average bank." On July 1, 2021, Nexo re-posted this broadcast to its YouTube channel, and re-named it, "Nexo is Safer than your Average Bank…"

45. Nexo Capital is the entity that operates Nexo's website and conducts the EIP offering. This is not disclosed on the website; instead, the website often uses the name "Nexo" without further clarification. Of the licenses and registrations identified on Nexo's website, Nexo

Capital only held one — a money-service-business registration license in Canada. None of the Nexo respondents hold licenses in Kentucky.

46.     As such, Nexo: (1) fails to specify Nexo Capital as the operator of the website and provider of the services offered therein; (2) lists the licenses of one or more entities that are not actually doing business in the relevant jurisdictions and that are not conducting the business offered and provided through the website on which the licenses and registrations are listed; and (3) makes the false statement that the Nexo Group is in compliance with "all applicable global and local regulations."

*Financial Representations*

47.     In offering the EIP to Kentucky investors, Nexo has failed to disclose material information related to Nexo's financial representations as they pertain to the EIP offering.

48.     Nexo represents on its website and through the Nexo YouTube video, "How to Earn Crypto Interest," that an investor's Eligible Earn Assets are secured at all times by Nexo's asset-backed portfolio of over-collateralized loans. Nexo also states that the platform lends to individuals and institutions only on an over-collateralized basis, which is, in part, how Nexo states that they keep EIP interest rates consistent over time and "basically eliminate counter party risk."

49.     Further, on or about June 10, 2021, Nexo advertised a forthcoming "real-time audit" of Nexo's custodial assets by Armanino LLP,[1] ("Armanino") which they represented would show that the company's assets exceed liabilities. In a Dailyhodl article published on June 10, 2021, Antoni Trenchev stated, "We are happy to have opened our books to allow Armanino . . . to verify that our company's assets exceed liabilities at all times and demonstrate how seriously we treat Nexo's commitments to our customers."

---

[1] Armanino LLP is an auditor, accounting, and consulting firm in the U.S. certified by the Public Company Accounting Oversight Board.

50. In a Nexo blog post published on September 23, 2021, Nexo presented the Armanino report, which purports to offers a "real-time audit of Nexo's custodial assets, showing the company's assets always exceed liabilities." This Armanino report is updated daily and Nexo claims that it provides the following assurances: (1) "Fully Backed: Your holdings on Nexo's platform are backed by assets by more than 100%;" (2) "Properly Managed: Third-party assurance that your funds on the Nexo platform are properly managed and accounted for;" and (3) "Always Available: 24/7 proof of Nexo's ability to meet all liabilities owed to you at any time." This Armanino report is publicly available online at https://real-time-attest.trustexplorer.io/nexo.

51. More recently, as a response to a competing cryptocurrency firm, Celsius, freezing customer withdrawals on June 12, 2022, Nexo's Twitter account tweeted:

> All Nexo products are operating normally — Borrow, Earn, Exchange . . . Nexo is the first and only blockchain finance company to have a real-time audit of its custodial assets, showing that the company's assets exceed its liabilities at all times which attests to Nexo's liquidity and ability to meet all of its obligations. . . . Nexo is in a solid liquidity and equity position to readily acquire any remaining qualifying assets of Celsius, mainly their collateralized loan portfolio.

Nexo provided a link to its real-time attestation Armanino report within the body of this series of tweets.

52. Nexo's provision of the Armanino report in conjunction with these claims of financial stability gives the appearance that the Armanino report can support Nexo's claims of financial stability in a turbulent market.

53. Despite representations by Nexo, the data and figures set forth in the Armanino report contain several material shortcomings, as described in the report's Agreed Upon Procedures, that limit the report's ability to provide assurances of Nexo's financial stability. These limitations include (1) a failure to identify non-customer liabilities; (2) a failure to identify whether customer

liabilities include the collateral that Nexo holds for over-collateralized retail loans; (3) a failure to identify the liquidity of Nexo's assets; (4) a failure to identify doubtful loan accounts (*e.g.* distressed or non-paying borrower accounts); and (5) a failure to identify whether Nexo's deposit liabilities are secured or otherwise collateralized by Nexo's assets.

54. As such, this report is of limited value and cannot be used to support Nexo's claims that "Nexo's assets exceed their liabilities by more than 100%."

55. To date, Nexo has provided insufficient information to substantiate its solvency claims, especially given recent fluctuations in the cryptocurrency market, the bankruptcies filed by competing cryptocurrency firms, and the bulk of Nexo Capital's equity being denominated in its own proprietary token of questionable value. Yet Nexo continues to tout its financial solvency broadly to potential investors without providing information to regulators or investors that confirms these claims.

## STATUTORY AUTHORITY

1. KRS 292.310(19) defines a "security", in pertinent part, as:

   any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, life settlement investment, voting-trust certificate, certificate of deposit for a security; fractional undivided interest in oil, gas, or other mineral rights; or, in general, any interest or instrument commonly known as a "security[.]"

2. KRS 292.320 states, in pertinent part,

   It is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly: . . .

   > (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.]

3. KRS 292.330 states, in pertinent part,

> (3) It is unlawful for an individual to transact business in this state as an agent unless the individual is registered under this chapter as an agent or is exempt from registration under subsection (4) of this section. . . .
>
> (7) It is unlawful for a broker-dealer or an issuer to employ or associate with an agent unless the agent is registered under this chapter or exempt from registration.

4. KRS 292.340 states "[i]t is unlawful for any person to offer or sell any security in this state, unless the security is registered under this chapter, or the security or transaction is exempt under this chapter, or the security is a covered security."

5. KRS 292.470 states, in pertinent part,

> Whenever it appears to the commissioner that any person has engaged or is about to engage in any act or practice constituting a violation of any provision of this chapter or any rule or order under this chapter, the commissioner may in his or her discretion bring any or all of the following remedies:
>
> > (1) Issue a cease and desist order, with or without a prior hearing, appealable to Franklin Circuit Court, against the person or persons engaged in the prohibited activities directing that person or persons to cease and desist from illegal activity.

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

1. The Department has become aware that Nexo is offering investment contracts in exchange for the deposit of assets with Nexo in the form of its Earn Interest Product accounts. These Earn Interest Product accounts allow passive investors to earn profit in the form of interest on the assets deposited with Nexo and qualify as securities under the Act.

2. The Earn Interest Product accounts are not covered securities nor exempt from registration under the Act.

3. Through Nexo's publicly available website and smartphone application, Respondents have solicited sales of securities in Kentucky.

4. None of the Respondents have registered with the Department at any time to sell their securities in Kentucky, nor have they filed a claim of exemption from registration.

5. None of the Respondents qualify for an exemption from registration.

6. None of the Respondents have registered Nexo's Earn Interest Product accounts with the Department as securities.

7. Based on the foregoing, Nexo offered unregistered securities in Kentucky through a publicly available website in contravention of KRS 292.340.

8. In connection with the sale of Nexo's Earn Interest Product accounts, Respondents made untrue statements of material fact or omitted to state material facts necessary in order to make those statements not misleading in light of the circumstances in which they were made. Therefore, Respondents violated KRS 292.320.

9. Respondents' management of assets is completely unregulated and is not subject to any government oversight or approval.

10. Respondents, by failing to register themselves and their Nexo Earn Interest Product accounts pursuant to the Act, are not abiding by any disclosure requirements regarding the risks of investing with Nexo or the potential losses that an investor can suffer after opening a Nexo Earn Interest Product account.

11. Accounts opened with Nexo are not insured by the Federal Deposit Insurance Corporation or any other government entity.

12. This lack of oversight coupled with the extremely volatile nature of the cryptocurrencies used to fund Nexo's Earn Interest Product accounts has resulted in an unregulated market that represents a substantial risk to consumers.

13. Delay in issuing a final cease-and-desist order in this case would cause direct harm to the public due to Nexo's current and foreseeable conduct. Failure of the Department to enter an emergency order to cease and desist in this case could result in extensive financial losses to the citizens of the Commonwealth, and consumers harmed in this way may have little to no recourse whatsoever. The emergency nature of this order is essential to protect the interests of the citizens of the Commonwealth due to the high volume of assets involved and the volatile nature of cryptocurrency.

## ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Respondents shall **CEASE AND DESIST** from soliciting or selling any security in Kentucky unless that security is registered with the Department pursuant to KRS 292.340;

2. Respondents shall specifically **CEASE AND DESIST** from paying interest on Earn Interest Product accounts and from allowing the renewal of investment terms on those accounts;

3. Respondents shall **CEASE AND DESIST** from any and all activity which would otherwise violate the Act.

**SO ORDERED** on this the 26th day of September, 2022.

Charles A. Vice
Digitally signed by: Charles A. Vice
DN: CN = Charles A. Vice
email = charles.vice@ky.gov
C = US O = Dept of Financial Inst. OU = PPC/DFI
Date: 2022.09.26 12:43:05 -05'00'

/s/ *Charles A. Vice*
CHARLES A. VICE
COMMISSIONER

## NOTICE TO RESPONDENTS

You are hereby notified that you are entitled to request an emergency hearing. If requested, an administrative hearing shall be held within ten days of receipt of such request pursuant to the provisions of KRS Chapter 13B.125. Please submit any request for hearing, in writing, to:

> Michael Barnett
> Staff Attorney
> Kentucky Department of Financial Institutions
> 500 Mero Street
> 2 SW 19
> Frankfort, Kentucky 40601

Alternatively, you have the right to judicial review of this Order in Franklin Circuit Court pursuant to KRS 292.470(1).

# CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Emergency Order to Cease and Desist was sent on this the 26 day of September, 2022 by the method indicated below to the following:

*Via certified mail, return receipt requested:*

Nexo Inc.
Two Artillery Court, 2nd Floor
161 Shedden Road
George Town, KY1-1103
Cayman Islands
*Respondent*

Nexo Capital Inc.
Two Artillery Court, 2nd Floor
161 Shedden Road
George Town, KY1-1103
Cayman Islands
*Respondent*

Nexo Group
Two Artillery Court, 2nd Floor
161 Shedden Road
George Town, KY1-1103
Cayman Islands
*Respondent*

*Via electronic delivery:*

Michael Barnett
Staff Attorney III
DEPARTMENT OF FINANCIAL INSTITUTIONS
500 Mero Street, 2 SW 19
Frankfort, Kentucky 40601
*Counsel for Department of Financial Institutions*

Kentucky Department of Financial Institutions

Name: Allison Reed by Victoria Word

Title: Executive Staff Advisor