# EXHIBIT 6

# ADMINISTRATIVE PROCEEDING
# BEFORE THE
# SECURITIES COMMISSIONER OF MARYLAND

| | | |
|---|---|---|
| IN THE MATTER OF: | * | |
| NEXO INC, | * | No. 2022-0156 |
| NEXO CAPITAL INC., | * | |
| and | * | |
| ANTONI TRENCHEV, | * | |
| | * | |
| Respondents. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

# SUMMARY ORDER TO CEASE AND DESIST
# AND ORDER TO SHOW CAUSE

WHEREAS, the Securities Division of the Office of the Maryland Attorney General (the "Division"), pursuant to the authority granted in section 11-801 of the Maryland Securities Act, Corporations and Associations Article, Title 11, Annotated Code of Maryland (2014 Repl. Vol. and Supp. 2021) (the "Act" or "Securities Act"), conducted an investigation of the Respondents, Nexo Inc., Nexo Capital Inc., and Antoni Trenchev (collectively "Respondents"); and

WHEREAS, on the basis of that investigation the Maryland Securities Commissioner (the "Commissioner") has determined that Respondents may have engaged in acts or practices constituting violations of sections 11-301, 11-306, 11-401, 11-402, 11-501 of the Act; and

WHEREAS, the Commissioner has reason to believe that Respondents may be engaged in continuing violations of the Securities Act; and

WHEREAS, the Commissioner has determined that immediate action against the Respondents is in the public interest;

1

NOW, THEREFORE, pursuant to section 11-701.1 of the Securities Act, it is hereby

**ORDERED,** that each Respondent and anyone under that person's direction, control, or employment immediately cease and desist from violations of sections 11-301, 11-306, 11-401, 11-402, and 11-501 of the Act pending a hearing in this matter or until such time as the Commissioner modifies or rescinds this Order; and it is further

**ORDERED**, that each Respondent show cause why that person should not be barred permanently from engaging in the securities and investment advisory business in Maryland, and why a monetary penalty should not be entered against that person in the amount of $5,000 for each violation of the Act; and it is further

**ORDERED**, that Respondent show cause why a final order should not be entered against that person, ordering that Respondent to cease and desist from further violations of sections 11-301, 11-306, 11-401, 11-402, and 11-501 of the Act.

**Willful violation of this Order could result in criminal penalties under section 11-705 of the Securities Act.**

NOW, THEREFORE, THE COMMISSIONER ALLEGES THE FOLLOWING AS A BASIS FOR THIS ORDER:

### I.
### JURISDICTION

1.      The Securities Commissioner has jurisdiction in this proceeding pursuant to section 11-801 of the Securities Act.

### II.
### RESPONDENTS

2.      Respondent Nexo Inc. is a Cayman Islands corporation formed in 2018. Nexo Inc. wholly owns Nexo Capital, Inc. Nexo Inc. is part of the Nexo Group, which includes entities

organized primarily in European jurisdictions. Nexo Inc. is not registered to do business in Maryland and is not registered with the Securities Division in any capacity nor has it filed a claim of exemption from registration.

3. Respondent Nexo Capital, Inc. ("Nexo Capital") is a Cayman Islands corporation formed in 2018 with its principal place of business in Grand Cayman, Cayman Islands. Nexo Capital is part of the Nexo Group. Nexo Capital is not registered to do business in Maryland and is not registered with the Securities Division in any capacity nor has it filed a claim of exemption from registration.

4. Respondent Antoni Trenchev is a co-founder and Managing Partner of the Nexo Group and a director and manager of certain companies within the Nexo Group, including Nexo Capital. Antoni Trenchev is responsible for supervising day-to-day business activities of the Nexo Group companies, including ensuring their compliance with applicable legislation, rules, and regulations. Antoni Trenchev is not registered with the Securities Division in any capacity nor has Antoni Trenchev filed a claim of exemption from registration.

5. The above-named Respondents will be referred to herein collectively as "Nexo." Nexo provides virtual currency-related financial services to retail and institutional borrowers in the United States, including trading, borrowing, and lending services. Nexo conducts its business on its public website accessible at http://www.nexo.io/ and through the Nexo mobile application.

### III.
### STATEMENT OF FACTS

**A.  Summary**

6. On or about June 2020, to the present, Nexo began offering and selling their Earn Interest Product ("EIP") to Maryland investors. The EIP enables investors to passively earn interest by loaning certain digital assets ("Eligible Earn Assets") to Nexo. Nexo's EIP investors

have no part in selecting, monitoring, or reviewing the revenue-generating activities that Nexo utilizes to earn this interest.

7. Nexo has promoted their financial services, including the EIP, to Maryland investors primarily through their website at http://www.nexo.io/ and their mobile Nexo app. On their website, Nexo has provided information about its EIP, a list of supported virtual currencies, and their corresponding interest rates. Nexo additionally has promoted the EIP on social media through various platforms including Twitter, Instagram, and YouTube. Through Nexo's website, blog, and social media accounts, Nexo has represented interest rates on these EIP accounts of up to 36%, significantly higher than the rates offered for short-term, investment grade, fixed income securities or for bank savings accounts.

8. In offering its EIP to potential investors, Nexo has failed to disclose material information about the investment, including, but not limited to, Nexo's EIP interest generation deployment activities, Nexo's legal and regulatory compliance in Maryland, and the limitations of Nexo's financial representations.

9. On or about February 19, 2022, Nexo disallowed any US investors who had not yet opened a Nexo Account from opening an EIP savings wallet. Also on February 19, 2022, Nexo disallowed any existing US investors from adding additional assets into their existing EIP savings wallets.

10. After about February 19, 2022, while Nexo disallowed additional deposits into existing EIP savings wallets, Nexo continued to allow existing Maryland investors enrolled in a Fixed Term Investment to rollover their EIP Eligible Earn Assets into a new Fixed Term Investment.

11.     As of July 31, 2022, there were 1,877 Maryland EIP accounts earning interest with a total EIP savings wallet value of $15,190,000. Nationally, there were 93,318 EIP accounts earning interest with a total EIP savings wallet value of $800,260,000.

**B.     Nexo Earn Interest Product**

12.     Nexo has allowed, with certain limitations, anyone either 18 years or older, depending on the jurisdiction, to open a Nexo EIP account and access Nexo wallet services. When opening a Nexo account, an investor will go through several user identity-verification protocols, including an investor's legal name, date of birth, address and identification number. An investor will then transfer fiat currency (EUR, GBP, and USD) from a bank account to their Nexo account. Investors can also add cryptocurrency to their Nexo wallet by transferring assets from another crypto exchange or wallet.

13.     In Nexo's EIP, an investor agrees to invest their Eligible Earn Assets with Nexo, in exchange for passively earning interest that is deposited into the investor's EIP savings wallet. EIP investors begin accruing interest 24 hours after investing Eligible Earn Assets with Nexo.

14.     Nexo has offered their EIP in the form of either a Flex EIP Savings Wallet Term ("Flex Term Investment") or a Fixed EIP Savings Wallet Term ("Fixed Term Investment"). Interest from an investor's Eligible Earn Assets is credited to an investor's EIP savings wallet either at the expiration of the Fixed Term Investment, or daily for a Flex Term Investment.

15.     For a Flex Term Investment, there is no required "holding" time for an investor to lend their Eligible Earn Assets, and these investors are able to withdraw their Eligible Earn Assets at any time subject to the terms and conditions of a Nexo wallet.

16.     For a Fixed Term Investment, investors are unable to withdraw their Eligible Earn Assets for the duration of a defined term. When investing in a Fixed Term Investment, an investor

can elect to utilize Nexo's "automatic renewal" feature to rollover their investment at the end of the defined term.

17. The interest rate Nexo pays an investor on their invested Eligible Earn Assets is determined by several factors, including the length of the Eligible Earn Assets loan, the type of cryptocurrency loaned, and whether the investor has a Flex Term Investment or a Fixed Term Investment. Generally, the longer that an investor agrees to maintain their Eligible Earn Assets with Nexo, the higher the rate of return.

**C.     Deployment and Income-Generating Activities**

18. In accordance with the EIP terms and conditions, the EIP savings wallet interest rate is subject to revision from time to time, at Nexo's sole and absolute discretion. Included in the EIP terms and conditions, investors are required to acknowledge that they:

> …understand and agree that we [Nexo] might convert, pledge, re-pledge, hypothecate, rehypothecate, sell, lend, or otherwise transfer, dispose of or use any amount of any Digital Assets in regard to which you use the Nexo Earn Interest Product, separately or together with other property, and for any period of time, and without retaining in our [Nexo's] possession and/or control for delivery a like amount thereof or any other assets, at our [Nexo's] sole and absolute discretion.

As such, any profit earned by Nexo investors is earned solely through the efforts of Nexo with means determined solely by Nexo.

19. Nexo groups and deploys investor Eligible Earn Assets with other investors' Eligible Earn Assets and similar, Nexo-owned assets (e.g., Eligible Earn Bitcoin Assets with other Nexo-owned Bitcoin assets). To earn income to pay interest to EIP investors, Nexo engages in deployment activities including the staking, lending, arbitrage, and provision of liquidity on certain decentralized finance platforms, in addition to the lending of aggregated investor Eligible Earn Assets to retail and institutional borrowers.

**E.     Material Misrepresentations and Omissions in Offer and Sale of EIPs**

   *i.     EIP Interest Generation Representations*

20.     In offering the EIP to Maryland investors, Nexo has failed to disclose material information related to interest generation. These omissions include, but are not limited to, the types of trading and investment activities that Nexo engages in while utilizing EIP Eligible Earn Assets, the identities and creditworthiness of those who borrow EIP Eligible Earn Assets, and the amount of EIP Eligible Earn Assets used in each income-generating activity.

21.     Nexo has failed to disclose its lending agreements or the terms contained therein to EIP investors, and as such, Nexo's EIP investors are not provided with information as to whom Nexo's institutional lending partners are, how long the term loan is, or whether these loans are over-collateralized, despite Nexo's assurances that all loans are provided in an over-collateralized fashion. Consequently, Nexo EIP investors cannot adequately evaluate the risk associated with their participation in the EIP prior to investing their Eligible Earn Assets with Nexo.

   *ii.    Legal and Regulatory Compliance Representations*

22.     In offering the EIP to Maryland investors, Nexo has failed to disclose material information related to Nexo's regulatory compliance as it pertains to the EIP offering.

23.     Nexo's website represents to EIP investors that "Nexo has gone the extra mile in ensuring compliance with the applicable regulatory frameworks. Together with our top-tier legal counsel and engaging proactively with the regulatory decision-makers we ensure the sustainability of our products for years to come."

24.     Concurrently, Nexo makes the following statements on its website: "The Nexo Group has legal entities in various locations throughout the world…and is in compliance with all

applicable global and local regulations…rest assured that Nexo is compliant everywhere it provides services and retains top-tier legal counsels in the jurisdictions of its operation." Further, within the footer of Nexo's website, Nexo displays the phrase "Licensed & Regulated Digital Assets Institution."

25. Through these representations, Nexo gives investors the impression that their investments are less risky. On June 30, 2021, Nexo co-founder Trenchev appeared on a Yahoo Finance Live broadcast titled, "Crypto-focused banking: Nexo Co-Founder discusses his company's growth and business model." On this broadcast, Trenchev stated that he "would argue, from a financial perspective . . . that [Nexo is] safer, especially for the larger clients, than your average bank." On July 1, 2021, Nexo re-posted this broadcast to its YouTube channel, and re-named it, "Nexo is Safer than your Average Bank…"

26. Nexo Capital is the entity that operates Nexo's website and conducts the EIP offering. This is not disclosed on the website; instead, the website often uses the name "Nexo" without further clarification. Of the licenses and registrations identified on Nexo's website, Nexo Capital only held one—a money service business registration license in Canada. Notably, none of the Nexo respondents hold licenses in Maryland. Further, the Nexo respondents do not hold any securities licenses.

27. As such, Nexo: (1) fails to specify Nexo Capital as the operator of the website and provider of the services offered therein; (2) lists the licenses of one or more entities that are not actually doing business in the relevant jurisdictions and that are not conducting the business offered and provided through the website on which the licenses and registrations are listed; and (3) makes the false statement that the Nexo Group is in compliance with "all applicable … regulations."

     *iii.*     <u>*Financial Representations*</u>

28. In offering the EIP to Maryland investors, Nexo has failed to disclose material information related to Nexo's financial representations as they pertain to the EIP offering.

29. Nexo represents on its website and through the Nexo YouTube video, "How to Earn Crypto Interest," that an investor's Eligible Earn Assets are secured at all times by Nexo's asset-backed portfolio of over-collateralized loans. Nexo also states that the platform lends to individuals and institutions only on an over-collateralized basis, which is, in part, how Nexo states that they keep EIP interest rates consistent over time and "basically eliminate counter party risk."

30. Further, on or about June 10, 2021, Nexo advertised a forthcoming "real-time audit" of Nexo's custodial assets by Armanino LLP,[1] which they represented would show that the company's assets exceed liabilities. In a Dailyhodl article published on June 10, 2021, Antoni Trenchev stated, "We are happy to have opened our books to allow Armanino…to verify that our company's assets exceed liabilities at all times and demonstrate how seriously we treat Nexo's commitments to our customers."

31. In a Nexo blog post published on September 23, 2021, Nexo presented the Armanino report, which purports to offers a "real-time audit of Nexo's custodial assets, showing the company's assets always exceed liabilities." This Armanino report is updated daily and Nexo claims that it provides the following assurances: (1) "Fully Backed: Your holdings on Nexo's platform are backed by assets by more than 100%"; (2) "Properly Managed: Third-party assurance that your funds on the Nexo platform are properly managed and accounted for"; and (3) "Always Available: 24/7 proof of Nexo's ability to meet all liabilities owed to you at any

---

[1] Armanino LLP is a Public Company Accounting Oversight Board ("PCOAB") – certified auditor, accounting and consulting firm in the US.

time." This Armanino report is publicly available online at https://real-time-attest.trustexplorer.io/nexo.

32. More recently, as a response to a competing cryptocurrency firm freezing customer withdrawals on June 12, 2022, Nexo's Twitter account tweeted:

> All Nexo products are operating normally – Borrow, Earn, Exchange…Nexo is the first and only blockchain finance company to have a real-time audit of its custodial assets, showing that the company's assets exceed its liabilities at all times which attests to Nexo's liquidity and ability to meet all of its obligations…Nexo is in a solid liquidity and equity position to readily acquire any remaining qualifying assets of Celsius, mainly their collateralized loan portfolio….

Nexo provided a link to their real-time attestation Armanino report within the body of this tweet.

33. Nexo's provision of the Armanino report in conjunction with these claims of financial stability gives the appearance that the Armanino report can support Nexo's claims of financial stability in a turbulent market.

34. Despite representations by Nexo, the data and figures set forth in the Armanino report contain several material shortcomings, as described in the report's Agreed Upon Procedures, that limit the report's ability to provide assurances of Nexo's financial stability. These limitations include (1) a failure to identify non-Customer Liabilities; (2) a failure to identify whether Customer Liabilities include the collateral that Nexo holds for over-collateralized retail loans; (3) a failure to identify the liquidity of Nexo's assets; (4) a failure to identify doubtful loan accounts (e.g., a distressed or non-paying borrower accounts); and (5) a failure to identify whether Nexo's deposit liabilities are secured or otherwise collateralized by Nexo's assets.

35. As such, this report is of limited value and cannot be used to support Nexo's claims that "Nexo's assets exceed their liabilities by more than 100%".

**F.**     **Need For Further Investigation**

36.     The Securities Division is continuing to investigate the matter alleged herein to determine the full extent of the violations of the Securities Act that have occurred in this matter. The Securities Division may amend this Order in the future to reflect any additional factual allegations and/or violations as a result of the continuing investigation.

## COUNT I
### (Broker-Dealer and Agent Registration Violations; Section 11-401)

WHEREAS, section 11-101(c) of the Securities Act defines "broker-dealer" to mean a person engaged in the business of effecting transactions in securities for the account of others or for his own account; and

WHEREAS, section 11-101(b) of the Securities Act defines "agent" as an individual other than a broker-dealer who represents a broker-dealer or issuer in effecting or attempting to effect the purchase or sale of securities; and

WHEREAS, section 11-401 of the Securities Act makes it unlawful for any person to transact business in this State as a broker-dealer or agent unless the person is registered as such; and

WHEREAS, Respondents have transacted business as a broker-dealer or agent in this State by effecting securities transactions in the EIP offering while that Respondent was not registered with the Division as a broker-dealer or agent, in violation of section 11-401 of the Securities Act;

NOW, THEREFORE, IT IS HEREBY **ORDERED** that each Respondent cease and desist from acting as a broker-dealer or agent in or from Maryland, pending a hearing in this matter or until such time as the Securities Commissioner modifies or rescinds this Order. Willful violation of this Order could result in criminal penalties under section 11-705 of the Securities Act; and

IT IS FURTHER **ORDERED** that each Respondent show cause why a final order should not be issued against that Respondent that orders each Respondent to cease and desist from further violation of the section 11-401 broker-dealer or agent registration provisions, assesses each Respondent the statutory penalty of $5,000 for each violation of the section 11-401 broker-dealer and agent registration provisions, permanently bars each Respondent from the securities and investment advisory business in Maryland, and orders any other sanction or combination of sanctions against each Respondent as permitted under section 11-701.1.

## COUNT II
### (Employment of Unregistered Agent; Section 11-402)

WHEREAS, section 11-402 of the Securities Act prohibits a broker-dealer from employing or associating with an agent unless the individual is registered; and

WHEREAS, Respondents, acting as broker-dealers, employed unregistered agents;

NOW, THEREFORE, IT IS HEREBY **ORDERED** that each Respondent cease and desist from the employment of unregistered agents, pending a hearing in this matter or until such time as the Securities Commissioner modifies or rescinds this Order. Willful violation of this Order could result in criminal penalties under section 11-705 of the Securities Act; and

IT IS FURTHER **ORDERED** that each Respondent show cause why a final order should not be issued against that Respondent that orders each Respondent to cease and desist from engaging in activities in further violation of section 11-402, assesses each Respondent the statutory penalty of $5,000 for each violation of section 11-402, permanently bars each Respondent from the securities and investment advisory business in Maryland, and orders any other sanction or combination of sanctions against each Respondent as permitted under section 11-701.1.

## COUNT III
### (Offer and Sale of Unregistered Securities, Section 11-501)

WHEREAS, section 11-501, of the Act makes it unlawful for any person to offer or sell a security in this State unless the security is registered, is exempt from registration under the Act, or is a federal covered security; and

WHEREAS, section 11-101(r) of the Act defines "security" to include any note, stock, Treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, certificate of interest or participation in an oil, gas, or mining title or lease or in payments out of production under the title or lease, any interest or instrument commonly known as a "security," or certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase any of the preceding; and

WHEREAS, the investments in the EIP are securities within the meaning of section 11-101 of the Act; and

WHEREAS, the investments in the EIP were offered and sold by Respondents; and

WHEREAS, Respondents have offered and sold securities in violation of the registration requirements of section 11-501 of the Act;

NOW, THEREFORE, IT IS HEREBY **ORDERED** that each Respondent cease and desist from the offer and sale of unregistered, non-exempt, non-preempted securities in or from Maryland, pending a hearing in this matter or until such time as the Securities Commissioner modifies or rescinds this Order. Willful violation of this Order could result in criminal penalties under section 11-705 of the Securities Act; and

IT IS FURTHER **ORDERED** that each Respondent show cause why a final order should not be issued against each Respondent that orders that Respondent to cease and desist from further

violation of the section 11-501 registration requirements, assesses each Respondent the statutory penalty of $5,000 for each violation of the section 11-501 registration requirements, permanently bars each Respondent from the securities and investment advisory business in Maryland, and orders any other sanction or combination of sanctions against each Respondent as permitted under section 11-701.1.

## COUNT IV
### (Fraud in Connection with the Offer or Sale of Securities, Section 11-301)

WHEREAS, section 11-301 of the Securities Act makes it unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly to:

> (2)  Make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

WHEREAS, Respondents made untrue statements of material fact or omitted to state material facts, including, but not limited to, facts related to interest generation, lending agreements or the terms contained therein, and regulatory compliance and financial stability as they pertain to the EIP offering;

NOW, THEREFORE, IT IS HEREBY **ORDERED** that each Respondent cease and desist from engaging in fraud in connection with the offer, sale, or purchase of any security, directly or indirectly, in or from Maryland, pending a hearing in this matter or until such time as the Securities Commissioner modifies or rescinds this Order. Willful violation of this Order could result in criminal penalties under section 11-705 of the Securities Act; and

IT IS FURTHER **ORDERED**, that each Respondent show cause why a final order should not be issued against each Respondent that orders that Respondent to cease and desist from engaging in the offer and sale of securities in violation of the anti-fraud provisions of section 11-

301 of the Securities Act, assesses the statutory penalty of $5,000 for each violation, permanently bars each Respondent from engaging in the securities and investment advisory business in Maryland and orders any other sanction or combination of sanctions against each Respondent as permitted under section 11-701.1.

## COUNT VI
### (Dishonest or Unethical Practices; Section 11-306)

WHEREAS, section 11-306 of the Securities Act makes it unlawful for any person who engages in the business of effecting transactions in securities for the account of others or for the person's own account or who acts as a broker-dealer or agent from engaging in dishonest or unethical practices in the securities or investment advisory business; and

WHEREAS, Respondents, through the EIP offering, acted as a broker-dealers or agents; and

WHEREAS, Respondents engaged in dishonest or unethical practices in the securities or investment advisory business by, among other things, misrepresenting or omitting material facts, including but not limited to, facts related to interest generation, lending agreements or the terms contained therein, and regulatory compliance and financial stability as they pertain to the EIP offering;

NOW, THEREFORE, IT IS HEREBY **ORDERED** that each Respondent cease and desist from engaging in dishonest or unethical practices in violation of section 11-306 of the Securities Act, pending a hearing in this matter or until such time as the Securities Commissioner modifies or rescinds this Order. Willful violation of this Order could result in criminal penalties under section 11-705 of the Securities Act; and

IT IS FURTHER **ORDERED** that each Respondent show cause why a final order should not be issued against each Respondent that orders that Respondent to cease and desist from

engaging in activities in further violation of section 11-306 of the Securities Act, assesses each Respondent the statutory penalty of $5,000 for each violation of section 11-306, and permanently bars each Respondent from the securities and investment advisory business in Maryland and orders any other sanction or combination of sanctions against each Respondent as permitted under section 11-701.1.

## REQUIREMENT OF ANSWER AND NOTICE OF OPPORTUNITY FOR HEARING

IT IS FURTHER **ORDERED**, pursuant to section 11-701.1 of the Securities Act and COMAR 02.02.06.06, that Respondents shall file with the Securities Commissioner a written Answer to this Order within fifteen days of service of the Order. The Answer shall admit or deny each factual allegation in the Order and shall set forth affirmative defenses, if any. A Respondent without knowledge or information sufficient to form a belief as to the truth of an allegation shall so state.

The Answer also shall indicate whether the Respondents requests a hearing. A hearing to determine whether the Order should be vacated, modified, or entered as final will be scheduled in this matter if one is requested in writing. Failure by Respondents to file a request for a hearing in this matter within fifteen days of receipt of the Order shall be deemed a waiver by Respondents of the right to such a hearing.

Failure to file an Answer, including a request for a hearing, shall result in entry of a final order:

(a) Directing Respondent to permanently cease and desist from violation of the Securities Act; and

(b) Imposing a monetary penalty of up to $5,000 for each violation of the Securities Act; and

(c) Barring Respondent from engaging in the securities or investment advisory business in Maryland for or on behalf of others, or from acting as principal or consultant in any entity so engaged.

**DATE OF THIS ORDER:**     **SO ORDERED:**

September 26, 2022     **Commissioner's Signature on File w/Original Document**

_____     _____

Melanie Senter Lubin
Securities Commissioner