# EXHIBIT 7

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York,<br><br>       Plaintiff,<br><br> - against -<br><br>Nexo Inc. and Nexo Capital, Inc.,<br><br>       Defendants. | **COMPLAINT**<br><br>Index No. |

1. Plaintiff, the People of the State of New York, by Letitia James, Attorney General of the State of New York ("OAG") alleges the following against Nexo Inc. and Nexo Capital, Inc. (collectively "Nexo" or "Defendants").

**NATURE OF THE ACTION**

2. Between at least June 2020 to the present, the Defendants, operating through their publicly accessible website and mobile smartphone app, which allow users to purchase, sell, deposit, trade, borrow against, and earn interest on virtual currency, violated New York's Martin Act and Executive Law by acting as unregistered securities brokers or dealers and/or commodities broker-dealers.

3. In particular, Nexo, without registering with the OAG, offered and sold within the State of New York both securities and commodities, in the forms of (a) virtual currencies purchased and sold on Nexo's virtual marketplace, known as the "Exchange," and (b) pooled investments that Nexo referred to as the "Earn Interest Product."

4. Nexo has also violated the Martin Act and Executive Law by falsely representing that it complies with applicable regulations and licensing requirements. Nexo's website and other

public marketing have repeatedly included material misstatements and omissions regarding the safety and legal compliance of Nexo's investment products. For example, in response to media reports about the OAG's initial investigation, Nexo made a public statement falsely denying that it was transacting in securities or commodities in New York.

5. Although Nexo has taken certain steps to address its violations of New York law, it has continued to act as an unregistered securities broker or dealer by virtue of its ongoing maintenance of several thousand New York-based investment accounts.

6. The Attorney General seeks an order enjoining Nexo from continued violations of New York law, directing Nexo to pay restitution and disgorgement in connection with its unlawful conduct, and for such other equitable relief as may be necessary.

## PARTIES

**Plaintiff**

7. The Attorney General is authorized to bring this enforcement action and to assert the causes of action set forth below in the name of the People of the State of New York pursuant to General Business Law ("GBL") Article 23-A, § 352, *et seq.* (the "Martin Act") and Executive Law § 63(12).

**Defendants**

8. Nexo Inc. is a Cayman Islands corporation formed in 2018. Nexo Inc. is wholly owned by Kosta Kantchev, its co-founder, executive chairman and chief executive officer. Nexo Inc. is the parent company of the Nexo Group, which includes various subsidiaries and affiliates. Nexo Inc. is not registered to do business in New York and is not registered with the OAG as a securities broker or dealer or commodities broker-dealer.

9. Nexo Capital, Inc. ("Nexo Capital") is a Cayman Islands corporation that is wholly owned by Nexo Inc. Nexo Capital owns and operates Nexo's public website and mobile smartphone application. Nexo Capital is not registered to do business in New York and is not registered with the OAG as a securities broker or dealer or commodities broker-dealer.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over the subject matter of this action, personal jurisdiction over Defendants and authority to grant the relief requested pursuant to GBL § 352 *et seq.* and Executive Law § 63(12).

11. Pursuant to CPLR § 503, venue is proper in New York County, because Plaintiff resides in that county and because a substantial part of the events and omissions giving rise to the claims – including the sale, purchase and exchange of securities and commodities within the State of New York – occurred in that county.

## FACTUAL ALLEGATIONS

12. Nexo, acting in the U.S. primarily through Nexo Capital, offers various virtual currency-related financial products and services to retail and institutional customers. Nexo conducts its business via a public website, accessible at http://www.nexo.io, and via a mobile smartphone application, both of which purport to allow users to purchase, sell, deposit, trade, borrow against, and earn interest on virtual currency.

13. Nexo promotes its financial products and services to investors via its website, the mobile Nexo app, and on various internet and social media platforms including Twitter, Instagram and YouTube.

14. Through these channels, Nexo has advertised the ease and speed of opening a new account and transacting in virtual currency. For instance, Nexo previously displayed the

following graphic on its website, promising that account sign-up is virtually immediate, and that, having opened a "free Nexo account in less than a minute," Nexo will "[v]erify your identity with our trusted verification partner":



15. More recently, Nexo's website promoted itself as "the right place to buy digital assets in seconds."

16. Investors must open an account with Nexo in order to use Nexo's financial products and services, including to buy and sell securities or commodities. To open a Nexo account, a prospective investor must submit basic identifying information, typically – but not always – including their legal name, date of birth, and address.

17. After opening an account, the investor may transfer fiat currency such as U.S. dollars into their Nexo account. Investors may also add virtual currencies to a Nexo wallet by transferring those assets from another crypto exchange or wallet.

**Nexo's Exchange Service**

18. Nexo's "Exchange" service, accessible via the Nexo website and mobile app, is a virtual marketplace that allows Nexo clients to buy, sell and exchange a wide range of virtual currencies. For instance, a Nexo customer can use fiat currency such as U.S. dollars to purchase

virtual currency such as Bitcoin. Alternatively, the customer can exchange one virtual currency for another; for example, converting Bitcoin into an equivalent value denominated in Ethereum.

19. Nexo charges fees of approximately 1% of the nominal value of each customer transaction on its Exchange service. These fees represent a significant portion of Nexo's earnings. For instance, Nexo has stated that between January and May of 2021 its income from fees on Exchange transactions totaled more than $29 million dollars. These fees accounted for roughly one-third of Nexo's overall revenue during that time period.

**Nexo's "Earn Interest Product"**

20. Nexo promotes another service, referred to as the Earn Interest Product ("EIP"), as a way for an investor to "grow your portfolio exponentially while keeping your crypto safe." Nexo's website encourages investors to "put your idle assets to work… and have a predictable source of passive income." Nexo has solicited investors to sign up for EIP with promises of interest rates of up to 12% to 36%.

21. An EIP investor agrees to deposit with Nexo certain virtual currencies ("Eligible Earn Assets") in exchange for periodic interest that Nexo pays into the account associated with the investor's EIP ("Savings Wallet.)" EIP investors begin accruing interest 24 hours after investing Eligible Earn Assets with Nexo.

22. Nexo offers its EIP in the form of either a Flex EIP Savings Wallet Term ("Flex Term Investment") or a Fixed EIP Savings Wallet Term ("Fixed Term Investment"). Interest that accrues on an investor's Eligible Earn Assets is credited to the investor's EIP savings wallets either at the expiration of the Fixed Term Investment, or daily in the case of a Flex Term Investment.

23.     For a Flex Term Investment, there is no required "holding" time for an investor to lend their Eligible Earn Assets. Investors may initiate withdrawals of their Eligible Earn Assets at any time subject to the terms and conditions of a Nexo wallet. Nexo claims that withdrawals are generally processed within 24 hours.

24.     For a Fixed Term Investment, investors are unable to withdraw their Eligible Earn Assets for the duration of a defined term. When investing in a Fixed Term Investment, an investor can elect to utilize Nexo's "automatic renewal" feature to rollover their investment at the end of the defined term.

25.     The interest rate Nexo pays an investor on their invested Eligible Earn Assets is determined by several factors, including the type of virtual currency loaned by the investor, whether the investor has a Flex Term Investment or a Fixed Term Investment, the length of the loan term, and whether the investor agrees to accept payment in Nexo's proprietary NEXO tokens. Generally, the longer that an investor agrees to lock up their Eligible Earn Assets with Nexo, the higher the rate of return. Investors that accept payment of interest in NEXO tokens or hold certain threshold percentages of their portfolio in NEXO tokens also qualify for a higher return.

26.     Nexo's EIP investors have no role in the revenue-producing activities through which Nexo purports to generate the interest it pays on EIP loans. Investors are required to acknowledge as part of the EIP terms and conditions that they:

> understand and agree that we [Nexo] might convert, pledge, re-pledge, hypothecate, rehypothecate, sell, lend, or otherwise transfer, dispose of or use any amount of any Digital Assets in regard to which you use the Nexo Earn Interest Product, separately or together with other property, and for any period of time, and without retaining in our [Nexo's] possession and/or control for delivery a like amount thereof or any other assets, at our [Nexo's] sole and absolute discretion.

As such, any profit earned by Nexo investors is earned solely through the efforts of Nexo by means determined solely by Nexo.

27. In practice, Nexo pools each EIP investor's Eligible Earn Assets with other EIP investors' Eligible Earn Assets and similar Nexo-owned assets. For example, when an individual investor lends Bitcoin through the EIP, Nexo pools those virtual assets with Bitcoin loaned by other EIP investors, as well as Bitcoin that Nexo owns or obtains by other means.

28. Nexo then deploys these pooled investor assets in various revenue-generating activities including: the staking, lending, arbitrage, and provision of liquidity on decentralized finance platforms; lending to retail and institutional borrowers; investing in selected virtual currencies; and entering into swap and options transactions. The revenues from these activities are used in part to pay the interest due to EIP investors.

29. Upon information and belief, Nexo retains as profit any revenue from these activities that is not used to pay interest due to EIP investors. As of September 2021, Nexo reported to regulators that it was earning a spread of approximately 2.7% between the interest rates it paid to EIP investors and the interest rates it charged customers who borrowed assets from Nexo.

**Nexo Has Unlawfully Offered Securities and Commodities in New York**

30. Under New York State law, a dealer is a person or firm that is engaged in the business of buying and selling securities to the public within or from New York for their or its own account. A broker is a person or firm, other than a dealer, that is engaged in the business of effecting transactions in securities for the accounts of others within or from New York.

31. Under New York State law, a commodity broker-dealer is a person or firm that is engaged in the business of selling or offering to sell commodities through commodities contracts

to the public within or from New York. A commodity contract means any account, agreement or contract for the purchase or sale of, any option or right to purchase or sell, primarily for speculation or investment purposes and not for use or consumption by the offeree or purchaser, one or more commodities.

32. Dealers, brokers, and commodity broker-dealers must register with the OAG pursuant to GBL § 359-e prior to any offer to purchase or sell securities or commodities. Failure to register is a fraudulent practice under the Martin Act unless exempt.

33. Neither Nexo Inc. nor Nexo Capital is registered with the OAG as a securities broker or dealer as defined in GBL § 359-(e)(3). Neither Nexo Inc. nor Nexo Capital is registered with the OAG as a commodities broker-dealer as defined in GBL § 359-(e)(14).

34. Furthermore, the Defendants do not fall within any exemption available under GBL § 359-e or the regulations promulgated thereunder. Neither Nexo Inc. nor Nexo Capital is licensed to conduct virtual currency business activity in New York pursuant to the provisions of 23 N.Y.C.R.R. Part 200, nor is either entity a limited purpose trust company pursuant to the provisions of the New York Banking Law.

35. In 2021, the OAG commenced an investigation into whether Nexo was offering its various virtual currency products or services – including the Exchange service and EIP – within or from the state of New York.

36. In the course of that investigation, the OAG obtained evidence confirming that Nexo permitted New York-based customers to open accounts with Nexo, buy and sell virtual currencies in those accounts, and to participate in pooled investments via EIP.

37. Nexo's EIP, and the virtual currencies that Nexo allows customers to buy and sell on its Exchange, constitute securities and/or commodities under New York State law. By

offering these products and services to New York investors without prior registration, Defendants engaged in fraudulent practices under the Martin Act.

38.     On October 18, 2021, the OAG delivered a letter to Nexo, demanding that it immediately cease and desist further unlawful activity in New York relating to the provision of its products and services. In that communication, the OAG informed Nexo that it was:

> [U]nlawfully selling or offering to sell its Savings Wallet accounts and Fixed Term deposits, both a security, within this State without having registered as required…Nexo is serving as a dealer, broker, or salesperson because its interest-bearing products, securities, are openly available for use by New York users.

39.     That letter further stated:

> Nexo's dealing in bitcoin and other virtual currencies within this State without having registered is [] unlawful. Certain virtual currencies have been recognized by courts in New York as commodities under the Martin Act. *Matter of James v. iFinex Inc.*, 185 A.D.3d 22, 28 (1st Dep't 2020). Commodity broker-dealers, salespersons, and others as identified in the Martin Act who deal in those instruments within or from New York without having registered violate the law.

40.     Following public reports regarding the OAG's October 18, 2021 letter, Nexo tweeted a statement from its official Twitter account denying that it did business in New York:



41.     In the course of discussions between the OAG and counsel for Nexo following delivery of the OAG's October 18, 2021 letter, Nexo acknowledged that – contrary to its public statements – Nexo in fact had thousands of active New York-based accounts that had purchased

9

or sold virtual currencies on the Exchange or invested in EIP. Upon information and belief, New York-based customers collectively accounted for at least tens of millions of dollars in notional trading activity across Nexo's various products and services, including the Exchange and EIP.

42. Nexo further acknowledged that it did not require users to be "verified," nor did it subject user accounts to its "risk-based IP blocker," until a minimum threshold amount had been deposited into the user's account. In other words, Nexo did little or nothing to confirm the identity or location of users whose deposits did not exceed its minimum threshold.

43. Upon information and belief, such "unverified" customers could access Nexo's platform, buy and sell virtual currencies, and utilize Nexo's various products and services without providing any personally identifying information beyond an email address, password, and means for two-factor authentication.

**Nexo's Prior Commitments to Cease Activity Within New York**

44. Following delivery of the OAG's October 18, 2021 letter, counsel for Nexo assured the OAG that Nexo would stop providing its products and services to New York residents.

45. By email dated October 26, 2021, Nexo's counsel stated that "Nexo is working diligently to terminate all services with NY residents as expeditiously as possible while ensuring that no clients are harmed by the process." In particular, Nexo confirmed that "[t]he Earn [EIP] and Exchange Services are no longer active for existing accounts that appear to be associated with NY residents."

46. By email dated November 2, 2021, Nexo represented that it had sent notices to existing New York customers stating: "Our systems have identified that your Nexo account is in New York State – a jurisdiction in which we are, unfortunately, no longer providing any of our

services. We kindly request that you withdraw all balances by November 30, 2021. Your account will not be accessible after this deadline."

47. By email dated November 11, 2021, Nexo again confirmed that it "has now disabled all of its services in NY – this includes the earn [EIP] and exchange services." Nexo informed the OAG that it had identified approximately 10,000 New York-based accounts, of which roughly 900 had invested in EIP.

48. However, according to data Nexo provided to state securities regulators on August 12, 2022, these prior representations and commitments were inaccurate. In fact, Nexo disclosed that there were thousands of active New York-based EIP accounts earning interest well into this year. As of January 31, 2022, according to Nexo's data, there were more than 5,500 active EIP accounts funded by New York investors, with an aggregate account value of roughly $11.66 million. As of July 31, 2022, there were still more than 5,000 EIP accounts funded by New York investors, with a total EIP savings wallet value of roughly $1.88 million.

49. Upon information and belief, Nexo continued to automatically renew and pay interest on New-York based fixed-term EIP accounts through at least March 2022.

**Nexo Has Misrepresented That It Complies with Applicable laws and Regulations**

50. Nexo has also misrepresented and failed to disclose material information related to Nexo's regulatory compliance.

51. Nexo's website represents to investors that "Nexo has gone the extra mile in ensuring compliance with the applicable regulatory frameworks. Together with our top-tier legal counsel and engaging proactively with the regulatory decision-makers we ensure the sustainability of our products for years to come."

52. For at least the past year, Nexo has stated on its website: "The Nexo Group has legal entities in various locations throughout the world…and is in compliance with all applicable global and local regulations. Please rest assured that Nexo is compliant everywhere it provides services and retains top-tier legal counsels in the jurisdictions of its operation." Further, within the footer of Nexo's website, Nexo has at times displayed the phrase "Licensed & Regulated Digital Assets Institution."

53. Nexo Capital is the entity that operates Nexo's website and conducts the EIP offering. This is not disclosed on the website; instead, the website often uses the name "Nexo" without further clarification. Of the licenses and registrations identified on Nexo's website, Nexo Capital only holds one: a money service business registration license in Canada. Notably, neither of the Nexo Defendants are licensed or registered in the State of New York, despite their continued activity within this State.

54. On or about February 5, 2021, Nexo co-founder Antoni Trenchev claimed in a Bloomberg interview that Nexo's founders "are from a very traditional, regulated background." On February 6, 2021, Nexo posted the video and transcript of this interview on its website as a blog post, titled "Nexo Has Been Stress-tested in a Way No Bank Has Ever Been." On or about June 30, 2021, Trenchev appeared on a Yahoo Finance Live broadcast and stated that he "would argue, from a financial perspective… that [Nexo is] safer, especially for the larger clients, than your average bank." On July 1, 2021, Nexo re-posted this broadcast to its YouTube channel, and re-named it, "Nexo is Safer than your Average Bank…"

55. Through these representations, which are material to investors, Nexo gives customers the misleading impression that their investments are low-risk and that they are transacting with a company that is fully licensed and operating in compliance with applicable

law. In fact, as set forth above, Nexo has operated unlawfully in New York and engaged in fraudulent practices under the Martin Act.

## FIRST CAUSE OF ACTION

**Fraudulent Practices under the Martin Act (Failure to Register) GBL § 359-e and Regulations promulgated thereunder, 13 NYCRR § 10, 13**
**(Against All Defendants)**

56. The Attorney General repeats and re-alleges the paragraphs above as if fully stated herein.

57. The acts and practices of Defendants alleged above violated New York General Business Law § 359-e and regulations promulgated thereunder, including provisions of Official Compilation of Codes, Rules, and Regulations of the State of New York Title 13, Chapter II, Subchapter A, Parts 10 and 13 insofar as such acts and practices constitute the sale or purchase of, or offer to sell or purchase, securities or commodities within or from New York without registration.

## SECOND CAUSE OF ACTION

**Repeated and Persistent Illegality – Executive Law § 63(12)**
**Violation of New York Registration Provisions of the Martin Act GBL § 359-e and Regulations promulgated thereunder, 13 NYCRR § 10, 13**
**(Against All Defendants)**

58. The Attorney General repeats and re-alleges the paragraphs above as if fully stated herein.

59. The acts and practices of Defendants alleged herein constitute conduct proscribed by Executive Law § 63(12), in that Defendants engaged in repeated illegal acts, in violation of New York General Business Law § 359-e and regulations promulgated thereunder, including provisions of Official Compilation of Codes, Rules, and Regulations of the State of New York Title 13, Chapter II, Subchapter A, Parts 10 and 13, insofar as such acts and practices constitute

the sale or purchase of, or offer to sell or purchase, securities or commodities within or from New York without registration.

### THIRD CAUSE OF ACTION

**Martin Act Securities Fraud – General Business Law § 352 *et seq.***
**(Against All Defendants)**

60. The Attorney General repeats and re-alleges the paragraphs above as if fully stated herein.

61. The foregoing acts and practices of Defendants, consisting of materially false and misleading representations, statements, and omissions relating to the sale, purchase, or exchange of securities or commodities constitute fraudulent acts and practices as defined in GBL § 352 *et seq*.

### FOURTH CAUSE OF ACTION

**Repeated and Persistent Fraud – Executive Law § 63(12)**
**(Against All Defendants)**

62. Attorney General repeats and re-alleges the paragraphs above as if fully stated herein.

63. The acts and practices of Defendants alleged herein constitute conduct proscribed by Executive Law § 63(12), in that Defendants engaged in repeated fraudulent or illegal acts or otherwise demonstrated persistent fraud in the carrying on, conducting or transaction of business within the meaning and intent of Executive Law § 63(12).

## **PRAYER FOR RELIEF**

**WHEREFORE,** the Attorney General demands judgment against Defendants as follows:

    A.    Enjoining Defendants from engaging in any ongoing or future violations of New York Law;

    B.    Directing Defendants to disgorge all amounts obtained in connection with or as a result of the violations of law alleged herein, all moneys obtained in connection with or as a result of the fraud alleged herein, and all amounts by which Defendants have been unjustly enriched in connection with or as a result of the acts, practices, and omissions alleged herein;

    C.    Directing that Defendants make restitution of all funds obtained from investors in connection with the fraudulent and deceptive acts complained of herein;

    D.    Directing that Defendants be permanently barred from engaging in the issuance, offer, exchange, sale, promotion, negotiation, advertisement, investment advice, or distribution of securities or commodities within or from the State of New York;

    E.    Directing that Defendants pay Plaintiff's costs and fees;

    F.    Directing such other equitable relief as may be necessary to redress Defendants' violations of New York Law; and

    G.    Granting such other and further relief as may be just and proper.

Dated: New York, New York
September 26, 2022

LETITIA JAMES
Attorney General of the State of New York

By: *[signature]*
Jesse A. Devine
Assistant Attorney General
Investor Protection Bureau
28 Liberty Street, 21st Floor
New York, New York 10005
(212) 416-8741

*Attorneys for Plaintiff, People of the State of New York*

Of Counsel:
Shamiso Maswoswe
Bureau Chief
Investor Protection Bureau