# EXHIBIT 8



STATE OF OKLAHOMA
DEPARTMENT OF SECURITIES
204 NORTH ROBINSON, SUITE 400
OKLAHOMA CITY, OKLAHOMA 73102

In the Matter of:

Nexo Financial LLC,
Nexo Inc., and
Nexo Capital Inc.,

    Respondents.                    ODS File No. 22-032

## ORDER TO CEASE AND DESIST
## AND NOTICE OF OPPURTUNITY FOR HEARING

Pursuant to Section 1-602 of the Oklahoma Uniform Securities Act of 2004 ("**Act**"), Okla. Stat. tit. 71, §§ 1-101 – 1-701 (2022), the Enforcement Division of the Oklahoma Department of Securities ("**Department**") investigated Nexo Financial LLC, Nexo Inc., and Nexo Capital Inc. (collectively, "**Nexo**" or the "**Respondents**") to determine whether they have violated, are violating, or are about to violate the Act.

Based thereon, the following Findings of Fact, Authorities, and Conclusions of Law are presented in support of the issuance of this *Order to Cease and Desist* ("**Order**") against the Respondents pursuant to Section 1-604 of the Act.

### Findings of Fact

1.     Nexo Financial LLC is a Delaware entity incorporated in June 2018, with a registered agent located in Wilmington, Delaware. Nexo Financial LLC is not, and has not been, registered under the Act in any capacity.

2.     Nexo Inc. and Nexo Capital Inc. are Cayman Islands entities formed in 2018. Nexo Inc. is Nexo Capital Inc.'s parent company. Nexo Inc. and Nexo Capital Inc. are not, and have not been, registered under the Act in any capacity.

3.     Nexo operates an online platform[1] offering, *inter alia,* cryptocurrency, stable coin and tokenized assets ("**Digital Assets**"); exchange, storage, and lending services thereof; and an interest-bearing product.

4.     Nexo generates revenue by engaging in cryptocurrency trading strategies yielding an annual return of between 10% to 30%; over-the-counter trading solutions

---

[1] www.nexo.io

to certain of its customers yielding fees up to 8% of the underlying transaction value; fees of approximately 1% of the transaction value for its exchange services; the spread between interest rates paid out on funds borrowed by Nexo from its customers and the interest rate Nexo charges borrowers;[2] and, when a Nexo borrower's loan-to-value ratio breaches an agreed value, a partial or full sale of the borrower's collateral occurs generating a 5% fee along with a 0.75% fee when using collateral to repay loans.

5. Nexo's interest bearing product pays participants interest on certain Digital Assets deposited with Nexo at a rate determined, and subject to change at any time, by Nexo in its sole and absolute discretion (the "**Earn Interest Product**" or "**EIP**").

6. According to each EIP terms and conditions (the "**T&Cs**"):

   a. Nexo, at any time and in its sole and absolute discretion with no liability to Nexo, may change the conditions of the EIP including its suspension;

   b. Until September 12, 2021, Nexo disclosed it could convert any Digital Assets deposited in a participant's EIP into other Digital Assets for its "investment purposes" and any "such investment will be made in [Nexo's] name only";

   c. Beginning on September 13, 2021, the T&Cs authorize Nexo, at its sole and absolute discretion, to "convert, pledge, re-pledge, hypothecate, rehypothecate, sell, lend, or otherwise transfer, dispose of or use any amount" of any deposited Digital Assets in a participant's EIP for any period and without retaining the Digital Assets in Nexo's possession and/or control. In addition, any "such action will be performed in Nexo's name only";

   d. Beginning in March 2021, the EIPs were offered with either a flex or fixed term. The fixed term offerings cannot be terminated early by the participant and digital assets cannot be withdrawn prior to the expiration of the fixed term;

   e. Digital Assets are "more volatile relative to most fiat currencies and other assets and this unpredictability of their price may result in significant loss over a short period of time." In addition, the T&Cs disclose certain risks including the regulatory status of digital assets; and,

   f. Participants in the EIPs do so "fully at [their] own risk."

---

[2] As of September 20, 2021, this spread averaged 2.7%.

7. Digital Assets deposited into each EIP are grouped and deployed by Nexo with other Nexo assets to "maximize revenue-generating opportunities." Nexo utilizes these deposits for Nexo's "investment purposes" and to loan to its retail and institutional borrowers. Nexo, also at its sole discretion, determines the rates of return and to whom loans are made.

8. Nexo solely controls the manner in which it provides trading and loan services and chooses what Digital Assets are eligible for each EIP along with the rate of return. Further, Nexo:

> a. evaluates, chooses and enters into lending agreements with borrowers;
> 
> b. chooses third-parties to provide Nexo digital wallet storage, payment infrastructure, and custody, including BitGo Trust Company, Bakkt, Ledger Vault, Paxos, Fireblocks, Circle, and Blockchain.com;
> 
> c. at times material hereto, chose what "world-renowned" custodial insurance company, if any, to insure its customers' assets against physical and/or cyber security breaches and/or employee theft; and,
> 
> d. recognizes that crypto trading platforms, in part, are largely unregulated and may therefore be more exposed to fraud and failure.

9. Oklahoma residents participating in the EIPs must primarily rely on the Respondents' efforts described, in part, in Item Nos. 7 and 8 above, in order to receive the promised interest payments.

10. Since 2018, approximately 580 Oklahoma residents have participated in the EIP program with an approximate $40,000,000 "volume of activity attributable" to the same.

11. On or about October 14, 2021, Nexo stopped offering the EIPs to Oklahoma residents. Nexo is under no known legal obligation to continue this practice.

12. The EIPs are not, and have never been, registered under the Act.

To the extent any of these Findings of Fact are more properly characterized as Conclusions of Law, they should be so considered.

## Authorities

1. Section 1-301 of the Act states, in pertinent part:

    It is unlawful for a person to offer or sell a security in [Oklahoma] unless:

    1. The security is a federal covered security;

    2. The security, transaction, or offer is exempted from registration under [Sections 1-201 through 1-203 of the Act]; or

    3. The security is registered under [the Act].

2. Section 1-604 of the Act states, in pertinent part:

    A. If the Administrator determines that a person has engaged, is engaging, or is about to engage in an act, practice, or course of business constituting a violation of this act or a rule adopted or order issued under this act…the Administrator may:

    1. Issue an order directing the person to cease and desist from engaging in the act, practice, or course of business or to take other action necessary or appropriate to comply with this act[.]

    \* \* \* \*

    B. An order under subsection A of this section is effective on the date of issuance. Upon issuance of the order, the Administrator shall promptly serve each person subject to the order with a copy of the order and a notice that the order has been entered. The order must include a statement whether the Administrator will seek a civil penalty or costs of the investigation, a statement of the reasons for the order, and notice that, within fifteen (15) days after receipt of a request in a record from the person, the matter will be scheduled for a hearing and the hearing shall be commenced within fifteen (15) days of the matter being set for hearing. If a person subject to the order does not request a hearing and none is ordered by the Administrator, within thirty (30) days after the date of service of the order, the order, that may include a civil penalty or costs of the investigation if a civil penalty or costs were sought in the statement accompanying the order, becomes final as to that person by operation of law. If a hearing is requested or ordered, the Administrator, after notice of and opportunity for hearing to each person subject to the

order, may modify or vacate the order or extend it until final determination.

## Conclusions of Law

1.  The Earn Interest Products are securities, in the nature of an investment contract, as defined in Section 1-102(32) of the Act.

2.  The Earn Interest Products have not been registered under Section 1-301 of the Act, in violation of the same.

3.  The Administrator is authorized, pursuant to Section 1-604 of the Act, to issue this Order.

4.  It is in the public interest for the Administrator to issue this Order.

To the extent any of these Conclusions of Law are more properly characterized as Findings of Fact, they should be so considered.

## ORDER

**IT IS HEREBY ORDERED** that Nexo Financial LLC, Nexo Inc., and Nexo Capital Inc., and any of their subsidiaries, cease and desist from offering or selling the Earn Interest Products to Oklahoma residents and to cease and desist from allowing further deposits by Oklahoma residents already participating in the Earn Interest Product.

Witness my Hand and the Official Seal of the Oklahoma Department of Securities this 26th day of September, 2022.

(SEAL)

MELANIE HALL, ADMINISTRATOR OF THE
OKLAHOMA DEPARTMENT OF SECURITIES

5

## NOTICE OF OPPORTUNITY FOR HEARING

Pursuant to Section 1-604 of the Act, the Administrator hereby gives notice to the Respondents of their right to request a hearing on this Order. The request for hearing must be received by the Administrator **within thirty (30) days** after service of this Order. The request for hearing must be in writing and the Respondents shall specifically admit or deny each allegation that is contained in the Order.

Within fifteen (15) days after receipt of a request for hearing from the Respondents, this matter will be scheduled for hearing. The hearing shall commence within fifteen (15) days of the matter being set for hearing. Notice of the date, time and location of the hearing shall be given to the Respondents. If a hearing is requested, the Administrator, after notice and opportunity for hearing to the Respondents, may modify or vacate this Order or extend it until final determination.

If Respondents do not request a hearing within thirty (30) days after the date of service of this Order and none is ordered by the Administrator, *this Order becomes final by operation of law.*

Witness my Hand and the Official Seal of the Oklahoma Department of Securities this **26th** day of September, 2022.

(SEAL)

_____
MELANIE HALL, ADMINISTRATOR OF THE
OKLAHOMA DEPARTMENT OF SECURITIES

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 26th day of September, 2022, a true and correct copy of the above and foregoing *Order to Cease and Desist and Notice of Opportunity for Hearing* was mailed by electronic and certified mail, return receipt requested, delivery restricted, with postage prepaid thereon, addressed to:

Nexo Financial LLC
c/o Corporation Service Company, Registered Agent
10300 Greenbriar Place
Oklahoma City, OK 73159

Nexo Inc.
Nexo Captial Inc.
c/o Craig Warkol, Esq.
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY  10022

Craig.Warkol@srz.com
Kolby.Loft@srz.com


Brenda London
Paralegal