# EXHIBIT 9

ADMINISTRATIVE PROCEEDING
BEFORE THE
SECURITIES COMMISSIONER OF SOUTH CAROLINA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | |
| Nexo, Inc.; and ) | **ORDER TO CEASE AND DESIST** |
| Nexo Capital, Inc.; ) | Matter No. 20221615 |
| ) | |
| ) | |
| Respondents. ) | |
| ) | |

## I. PRELIMINARY STATEMENT

Pursuant to the authority granted to the Securities Commissioner of South Carolina (the "Securities Commissioner") under the South Carolina Uniform Securities Act of 2005, S.C. Code Ann. § 35-1-101, *et seq.*, and the regulations and rules promulgated thereunder (the "Act"), and delegated to the Securities Division of the Office of the Attorney General of the State of South Carolina (the "Division") by the Securities Commissioner, the Division conducted an investigation into the securities-related activities of Nexo, Inc. ("Nexo") and Nexo Capital, Inc. ("Nexo Capital") (collectively, the "Respondents"). In connection with its investigation, the Division has determined that evidence exists to support the Findings of Fact and Conclusions of Law set forth below, and the issuance of this Order to Cease and Desist.

## II. JURISDICTION

1. The Securities Commissioner has jurisdiction over this matter pursuant to S.C. Code Ann. § 35-1-601(a).

## III. RELEVANT PERIOD

2. Except as otherwise expressly stated, the conduct described herein occurred between January 1, 2018, and the present (the "Relevant Period").

## IV. **RESPONDENTS**

3. Nexo is a Cayman Islands corporation formed in 2018. Nexo is part of the Nexo Group, which includes entities organized primarily in European jurisdictions. Nexo is not registered to do business in South Carolina and is not registered with the Division in any capacity.

4. Nexo Capital is a Cayman Islands corporation formed in 2018 with its principal place of business in Grand Cayman, Cayman Islands. Nexo Capital is a wholly owned subsidiary of Nexo. Nexo Capital is part of the Nexo Group. Nexo Capital is not registered to do business in South Carolina and is not registered with the Division in any capacity.

5. The above-named entities will be collectively referred to as "Nexo." Nexo provides virtual currency-related financial services to retail and institutional borrowers in the United States, including trading, borrowing, and lending services. Nexo conducts its business on its public website accessible at http://www.nexo.io/ and through the Nexo mobile application.

## V. **FINDINGS OF FACT**

**i. Overview**

6. From approximately June 17, 2020, to the present, Nexo offered and sold their Earn Interest Product ("EIP") to new and/or existing United States investors. The EIP enables investors to earn interest passively by loaning certain digital assets ("Eligible Earn Assets") to Nexo. Nexo's EIP investors have no part in selecting, monitoring, or reviewing the revenue-generating activities that Nexo utilizes to earn this interest.

7. As of July 31, 2022, there were 1,150 South Carolina EIP accounts earning interest with a total EIP savings wallet value of $7,305,223. Nationally, there were 93,318 EIP accounts earning interest with a total EIP savings wallet value of $800,260,000.

8. During the Relevant Period, there were up to 1,190 South Carolina EIP accounts earning interest.

9. Nexo has promoted their financial services, including the EIP, to South Carolina investors primarily through their website at http://www.nexo.io/ and their mobile Nexo application. On its website, Nexo has provided information about its EIP and a list of supported virtual currencies and their corresponding interest rates. Additionally, Nexo has promoted the EIP on social media through various platforms including Twitter, Instagram, and YouTube. Through Nexo's website, blog, and social media accounts, Nexo has represented interest rates on these EIP accounts of up to 36%, significantly higher than the rates offered for short-term, investment grade, fixed-income securities or for bank savings accounts.

10. In offering its EIP, Nexo has failed to disclose material information about the investment, including, but not limited to, Nexo's EIP interest generation deployment activities, Nexo's legal and regulatory compliance in South Carolina, and the limitations of Nexo's financial representations.

ii. **Nexo Earn Interest Product**

11. Nexo has allowed, with certain limitations, anyone either 18 years or older, depending on the jurisdiction, to open a Nexo EIP account and access Nexo wallet services. When opening a Nexo account, an investor will go through several user identity-verification protocols, including, at a minimum, the provision of an investor's legal name, date of birth, and address. An investor will then transfer fiat currency (EUR, GBP, and USD) from a bank account to their Nexo account. Investors can also add cryptocurrency to their Nexo wallet by transferring assets from another crypto exchange or wallet.

12. On or around February 19, 2022, Nexo disallowed any US investors who had not yet opened a Nexo Account from opening an EIP savings wallet. Also on or around February 19, 2022, Nexo disallowed any existing US investors from adding additional assets into their existing EIP savings wallets.

13. In Nexo's EIP, an investor agrees to invest their Eligible Earn Assets with Nexo in exchange for passively earning interest that is deposited into the investor's EIP savings wallet. EIP investors begin accruing interest 24 hours after investing Eligible Earn Assets with Nexo.

14. Nexo has offered their EIP in the form of either a Flex EIP Savings Wallet Term ("Flex Term Investment") or a Fixed EIP Savings Wallet Term ("Fixed Term Investment"). Interest from an investor's Eligible Earn Assets is credited to an investor's EIP savings wallets either at the expiration of the Fixed Term Investment, or daily for a Flex Term Investment.

15. For a Flex Term Investment, there is no required "holding" time for an investor to lend their Eligible Earn Assets, and these investors are able to withdraw their Eligible Earn Assets at any time subject to the terms and conditions of a Nexo wallet.

16. For a Fixed Term Investment, investors are unable to withdraw their Eligible Earn Assets for the duration of a defined term. When investing in a Fixed Term Investment, an investor can elect to utilize Nexo's "automatic renewal" feature to rollover their investment at the end of the defined term.

17. The interest rate Nexo pays an investor on their invested Eligible Earn Assets is determined by several factors, including the length of the Eligible Earn Assets loan, the type of cryptocurrency loaned, and whether the investor has a Flex Term Investment or a Fixed Term Investment. Generally, the longer that an investor agrees to maintain their Eligible Earn Assets with Nexo, the higher the rate of return.

18. After February 19, 2022, while Nexo disallowed additional deposits into existing EIP savings wallets, Nexo continued to allow existing South Carolina investors enrolled in a Fixed Term Investment to rollover their EIP Eligible Earn Assets into a new Fixed Term Investment.

### iii. Deployment and Income-Generating Activities

19. In accordance with the EIP terms and conditions, the EIP savings wallet interest rate is subject to revision from time to time, at Nexo's sole and absolute discretion. Included in the EIP terms and conditions, investors are required to acknowledge that they:

> …understand and agree that we [Nexo] might convert, pledge, re-pledge, hypothecate, rehypothecate, sell, lend, or otherwise transfer, dispose of or use any amount of any Digital Assets in regard to which you use the Nexo Earn Interest Product, separately or together with other property, and for any period of time, and without retaining in our [Nexo's] possession and/or control for delivery a like amount thereof or any other assets, at our [Nexo's] sole and absolute discretion.

As such, any profit earned by Nexo investors is earned solely through the efforts of Nexo with means determined solely by Nexo.

20. Nexo groups and deploys investor Eligible Earn Assets with other investors' Eligible Earn Assets and similar, Nexo-owned assets (e.g., Eligible Earn Bitcoin Assets with other Nexo-owned Bitcoin assets). To earn income to pay interest to EIP investors, Nexo engages in deployment activities including the staking, lending, arbitrage, and provision of liquidity on certain decentralized finance platforms, in addition to the lending of aggregated investor Eligible Earn Assets to retail and institutional borrowers.

    **iv.**    **Material Misrepresentations and Omissions in Offer and Sale of EIPs**

21. In offering the EIP to South Carolina investors, Nexo has failed to disclose material information related to interest generation. These omissions include, but are not limited to, the types of trading and investment activities that Nexo engages in while utilizing EIP Eligible Earn Assets, the identities and creditworthiness of those who borrow EIP Eligible Earn Assets, and the amount of EIP Eligible Earn Assets used in each income-generating activity.

22. Nexo has failed to disclose its lending agreements or the terms contained therein to EIP investors, and as such, Nexo's EIP investors are not provided with information as to who Nexo's institutional lending partners are, how long the term loan is, or whether these loans are over-collateralized, despite Nexo's assurances that all loans are provided in an over-collateralized fashion. Consequently, Nexo EIP investors cannot adequately evaluate the risk associated with their participation in the EIP prior to investing their Eligible Earn Assets with Nexo.

23. In offering the EIP to South Carolina investors, Nexo has failed to disclose material information related to Nexo's regulatory compliance as it pertains to the EIP offering.

24. Nexo's website represents to EIP investors that "Nexo has gone the extra mile in ensuring compliance with the applicable regulatory frameworks. Together with our top-tier legal counsel and engaging proactively with the regulatory decision-makers we ensure the sustainability of our products for years to come."

25. Concurrently, Nexo makes the following statements on its website: "The Nexo Group has legal entities in various locations throughout the world…and is in compliance with all applicable global and local regulations…rest assured that Nexo is compliant everywhere it provides services and retains top-tier legal counsels in the jurisdictions of its operation." Further,

within the footer of Nexo's website, Nexo displays the phrase "Licensed & Regulated Digital Assets Institution."

26. Through these representations, Nexo gives investors the impression that their investments are less risky. On or about June 30, 2021, Nexo co-founder Antoni Trenchev ("Trenchev") appeared on a Yahoo Finance Live broadcast titled, "Crypto-focused banking: Nexo Co-Founder discusses his company's growth and business model." On this broadcast, Trenchev stated that he "would argue, from a financial perspective…that [Nexo is] safer, especially for the larger clients, than your average bank." On July 1, 2021, Nexo re-posted this broadcast to its YouTube channel, and re-named it, "Nexo is Safer than your Average Bank…"

27. Nexo Capital is the entity that operates Nexo's website and conducts the EIP offering. This is not disclosed on the website; instead, the website often uses the name "Nexo" without further clarification. Of the licenses and registrations identified on Nexo's website, Nexo Capital only held one—a money service business registration license in Canada. Notably, none of the Respondents hold licenses in South Carolina. Further, the Respondents do not hold any securities licenses.

28. As such, Nexo: 1) fails to specify Nexo Capital as the operator of the website and provider of the services offered therein; 2) lists the licenses of one or more entities that are not actually doing business in the relevant jurisdictions and that are not conducting the business offered and provided through the website on which the licenses and registrations are listed; and 3) makes the false statement that the Nexo Group is in compliance with "all applicable…regulations."

29. In offering the EIP to South Carolina investors, Nexo has failed to disclose material information related to Nexo's financial representations as they pertain to the EIP offering.

30. Nexo represents on its website and through the Nexo YouTube video, "How to Earn Crypto Interest," that an investor's Eligible Earn Assets are secured at all times by Nexo's asset-backed portfolio of over-collateralized loans. Nexo also states that the platform lends to individuals and institutions only on an over-collateralized basis, which is, in part, how Nexo states that they keep EIP interest rates consistent over time and "basically eliminate counter party risk."

31. Further, on or about June 10, 2021, Nexo advertised a forthcoming "real-time audit" of Nexo's custodial assets by Armanino LLP,[1] which they represented would show that the company's assets exceed liabilities. In a Dailyhodl article published on June 10, 2021, Trenchev stated, "We are happy to have opened our books to allow Armanino…to verify that our company's assets exceed liabilities at all times and demonstrate how seriously we treat Nexo's commitments to our customers."

32. In a Nexo blog post published on September 23, 2021, Nexo presented the Armanino report, which purports to offer a "real-time audit of Nexo's custodial assets, showing the company's assets always exceed liabilities." This Armanino report is updated daily and Nexo claims that it provides the following assurances: 1) "Fully Backed: Your holdings on Nexo's platform are backed by assets by more than 100%"; 2) "Properly Managed: Third-party assurance that your funds on the Nexo platform are properly managed and accounted for"; and 3) "Always Available: 24/7 proof of Nexo's ability to meet all liabilities owed to you at any time." This Armanino report is publicly available online at https://real-time-attest.trustexplorer.io/nexo.

33. More recently, as a response to a competing cryptocurrency firm freezing customer withdrawals on June 12, 2022, Nexo's Twitter account tweeted:

---

[1] Armanino LLP is a Public Company Accounting Oversight Board ("PCAOB") – certified auditor, accounting, and consulting firm in the US.

> All Nexo products are operating normally – Borrow, Earn, Exchange…Nexo is the first and only blockchain finance company to have a real-time audit of its custodial assets, showing that the company's assets exceed its liabilities at all times which attests to Nexo's liquidity and ability to meet all of its obligations…Nexo is in a solid liquidity and equity position to readily acquire any remaining qualifying assets of Celsius, mainly their collateralized loan portfolio…

Nexo provided a link to their real-time attestation Armanino report within the body of this tweet.

34. Nexo's provision of the Armanino report in conjunction with these claims of financial stability gives the appearance that the Armanino report can support Nexo's claims of financial stability in a turbulent market.

35. Despite representations by Nexo, the data and figures set forth in the Armanino report contain several material shortcomings, as described in the report's Agreed Upon Procedures, that limit the report's ability to provide assurances of Nexo's financial stability. These limitations include: 1) a failure to identify non-Customer Liabilities; 2) a failure to identify whether Customer Liabilities include the collateral that Nexo holds for over-collateralized retail loans; 3) a failure to identify the liquidity of Nexo's assets; 4) a failure to identify doubtful loan accounts (e.g., a distressed or non-paying borrower accounts); and 5) a failure to identify whether Nexo's deposit liabilities are secured or otherwise collateralized by Nexo's assets.

36. As such, this report is of limited value and cannot be used to support Nexo's claims that "Nexo's assets exceed their liabilities by more than 100%."

37. Despite the cryptocurrency market fluctuations, the bankruptcies filed by competing cryptocurrency firms, and Nexo's above-referenced claims of solvency and offers to purchase a competitor's assets, to date, Nexo has provided insufficient information to substantiate

its solvency claims; yet, Nexo continues to tout its financial solvency broadly to potential investors without providing information to regulators or investors that confirms these claims.

v. **Registration Status**

38. The Nexo EIP is not registered with the Division or any other securities regulatory authority, nor is it exempt from registration.

## VI. CONCLUSIONS OF LAW

39. Paragraphs 1 through 38 are incorporated by reference as though fully set forth herein.

40. The Nexo Earn Interest Product is a security as defined in S.C. Code Ann. § 35-1-102(29).

41. Pursuant to S.C. Code Ann. § 35-1-301, it is unlawful for a person to offer or sell a security in this State unless: (1) the security is a federal covered security; (2) the security, transaction, or offer is exempted from registration under Sections 35-1-201 through 35-1-203; or (3) the security is registered under this chapter.

42. The Nexo Earn Interest Product was and is required to be registered with the Division pursuant to S.C. Code Ann. § 35-1-301.

43. The Nexo Earn Interest Product has not been registered with the Division, is not exempt from registration, and is not a federally covered security.

44. Respondents offered and sold unregistered securities in violation of S.C. Code Ann. § 35-1-301.

45. Each violation of S.C. Code Ann. § 35-1-301 is a separate violation of the Act.

46. Pursuant to S.C. Code Ann. § 35-1-501, it is unlawful for a person, in connection with the offer, sale, or purchase of a security, directly or indirectly: (1) to employ a device, scheme,

or artifice to defraud; (2) to make an untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (3) to engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person.

47. The conduct of Respondents, as alleged in paragraphs 21-37, *supra*, constitutes a violation of S.C. Code Ann. § 35-1-501.

48. The Respondents' violations of the Act set forth above provide the basis for this Order, pursuant to S.C. Code Ann. § 35-1-604.

49. This Order is appropriate and in the public interest, pursuant to the Act.

## VII. ORDER

**NOW THEREFORE**, pursuant to S.C. Code Ann. § 35-1-604(a)(1), it is hereby **ORDERED** that:

a. Each Respondent and every successor, affiliate, control person, agent, servant, and employee of each of the Respondents, and every entity owned, operated, or indirectly or directly controlled by or on behalf of each of the Respondents shall **CEASE AND DESIST** from transacting business in this State in violation of the Act;

b. The Respondents shall jointly and severally pay a civil penalty in the amount of six hundred twenty-five thousand dollars ($625,000.00) if this Order becomes effective by operation of law, or, if a Respondent seeks a hearing and any legal authority resolves this matter, pay a civil penalty in an amount not to exceed $10,000.00 for each violation of the Act by the Respondent(s).

c. The Respondents shall jointly and severally pay the costs associated with this investigation in the amount of two thousand dollars ($2,000.00) if this Order becomes effective by

operation of law, or, if a Respondent seeks a hearing and any legal authority resolves this matter, pay the actual costs associated with the investigation and legal proceeding in accordance with S.C. Code Ann. § 35-1-604(e).

## VIII. NOTICE OF OPPORTUNITY FOR HEARING

Each of the Respondents is hereby notified that it has the right to a formal hearing on the matters contained herein.  To schedule a hearing, a Respondent must file with the Division within thirty (30) days after the date of service of this Order, a written Answer specifically requesting a hearing.  If any Respondent requests a hearing, the Division, within fifteen (15) days after receipt of a written request, will schedule a hearing for that Respondent.  The written request shall be delivered to the Office of the Attorney General, 1000 Assembly Street, Columbia, South Carolina 29201, or mailed to the Office of the Attorney General, Attention:  Securities Division, P.O. Box 11549, Columbia, South Carolina, 29211-1549.

In the written Answer, a Respondent, in addition to requesting a hearing, shall admit or deny each factual allegation in this Order, shall set forth the specific facts on which the Respondent relies, and shall set forth concisely the matters of law and affirmative defenses upon which the Respondent relies.  If the Respondent is without knowledge or information sufficient to form a belief as to the truth of an allegation, the Respondent shall so state.

Failure by a Respondent to file a written request for a hearing in this matter within the thirty-day (30) period stated above shall be deemed a waiver by that Respondent of the right to such a hearing.  Failure by a Respondent to file an Answer, including a request for a hearing, shall result in this Order's becoming final by operation of law.  The regulations governing the hearing process can be found at S.C. Code of Regulations § 13-604.

This Order does not prevent the Division or any law enforcement agency from seeking additional civil or criminal remedies as are available under the Act, including remedies related to the offers and sales of securities by the Respondents set forth above.

ENTERED, this the 26TH day of Sept., 2022.

ALAN WILSON
SECURITIES COMMISSIONER

By: _____
Jonathan B. Williams
Assistant Deputy Attorney General