# EXHIBIT 10

STATE OF VERMONT
DEPARTMENT OF FINANCIAL REGULATION

IN RE:  )
NEXO INC.,  )
NEXO CAPITAL INC.,  )   DOCKET NO. 22-022-S
AND NEXO FINANCIAL LLC  )
  )

## EX PARTE ORDER TO CEASE AND DESIST

Based on the Motion for Ex Parte Order to Cease and Desist (the "Motion") filed by the Securities Division of the Vermont Department of Financial Regulation (the "Department") pursuant to 9 V.S.A. § 5602 and § 5604 and Department Regulation No. 2022-01, the Commissioner makes the following Findings of Fact and Conclusions of Law and enters the following Order:

I.   FINDINGS OF FACT

Respondents

1. Nexo Inc. is a Cayman Islands corporation formed in 2018. Nexo Inc. wholly owns Nexo Capital Inc. Nexo Inc. is part of the Nexo Group, which includes entities organized primarily in European jurisdictions.

2. Nexo Capital Inc. ("Nexo Capital") is a Cayman Islands corporation formed in 2018 with its principal place of business in Grand Cayman, Cayman Islands. Nexo Capital is part of the Nexo Group. Nexo Capital provides user-facing products and services to customers in the United States, including in Vermont.

3. Nexo Financial LLC ("Nexo Financial") is a Delaware limited liability company with its principal place of business in London, United Kingdom. Nexo Financial holds certain licenses, including money transmitter licenses and lending licenses in approximately 28 states but does not

1

hold any licenses in Vermont.

4. Nexo Inc., Nexo Capital, and Nexo Financial are referred to herein collectively as the "Respondents" or "Nexo."

## The Crypto Interest Products

5. Nexo acts as a financial services company that generates revenue by providing, deploying, and investing digital assets and virtual currencies (collectively, "cryptocurrency" or "cryptocurrencies") in a variety of strategies, including the staking, lending, arbitrage, and provision of liquidity on certain decentralized finance platforms, the lending of aggregated investor cryptocurrency to retail and institutional borrowers, and engaging in other types of transactions and investments selected and conducted at Nexo's discretion.

6. Since June 2020, Respondents have been, at least in part, financing their asset deployment and investing activities through the sale of unregistered securities in the form of interest-earning cryptocurrency products (the "Earn Interest Product") to residents of Vermont and other states.

7. Respondents conduct their business on the internet, through a website accessible to the general public at https://nexo.io (the "Nexo Website"), as well as through Respondents' proprietary smartphone applications, which are also accessible to the general public. Additionally, Respondents have promoted the Earn Interest Product on social media through various platforms, including Twitter, Instagram, and YouTube.

8. Respondents permit Vermont residents and other investors who are at least eighteen years old to open a Nexo account through the Nexo Website and smartphone applications.[1]

---

[1] When opening a Nexo account, an investor will go through several user identity-verification protocols, including, at a minimum, the provision of an investor's legal name, date of birth, and address.

9. Upon opening a Nexo account, investors are able to deposit funds into a digital wallet (a "<u>Savings Wallet</u>") by purchasing cryptocurrency from Nexo or by transferring cryptocurrency from another cryptocurrency exchange or digital wallet.

10. Investors are then able to invest the cryptocurrency contained in their Savings Wallets in the Earn Interest Product.

11. In the Earn Interest Product, investors agree to invest their cryptocurrency with Nexo, in exchange for passively earning interest that is deposited into their Savings Wallets. Earn Interest Product investors begin accruing interest 24 hours after investing their cryptocurrency with Nexo.

12. Respondents have offered their Earn Interest Product for a flexible term ("<u>Flex Term Investment</u>") or for a fixed term ("<u>Fixed Term Investment</u>").

13. For Flex Term Investments, Respondents deposit interest daily into investors' Savings Wallets. For Fixed Term Investments, Respondents deposit interest into investors' Savings Wallets at the expiration of the Fixed Term Investment.

14. For a Flex Term Investment, there is no required "holding" time for an investor to lend their cryptocurrency and these investors are able to withdraw their cryptocurrency at any time, subject to the Nexo terms and conditions.

15. For a Fixed Term Investment, investors are unable to withdraw their cryptocurrency for the duration of a defined term. When investing in a Fixed Term Investment, investors can elect to utilize Nexo's "automatic renewal" feature to rollover their investments at the end of the defined term.

16. Nexo sets its interest rates based on various considerations, including whether the investor has a Flex Term Investment or a Fixed Term Investment, and prioritizing Nexo's need for particular types of cryptocurrencies or digital assets.

17. In accordance with the Earn Interest Product General Terms and Conditions (the "Terms and Conditions"), the Earn Interest Product interest rate is subject to revision from time to time, at Respondents' sole and absolute discretion. Included in the Terms and Conditions, investors are required to acknowledge that they:

 > …understand and agree that we [Nexo] might convert, pledge, re-pledge, hypothecate, rehypothecate, sell, lend, or otherwise transfer, dispose of or use any amount of any Digital Assets in regard to which you use the Nexo Earn Interest Product, separately or together with other property, and for any period of time, and without retaining in our [Nexo's] possession and/or control for delivery a like amount thereof or any other assets, at our [Nexo's] sole and absolute discretion.

18. In exchange for consideration (*i.e.* deposits and the attendant rights to use them as described above) received in the present, Nexo has at all relevant times promised to pay lucrative interest rates in the future. Nexo has at all relevant times promoted the interest rates through the Nexo Website and applications, which advertise annualized returns on cryptocurrencies for retail investors which significantly exceed the rates offered on short-term investment grade fixed income securities or on bank savings accounts.

19. Respondents group and deploy investor assets with other investors' assets and similar, Nexo-owned assets (*e.g.*, Eligible Earn Bitcoin Assets with other Nexo-owned Bitcoin assets). To earn income to pay interest to Earn Interest Product investors, Respondents engage in deployment activities including the staking, lending, arbitrage, and provision of liquidity on certain decentralized finance platforms, in addition to the lending of aggregated investor assets to retail and institutional borrowers. Earn Interest Product

investors have no part in selecting, monitoring, or reviewing the revenue-generating activities that Respondents utilize to earn this interest.

20. Accordingly, any profit earned by Earn Interest Product investors is earned solely through the efforts of Respondents with means determined solely by Respondents.

21. As of July 31, 2022, more than 93,318 U.S. residents had invested over $800 million in Earn Interest Products, nationally.

22. As of July 31, 2022, 70 Vermont residents had $14,354 of assets invested in Earn Interest Products.[2]  Respondents offered these Earn Interest Products to Vermonters without complying with the securities registration requirements in Vermont law.

Nexo's Past and Continuing Registration Violations

23. On September 21, 2021, Antoni Trenchev a co-founder and Managing Partner of the Nexo Group and a director and manager of certain companies within the Nexo Group, including Nexo Capital, sent a letter to the Department in response in an inquiry about the Nexo Group's prior unlicensed activity in Vermont, stating:

> Nexo Financial LLC has had [sic] not directly or indirectly provided services or interacted with customers, users, or counterparties in the State of Vermont. Any holding company, subsidiary, or other person or entity belonging to the Nexo group has never engaged in business with customers, users, or counterparties located in the State of Vermont through the website www.nexo.io or any other computer program, mobile application, or other platform or location (physical, digital, or otherwise) through which Nexo Financial LLC provides services to, or otherwise interacts with customers, users, or counterparties.

---

[2] As of January 31, 2022, 84 Vermont residents had $1,576,417 of assets invested in Earn Interest Products. The number of Vermont investors and the U.S. dollar value of aggregate investment balances for such investors has varied over time due to fluctuating cryptocurrency values, investor withdrawals, and regulatory actions against Nexo, as discussed *infra*.

24. After receiving inquiries from the Department, Respondents purportedly ceased offering the Earn Interest Product to new investors in Vermont after October 20, 2021.

25. From approximately October 20, 2021, until approximately February 19, 2022, existing Vermont investors could deposit additional cryptocurrency into the Earn Interest Products and Vermont investors could continue to earn interest on the cryptocurrency already invested in the Earn Interest Products.

26. On February 19, 2022, Nexo disallowed any U.S. investors who had not yet opened a Nexo account from investing in the Earn Interest Product. At the same time, Nexo disallowed any existing U.S. investors from adding additional cryptocurrency into their existing Earn Interest Products.

27. Nexo has allowed non-accredited users in the United States, including Vermont residents, who had a balance in the Earn Interest Product prior to February 19, 2022, to maintain their Earn Interest Products, continue earning interest on the balances therein, and reinvest such interest in Earn Interest Products.

28. After February 19, 2022, while Nexo disallowed additional deposits into existing Earn Interest Products, Nexo has continued to allow existing Vermont investors enrolled in a Fixed Term Investment to rollover the cryptocurrency invested in the Earn Interest Product into a new Fixed Term Investment.

The Lack of Registration and Public Protections

29. Respondents are not licensed as money transmitters under the Vermont Money Services Act, 8 V.S.A. § 2500, *et seq*.

30. Respondents are not registered with the Vermont Department of Financial Regulation to offer or sell securities in Vermont.

31. The Earn Interest Product is not registered or permitted for sale in Vermont, nor does it qualify for any exemption from registration pursuant to the Vermont Uniform Securities Act, 9 V.S.A. §§ 5101-5617 (the "Securities Act").

32. The Earn Interest Product is not registered for offer or sale with the United States Securities and Exchange Commission (the "SEC").

33. Respondents did not file or cause to be filed a registration statement with the SEC in connection with the offer and sale of the Earn Interest Product.

34. At all relevant times, Respondents have failed to disclose material information to Earn Interest Product investors that issuers of registered securities must include in a registration statement and provide to prospective investors in the form of a prospectus pursuant to Subchapter 3 of the Securities Act and Section 6-1 of the Vermont Securities Regulations.

35. These omissions include, but are not limited to, failure to disclose financial statements prepared in accordance with generally accepted accounting principles in the United States. Without access to these financial statements, which issuers are required by securities laws to disclose, investors and financial professionals cannot rigorously evaluate and make informed investment decisions regarding Respondents' financial condition, solvency, and ability to repay their obligations to investors.

36. The Earn Interest Product is not protected by Securities Investor Protection Corporation, otherwise known as the SIPC, a federally mandated, non-profit, member-funded United States corporation created under the Securities Investor Protection Act of 1970 that mandates membership of most U.S.-registered broker-dealers.

37. The Earn Interest Product is also not insured by the Federal Deposit Insurance Corporation, otherwise known as the FDIC, an agency that provides deposit insurance to depositors in

the United States, or the National Credit Union Administration, otherwise known as the NCUA, an agency that regulates and insures credit unions.

<u>The Ongoing Threat to The Financial Health and Welfare of Vermonters</u>

38. Despite lacking the necessary securities registration for the Earn Interest Product, the Nexo Website continues to represent to Vermont investors that "Holding over 40 licenses, Nexo has gone the extra mile in ensuring compliance with the applicable regulatory frameworks. Together with our top-tier legal counsel and engaging proactively with the regulatory decision-makers we ensure the sustainability of our products for years to come."[3] Similarly, within the footer of the Nexo Website, Respondents display the phrase "Licensed & Regulated Digital Assets Institution."

39. Concurrently, Respondents make the following statements on the Nexo Website: "The Nexo Group has legal entities in various locations throughout the world…and is in compliance with all applicable global and local regulations…rest assured that Nexo is compliant everywhere it provides services and retains top-tier legal counsels in the jurisdictions of its operation."[4]

40. Nexo Capital is the entity that operates the Nexo Website and conducts the Earn Interest Product offering. Of the licenses identified on the Nexo Website, however, Nexo Capital only held one—a money service business registration in Canada. Notably, none of the Respondents hold licenses of any kind in Vermont. Further, the Respondents do not hold *any* securities licenses in any jurisdiction.

---

[3] *See* https://nexo.io/security#stay-secure (last accessed Sept. 21, 2022).
[4] *See* https://support.nexo.io/hc/en-us/articles/360008236853-Where-is-Nexo-registered-and-is-it-regulated- (last accessed Sept. 21, 2022).

41. The Nexo Website also contains a link to a purported "real-time audit" of Nexo's custodial assets by Armanino LLP[5], available online at: https://real-time-attest.trustexplorer.io/nexo (the "Armanino Report"). The Armanino Report is updated daily and the Nexo Website claims that "[w]ith this reserves audit – a pioneering move for the crypto lending space – we give you the ultimate peace of mind that Nexo is able to meet client obligations at all times."[6]

42. Although the Nexo website describes the Armanino Report as a "real time audit," it includes none of the information that securities issuers are required to disclose in audited financial statements prepared in accordance with generally accepted accounting principles in the United States ("GAAP"), and Armanino was not engaged to, and did not conduct, a rigorous financial statements audit or examination engagement, as would be required in connection with a financial statements audit for a registered securities issuer.

43. The Armanino Report is prepared pursuant to a limited set of "agreed-upon procedures" and only states whether Nexo Capital's assets consisting of fiat (USD, GBP, and EUR), digital assets (self-custodied, third-party custodied, derivatives, and lending positions), and an outstanding customer loan book were greater than or equal to customer deposits.

44. Despite representations by Nexo, the data and figures set forth in the Armanino Report contain several material shortcomings, as described in the Armanino Report's agreed-upon procedures, that limit the report's ability to provide assurances of Nexo's financial stability. These limitations include: (1) failure to identify or account for non-customer liabilities that may be substantial and material to Nexo Capital's financial condition and solvency; (2) failure to identify whether customer liabilities include the obligation to

---

[5] Armanino LLP is an accounting and consulting firm in the U.S.
[6] *See* https://nexo.io/security (last accessed Sept. 21, 2022).

return collateral that Nexo holds for over-collateralized retail loans; and (3) failure to identify or account for reserves for doubtful loan accounts (*e.g.* for obligations of distressed borrowers or non-performing loans. As such, the Armanino Report is of limited value and cannot be used to support Nexo's claims that it "show[s] the company's assets always exceed liabilities."[7]

45. On or about June 30, 2021, Nexo co-founder Antoni Trenchev appeared on a Yahoo Finance Live broadcast titled, "Crypto-focused banking: Nexo Co-Founder discusses his company's growth and business model." On this broadcast, Trenchev stated that he "would argue, from a financial perspective… that [Nexo is] safer, especially for the larger clients, than your average bank."[8] Despite lacking the necessary public protections from SIPC, FDIC, or NCUA, for the Earn Interest Product, on July 1, 2021, Nexo re-posted this broadcast to its YouTube channel, and re-named it, "Nexo is Safer than your Average Bank…."

46. Through this representation and others on the Nexo Website and on social media, Nexo gives Vermont investors the impression that their investments in the Earn Interest Product are compliant with securities laws, secure, and low risk. Given the likelihood that such representations will impact the decision-making of investors in the Earn Interest Products, the Securities Division seeks an *ex parte* order to protect the financial health and welfare of Vermont residents who may be affected by Respondents' conduct or otherwise harmed by Respondents' violations of the Vermont Uniform Securities Act.

---

[7] *See* https://nexo.io/blog/nexo-passes-real-time-armanino-audit-becomes-the-first-crypto-lender-to-shed-light-on-reserves (last accessed Sept. 21, 2022).
[8] *See* https://www.youtube.com/watch?v=pTc5MXK_eJ0 (last accessed Sept. 21, 2022).

## II. CONCLUSIONS OF LAW

47. Pursuant to 9 V.S.A. § 5301, "[i]t is unlawful for a person to offer or sell a security in this State unless: (1) the security is a federal covered security; (2) the security, transaction, or offer is exempted from registration under sections 5201 through 5203 of this chapter; or (3) the security is registered under this chapter."

48. Pursuant to 9 V.S.A § 5102(28), the term "security" includes notes, investment contracts, evidence of indebtedness, and related types of participation in profit-sharing agreements. Section 5102(28)(D) specifies that the Securities Act's definition of security includes "an investment in a common enterprise with the expectation of profits to be derived primarily from the efforts of a person other than the investor and a 'common enterprise' means an enterprise in which the fortunes of the investor are interwoven with those of either the person offering the investment, a third party, or other investors." *Id.* (codifying the definition set forth in *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), commonly referred to as the "*Howey* test").

49. The Earn Interest Products offered by Respondents are securities within the meaning of 9 V.S.A. § 5102(28).

50. The Earn Interest Products were neither federal covered securities nor registered with the Department nor exempted from registration when Respondents offered or sold them to Vermont investors.

51. Accordingly, Respondents are — and have for some time been — in violation of 9 V.S.A. § 5301.

### III. COMMISSIONER'S AUTHORITY

52. Pursuant to 9 V.S.A. § 5604(a)(1), the Commissioner may issue orders or directives to any person to cease and desist from specific conduct if the Commissioner finds that the person has engaged, is engaging, or is about to engage in an act, practice, or course of business which constitutes a violation of 9 V.S.A. Chapter 150, the Vermont Uniform Securities Act, which spans 9 V.S.A. § 5101 to § 5617.

53. Pursuant to 9 V.S.A. § 5604(b) and Section 1.04(O) of the Department of Financial Regulation No. 2022-01, the Commissioner may issue orders without prior notice or opportunity to be heard.

54. In light of the immediate need to protect the financial health and welfare of Vermont residents who may be affected by Respondents' conduct or otherwise harmed by Respondents' violations of the Vermont Uniform Securities Act identified herein, an *ex parte* order is appropriate in this case.

### IV. ORDER

55. Based on the findings of fact and conclusions of law identified above, IT IS HEREBY ORDERED:

    A. Respondents shall cease and desist from the offer and sale of the Earn Interest Products to Vermont residents, except to the extent any such offer or sale is properly registered or exempt from the registration requirements of the Securities Act; and

    B. Respondents shall not withhold, destroy, mutilate, or by any means modify or falsify any documentary material, electronic records, or other information in their

possession that is relevant to the activities and transactions described herein or that involves or relates in any way to the Earn Interest Products.

Dated at Montpelier, Vermont this <u>23rd</u> day of September 2022.

_____
Kevin J. Gaffney
Commissioner
Vermont Department of Financial Regulation