UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JUNHAN JEONG,<br><br>        Plaintiff,<br><br>    v.<br><br>NEXO CAPITAL INC.,<br><br>        Defendant. | Case No. 21-cv-02392-BLF<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE CLASS ALLEGATIONS**<br><br>[Re: ECF No. 74] |

       This is a breach of contract and consumer protection case regarding Nexo Capital Inc.'s Crypto Credit service, which allows users to borrow cash by pledging cryptocurrency as collateral. Plaintiff Junhan Jeong alleges that Nexo sold cryptoassets that he and others had staked Nexo in violation of Nexo's Borrow Terms & Conditions. Jeong also alleges that Nexo engaged in deceptive advertising. Jeong seeks to bring his claims on behalf of himself and three classes.

       Before the Court is Nexo's Motion to Dismiss And/Or Strike Class Allegations Pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(f), and 23(d). Mot. 3, ECF No. 74. Nexo asks this Court to strike or dismiss Jeong's class allegations for two independent reasons: (1) Jeong's agreement with Nexo bars him from bringing a class action and (2) Jeong's counsel cannot adequately represent a class. In the alternative, Nexo asks the Court to strike Jeong's class allegations against putative class members who do not live in California because they are not subject to California law. Jeong opposes Nexo's motion. Opp'n, ECF No. 76. Nexo has filed a reply. Reply, ECF No. 77.

       The Court heard oral argument on Nexo's motion on February 23, 2023. *See* ECF No. 83. For the reasons below and stated on the record during the hearing, the Court GRANTS Nexo's motion.

## I. BACKGROUND

Nexo operates a website through which users can access Nexo's "Crypto Credit" service. *See* TAC ¶¶ 2, 33, ECF No. 71. Using the Crypto Credit service, users can stake any of a variety of cryptoassets as collateral for cash loans. *See id.* ¶¶ 2, 33, 35.

To use the Crypto Credit service a user must agree to Nexo's Borrow Terms & Conditions ("Borrow Terms"). TAC ¶ 34; *see also* Shelton Decl. Ex. 1 ("Borrow Terms"), ECF No. 74-2. The Borrow Terms are non-negotiable. *Id.* ¶ 34. Under the Borrow Terms, a user can borrow as much as they want so long as they stake enough collateral to maintain a particular loan-to-value ("LTV") ratio. *See id.* ¶¶ 36, 51-52. If a user's LTV ratio rises above a particular threshold, Nexo will, after providing notice to the user, sell the user's collateral to the extent necessary to bring the LTV ratio back in line. *Id.* ¶ 38. Because the collateral is comprised of cryptoassets that fluctuate in value, a user's LTV ratio fluctuates with the value of the underlying collateral. *See id.* ¶ 3.

On December 22, 2020, the SEC announced an action against Ripple Labs Inc.—the issuer of a cryptocurrency called XRP—and two of its executives, alleging that XRP constituted an unregistered securities offering. *See id.* ¶ 47. In response to the news, over the course of a few hours on December 23, 2020, the price of XRP dropped from $0.45 to $0.21. *Id.* ¶ 47. Nexo, seeing the price drop, suspended users' ability to use XRP as collateral or to pay down loans (the "Suspension"). *Id.* ¶¶ 48-49. The Suspension remains in place today. *Id.* ¶ 48. Nexo provided no notice of the Suspension to users. *Id.* ¶ 48.

As a result of the Suspension, users with loans based on XRP collateral were "effectively locked out" of maintaining their LTV ratios, since they could neither use their XRP to pay down their loans nor sell their XRP on the open market, since this would require withdrawing XRP collateral and further raising the LTV ratio. *See id.* ¶ 90. Meanwhile, within hours of the Suspension, Nexo proceeded to sell "massive quantities" of XRP held as customer collateral, including U.S.-based customers and customers outside the U.S. *See id.* ¶ 49.

At the time of the Suspension, Jeong had staked collateral of 598,384.6188 XRP—approximately $269,300—for a loan of $169,400 from Nexo. See *id.* ¶ 139. As a result of Nexo's conduct around December 20, 2020, Jeong lost his entire XRP collateral, in addition to the

following digital assets that he liquidated in an unsuccessful attempt to pay down his loans as his LTV value rose: 47,190.47043 Lumen (approximately $6,000); 0.009255 Bitcoin (approximately $215); 6.1674 Ether (approximately $3,600); and 168.18851 Link (approximately $1,800). *See id.* ¶ 139. Jeong was assessed an undisclosed 1.26% fee for each liquidation, costing him approximately $1,607.01. *See id.*

Jeong alleges that Nexo breached the Borrow Terms through the implied covenant of good faith and fair dealing when it stopped allowing users to pay down their loans with XRP and failed to provide notice to users of the suspension of XRP payments. *Id.* ¶¶ 55, 178-79.

Jeong also alleges that Nexo engaged in false and misleading advertising in violation of the UCL in three ways. First, Jeong alleges that Nexo has advertised to consumers that it does not own users' collateral while acting otherwise—invoking its ownership right over users' collateral to justify liquidation of that collateral. *See id.* ¶¶ 41-44; 115–37; 194, 197-199. Second, Jeong alleges that Nexo has advertised that its users would have certain legal rights in connection with their purported loans when the Borrow Terms do not in fact guarantee those rights. *See id.* ¶ 200. Third, Jeong alleges that Nexo has falsely advertised to consumers that there are "#ZeroFees – no hidden fees, no origination fees, no liquidation fees, no FX commissions" associated with its services. *See id.* ¶¶ 40; 201. Jeong alleges that he was charged fees when Nexo liquidated his XRP collateral. *See id.* ¶ 139.

Finally, Jeong alleges that Nexo has engaged in unlawful or unfair business practices under the UCL. In addition to alleging Nexo engaged in unlawful and unfair business practices through its breach of contract outlined above, Jeong alleges that Nexo violated the unlawful prong of the UCL by offering loans in California despite lacking a California Finance Lender ("CFL") License. See id. ¶¶ 45–46; 193.

Jeong brings his action on behalf of the following three classes:

> Damages class: All persons who reside in the United States who suffered damages from breach of contract arising from Nexo's suspension of XRP payments on December 23, 2020, and thereafter.
>
> Equitable-Relief Class: All persons who reside in the United States and who maintain accounts or wallets with Nexo.

> California UCL Class: All persons who reside in California and who, as a result of Nexo's violations of the UCL as set forth in this Amended Complaint, suffered losses from their use of Nexo's Crypto Credit service.

*See id.* ¶ 148.

## II.   LEGAL STANDARD

### A.   Rule 12(b)(6) – Motion to Dismiss for Failure to State a Claim

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

### B.   Rule 12(f) – Motion to Strike

Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are "generally viewed with disfavor, and will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties." *Sliger v. Prospect Mortg., LLC*, 789 F.Supp.2d 1212, 1216 (E.D. Cal. 2012) (citations

4

1  omitted); *see also United States v. Wang*, 404 F.Supp.2d 1155, 1156 (N.D. Cal. 1991) ("[M]otions
2  to strike should not be granted unless it is clear that the matter to be stricken could have no
3  possible bearing on the subject matter of the litigation."). If a claim is stricken, "[i]n the absence
4  of prejudice to the opposing party, leave to amend should be freely given." *Wyshak v. City Nat'l*
5  *Bank*, 607 F.2d 824, 826 (9th Cir. 1979) (citations omitted).

### C. Rule 23(d)(1)(D) – Motion to Strike Class Allegations

A court may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D). Even under this rule, courts have determined that "class allegations are not tested at the pleading stage and are instead scrutinized after a party has filed a motion for class certification." *Yastrab v. Apple Inc.*, No. 14-cv-01974-EJD, 2015 WL 1307163, at *8 (N.D. Cal. Mar. 23, 2015); *cf. In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 616 (N.D. Cal. 2007) ("[T]he granting of motions to dismiss class allegations before discovery has commenced is rare."). However, in some cases the issue may be "plain enough" based on the pleadings. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *see also Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010) (under Rule 23(d), a court "has authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained").

## III. DISCUSSION

Nexo asks the Court to strike Jeong's class allegations. According to Nexo, Jeong waived his right to bring a class action when he agreed to the Borrow Terms, which contain a class action waiver. Mot. 6-17. Nexo also argues that the Court should strike Jeong's class allegations because Jeong's counsel is inadequate. *Id.* at 17-24. Finally, Nexo argues in the alternative that the Court should strike non-California class allegations on the ground that Jeong does not have standing to assert claims on behalf of non-California users. *Id.* at 24-25.

Jeong responds to each of Nexo's arguments. Jeong argues that the class action waiver in the Borrow Terms does not bar him from bringing a class action because it is unenforceable. Opp'n 2-12. According to Jeong, the class action waiver is unenforceable for two independent

United States District Court
Northern District of California

reasons: it is unconscionable, and it purports to waive public injunctive relief. *Id.* Jeong argues that Nexo's argument that Jeong's counsel is inadequate is premature and baseless. *Id.* at 13-22. Finally, Jeong argues that Nexo's alternative argument regarding non-California class allegations is premature and wrong. *Id* at 22-24.

As explained below, the Court agrees with Nexo that Jeong waived his right to bring a class action when he agreed to the Borrow Terms. The Court therefore does not reach Nexo's two other challenges.

### A. The Class Action Waiver in the Borrow Terms is not Unconscionable.

Nexo argues that Jeong waived his right to bring his claims on behalf of the class when he agreed to the Borrow Terms because they contain the following class action waiver:

> Any dispute arising out of or in connection with the Agreement (the General Terms), unless amicably settled between the Parties, shall be referred to the competent court or other dispute resolution authority, determined as per the procedural law of Nexo jurisdiction. ***You agree that any dispute resolution proceeding subject to the Applicable Law under the preceding sentence shall be conducted only on an individual basis and not as a plaintiff or class member in any purported class, consolidated or representative action or proceeding***. No court or other dispute resolution authority can consolidate or join more than one claim and can otherwise preside over any form of a consolidated, representative, or class proceeding. Any relief awarded cannot affect other Clients of Nexo.

Borrow Terms § XV.2.

Jeong argues that the class action waiver is unconscionable and therefore unenforceable under the test articulated by the California Supreme Court in *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 162-63 (2005). Opp'n 2-8. In *Discover Bank*, the California Supreme Court held that a class action waiver is unconscionable under California law when "[1] the waiver is found in a consumer contract of adhesion [2] in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and [3] when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." 36 Cal. 4th 148, 162-63 (2005); *see also Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 983 (9th Cir. 2007) (describing the *Discover Bank* test). The Court considers each of the three prongs of the *Discover Bank* test

6

below.¹

### 1. Whether the Borrow Terms are a Consumer Contract of Adhesion

Jeong argues, and Nexo does not dispute, that the Borrow Terms are a consumer contract of adhesion. Opp'n 3; Reply 3. According to the Third Amended Complaint, Nexo presents its Borrow Terms on a "take it or leave it" basis and does not negotiate the terms with customers. *See* TAC ¶ 164. The Court finds these allegations sufficient to satisfy the first prong of the *Discover Bank* rule. *See Shroyer*, 498 F.3d at 983 ("Under California law, a contract of adhesion is defined as a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms." quoting *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir.2006) (cleaned up)). Accordingly, the Court proceeds to analyze the other two prongs of the *Discover Bank* test.

### 2. Whether the Class Action Waiver is Found in a Setting in which Disputes Predictably Involve Small Amounts of Damages

The parties dispute whether the class action waiver "is found . . . in a setting in which disputes between the contracting parties predictably involve small amounts of damages." *See Discover Bank*, 36 Cal. 4th at 162-63.

Jeong argues that disputes between Nexo and its users will predictably involve small amounts of damages. Jeong argues that claims that Nexo misleadingly advertises no fees concern small amounts of damages. Opp'n 4. Jeong notes that he seeks only $1,607.01 on this basis. *Id.* Jeong also argues that the Borrow Terms contain a limitation-of-liability provision that limits disputes to a user's fees, which would be less than $2,500 for many members of Jeong's proposed Damages Class. *Id.* at 5. Finally, Jeong argues that his UCL claim is also based on Nexo's claimed right to impose changes to the Borrow Terms unilaterally with respect to interest, loan repayment, or notice terms and that some of these changes would predictably involve small

---

¹ Although the United States Supreme Court held that Federal Arbitration Act preempts the *Discover Bank* rule when the rule would require classwide arbitration, *see AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011), the parties do not dispute that the rule remains in force when a class waiver is not coupled with an arbitration provision, *see* Opp'n 2; Reply 2-8; *see also Suski v. Marden-Kane, Inc.*, 21-CV-04539-SK, 2022 WL 3974259, at *4 n.1 (N.D. Cal. Aug. 31, 2022) ("Where, as here, the class action waiver in the Official Rules is not coupled with an arbitration provision, *Concepcion* does not apply."); *Meyer v. Kalanick*, 185 F. Supp. 3d 448, 458 (S.D.N.Y. 2016) ("*Concepcion* . . . provides no basis on which to conclude that California law on the unconscionability of class action waivers would be invalid outside the arbitration setting.").

amounts of damages. *Id.* at 6.

Nexo disputes each of Jeong's arguments. Nexo replies that Jeong wrongly asks the Court to assess the amount of damages involved in the dispute on a claim-by-claim basis to escape the fact that he seeks over $100,000 in damages. Reply 3-4. Nexo next argues that the limitation-of-liability provision has nothing to do with the enforceability of the class action waiver. *Id.* at 5. Finally, Nexo replies that Jeong's argument regarding its ability to change the Borrow Terms has no connection to any alleged injury in this case and should therefore be ignored. *Id.* at 5-6.

The Court agrees with Nexo that disputes between Nexo and its users that implicate the Borrow Terms do not "predictably involve small amounts of damages." The present dispute provides a case in point. Jeong seeks, among other things, "the full value of the collateral that Nexo liquidated . . . (less the outstanding loan amounts on that collateral as of breach)." TAC ¶ 182. For Jeong, these damages allegedly amount to $99,900. TAC ¶ 139. Added to the fees Jeong seeks to recover, Jeong's requested damages exceed $100,000. This is not a small amount of damages under the *Discover Bank* test. *See Arguelles-Romero v. Superior Ct.*, 184 Cal. App. 4th 825, 844 (2010) (stating that $16,000 is not an amount "so small that individuals would not be willing to spend the time and effort to pursue and individual claim for the amount").

Jeong's arguments to the contrary do not undermine this conclusion. Jeong first argues that the Court should isolate the portion of its false advertising claim that seeks to recover $1,607.01 that Jeong paid in liquidation fees. Opp'n 4-5. Jeong cites no authority for the proposition that a Court should consider only certain claims when analyzing whether disputes implicating a class action waiver will predictably involve small amounts of damages. More important, the concerns underlying the *Discover Bank* test do not support Jeong's proposal to isolate certain claims. In *Discover Bank*, the court summarized the "justifications for class action lawsuits." *See* 36 Cal. 4th at 156. The *Discover Bank* court explained that "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Id.* at 156-57 (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997)). The concern driving the "policy at the very core" of class actions is thus whether individuals would be willing to bring

1  a solo action to remedy the alleged wrong.  This concern is best addressed by analyzing the total
2  amount of damages an individual may recover in the prosecution of his action, not the amount of
3  damages that individual may seek in relation to a single claim in his action.  Here, Jeong seeks
4  more than $100,000 for his liquidated collateral and related fees.  The Court finds that this is the
5  amount to be used for analyzing the second prong of the *Discover Bank* test, regardless of how the
6  amount may be apportioned among Jeong's claims, and this amount confirms that the class action
7  waiver is not found in a setting in which disputes between the contracting parties predictably
8  involve small amounts of damages.

   Jeong's argument regarding the limitation-of-liability provision in the Borrow Terms is also unconvincing.  The provision states:

> IN NO EVENT WILL OUR AGGREGATE LIABILITY FOR ANY LOSS OR DAMAGE ARISING IN CONNECTION WITH THE NEXO CRYPTO CREDIT EXCEED THE FEES YOU PAID TO NEXO FOR YOUR USE OF THEIR SERVICES DURING THE 12 MONTH PERIOD IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO THE CLAIM OR LIABILITY. THE FOREGOING LIMITATIONS OF LIABILITY SHALL APPLY TO THE FULLEST EXTENT PERMITTED BY ANY APPLICABLE LAW.

Borrow Terms § XII.5.  Jeong contends that this provision shows that "the Borrow Terms are *intended* to involve 'predicably small amounts of damages' because Nexo attempts to limit liability solely to the *fees* paid by its users" and many members of the putative Damages Class paid less than $2,500 in fees.  Opp'n 5.  But Nexo's intent is immaterial to the second prong of the *Discover Bank* test.  The relevant inquiry is whether disputes will predictably involve small amounts of damages.  Here, Jeong seeks over $100,000 in damages, despite any purported limitation of liability by the Borrow Terms.  Jeong therefore cannot credibly argue that the limitation-of-liability provision places the Borrow Terms' class action waiver in a setting in which disputes between the contracting parties predictably involve small amounts of damages.

   In light of the foregoing, the Court finds that Jeong has not demonstrated that the class action waiver is found in a setting in which disputes will predictably involve small amounts of damages.  Jeong's allegations therefore do not satisfy the second element of the *Discover Bank* test.

### 3. Whether it is Alleged that Nexo has Carried out a Scheme to Deliberately Cheat Large Numbers of Consumers out of Individually Small Sums of Money

Because the Court has determined that Jeong's allegations do not satisfy the second prong of the *Discover Bank* test the Court does not reach the third prong—whether Jeong adequately alleges that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money. *See Arguelles-Romero*, 184 Cal. App. 4th at 844-45 (holding that class action waiver was not unconscionable without analyzing alleged scheme because "plaintiffs ha[d] not established the prerequisite to their theory of substantive unconscionability—that the claims are so small that a class action is the only viable means of enforcement").

\*   \*   \*

The Court finds that Jeong has not demonstrated that the Borrow Terms' class action waiver is unconscionable because he has not shown that the waiver is found in a setting in which disputes will predictably involve small amounts of damages. The Court therefore proceeds to Jeong's argument that the waiver is unenforceable because it precludes him from seeking public injunctive relief.

### B. The Borrow Terms Impermissibly Preclude Jeong from Seeking Public Injunctive Relief, but the Offending Provision is Severable.

In *McGill v. Citibank, N.A.*, the California Supreme Court held that a provision in a predispute arbitration agreement that waives the right to seek public injunctive relief in any forum is unenforceable under California law. 2 Cal. 5th 945, 952 (2017). The court defined public injunctive as "injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *Id.* at 951.

Although the provision at issue in *McGill* was found in an arbitration agreement, the *McGill* court explained that "a provision in *any* contract—even a contract that has no arbitration provision—that purports to waive, in all fora, the statutory right to seek public injunctive relief under the UCL, the CLRA, or the false advertising law is invalid and unenforceable under California law." *Id.* at 962. This is because, under California law, "a law established for a public reason cannot be contravened by a private agreement." *See id.* (quoting Cal. Civ. Code, § 3513).

10

The parties dispute whether the Borrow Terms' class action waiver precludes Jeong from seeking public injunctive relief in violation of *McGill*. As noted above, the section of the Borrow Terms' containing the class action waiver states in full:

> Any dispute arising out of or in connection with the Agreement (the General Terms), unless amicably settled between the Parties, shall be referred to the competent court or other dispute resolution authority, determined as per the procedural law of Nexo jurisdiction. You agree that any dispute resolution proceeding subject to the Applicable Law under the preceding sentence shall be conducted only on an individual basis and not as a plaintiff or class member in any purported class, consolidated or representative action or proceeding. No court or other dispute resolution authority can consolidate or join more than one claim and can otherwise preside over any form of a consolidated, representative, or class proceeding. Any relief awarded cannot affect other Clients of Nexo.

Borrow Terms § XV.2.

Nexo argues that nothing in the section above precludes Jeong from seeking public injunctive relief. Mot. 14-16. Nexo notes that a party may seek public injunctive relief in an individual lawsuit. *Id.* at 15. Nexo further argues that the Borrow Terms contain a severability clause that would permit the Court to sever any provision that would preclude Jeong from seeking public injunctive relief. *Id.* at 15-16.

Jeong does not contend that the class action waiver, alone, causes a violation of the *McGill* rule. As the Ninth Circuit held in *DiCarlo v. MoneyLion, Inc.*, "a plaintiff bringing an individual lawsuit may seek public injunctive relief. The *McGill* court made clear that a litigant proceeding as an 'individual' 'on his or her own behalf' may 'request[ ] public injunctive relief.'" 988 F.3d 1148, 1156 (9th Cir. 2021) (quoting *McGill*, 2 Cal. 5th at 959).

Jeong argues that the sentence stating that "[a]ny relief awarded cannot affect other Clients of Nexo" precludes him from seeking public injunctive relief. Opp'n 10-12. Jeong further argues that this sentence is not severable from the rest of the section and therefore renders the Borrow Terms' class action waiver unenforceable. *Id.* at 12-13.

For the reasons explained below, the Court agrees with Jeong that the Borrow Terms preclude Jeong from seeking public injunctive relief. The Court finds, however, that the provision precluding public injunctive relief is severable under the Borrow Terms' severability clause.

11

Accordingly, the Court finds that the class action waiver remains intact and enforceable.

### 1. The Borrow Terms Preclude Jeong from Seeking Public Injunctive Relief

In addressing whether a contract provision is unenforceable under *McGill*, a court must first determine whether the plaintiff's complaint seeks public injunctive relief within the meaning of the *McGill* rule. *See Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 541 (9th Cir. 2021). It is not sufficient that the agreement at issue may theoretically purport to waive public injunctive relief in any case. *See id.* at 540.

Here, Jeong's Third Amended Complaint seeks several forms of public injunctive relief under California's UCL. The complaint requests that the Court (1) "prohibit Nexo from engaging in the business of a finance lender or broker without obtaining a license"; (2) "prohibit Nexo from advertising to the public that it offers 'loans' through a 'lending' relationship"; (3) "prohibit Nexo from advertising to the public that it would owe and afford its borrowing customers legal rights in connection with their purported loans, or in the alternative require that Nexo disclose, in connection with any advertisement, that it reserves the sole and absolute discretion to change the terms governing its relationship with its customers"; and (4) "prohibit Nexo from advertising that it does not charge fees, including liquidation fees." 3AC ¶ 193, ¶ 198, ¶¶ 200-01, p.56-57. Each request seeks to "by and large benefit[] the general public" and would "benefit[] the plaintiff, if at all, only incidentally and/or as a member of the general public" and therefore qualifies as public injunctive relief. *See DiCarlo*, 988 F.3d at 1152 (quoting *McGill*, 2 Cal. 5th at 955).

The Court must therefore determine whether the Borrow Terms preclude an award of this public injunctive relief. The final sentence in the Borrow Terms' section concerning dispute resolution states, "Any relief awarded cannot affect other Clients of Nexo." *See* Borrow Terms § XV.2. Jeong contends that this sentence precludes him from seeking public injunctive relief. Opp'n 11-12. Nexo replies that this provision implicates only private injunctive relief because it prohibits the award of relief only to "other Clients of Nexo," not to "anyone who is not a party" or "any other person." Reply 9-10.

The Court agrees with Jeong that the provision precludes Jeong from seeking public injunctive relief based on the Ninth Circuit's analysis in *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819

(9th Cir. 2019). In *Blair*, a plaintiff sued a rent-to-own business for allegedly structuring its pricing in violation of state law. *Id.* at 822. The plaintiff sought, among other things, an injunction on behalf of the people of California to enjoin the business from continuing to implement its pricing structure. *Id.* at 823. The business moved to compel arbitration based on the plaintiff's rent-to-own agreement. *Id.* The district court held, among other things, that the agreement violated the *McGill* rule because it constituted a waiver of the plaintiff's right to seek public injunctive relief. *Id.* The Ninth Circuit agreed. *Id.* at 831. Relevant to the present dispute, the rent-to-own agreement prohibited the arbitrator from awarding "relief that would affect [the business's] account holders other than [the plaintiff]." *Id.* The Ninth Circuit held that this provision "preclude[d] the arbitrator from awarding public injunctive relief." *Id.*

The disputed provision in the Borrow Terms is not meaningfully different from the provision in *Blair*. Both preclude the award of relief to the defendants' other customers—Nexo's "Clients" and the *Blair* defendant's "account holders." Neither goes so far as to preclude the award of relief to "anyone who is not a party" or "any other person" as Nexo would suggest is required. Based on the similarity of these provisions, the Court finds that, like the provision in *Blair*, the provision in the Borrow Terms precludes an award of public injunctive relief in violation of the *McGill* rule.

Contrary to Nexo's contention, the Ninth Circuit's decision in *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535 (9th Cir. 2021), does not undermine *Blair*'s application to this case. *See* Reply 10. In *Hodges*, the Ninth Circuit held that requests for relief that on their face stood to benefit only the defendant's "cable subscribers" did not qualify as public injunctive relief even if the requests sought forward-looking prohibitions against future violations of the law. 21 F.4th at 549. This is because "'public injunctive relief' within the meaning of the *McGill* rule refers to prospective injunctive relief that aims to restrain future violations of law for the benefit of the general public as a whole, rather than a discrete subset of similarly situated persons, and that does so without requiring consideration of the individual claims of non-parties." *Id.* at 548. Here, and in *Blair*, the requested relief stands to benefit the general public, not a discrete subset of similarly situated persons. Accordingly, *Hodges* does not undermine the conclusion that Jeong seeks public

13

injunctive relief or that the Borrow Terms would preclude his right to do so.

Accordingly, the Court finds that the Borrow Terms' provision stating that "[a]ny relief awarded cannot affect other Clients of Nexo" precludes Jeong from seeking public injunctive relief. The Court therefore proceeds to analyze whether this provision is severable from the Borrow Terms.

### 2. The Offending Provision is Severable

As discussed above, the Court has found that the sentence in the Borrow Terms requiring that "[a]ny relief awarded cannot affect other Clients of Nexo" precludes public injunctive relief in violation of the *McGill* rule. This sentence is the final sentence in Section XV.2 of the Borrow Terms. In full, the section states:

> Any dispute arising out of or in connection with the Agreement (the General Terms), unless amicably settled between the Parties, shall be referred to the competent court or other dispute resolution authority, determined as per the procedural law of Nexo jurisdiction. You agree that any dispute resolution proceeding subject to the Applicable Law under the preceding sentence shall be conducted only on an individual basis and not as a plaintiff or class member in any purported class, consolidated or representative action or proceeding. No court or other dispute resolution authority can consolidate or join more than one claim and can otherwise preside over any form of a consolidated, representative, or class proceeding. ***Any relief awarded cannot affect other Clients of Nexo.***

Borrow Terms § XV.2.

Despite the offending sentence, the remaining portions of the Borrow Terms may remain effective because the Borrow Terms contain a severability clause. *See Pereyra v. Guaranteed Rate, Inc.*, No. 18-CV-06669-EMC, 2019 WL 2716519, at *10 (N.D. Cal. June 28, 2019) ("Severability 'clauses evidence the parties' intent that, to the extent possible, the valid provisions of the contracts be given effect, even if some provision is found to be invalid or unlawful.'" (quoting *Baeza v. Superior Court*, 201 Cal. App. 4th 1214, 1230 (2011)); *cf. Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165, 183-84 (2015) ("[A] court should sever an unconscionable provision unless the agreement is so 'permeated' by unconscionability that it cannot be cured by severance."). The Borrow Terms' severability clause states:

> The invalidity of the whole or part of any provision of these General Terms shall not affect the validity of the whole or part of any other provision of these General Terms, the remaining provisions of these

14

General Terms shall remain in full force and effect.

Borrow Terms § XVI.5. The Court therefore must determine whether it should sever the offending sentence to preserve the remainder of the Borrow Terms.

Nexo argues that the Court should apply the severability clause to strike the offending sentence. According to Nexo, the offending sentence is a separate provision from the class action waiver in the sentences preceding it and therefore can be severed under the severability clause. Reply 11. Nexo contends that severance is appropriate here because neither the Borrow Terms nor the class action waiver are so permeated with illegality as to render them unsalvageable. *Id.* at 11-12.

Jeong argues that the severability clause does not authorize severance of the offending sentence. According to Jeong, the severability clause authorizes the severance of whole provisions to salvage other provisions and does not authorize the severance of portions of provisions to salvage other portions of the same provision. Opp'n 12-13. Jeong contends that the offending sentence and the class action waiver are part of the same provision and must therefore fall together. *Id.*

The Court agrees with Nexo that the severability clause permits severance of the offending sentence. The parties' dispute turns on whether the word "provision" must refer to one of the numbered items in the Borrow Terms or whether it can refer to some part of a given numbered item. In interpreting terms within a severability clause, the Ninth Circuit has consulted Black's Law Dictionary. *See Blair*, 928 F.3d at 831 (reviewing definitions of "claim" and "claim for relief" in Black's Law Dictionary to analyze a severability clause that refers to a "particular claim for relief"). As Nexo states in its briefing, Black's Law Dictionary defines "provision" as "[a] clause in a statute, contract, or other legal instrument." Black's Law Dictionary (11th ed. 2019). In contrast, "section" is defined as "a distinct part or division of a writing, esp. a legal instrument." *Id.* The Court finds that the offending sentence is a "provision" within the meaning of the severance clause because it is a single clause in the Borrow Terms. Accordingly, the Court finds that the severability clause authorizes severance of the sentence.

The Court finds that severance is appropriate here. Severance is appropriate where, other

15

than the unenforceable provision, the agreement is not "permeated with illegality." *See Nguyen v. Tesla, Inc.*, No. 8:19-cv-01422-JLS-JDE, 2020 WL 2114937, at *5 (C.D. Cal. Apr. 6, 2020). Jeong does not argue, much less show, that the Borrow Terms or the relevant section of the Borrow Terms is permeated with illegality. Nor does Jeong "show how the *McGill*-violative provision here . . . is integral to the remaining terms." *See Brown v. Madison Reed, Inc.*, 21-cv-01233-WHO, 2021 WL 3861457, at * 9 (N.D. Cal. Aug. 30, 2021). The Court therefore severs the offending sentence from the Borrow Terms, as doing so comports with California's "very liberal view of severability," which "enforc[es] valid parts of an apparently indivisible contract where the interests of justice or the policy of the law would be furthered." *Baeza*, 201 Cal. App. 4th at 1230.

*       *       *

The Court's severance of the sentence stating that "[a]ny relief awarded cannot affect other Clients of Nexo" cures the *McGill* violation and allows Jeong to pursue claims for public injunctive relief as pled in his UCL claim in his individual capacity while upholding the valid class action waiver. *See DiCarlo*, 988 F.3d at 1156.

Nexo's separate argument regarding adequacy of class counsel is moot under this ruling. However, the Court notes that the argument is premature and would have been deferred to consideration at the time of class certification.

### IV.  ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Nexo's motion to strike class allegations is GRANTED.

Dated:  March 29, 2023

_____
BETH LABSON FREEMAN
United States District Judge

16